Jeffrey B. Cereghino, SBN 099480
Email: jbc@rocklawcal.com
Michael F. Ram, SBN 104805
Email: mram@rocklawcal.com
Susan Brown, SBN 287986
Email: sbrown@rocklawcal.com
Matt Malone, SBN 221545
Email: mjm@rocklawcal.com
RAM, OLSON, CEREGHINO
   & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

Beth E. Terrell, CSB 178181
Email: bterrell@tmdwlaw.com
Mary B. Reiten, CSB 203142
Email: mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
   & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 350-3528

*Attorneys for Plaintiff and Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>CLASS ACTION</u> |
| LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES1 through 200, inclusive, | JURY TRIAL DEMAND |
| Defendant. | |

/ / /

/ / /

/ / /

Through the undersigned counsel, Plaintiff DANA GOLD on behalf of herself and all others similarly situated files this class action complaint against Defendant Lumber Liquidators, Inc.  On personal knowledge of her own circumstances and upon investigation and information and belief of her counsel, Plaintiff avers the following.

**INTRODUCTION**

1.      Defendant manufactures, advertises, sells and distributes bamboo flooring under the brand name Morning Star Bamboo Flooring (the Product) throughout the United States for installation in homes and other structures.

2.      Defendant markets and warrants that the Product is durable, and further markets and warrants that the Product has a thirty (30) year warranty.  Defendant provided a reasonable expectation to consumers and the industry that the Product would have a usable lifetime of at least thirty (30) years.

3.       Contrary to Defendant's  advertising, which it widely distributes to building professionals and to the general public, the Product is not " free of defects,"  "extremely durable,"  or " exceptionally durable to withstand the rigors of daily life," but rather is subject to premature cracking, splitting, warping and shrinking, all well before the warranted useful life.

4.      The Product's various modes of failure potentially cause damage to other building components and render the Product susceptible to premature failure.

5.      Plaintiff brings this action individually and on behalf of those similarly situated to seek redress for damages caused by Defendant's wrongful conduct.

**JURISDICTION**

6.      This Court has jurisdiction over this case under 28 U.S.C. 1332(d)(2) in that: (1) this action is a class action with more than one hundred (100) class members; (2) defendant LUMBER LIQUIDATORS, Inc. ("Lumber Liquidators") is a corporation, based in the State of Virginia and is a citizen of the State of Delaware; (3) Plaintiff and all members of the Class are

1    United States citizens; and (4) the matter in controversy exceeds the sum or value of

2    $5,000,000, exclusive of interest and costs.

3                                          **VENUE**

4              7.        Venue in this Court is proper: (1) pursuant to 28 U.S.C. 1391(a)(1) in that

5    defendant Lumber Liquidators does sufficient business in this District to subject it to personal

6    jurisdiction herein; and (2) pursuant to 28 U.S.C. 1391(a)(2) in that a substantial part of the

7    events or omissions giving rise to the claim occurred in this District.

8                                  **INTRADISTRICT VENUE**

9              8.        Venue in this Division of the Northern District is proper because a substantial

10   part of the events or omissions which give rise to the claim occurred in Contra Costa County.

11                                        **PARTIES**

12             9.        Plaintiff DANA GOLD is a California resident and owns a home located at 1192

13   Bacon Way in Lafayette, California.

14             10.       Plaintiff  seeks to represent a Class of persons (the "Class") defined as follows:

15             All individuals in the United States who own homes or other
               structures where Morning Star Bamboo Flooring, manufactured
16             and sold by Lumber Liquidators Inc., is installed, or who paid to
               replace Morning Star Bamboo flooring products, manufactured and
17             sold by Lumber Liquidators due to Product performance.
               Excluded from the Class are Defendants, their legal
18             representatives, assigns and successors and any entity in which
               Defendants have a controlling interest.  Also excluded is the judge
19             to whom this case is assigned and any member of the judge's
               immediate family and judicial staff.
20
               Consumers Legal Remedies Act (CRLA) Sub-Class:
21
               All individuals in the State of California who purchased, for
22             personal, family or household use, Morning Star Bamboo Flooring
               manufactured and sold by Lumber Liquidators, Inc.  Products, or
23             homes in which Morning Star Bamboo Flooring manufactured and
               sold by Lumber Liquidators Product were installed, or who paid to
24             replace Morning Star Flooring Product manufactured and sold by
               Lumber Liquidators Inc.  Excluded from the Class are Defendants,
25             their legal representatives, assigns and successors and any entity in
               which Defendants have a controlling interest.  Also excluded is the
26             judge to whom this case is assigned and any member of the judge's
               immediate family and judicial staff.
27

1    Claims for personal injury are specifically excluded from the Class,

2    11.    Defendant LUMBER LIQUIDATORS, INC. is a corporation incorporated in the

3    State of Delaware and with its principal place of business in Toano, Virginia. Plaintiff is

4    informed and believes that Lumber Liquidators was doing business within the United States,

5    and more specifically within the State of California. Also on information and belief, Plaintiff

6    alleges that Lumber Liquidators was responsible for, or otherwise involved in, the

7    development, manufacture, marketing, sales, and distribution of Morning Star Bamboo

8    Flooring (referred to herein as the "Product").

9    12.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein

10   as Does 1 through 100, inclusive, ("Doe Defendants") and therefore sues these Doe Defendants

11   by fictitious names. Plaintiff will amend this complaint to allege the true names and capacities

12   of these fictitiously-named Doe Defendants when they are ascertained. Each of the fictitiously-

13   named Doe Defendants is responsible for the conduct alleged in this complaint and Plaintiff's

14   damages were actually and proximately caused by the conduct of the fictitiously named Doe

15   Defendants.

16   13.    Plaintiff is informed and believes and on that basis alleges that each of these

17   Doe Defendants was the agent, joint venture and/or employee of Defendants and/or the Doe

18   Defendants, and in doing the things hereinafter alleged, was acting within the course and scope

19   of the agency, joint venture and employment with the advance knowledge, acquiescence or

20   subsequent ratification of Defendants and each and every other Doe Defendant.

21                                    **FACTUAL ALLEGATIONS**

22          **A.    Plaintiff Gold's Factual Allegations**

23   14.    Plaintiff DANA GOLD is a California resident and owns a home located at 1192

24   Bacon Way, Lafayette, California. In early October 2013, Plaintiff used the services of a

25   licensed flooring contractor to install the Product in her home. Within weeks of installation,

26   while the home remained unoccupied, Plaintiff observed initial defects with the Product. She

27

observed the product was scratching easily and splintering.  She notified Lumber Liquidators by phone on October 30, 2013.  The customer service representative requested she complete a "General Disclosure Statement" to begin the claims process.  Plaintiff completed the General Disclosure Statement, and mailed it to Lumber Liquidators' claims department. On or about December 2, 2013, Richard King of Inspect Solutions, a company retained by Lumber Liquidators, inspected the Product installed at Plaintiff's home.  He drafted a report on or about December 6, 2013, in which he concluded Plaintiff and the installers were completely at fault and no Product defects existed.

15.     The Product continues to manifest defects to the present day, including warping, splitting, buckling and shrinking.   On September 4, 2014, Plaintiff placed Defendant on notice of these defects via a Consumers Legal Remedies Act notice (Cal. Civil Code §1782), attached as Exhibit A hereto.

### B.     <u>Product Manufacturing Process and Representations</u>

16.     The Product is made by slicing mature bamboo into strips,  cutting the strips into desired widths, immersing the strips in an acid solution to eliminate sugars and starch, (in some cases) staining the material,  binding it together into planks using an adhesive, and finally applying a curing lacquer.  Plaintiff is informed and believes that Lumber Liquidators has been manufacturing and selling the Product since approximately 2008. Lumber Liquidators has sold the Product to thousands of consumers throughout the United States, including California.  The Product was and is marketed and sold for use in homes and other structures.

17.     Defendant concealed from and/or failed to disclose to Plaintiff and the Class the defective nature of the Product.

18.     Plaintiff is informed and believes that Defendant used a variety of methods to communicate representations about the durability and quality of the Product and about its warranty to the general public and contractors in the flooring installation business  These representations were published on Internet sites such as YouTube, on the Lumber Liquidators

website, at trade, building and home shows typically open to the general public and contractors who service ultimate consumers of the Product, and at Lumber Liquidators product retail stores. Defendant communicated a common and repeated theme regarding the Product:

- "They're finely crafted to ensure they're free of defects."
- "Each Morning Star floor is manufactured to be exceptionally durable so it withstands the rigors of everyday life."
- Morning Star Bamboo is two- to two-and-a-half times harder than red oak, so it holds up well to "pretty much anything you can put it through."

19.     These representations and warranties are not true.  Defendant knew that their Product did not conform to these representations.

20.     Defendant continues to advertised and sell the Product for use in homes and other buildings, omitting to disclose to Plaintiff and the Class, their agents, or contractors material facts concerning the Product, including but not limited to concealing that the Product was defectively formulated, was susceptible to warping, splitting, shrinking and splintering, would otherwise not perform as represented, and would fail before its thirty year warranted life.  All of these facts would be material to a reasonable consumer.  The Product did not perform in accordance with the reasonable expectations of Plaintiff and the Class that it was durable and suitable for use as a flooring system in their homes and other structures.

21.     The Product is a manufactured wood product that is defectively designed, tested, and manufactured, and will warp, buckle, splinter and unreasonably scratch and dent when used in its intended manner.  This failure is common in the Product, regardless of when, where or how it is installed.

22.     As a result of Defendant's misconduct, Plaintiff and the Class have suffered actual damages in that the flooring in their homes and other structures has prematurely failed and will continue to do so, potentially damaging to other building elements, causing continuous and progressive damage to property, and requiring them to expend thousands of

dollars to repair or replace the flooring long before the expiration of the "useful life" of the Product as represented by Defendant.

23. Due to the defective nature of the Product, it is not sufficiently durable to serve as flooring. The following photographs depict some of the problems Plaintiff and others have experienced with the Product.







24. Because of the relatively small size of the typical damages, and the modest resources of most homeowners and of the individual members of the Class, it is unlikely that

1    most Class Members could afford to seek recovery against Defendant on their own.  A class

2    action is therefore the only viable, economical and rational means for members of the Class to

3    recover from Defendant for the damages they have caused.

4         **C.    Defendant's Warranty Practices**

5            The following excerpts are sample internet comments from some of the thousands of

6    customers who describe the illusory and deceptive warranty practices employed by Lumber

7    Liquidators to avoid legitimate warranty claims, and distract and divert its customers from

8    pursuing their legitimate claims:

9

10    1.    "I purchased $6000 of morningstar bamboo from Lumber Liquidators in
          Jan 2012 and $3000 more in adjacent room on same floor in April 2012.
11        Approximately 6 months after installation the $6000 floor began to show
          gaps and shrinkage. The 2nd installation has been trouble free. I contacted
12        the LL store and they said not our problem. Contacted LL customer
          service and they told me it was my fault due to humidity levels in my
13        home. If that were the case the $3000 floor would also show gaps and
          shrinkage since they are next to each other! Their salesman never
14        mentioned any problem with this wood and humidity. Salesman said the
          wood was "tougher than oak". What a lie! It scratches plenty! They
15        offered $200 on a $1000 repair contingent on me waving any future
          claims. What a joke!"

16    2.    "Can someone please tell me if there is a group from here in Texas that is
17        getting together to bring a class action against LL? We purchased 1200
          sq. ft. of Morning Star Bamboo Flooring in November and it is cupping
18        EVERYWHERE. We came home from being gone over the weekend and
          now it is actually buckling up. From EVERYTHING I have read, it is
19        defective product we were sold and do NOT expect to get any help from
          LL. As of now, they have been completely useless in taking care of my
20        problem floor. I WILL continue to go through the motions to hopefully
          get my money for the flooring refunded and the cost to have it pulled up
21        reimbursed!!! I do NOT want this junk in my home. If anyone has
          information, please forward it to me. When you hire a lawyer for
22        something like this, does LL have to pay the attorney or do you have to? I
          do NOT have the money to hire and pay an attorney."

23    3.    "Lost first level contents and flooring from Sandy. January 2013, made
24        purchase of 800 sq ft of Morning Star Bamboo, $3661.78. Had their
          installers, Palermo to home to inspect and recommend how and when to
25        install (another $1100). Had delivery, allowed floor to acclimate for
          specified 3-5 days. Their installers returned to install. By end of March,
26        had some gaps. Called Lumber Liquidators, they called installers. Was
          assured that with full year of warranty for installation and product, allow

27

it to go thru summer months. July noticed scratches. While scratches are normal, these were white, not the bamboo color. Made claim to LL, was told to mail balance of floor for inspection. They received, said floor not at fault, never returned floor. Dec 2013, gaps grew to over 1/2 inch, separation from walls. Called Lumber Liquidators. Made claim on Dec. 2, repeated claim on Dec 13, 2013. January 17th, began follow up and no one called us. Googled issue online. Found we were one of many. Inspections began from LL and their installers, Palermo. They agreed separation not normal - many homes in area with issue. Went to two of the LL stores. They agreed with issue and fault of floor and had numerous issues with customers and made changes to how they sell and allow acclimation of product. Three inspections were done, no issue at home cited. March inspection found moisture level now low in home. They are now blaming us. No one has record of 3 other inspections. Our gaps are all thru home from the front door on. As large as 1 inch in some spots. Unsightly and embarrassing. We had none of these issues with our floor before Sandy in its 5 year life. It is not our home, it is the product. Lumber Liquidators knows it. Every salesperson you ask in their store in my NY area cautions the purchaser not to buy this product. I don't know if the product was too wet when manufactured, or too dry or from endangered Tiger habitat as stated online, but we are so frustrated and embarrassed by our home's floor every day."

4.      "I bought 1000 square feet of Morning Star Bamboo from Lumber Liquidators in November 2011 after consulting with the sales associates in the Perrysburg, OH store. We received the product, allowed it to acclimate indoors for several weeks and then had it installed by the installer recommended by the company. About one month later, the floor began to gap, snap, crackle and pop all over the place. Our installer could not be reached for some time. I called the store that referred me to corporate. The proper warranty protocol was followed and several weeks later, nothing! The customer service rep is mysteriously gone and no one will help. Unreturned phone calls and emails continue. I need to list my home to sell in the next month, meanwhile my floor is disintegrating. "

## CLASS ACTION ALLEGATIONS

25.      Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and Rule 23 (b)(3) of the  Federal Rules of Civil Procedure on behalf of herself and the class.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23 (a) and Rule 23 (b) (3).

26.      Plaintiff advances this action on behalf of the following class:

All individuals in the United States who own homes or other structures where Morning Star Bamboo Flooring, manufactured and sold by Lumber Liquidators Inc.,  is installed, or who paid to replace Morning Star Bamboo flooring products, manufactured and sold by Lumber Liquidators due to Product performance.

Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Consumers Legal Remedies Act (CRLA) Sub-Class:

All individuals in the State of California who purchased, for personal, family or household use, Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators, Inc. Products, or homes in which Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators Product were installed, or who paid to replace Morning Star Flooring Product manufactured and sold by Lumber Liquidators Inc. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Claims for personal injury are specifically excluded from the Class.

27.     Numerosity: (Rule 23 (a) (1)): Although the actual size of the Class is uncertain, Plaintiff is informed and believes the Class is comprised of many of thousands of property owners throughout the United States, making joinder impractical. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

28.     Communality: (Rule 23 (a) (2)). There exist questions of law and fact common to all members of the Class. Common questions include but are not limited to the following:

a.     Whether the Product is subject to premature failure well in advance of its represented thirty-year useful life;

b.     Whether the Product is not suitable for use as a long-term flooring product;

c.     Whether Defendant knew, or should have known, of the defective nature of the Product before making available for purchase and use by the Plaintiff and the Class;

d.     Whether Defendant failed to disclose to Plaintiff and the Class the defective nature of the Product;

e.     Whether Defendant's failure to disclose material facts violated Business Professions Code Section 17200;

1         f.       Whether Defendant's warranty practices, by repeatedly concealing the true

2 nature of the defects in the Product through the use of diversionary tactics and false

3 investigative reports violated Business & Professions Code Section 17200;

4         g.       Whether Defendant owed a duty to Plaintiff and the Class to exercise reasonable

5 and ordinary care in the testing, design, production, manufacturing, warranting and marketing

6 of the Product;

7         h.       Whether Defendant breached its duties to the Plaintiff and the Class by

8 designing, manufacturing, producing, marketing, advertising, and selling defective flooring to

9 Plaintiff and the Class;

10         i.       Whether Defendant had a duty to Plaintiff and the Class to disclose the true

11 nature of the Product;

12         j.       Whether the facts not disclosed by Defendant to Plaintiff and the Class are

13 material facts;

14         k.       Whether Defendant knew, or should have known that the Product would

15 prematurely fail, is not suitable for use as flooring in residences or businesses system, and

16 otherwise is not as represented by Defendant;

17         l.       Whether Defendant violated California's Consumers Legal Remedies Act,

18 (California Civil Code §1750 et seq.), when it concealed or failed to disclose the true nature of

19 its Product, and represented, through their advertising, warranties and other express

20 representations that the Product had characteristics that it did not actually have;

21         m.      Whether, in committing the acts alleged herein, Defendant engaged in unfair

22 competition and in an unfair business practice or practices within the meaning of California

23 Business and Professions Code §17200;

24         n.       Whether such acts or practices were illegal, unfair, or fraudulent within the

25 meaning of California Business and Professions Code § 17200;

26         o.       Whether Plaintiff and the Class are entitled to compensatory damages,

27

1   restitution, and the amounts thereof respectively;

2      p.      Whether Defendant should be declared financially responsible for notifying all

3   Class Members of the defective Product and for the costs and expenses of repair and

4   replacement of all defective flooring  materials and providing restitution of monies paid and

5   inadequate value given; and

6      q.      Whether Defendant should be ordered to disgorge, for the benefit of the Class,

7   all or part of their ill-gotten profits received from the sale of defective Product and/or to make

8   full restitution to Plaintiff and the Class Members.

9      r.      Whether Defendant should be enjoined from continuing to market the Product,

10  as defined herein, utilizing misleading misrepresentations and omission of material facts.

11     29.     Typicality: (Rule 23 (a)(3))    The claim of the representative Plaintiff is typical

12  of the claims of the Class, in that the representative Plaintiff, like all Class Members, owns a

13  structure in which the defective  Product was installed and failed prematurely.  The

14  representative Plaintiff, like all Class Members, has suffered a common injury:  Plaintiff will

15  incur the cost of repairing and/or replacing the defective Product in her home and repairing any

16  resultant consequential damage to other building components.  The factual basis of Defendant's

17  misconduct is common to all Class Members.

18     30.     Adequacy (Rule 23 (a)(4))  Plaintiff will fairly and adequately represent and

19  protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in

20  prosecuting consumer class actions, including actions involving defective building products,

21  failure to disclose material information regarding product performance, and violation of

22  consumer protection statutes.  Plaintiff and her counsel are committed to vigorously

23  prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither

24  Plaintiff nor her counsel has any interests adverse to those of the Class.

25     31.     Predominance of Common Questions, (Rule  23 (b)(3))  Common questions of

26  law and fact predominant over any questions involving individualized analysis. Fundamentally

27

1  there are no material questions of fact or law that are not common to the Class. Common issues

2  of fact include:  All of the Class members purchased the same Product. The performance of the

3  Product relative to its  represented  qualities is a common question, as is the Defendant's

4  knowledge regarding Product performance and Defendant's uniform omission to the Class of

5  these material facts;   Common questions of law include whether Defendant's conduct violates

6  California's consumer protection statutes and other law and, the class members' entitlement to

7  damages and remedies.

8         32.     Superiority (Rule 23 (b)(3)) Plaintiff and the Class Members have all suffered

9  and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful

10  conduct.  A class action is superior to other available methods for the fair and efficient

11  adjudication of the subject controversy.  Because of the relatively small size of the individual

12  Class Members' claims, most Class Members likely would find the cost of litigating their

13  individual claims to be prohibitive, and will have no effective remedy at law.  Thus, absent a

14  class action, Class Members will continue to incur damages and Defendant's misconduct will

15  proceed without remedy.  The class treatment of common questions of law and fact is also

16  superior to multiple individual actions or piecemeal litigation in that it conserves the resources

17  of the courts and the litigants, and promotes consistency and efficiency of adjudication. There

18  is no impediment to the management of this action because the virtual identity of the common

19  questions of law and fact to all Class Members.

20         33.     Injunctive Relief (Rule 23(b)(2)  The Defendant engaged and continue to engage

21  in business practices which are unfair, unlawful and/or fraudulent in violation of California's

22  Unfair Competition Law (Business & Professions Code sections 17200 et seq.) and the False

23  Advertising Law (Business & Professions Code sections 17500 et seq.) by, among other things,

24  advertising and representing the Product, at issue herein, has characteristics and benefits, such

25  as a maintenance free system or longevity, that are not accurate.

26         ///

27

34.     Plaintiffs seek class-wide injunctive relief  on grounds consistent with the standards articulated in Rule 23 (b)(2) that establish final injunctive relief as an appropriate class-wide remedy, in that Defendant continues to advertise the Product, and continues to omit to disclose material facts regarding the Product.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

35.      Defendant knew or reasonably should have known that the Product was defective before its sale.  Defendant intentionally concealed material truths concerning the Product from the general public and the members of the Class, while continuing to falsely represent that the Product is durable, long-lasting, and fit for its intended use.

36.     Defendant affirmatively represented to the general public the Product carried a thirty-year (30) warranty.  Through these representations, Defendant created a reasonable expectation among ordinary consumers and in the construction trades that the Product would have a useful life of at least thirty (30) years.

37.     Defendant's acts of fraudulent concealment also include but are not limited to, using improper warranty tactics and commissioning sham inspections of Class members' flooring in response to complaints in order to mislead consumers as to the cause of the Product's failures and the true nature of the Product defects.

38.     Based upon Defendant's misrepresentations and concealment, Defendant is equitably estopped from asserting a statute-of-limitations defense.

39.     Alternatively, to the extent Defendant pursued a common policy of diverting warranty claims or other consumer complaints about the Product through misleading and erroneous investigation, or delaying tactics that induced Plaintiff or the Class to not assert their rights in a timely manner, Defendant is equitably estopped from asserting a statute-of-limitations defense.

/ / /

/ / /

**FIRST CAUSE OF ACTION**
**(Violation of Consumers Legal Remedies Act ("CLRA"))**

40.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

41.     Defendant and the Doe Defendants are persons as defined by California Civil Code §1761(c).

42.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of California Civil Code §1770(a)(5) and (a)(7) when Defendant represented, through its advertising and other express representations, that the Product had benefits or characteristics that it did not actually have.  Defendant further violated the CLRA when Defendant falsely represented that the Product was of a particular standard or quality.  Finally, Defendant violated the CLRA when they advertised the Product with the intent not to sell it as advertised.

43.     Defendant's deceptive practices were specifically designed to induce Plaintiff and members of the Class to purchase the Product.  Defendant engaged in marketing efforts as detailed in the general allegations, to reach Class Members, their agents, and/or third parties upon whom they relied and persuade them to purchase and install the Product manufactured by Defendant, or to purchase homes and other structures in which the defective Product manufactured by Defendant had been installed.

44.     To this day, Defendant continues to engage in unlawful practices in violation of California Consumers Legal Remedies Act.  Defendant continues to conceal the defective nature of the Product, and have omitted to disclose upon inquiry from Class members the Product's defective propensities.

45.     Plaintiff served Defendant with notice of their violation of the Consumers Legal Remedies Act by serving notice on their General Counsel by certified mail to their corporate offices, on September 4, 2014.  A copy of this notice is attached hereto as Exhibit A.

WHEREFORE, Plaintiff on behalf of herself and for all others similarly situated,

1  demands a permanent injunction be issued against Defendant to refrain from continued

2  advertising of the Product at issue herein  that omits material facts about product performance,

3  injunctive relief forcing Defendant to replace and repair all Product at issue herein for Class

4  Members, consequential damages for Class Members who have replaced or will replace the

5  Product at issue herein, plus costs and attorneys' fees pursuant to California Civil Code

6  §1780(d).

7                         <u>**SECOND CAUSE OF ACTION**</u>
                           **(Violation of Unfair Competition Law)**

8

9         46.     Plaintiff hereby incorporates by reference the allegations contained in all

10  preceding paragraphs of this Complaint.

11        47.     California Business and Professions Code §17200 et seq. prohibits acts of unfair

12  competition, which includes unlawful business practices.

13        48.     Defendant engaged in unlawful business practices in that Defendant represented,

14  through its advertising, warranties and other express representations that the Product had

15  characteristics it did not actually have. Defendant violated §17200 when Defendant falsely

16  represented the Product was of a particular standard or quality, including representations that

17  the Product was "free of defects,"  "exceptionally durable," and " two to two and a half times

18  harder than red oak."  Defendant further violated the Unfair Competition Law when it

19  unlawfully tested, designed, manufactured, formulated, sold and introduced in the stream of

20  commerce for purchase by Plaintiff, the Class and the general public, the defective Product.

21        49.     Defendant's deceptive practices constitute an unlawful business practice in that

22  the practices were specifically designed to induce Plaintiff and the Class, and their agents or

23  third parties upon whom Plaintiff and the Class relied to provide appropriate guidance

24  regarding suitable flooring products, to purchase on the Class' behalf the Product and install the

25  Product, recommend the use of the Product, or to purchase homes and other structures in which

26  the Product has been installed.

27        50.     To this day, Defendant has engaged and continues to engage in unlawful

business practices by concealing the defective nature of the Product and have knowingly misrepresented to Class Members the Product possess qualities and characteristics it does not have.

51.     As a direct and proximate cause of Defendant's unfair and unlawful methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiff and the Class have suffered actual damages in that they own homes and other structures on which defective Product is or was installed.  The Product will prematurely fail due to its poor design, poor manufacture and unsuitability for its intended purpose which will require (or has already required) Plaintiff and the Class to incur costs to prematurely repair and/or replace their floorings

52.     As a proximate result of their unlawful, unfair or fraudulent practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and the Class pursuant to §§17203 and 17204 of the  California Business & Professions Code.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendant, and each of them, for restitution and/or disgorgement of funds paid to Defendant by Plaintiff and the Class to purchase the Product, or the value of the product in their home or structure, or in the form of repair and/or replacement of the defective Product on the Class Members' homes and other structures.

### THIRD CAUSE OF ACTION
### (Violation of Unfair Competition Law – Unfair Business Practice)

53.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

54.     Defendant engaged in an unfair business practice by failing to disclose material facts concerning the Product, and representing, through advertising, warranties and other representations that the Product had particular qualities, including, that the Product was "free of defects," "exceptionally durable," and "two to two and a half times harder than red oak," all qualities that were inconsistent with Defendant's knowledge of Product performance.

55.     Defendant's "unfair" practices were designed to induce Plaintiff and the Class, or their agents, and/or third parties upon whom Plaintiff and the Class relied to provide appropriate flooring products, to purchase and install the Product, recommend the use of the Product, or to purchase homes and other structures on which the Product has been installed.

56.     To this day, Defendant has failed to disclose facts concerning the Product performance, facts that would be and are material to the consumer or those third parties, such as flooring contractors and general contractors, upon whom the consumer relies.

57.     As a direct and proximate cause of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual damages in that they own homes and other structures in which defective Product is or was installed.  The Product will prematurely fail due to inadequate product testing, poor design and/or manufacturing techniques, and poor installation guidelines, which will require Plaintiff and the Class to incur costs to prematurely repair and/or replace their flooring.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays that the Court enter judgment against Defendant, and each of them, and in favor of Plaintiff, and to award the following relief:

1.     Certification of the proposed Class;

2.     A declaration that Defendant is financially responsible for notifying all Class Members;

3.     Injunctive relief requiring Defendant to replace and/or repair all Products installed in structures owned by the Class;

4.     A declaration that Defendant must disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of defective Product, and/or to make full restitution to Plaintiff and the Class Members;

1     5.      An award of costs and attorneys' fees, as allowed by law, and/or from a

2 common fund created hereby; and

3     6.      Such other or further relief as may be appropriate under the circumstances.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated:  December 8, 2014    By: */s/ Jeffrey B. Cereghino*

Jeffrey B. Cereghino, SBN 099480
Email:  jbc@rocklawcal.com
Michael F. Ram, SBN 104805
Email:  mram@rocklawcal.com
Susan Brown, SBN 287986
Email: sbrown@rocklawcal.com
Matt Malone, SBN 221545
Email: mjm@rocklawcal.com
RAM, OLSON, CEREGHINO
 & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311
Jeffrey B. Cereghino, SBN 099480

Beth E. Terrell, CSB #178181
Email: bterrell@tmdwlaw.com
Mary B. Reiten, CSB #203142
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
 & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and Proposed Class*

CASE NO. _____ -- CLASS ACTION COMPLAINT    19