Jeffrey B. Cereghino, SBN 099480
Email: jbc@rocklawcal.com
Michael F. Ram, SBN 104805
Email:  mram@rocklawcal.com
Susan Brown, SBN 287986
Email: sbrown@rocklawcal.com
Matt Malone, SBN 221545
Email: mjm@rocklawcal.com
RAM, OLSON, CEREGHINO
   & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California  94111
Telephone:  (415) 433-4949
Facsimile:  (415) 433-7311

Beth E. Terrell, CSB 178181
Email: bterrell@tmdwlaw.com
Mary B. Reiten, CSB 203142
Email:  mreiten@tmdwlaw.com
TERRELL MARSHALL DAUDT
   & WILLIE PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528
*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, TAMMY EMERY, EDWIN MENDEZ and CHRISTOPHER MASSARO on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES1 through 200, inclusive,<br><br>             Defendant. | Case No. 14-cv-05373<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMAND |

1    Through the undersigned counsel, Plaintiffs DANA GOLD, TAMMY EMERY,

2  EDWIN MENDEZ and CHRISTOPHER MASSARO, on behalf of themselves and all others

3  similarly situated ("Plaintiffs"), file this class action complaint against Defendant Lumber

4  Liquidators, Inc. ("Defendant")  On personal knowledge of their own circumstances and upon

5  investigation and information and belief of their counsel, Plaintiffs aver the following.

6                                    **INTRODUCTION**

7        1.      Defendant manufactures, advertises, sells and distributes bamboo flooring under

8  the brand name Morning Star Bamboo Flooring (the "Product") throughout the United States

9  for installation in homes and other structures.

10       2.      Defendant markets and warrants that the Product is durable, and further markets

11 and warrants that the Product has a thirty (30) year warranty.  Defendant provided a reasonable

12 expectation to consumers and the industry that the Product would have a usable lifetime of at

13 least thirty (30) years.

14       3.       Contrary to Defendant's  advertising, which it widely distributes to building

15 professionals and to the general public, the Product is not "free of defects,"  "extremely

16 durable,"  or "exceptionally durable to withstand the rigors of daily life," but rather is subject to

17 premature cracking, splitting, warping and shrinking, all well before the warranted useful life.

18       4.      The Product's various modes of failure potentially cause damage to other

19 building components and render the Product susceptible to premature failure.

20       5.      Plaintiffs bring this action to seek redress for damages caused by Defendant's

21 wrongful conduct.

22                                     **JURISDICTION**

23       6.      This Court has jurisdiction over this case under 28 U.S.C. 1332(d)(2) in that: (1)

24 this action is a class action with more than one hundred (100) Class Members; (2) Defendant

25 LUMBER LIQUIDATORS, Inc. ("Lumber Liquidators") is a corporation, based in the State of

26 Virginia and is a citizen of the State of Delaware; (3) Plaintiffs and all Members of the Class

27

---

are United States citizens; and (4) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

7.     Venue in this Court is proper: (1) pursuant to 28 U.S.C. 1391(a)(1) in that defendant Lumber Liquidators does sufficient business in this District to subject it to personal jurisdiction herein; and (2) pursuant to 28 U.S.C. 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

## INTRADISTRICT VENUE

8.     Venue in this Division of the Northern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in Contra Costa County.

## PARTIES

9.     Plaintiff DANA GOLD is a California resident and owns a home located at 1192 Bacon Way in Lafayette, California.

10.     Plaintiff TAMMY EMERY is a West Virginia resident and owns a home located at 219 Picket Avenue, Inwood, West Virginia.

11.     Plaintiff EDWIN MENDEZ is an Illinois resident and owns a home located at 2154 Kemmerer Lane, Bolingbrook, Illinois.

12.     Plaintiff CHRISTOPHER MASSARO is a New York resident and owns a home located at 205 Helen Street, Holbrook, New York.

13.     Defendant LUMBER LIQUIDATORS, INC. is a corporation incorporated in the State of Delaware and with its principal place of business in Toano, Virginia.  Plaintiffs are informed and believe that Lumber Liquidators conducts business within the United States, and more specifically within the State of California.  Also on information and belief, Plaintiffs allege that Lumber Liquidators was responsible for, or otherwise involved in, the development, manufacture, marketing, sales, warranting and distribution of Morning Star Bamboo Flooring (referred to herein as the "Product").

14.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, ("Doe Defendants") and therefore sues these Doe Defendants by fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of these fictitiously-named Doe Defendants when they are ascertained.  Each of the fictitiously-named Doe Defendants is responsible for the conduct alleged in this complaint and Plaintiffs' damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

15.     Plaintiffs are informed and believe, and on that basis allege, that each of these Doe Defendants was the agent, joint venture and/or employee of Defendant and/or the Doe Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of the agency, joint venture and employment with the advance knowledge, acquiescence or subsequent ratification of Defendant and each and every other Doe Defendant.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Gold's Factual Allegations**

16.     Plaintiff DANA GOLD is a California resident and owns a home located at 1192 Bacon Way, Lafayette, California.  In early October 2013, Gold used the services of a licensed flooring contractor to install the Product in her home.   Within weeks of installation, while the home remained unoccupied, Gold observed initial defects with the Product.  She observed the product was scratching easily and splintering.  She notified Lumber Liquidators by phone on October 30, 2013.  The customer service representative requested she complete a "General Disclosure Statement" to begin the claims process. Gold completed the General Disclosure Statement, and mailed it to Lumber Liquidators' claims department. On or about December 2, 2013, Richard King of Inspect Solutions, a company retained by Lumber Liquidators, inspected the Product installed at Gold's home.  He drafted a report on or about December 6, 2013, in which he concluded Gold and the installers were completely at fault and no Product defects existed.

17.     The Product continues to manifest defects to the present day, including warping, splitting, buckling and shrinking.   On September 4, 2014, Gold placed Defendant on notice of these defects via a Consumers Legal Remedies Act notice (Cal. Civil Code §1782), attached as Exhibit A hereto.

**B.     Plaintiff Emery's Factual Allegations**

18.     Plaintiff TAMMY EMERY is a West Virginia resident and owns a home located at 219 Picket Avenue, Inwood, West Virginia.

19.     On July 10, 2014, Emery purchased 517 square feet of the Product from Lumber Liquidators.  On August 4, 2014, the Product was installed in her living and dining rooms and two hallways.  The installation was conducted by Falling Water Floor, who was referred to Emery by Lumber Liquidators.  The cost of the installation was $4,794.59.

20.     Emery purchased her Product from her local Martinsburg Lumber Liquidators after reviewing samples of the flooring at the store and being told by a Lumber Liquidator Manager (Mr. William S. Dyess) that it was durable, the best product available, and sold with 30 year warranty.

21.     Within only a few weeks after installation, Emery noticed that the Product was delaminating, warping, splitting, shrinking and scratching and generally deteriorating in various places.

22.     On four occasions, Falling Water Floor Installation had to make repairs to Emery's floor.

23.     On December 15, 2014, Emery contacted Lumber Liquidators to put them on notice that her floor was failing and that Falling Water Floor's repair efforts were futile. Instead of immediately taking reasonable steps to replace Emery's flooring, in a letter presumably incorrectly dated "January 5, 2015," Lumber Liquidators' Customer Care Team stated that they "assigned her claim to James L."

24.     The Product continues to manifest defects to the present day.

**C.** **Plaintiff Mendez's Factual Allegations**

25.     Plaintiff EDWIN MENDEZ is an Illinois resident and owns a home located at 2154 Kemmerer Lane, Bolingbrook, Illinois.

26.     Between August 9 and September 18, 2014, Mendez purchased approximately 1,434 square feet of the Product from the Lumber Liquidators store located in Bolingbrook, Illinois (Store 1086).

27.     Mendez purchased the flooring after finding and viewing samples of the product at the Lumber Liquidators' store and reviewing materials online.

28.     Installation was conducted by GS Home Remodels and was completed around mid-October, 2014.  Mendez spent approximately $9,117 — $3,022.50 for labor, $5,634.34 for materials and other installation supplies from Lumber Liquidators, and around $460 for replacement of trim that had to be removed for the new floor to be installed.

29.     In addition to becoming sick from the smells associated with his new flooring, in or around September 2014, while installation of the floor was ongoing, Mendez noticed that the glue sold to him by Lumber Liquidators provided little if any adhesion between the flooring and subfloor.  Mendez notified Lumber Liquidators of this issue and, and at the request of the Defendant's "Customer Care Team," submitted a General Disclosure Statement.  In response, as communicated by Customer Relations Specialist "Maggie T.," Lumber Liquidators denied all responsibility for this issue, attributing the problems to insufficient adhesive coverage. After continuing to complain about the glue issue, Defendant offered $500 to resolve the specific issue.  Mendez signed a release related to only the glue issue on October 8, 2014.

30.     Soon after he resolved the glue issue, Mendez began to notice that the flooring was buckling and shrinking in several areas.

31.     The Product continues to manifest defects to the present day.

**D.** **Plaintiff  Massaro's Factual Allegations**

32.     Plaintiff CHRISTOPHER MASSARO is a New York Resident and owns a

home located at 205 Helen Street, Holbrook, New York.

33.     On October 17, 2013, Massaro purchased 796 square feet of the Product from Lumber Liquidators.  The product was installed by in his living room, kitchen, den and hallway.  The installation was conducted by Mt. Sinai Cabinet Co.  The cost of the installation was $4,689.

34.     Massaro purchased his Product from his local Lumber Liquidators after reviewing samples of the flooring at the store and being told by a Lumber Liquidators' salesperson that the floor was "harder than hardwood" and long lasting.

35.     Upon installation, Massaro noticed that the Product was cracking, delaminating, gapping, and scratching in various places.

36.     As a result of the problems with his Product, on March 2, 2014, Massaro notified Lumber Liquidators and completed a General Disclosure Statement.  The Statement was submitted to "Maggie T."  In addition, he filed a formal complaint with the Better Business Bureau.

37.     On March 13, 2014, Defendant ("Maggie T.") sent Massaro a letter stating that according to the company's "investigation," which apparently was conducted only on the basis of Massaro's completed General Disclosure Statement, the Product's various defects were all due to installation failures and that the complaint did not amount to "a warrantable claim."

38.     The Product continues to manifest defects to the present day.

**E.     Product Manufacturing Process and Representations**

39.     The Product is made by slicing mature bamboo into strips,  cutting the strips into desired widths, immersing the strips in an acid solution to eliminate sugars and starch, (in some cases) staining the material,  binding it together into planks using an adhesive, and finally applying a curing lacquer.  Plaintiffs are informed and believe that Lumber Liquidators has been manufacturing and selling the Product since approximately 2008. Lumber Liquidators has sold the Product to thousands of consumers throughout the United States, including California.

1   The Product was and is marketed and sold for use in homes and other structures.

2        40.      Defendant concealed from and/or failed to disclose to Plaintiffs and the Class

3   the defective nature of the Product.

4        41.      Plaintiffs are informed and believe that Defendant used a variety of methods to

5   communicate representations about the durability and quality of the Product and about its

6   warranty to the general public and contractors in the flooring installation business  These

7   representations were published on Internet sites such as YouTube, on the Lumber Liquidators

8   website, at trade, building and home shows typically open to the general public and contractors

9   who service ultimate consumers of the Product, and at Lumber Liquidators product retail

10  stores. Defendant communicated a common and repeated theme regarding the Product:

11

12       •   "They're finely crafted to ensure they're free of defects."

13       •   "Each Morning Star floor is manufactured to be exceptionally durable so
14           it withstands the rigors of everyday life."

15       •   Morning Star Bamboo is two- to two-and-a-half times harder than red
             oak, so it holds up well to "pretty much anything you can put it through."

16
17       •   "To make strand bamboo, shredded bamboo fibers are compressed under
             extreme heat and pressure.  This manufacturing process yields flooring
18           that is even harder and more dense than traditional bamboo floors."

19       •   "Morning Star Bamboo Flooring is one of the best bamboo floors on the
             market today. It is produced from old growth bamboo reeds that are at
20           least 4 years old, thereby increasing hardness. Morning Star Bamboo
             Flooring creates a naturally beautiful and ecologically friendly product
21           that evokes a feeling of luxury."

22       42.      Defendant states that its flooring meets accepted industry standards, stating on

23  its website: "QUALITY GUARANTEE: This Flooring is constructed and tested to meet or

24  exceed industry standards for emissions" -- including ASTM 4066 (wear resistance), ASTM

25  3359 (Finish Adhesion) and ASTM 4442 (Moisture Content). *See*

26  http://www.lumberliquidators.com/assets/images/product_page/Morning_Star_10023638_HS_

27

1   Str_Antique.pdf (citing various "Technical Specifications").

2       43.     These representations and warranties are not true.  Defendant knew that their

3   Product did not conform to these representations.

4       44.     Defendant continues to advertised and sell the Product for use in homes and

5   other buildings, omitting to disclose to Plaintiffs and the Class, their agents, or contractors

6   material facts concerning the Product, including but not limited to concealing that the Product

7   was defectively formulated, was susceptible to warping, splitting, shrinking and splintering,

8   would otherwise not perform as represented, and would fail before its thirty year warranted

9   life.  All of these facts would be material to a reasonable consumer.  The Product did not

10  perform in accordance with the reasonable expectations of Plaintiffs and the Class that it was

11  durable and suitable for use as a flooring system in their homes and other structures.

12      45.     The Product is a manufactured wood product that is defectively designed, tested,

13  and manufactured, and will warp, buckle, splinter and unreasonably scratch and dent when

14  used in its intended manner.  This failure is common in the Product, regardless of when, where

15  or how it is installed.

16      46.     As a result of Defendant's misconduct, Plaintiffs and the Class have suffered

17  actual damages in that the flooring in their homes and other structures has prematurely failed

18  and will continue to do so, potentially damaging to other building elements, causing

19  continuous and progressive damage to property, and requiring them to expend thousands of

20  dollars to repair or replace the flooring long before the expiration of the "useful life" of the

21  Product as represented by Defendant.

22      47.     Due to the defective nature of the Product, it is not sufficiently durable to serve

23  as flooring.  The following photographs depict some of the problems Plaintiffs and others have

24  experienced with the Product.

25

26

27

CASE NO. 14-cv-05373 – FIRST AMENDED CLASS ACTION COMPLAINT                    9







48.     Because of the relatively small size of the typical damages, and the modest resources of most homeowners and of the individual Members of the Class, it is unlikely that most Class Members could afford to seek recovery against Defendant on their own.  A class action is therefore the only viable, economical and rational means for Members of the Class to recover from Defendant for the damages they have caused.

F.     **Defendant's Warranty Practices and Procedures**

The following excerpts are sample internet comments from some of the thousands of customers who describe the illusory and deceptive warranty practices employed by Defendant to avoid legitimate warranty claims, and distract and divert its customers from pursuing their

legitimate claims:

1.  "I purchased $6000 of morningstar bamboo from Lumber Liquidators in Jan 2012 and $3000 more in adjacent room on same floor in April 2012. Approximately 6 months after installation the $6000 floor began to show gaps and shrinkage. The 2nd installation has been trouble free. I contacted the LL store and they said not our problem. Contacted LL customer service and they told me it was my fault due to humidity levels in my home. If that were the case the $3000 floor would also show gaps and shrinkage since they are next to each other! Their salesman never mentioned any problem with this wood and humidity. Salesman said the wood was "tougher than oak". What a lie! It scratches plenty! They offered $200 on a $1000 repair contingent on me waving any future claims. What a joke!"

2.  "Can someone please tell me if there is a group from here in Texas that is getting together to bring a class action against LL? We purchased 1200 sq. ft. of Morning Star Bamboo Flooring in November and it is cupping EVERYWHERE. We came home from being gone over the weekend and now it is actually buckling up. From EVERYTHING I have read, it is defective product we were sold and do NOT expect to get any help from LL. As of now, they have been completely useless in taking care of my problem floor. I WILL continue to go through the motions to hopefully get my money for the flooring refunded and the cost to have it pulled up reimbursed!!! I do NOT want this junk in my home. If anyone has information, please forward it to me. When you hire a lawyer for something like this, does LL have to pay the attorney or do you have to? I do NOT have the money to hire and pay an attorney."

3.  "Lost first level contents and flooring from Sandy. January 2013, made purchase of 800 sq ft of Morning Star Bamboo, $3661.78. Had their installers, Palermo to home to inspect and recommend how and when to install (another $1100). Had delivery, allowed floor to acclimate for specified 3-5 days. Their installers returned to install. By end of March, had some gaps. Called Lumber Liquidators, they called installers. Was assured that with full year of warranty for installation and product, allow it to go thru summer months. July noticed scratches. While scratches are normal, these were white, not the bamboo color. Made claim to LL, was told to mail balance of floor for inspection. They received, said floor not at fault, never returned floor. Dec 2013, gaps grew to over 1/2 inch, separation from walls. Called Lumber Liquidators. Made claim on Dec. 2, repeated claim on Dec 13, 2013. January 17th, began follow up and no one called us. Googled issue online. Found we were one of many. Inspections began from LL and their installers, Palermo. They agreed separation not normal - many homes in area with issue. Went to two of the LL stores. They agreed with issue and fault of floor and had numerous issues with customers and made changes to how they sell and allow acclimation of product. Three inspections were done, no issue at home cited. March inspection found moisture level now low in home. They are now blaming us. No one has record of 3 other inspections. Our gaps are

all thru home from the front door on. As large as 1 inch in some spots. Unsightly and embarrassing. We had none of these issues with our floor before Sandy in its 5 year life. It is not our home, it is the product. Lumber Liquidators knows it. Every salesperson you ask in their store in my NY area cautions the purchaser not to buy this product. I don't know if the product was too wet when manufactured, or too dry or from endangered Tiger habitat as stated online, but we are so frustrated and embarrassed by our home's floor every day."

4.      "I bought 1000 square feet of Morning Star Bamboo from Lumber Liquidators in November 2011 after consulting with the sales associates in the Perrysburg, OH store. We received the product, allowed it to acclimate indoors for several weeks and then had it installed by the installer recommended by the company. About one month later, the floor began to gap, snap, crackle and pop all over the place. Our installer could not be reached for some time. I called the store that referred me to corporate. The proper warranty protocol was followed and several weeks later, nothing! The customer service rep is mysteriously gone and no one will help. Unreturned phone calls and emails continue. I need to list my home to sell in the next month, meanwhile my floor is disintegrating. "

## CLASS ACTION ALLEGATIONS

49.      Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and Rule 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the class. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23 (a) and Rule 23 (b) (3).

50.      Plaintiffs advance this action on behalf of the following classes and subclasses (together, the "Class"):

Nationwide Class:

All individuals in the United States who own homes or other structures where Morning Star Bamboo Flooring, manufactured and sold by Lumber Liquidators Inc., is installed, or who paid to replace Morning Star Bamboo flooring products, manufactured and sold by Lumber Liquidators due to Product performance. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

California Sub-Class:

All individuals in the State of California who purchased, for personal, family or household use, Morning Star Bamboo Flooring

manufactured and  sold by Lumber Liquidators, Inc.  Products, or homes in which Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators Product were installed, or who paid to replace Morning Star Flooring Product manufactured and sold by Lumber Liquidators Inc.  Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

New York Sub-Class:

All individuals in the State of New York who purchased, for personal, family or household use, Morning Star Bamboo Flooring manufactured and  sold by Lumber Liquidators, Inc.  Products, or homes in which Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators Product were installed, or who paid to replace Morning Star Flooring Product manufactured and sold by Lumber Liquidators Inc.  Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Illinois Sub-Class:

All individuals in the State of Illinois who purchased, for personal, family or household use, Morning Star Bamboo Flooring manufactured and  sold by Lumber Liquidators, Inc.  Products, or homes in which Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators Product were installed, or who paid to replace Morning Star Flooring Product manufactured and sold by Lumber Liquidators Inc.  Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

West Virginia Sub-Class:

All individuals in the State of West Virginia who purchased, for personal, family or household use, Morning Star Bamboo Flooring manufactured and  sold by Lumber Liquidators, Inc.  Products, or homes in which Morning Star Bamboo Flooring manufactured and sold by Lumber Liquidators Product were installed, or who paid to replace Morning Star Flooring Product manufactured and sold by Lumber Liquidators Inc.  Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

Claims for personal injury are specifically excluded from the Class.

51.     <u>Numerosity: (Rule 23 (a) (1))</u>:  Although the actual size of the Class is uncertain, Plaintiffs are informed and believes the Class is comprised of many of thousands of property owners throughout the United States, making joinder impractical.  The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

52.     <u>Communality: (Rule 23 (a) (2))</u>.  There exist questions of law and fact common to all Members of the Class. Common questions include but are not limited to the following:

a.     Whether the Product is subject to premature failure well in advance of its represented thirty-year useful life;

b.     Whether the Product is not suitable for use as a long-term flooring product;

c.     Whether Defendant knew, or should have known, of the defective nature of the Product before making available for purchase and use by the Plaintiffs and the Class;

d.     Whether Defendant failed to disclose to Plaintiffs and the Class the defective nature of the Product;

e.     Whether Defendant's failure to disclose material facts violated Business Professions Code Section 17200;

f.     Whether Defendant's warranty practices, by repeatedly concealing the true nature of the defects in the Product through the use of diversionary tactics and false investigative reports, violated Business & Professions Code Section 17200;

g.     Whether Defendant's failure to inform purchasers that the Product was susceptible to the failures alleged herein was a material omission, the nondisclosure of which was a deceptive sales practice under the consumer protection statutes of applicable state law;

h.     Whether Defendant owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturing, warranting and marketing of the Product;

i.     Whether Defendant breached its duties to the Plaintiffs and the Class by

1   designing, manufacturing, producing, marketing, advertising, and selling defective flooring to

2   Plaintiffs and the Class;

3         j.      Whether Defendant had a duty to Plaintiffs and the Class to disclose the true

4   nature of the Product;

5         k.      Whether the facts not disclosed by Defendant to Plaintiffs and the Class are

6   material facts;

7         l.      Whether Defendant knew, or should have known that the Product would

8   prematurely fail, is not suitable for use as flooring in residences or businesses system, and

9   otherwise is not as represented by Defendant;

10         m.      Whether Defendant violated California's Consumers Legal Remedies Act,

11   (California Civil  Code §1750 et seq.*)*, when it concealed or failed to disclose the true nature of

12   its Product, and represented, through their advertising, warranties and other express

13   representations that the Product had characteristics that it did not actually have;

14         n.      Whether, in committing the acts alleged herein, Defendant engaged in unfair

15   competition and in an unfair business practice or practices within the meaning of California

16   Business and Professions Code §17200;

17         o.      Whether such acts or practices were illegal, unfair, or fraudulent within the

18   meaning of California Business and Professions Code § 17200;

19         p.      Whether Plaintiffs and the Class are entitled to compensatory damages,

20   restitution, and the amounts thereof respectively;

21         q.      Whether Defendant should be declared financially responsible for notifying all

22   Class Members of the defective Product and for the costs and expenses of repair and

23   replacement of all defective flooring  materials and providing restitution of monies paid and

24   inadequate value given;

25         r.      Whether Defendant should be ordered to disgorge, for the benefit of the Class,

26   all or part of their ill-gotten profits received from the sale of defective Product and/or to make

27

1  full restitution to Plaintiffs and the Class Members; and

2      s.      Whether Defendant should be enjoined from continuing to market the Product,

3  as defined herein, utilizing misleading misrepresentations and omission of material facts.

4      53.     <u>Typicality: (Rule 23 (a)(3))</u>   The claim of the representative Plaintiffs are

5  typical of the claims of the Class, in that the representative Plaintiffs, like all Class Members,

6  own a structure in which the defective  Product was installed and failed prematurely.  The

7  representative Plaintiffs, like all Class Members, have suffered a common injury:  Plaintiffs

8  will incur the cost of repairing and/or replacing the defective Product in their homes and

9  repairing any resultant consequential damage to other building components.  The factual basis

10  of Defendant's misconduct is common to all Class Members.

11      54.     <u>Adequacy (Rule 23 (a)(4))</u>  Plaintiffs will fairly and adequately represent and

12  protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in

13  prosecuting consumer class actions, including actions involving defective building products,

14  failure to disclose material information regarding product performance, and violation of

15  consumer protection statutes.  Plaintiffs and their counsel are committed to vigorously

16  prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither

17  Plaintiffs nor their counsel have any interests adverse to those of the Class.

18      55.     <u>Predominance of Common Questions, (Rule  23 (b)(3))</u>   Common questions of

19  law and fact predominant over any questions involving individualized analysis. Fundamentally

20  there are no material questions of fact or law that are not common to the Class. Common issues

21  of fact include:  All of the Class Members purchased the same Product. The performance of the

22  Product relative to its  represented  qualities is a common question, as is the Defendant's

23  knowledge regarding Product performance and Defendant's uniform omission to the Class of

24  these material facts.   Common questions of law include whether Defendant's conduct violates

25  California's consumer protection statutes and other law and, the class Members' entitlement to

26  damages and remedies.

27

56.     <u>Superiority (Rule 23 (b)(3))</u> Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy.  Because of the relatively small size of the individual Class Members' claims, most Class Members likely would find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at law.  Thus, absent a class action, Class Members will continue to incur damages and Defendant's misconduct will proceed without remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. There is no impediment to the management of this action because the virtual identity of the common questions of law and fact to all Class Members.

57.     <u>Injunctive Relief (Rule 23(b)(2)</u> The Defendant engaged and continue to engage in business practices which are unfair, unlawful and/or fraudulent in violation of California's Unfair Competition Law (Business & Professions Code sections 17200 <u>et seq.</u>) and the False Advertising Law (Business & Professions Code sections 17500 <u>et seq.</u>) by, among other things, advertising and representing the Product, at issue herein, has characteristics and benefits, such as a maintenance free system or longevity, that are not accurate.

58.     Plaintiffs seek class-wide injunctive relief  on grounds consistent with the standards articulated in Rule 23 (b)(2) that establish final injunctive relief as an appropriate class-wide remedy, in that Defendant continues to advertise the Product, and continues to omit to disclose material facts regarding the Product.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

59.     Defendant knew or reasonably should have known that the Product was defective before its sale.  Defendant intentionally concealed material truths concerning the Product from the general public and the Members of the Class, while continuing to falsely

1   represent that the Product is durable, long-lasting, and fit for its intended use.

2        60.     Defendant affirmatively represented to the general public the Product carried a

3   thirty-year (30) warranty.  Through these representations, Defendant created a reasonable

4   expectation among ordinary consumers and in the construction trades that the Product would

5   have a useful life of at least thirty (30) years.

6        61.     Defendant's acts of fraudulent concealment also include but are not limited to,

7   using improper warranty tactics and commissioning sham inspections of Class Members'

8   flooring in response to complaints in order to mislead consumers as to the cause of the

9   Product's failures and the true nature of the Product defects.

10        62.     Based upon Defendant's misrepresentations and concealment, Defendant is

11   equitably estopped from asserting a statute-of-limitations defense.

12        63.     Alternatively, to the extent Defendant pursued a common policy of diverting

13   warranty claims or other consumer complaints about the Product through misleading and

14   erroneous investigation, or delaying tactics that induced Plaintiffs or the Class to not assert

15   their rights in a timely manner, Defendant is equitably estopped from asserting a statute-of-

16   limitations defense.

**FIRST CAUSE OF ACTION**
**(Violation of Consumers Legal Remedies Act ("CLRA"))**

19        64.     Plaintiffs hereby incorporate by reference the allegations contained in all

20   preceding paragraphs of this complaint.

21        65.     Defendant and the Doe Defendants are persons as defined by California Civil

22   Code §1761(c).

23        66.     Defendant engaged in unfair competition or unfair or deceptive acts or practices

24   in violation of California Civil Code §1770(a)(5) and (a)(7) when Defendant represented,

25   through its advertising and other express representations, that the Product had benefits or

26   characteristics that it did not actually have.  Defendant further violated the CLRA when

27

Defendant falsely represented that the Product was of a particular standard or quality.  Finally, Defendant violated the CLRA when they advertised the Product with the intent not to sell it as advertised.

67.     Defendant's deceptive practices were specifically designed to induce Plaintiffs and Members of the Class to purchase the Product.  Defendant engaged in marketing efforts as detailed in the general allegations, to reach Class Members, their agents, and/or third parties upon whom they relied and persuade them to purchase and install the Product manufactured by Defendant, or to purchase homes and other structures in which the defective Product manufactured by Defendant had been installed.

68.     To this day, Defendant continues to engage in unlawful practices in violation of California Consumers Legal Remedies Act.  Defendant continues to conceal the defective nature of the Product, and have omitted to disclose upon inquiry from Class Members the Product's defective propensities.

69.     Plaintiffs served Defendant with notice of their violation of the Consumers Legal Remedies Act by serving notice on their General Counsel by certified mail to their corporate offices, on September 4, 2014.  A copy of this notice is attached hereto as Exhibit A.

WHEREFORE, Plaintiffs on behalf of themselves and for all others similarly situated, demand a permanent injunction be issued against Defendant to refrain from continued advertising of the Product at issue herein that omits material facts about product performance, injunctive relief forcing Defendant to replace and repair all Product at issue herein for Class Members, consequential damages for Class Members who have replaced or will replace the Product at issue herein, plus costs and attorneys' fees pursuant to California Civil Code §1780(d).

## SECOND CAUSE OF ACTION
### (Violation of Unfair Competition Law- Unlawful Business Practice)

70.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

71.     California Business and Professions Code §17200 et seq. prohibits acts of unfair competition, which includes unlawful business practices.

72.     Defendant engaged in unlawful business practices in that Defendant represented, through its advertising, warranties and other express representations that the Product had characteristics it did not actually have. Defendant violated §17200 when Defendant falsely represented the Product was of a particular standard or quality, including representations that the Product was "free of defects," "exceptionally durable," and "two to two and a half times harder than red oak." Defendant further violated the Unfair Competition Law when it unlawfully tested, designed, manufactured, formulated, sold and introduced in the stream of commerce for purchase by Plaintiffs, the Class and the general public, the defective Product.

73.     Defendant's deceptive practices constitute an unlawful business practice in that the practices were specifically designed to induce Plaintiffs and the Class, and their agents or third parties upon whom Plaintiffs and the Class relied to provide appropriate guidance regarding suitable flooring products, to purchase on the Class' behalf the Product and install the Product, recommend the use of the Product, or to purchase homes and other structures in which the Product has been installed.

74.     To this day, Defendant has engaged and continues to engage in unlawful business practices by concealing the defective nature of the Product and have knowingly misrepresented to Class Members the Product possess qualities and characteristics it does not have.

75.     As a direct and proximate cause of Defendant's unfair and unlawful methods of competition and unfair, deceptive or unlawful acts or practices, Plaintiffs and the Class have suffered actual damages in that they own homes and other structures on which defective Product is or was installed. The Product will prematurely fail due to its poor design, poor manufacture and unsuitability for its intended purpose which will require (or has already required) Plaintiffs and the Class to incur costs to prematurely repair and/or replace their

floorings.

76.     As a proximate result of their unlawful, unfair or fraudulent practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiffs and the Class pursuant to §§17203 and 17204 of the  California Business & Professions Code.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant, and each of them, for restitution and/or disgorgement of funds paid to Defendant by Plaintiffs and the Class to purchase the Product, or the value of the product in their home or structure, or in the form of repair and/or replacement of the defective Product on the Class Members' homes and other structures.

## THIRD CAUSE OF ACTION
### (Violation of Unfair Competition Law – Unfair Business Practice)

77.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Defendant engaged in an unfair business practice by failing to disclose material facts concerning the Product, and representing, through advertising, warranties and other representations that the Product had particular qualities, including, that the Product was "free of defects," "exceptionally durable," and "two to two and a half times harder than red oak," all qualities that were inconsistent with Defendant's knowledge of Product performance.

79.     Defendant's "unfair" practices were designed to induce Plaintiffs and the Class, or their agents, and/or third parties upon whom Plaintiffs and the Class relied to provide appropriate flooring products, to purchase and install the Product, recommend the use of the Product, or to purchase homes and other structures on which the Product has been installed.

80.     To this day, Defendant has failed to disclose facts concerning the Product performance, facts that would be and are material to the consumer or those third parties, such as flooring contractors and general contractors, upon whom the consumer relies.

81.     As a direct and proximate cause of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Class have suffered actual damages

in that they own homes and other structures in which defective Product is or was installed. The Product will prematurely fail due to inadequate product testing, poor design and/or manufacturing techniques, and poor installation guidelines, which will require Plaintiffs and the Class to incur costs to prematurely repair and/or replace their flooring.

**FOURTH CAUSE OF ACTION**
**(Violation of New York General Business Law § 349)**

82.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiff Massaro is a "person" and "consumer" under New York General Business Law § 349.

84.     Defendant engaged in deceptive practices related to the sale of their Product, including consciously failing to disclose material facts regarding the defective nature of the Product to Plaintiffs and Members of the Class, and misrepresenting to Plaintiffs and the Class Members the appearance durability characteristics of their Product.

85.     Contrary to Defendant's representations, the Product degrades far in advance of its purported warranties.

86.     The deceptive acts and practices engaged in by Defendant were consumer-oriented.

87.     Defendant knew that the Product was defectively developed, designed or manufactured.

88.     Defendant knew that the Product, at the time of leaving Defendant's control, contained defects because it cracked, suffered gapping, discolored, lost scratch- and stain-resistance, and lost durability under normal conditions in which it was installed. At the time of sale, the Product contained design and construction defects that resulted in deterioration. The defects reduced the effectiveness and performance of the Product and rendered it unable to perform the ordinary purposes for which it was used.

89.     Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning its Product.

90.     Defendant was in a superior position to know, and actually did know, the true facts about the hidden defects of Product and the known chemical degradation it would suffer.

91.     Defendant intended that Plaintiffs and Members of the Class would rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the Product, so that Plaintiffs and Members of the Class would purchase the defective product. Had Defendant disclosed all the material information regarding the Product to Plaintiffs and Members of the Class, they would have considered that information material to their decision to purchase Defendant's Product at the price charged.

92.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in the state of New York. Defendant's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public. To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the Class Members.

93.     Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of deception.

94.     As a direct and proximate cause of the violation of NY GBL § 349, described above, Plaintiffs and Members of the Class have been injured in that they have purchased the Product based on nondisclosure of material facts alleged above.

95.     As a result of Defendant's practices in violation of NY GBL § 349, Plaintiffs and the other Members of the Class suffered an ascertainable loss in the form of monies paid to Defendant for Product that, contrary to Defendant's representations, prematurely failed.

96.     Plaintiffs and Members of the Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

**FIFTH CAUSE OF ACTION**
**(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)**

97.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

98.     The conduct described in this Complaint constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFA"), 815 Ill. Comp. Stat. 505/1 et seq, and substantially similar state consumer protection statutes.

99.     Defendant engaged in unfair or deceptive practices in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act  815 Ill. Comp. Stat. 505/1 et seq. (2008) (hereinafter, "CFA") when it (1) represented that the Product was durable and free of defects and ASTM acceptable when, at best, it lacked credible evidence to support  those claims, and, at worst, knew the Product would fail prematurely, was not suitable for use as flooring, and otherwise was not as warranted and represented by Defendant; (2) failed to disclose to, or concealed from, consumers, installers and distributors material facts about the defective nature of the Product; (3) failed to disclose its own knowledge of the defective nature of the Product; and (4) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the Product.

100.     Defendant either knew or should have known its Product was defective, would fail prematurely and was not as warranted and represented by Defendant.

101.     Defendant's conduct and omissions described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public.

102.     The facts concealed or not disclosed by Defendant are material facts in that Plaintiffs and any reasonable consumer would have considered those facts important in deciding whether to purchase the Product or purchase homes or structures with flooring applying the Product.  Had Plaintiffs and the Class known the Product was defective (and did not meet ASTM or other flooring industry standards), they would not have purchased the

Product or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different flooring products.

103. Defendant intended that Plaintiffs and the Class would rely on the deception by purchasing its Product, unaware of the undisclosed material facts. Defendant knew that Plaintiffs and the Class would rely on its product literature and advertisements, statements made by its salespeople and other representations. This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

104. Defendant's unlawful conduct is continuing, with no indication that Defendant will cease.

105. As a direct and proximate result of the deceptive, misleading, unfair and unconscionable practices of the Defendant set forth above, Plaintiffs and Class Members are entitled to actual damages, compensatory damages, penalties, attorney's fees and costs as set forth in Section 10a of the CFA.

106. The Defendant's deceptive, misleading, unfair and unconscionable practices set forth above were done willfully, wantonly and maliciously entitling Plaintiffs and Class Members to an award of punitive damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendant, and each of them, and in favor of Plaintiffs, and to award the following relief:

1. Certification of the proposed Class;

2. A declaration that Defendant is financially responsible for notifying all Class Members;

3. Injunctive relief requiring Defendant to replace and/or repair all Products installed in structures owned by the Class;

1        4.        A declaration that Defendant must disgorge, for the benefit of the Class, all or

2    part of its ill-gotten profits received from the sale of defective Product, and/or to make full

3    restitution to Plaintiffs and the Class Members;

4        5.        An award of costs and attorneys' fees, as allowed by law, and/or from a

5    common fund created hereby; and

6        6.        Such other or further relief as may be appropriate under the circumstances.

7

8                                    **JURY TRIAL DEMAND**

9        Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

10                                   Respectfully submitted,

11

12   Dated:                                By: */s/ Jeffrey B. Cereghino*
                                           Jeffrey B. Cereghino, SBN 099480
13                                         Email: jbc@rocklawcal.com
                                           Michael F. Ram, SBN 104805
14                                         Email: mram@rocklawcal.com
                                           Susan Brown, SBN 287986
15                                         Email: sbrown@rocklawcal.com
                                           Matt Malone, SBN 221545
16                                         Email: mjm@rocklawcal.com
                                           RAM, OLSON, CEREGHINO
17                                           & KOPCZYNSKI LLP
                                           555 Montgomery Street, Suite 820
18                                         San Francisco, California  94111
                                           Telephone:  (415) 433-4949
19                                         Facsimile:  (415) 433-7311
                                           Jeffrey B. Cereghino, SBN 099480
20
                                           Beth E. Terrell, CSB #178181
21                                         Email: bterrell@tmdwlaw.com
                                           Mary B. Reiten, CSB #203142
22                                         Email:  mreiten@tmdwlaw.com
                                           TERRELL MARSHALL DAUDT
23                                           & WILLIE PLLC
                                           936 North 34th Street, Suite 300
24                                         Seattle, Washington  98103-8869
                                           Telephone:  (206) 816-6603
25                                         Facsimile:  (206) 350-3528

26                                         Charles J. LaDuca
                                           Brendan S. Thompson
27

CASE NO. 14-cv-05373 – FIRST AMENDED CLASS ACTION COMPLAINT          26

1
2
3

Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, Maryland 20814
Telephone:      (202) 789-3960

4
5
6

Jordan L. Chaikin
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Telephone:      (239) 390-1000

7
8
9

Michael McShane
Audet & Partners, LLP
221 Main Street, Suite  1460
San Francisco, CA  94105
Telephone:      (415) 568-2555

10
11
12
13

Erica C. Mirabella
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone:      (617) 580-8270
Email: erica@mirabellallc.com

14
15
16
17

Robert Shelquist
Lockridge Grindal & Nauen
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone:      (612) 339-6900
Email: rkshelquist@locklaw.com

18
19

*Attorneys for Plaintiffs and Proposed Class*

20
21
22
23
24
25
26
27