**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**McGUIREWOODS LLP**
David S. Reidy (SBN 225904)
dreidy@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Bethany G. Lukitsch (SBN 314376)
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: 804.775.4711
Facsimile: 804.698.2261
blukitsch@mcguirewoods.com

Diane P. Flannery (Pro Hac Vice)
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: 804.775.1015
Facsimile: 804.698.2047
dflannery@mcguirewoods.com

Attorneys for Defendant Lumber Liquidators, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, TAMMY EMERY, EDWIN MENDEZ, LAURA NORRIS, DONALD FURSMAN, and JOHN TRIANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | CASE NO. 3:14-cv-05373-TEH<br><br>**LUMBER LIQUIDATORS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMAND<br><br>The Honorable Thelton E. Henderson<br><br>Complaint Filed: December 8, 2014<br><br>Hearing Date: May 22, 2017<br><br>Time: 10:00 a.m. |

# TABLE OF CONTENTS

Page

I. Introduction. .................................................................................................................. 1

II. Argument and Authority. ............................................................................................. 1

    A) Daniel Harrington. ............................................................................................ 1

        1. *Daubert* Applies Equally to All Expert Testimony. ................................... 2

        2. Harrington's Experience Does Not Qualify Him as an Expert. ................... 4

        3. The Court May Consider Harrington's Bias in Evaluating his
Testimony on Class Certification. ................................................................ 4

    B) Phillip Waier. ..................................................................................................... 5

        1. Waier Offers No Model for Calculating All of Plaintiffs' Alleged
Damages—Restitution and Cost of Removal and Replacement—and
Fails to Demonstrate That Damages May be Measured across the
Entire Class. ................................................................................................. 5

        2. Waier's Opinion Lacked a Sufficient Factual Foundation Because it
is Premised upon Assumptions of Similarity, Unacquainted with
Any Facts. .................................................................................................... 6

    C) Peter Nelson and Emily Hopps. ........................................................................ 8

        1. Nelson and Hopps' gross deviation from established protocol
injected fatal error into the data underlying their conclusions,
rendering their conclusions inaccurate and unreliable. ............................... 8

        2. Nelson and Hopps manipulated the data by exposing the samples to
extreme relative humidity levels. .............................................................. 10

        3. Plaintiffs fail to rebut Lumber Liquidators' attacks as to Nelson and
Hopps' anecdotal and flawed sampling. .................................................... 11

        4. The results from Nelson and Hopps' flawed testing cannot be
extrapolated to render a reliable opinion regarding all Morning Star
bamboo products. ....................................................................................... 13

        5. Plaintiffs fail to rebut Lumber Liquidators' argument that Nelson
and Hopps' "company knowledge" opinion should be excluded. ............. 15

CONCLUSION ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahlberg v. Chrysler Corp.*,
    481 F.3d 630 (10th Cir. 2007) ........................................................................................... 3

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ...................................................................................... 7

*Brown v. China Integrated Energy, Inc.*,
    No. CV 11-02559 BRO, 2015 U.S. Dist. LEXIS 19177 (C.D. Cal. Feb. 17,
    2015) ................................................................................................................................. 5

*Chowning v. Kohl's Dep't Stores, Inc.*,
    No. CV15-08673 RGK, 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ........................... 6

*City of Pomona v. SQM North America Corp.*,
    750 F.3d 1036 (9th Cir. 2014) .......................................................................................... 1

*Daubert. General Elec. Co. v. Joiner*,
    522 U.S. 136 (2007) ........................................................................................................ 14

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993) ................................................................................................. passim

*In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*,
    268 F.R.D. 56 (N.D. Ill. 2010) ......................................................................................... 5

*In re Fosamax Products Liability Litigation*,
    645 F. Supp. 2d 164 (S.D.N.Y. 2009) ............................................................................ 15

*Good Technology Corp. v. Mobileiron, Inc.*,
    No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347 (N.D. Cal. 2015) .......... 10, 11, 12

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ..................................................................................... 6

*Guinn v. Astrazeneca Pharmaceuticals LP, et al.*,
    No. 09-11104, 602 F.3d 1245 (11th Cir. 2010) ............................................................. 10

*Hershey Foods Corp. v. Waterman S.S Corp.*,
    No. 82 CIV. 0533 (DNE), 1994 WL 281929 (S.D.N.Y. June 22, 1994) *aff'd sub
    nom. Hershey Foods Corp. v. Waterman S.S. Corp.*, 43 F.3d 1458 (2d Cir.
    1994) ............................................................................................................................... 12

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3rd Cir. 2008) ........................................................................................... 5

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  MDL Docket No. 05-1717-LPS, 2012 U.S. Dist. LEXIS 141137 (D. Del. Sept.
  28, 2012)......................................................................................................................5

*Kottaras v. Whole Foods Mkt., Inc.*,
  281 F.R.D. 16 (D.D.C. 2012) ......................................................................................7

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................1, 3

*Nease v. Ford Motor Co.*,
  848 F.3d 219 (2017) .................................................................................................2, 3

*People v. Avila*,
  133 P.3d 1076 (Cal. Ct. App. 2006) ..............................................................................8

*In re Puerto Rican Cabotage Antitrust Litig.*,
  269 F.R.D. 125 (D.P.R. 2010) ......................................................................................5

*Pulaski & Middleman, LLC v. Google, Inc.*,
  802 F.3d 979 (9th Cir. 2015) ........................................................................................6

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ....................6

**Other Authorities**

Fed. R. Evid. 702..............................................................................................................1

Rule 23 .............................................................................................................................5

Rule 702(b).......................................................................................................................7

Defendant Lumber Liquidators, Inc. ("Lumber Liquidators"), through undersigned counsel, hereby submits this Reply Brief in Support of its Motion to Exclude Plaintiffs' Expert Witnesses Daniel Harrington, Phillip Waier, Peter Nelson, and Emily Hopps pursuant to Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), and related cases.  Lumber Liquidators requests that this Court grant its motion to exclude Plaintiffs' expert witnesses in their entirety, enter its Proposed Order, and grant such other and further relief as the Court deems appropriate.

## I.  Introduction.

In opposing Lumber Liquidators' motion, Plaintiffs' primary argument is that their experts' opinions should be left to the trier of fact to evaluate, as the "criticisms offered by Lumber [Liquidators] go to the weight of the evidence, not its admissibility."  (Pls' Opp. to Mot. to Exclude at 1-2, Doc. 138-3.)  Under Plaintiffs' wishful-thinking rubric, however, every expert challenge would be deferred to the factfinder, rendering *Daubert* and its progeny meaningless. Though "[c]hallenges that go to the weight of the evidence are within the province of a fact finder" (*see City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014)), decisions regarding reliability and relevance must be rendered by the trial judge.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993) ("assigning to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand").

Plaintiffs' experts cannot surpass the Court's initial gatekeeping.  This is not just a mere disagreement of opinion. Plaintiffs' expert opinions are inherently speculative and based on nonexistent or deficient methodologies, and Harrington lacks the experience and qualifications to render an opinion in this case.   Plaintiffs cannot demonstrate that their experts offer reliable opinion testimony under Rule 702 and *Daubert*.  Accordingly, as explained in further detail herein, and as discussed in detail in Lumber Liquidators' opening brief, the opinions and evidence offered by Mr. Harrington, Mr. Waier, Mr. Nelson, and Ms. Hopps must be excluded.

## II.  Argument and Authority.

### A)  Daniel Harrington.

Plaintiffs' expert Daniel Harrington opines that any bamboo flooring that exhibits warping,

1  separation, shrinkage, or cupping to any degree must be replaced in its entirety.  (Mot. to Exclude
2  at 6, Doc. 132-3.)  He reaches this conclusion without having inspected any of the flooring at issue
3  in this case, reviewed any photographs of the flooring at issue, or personally replacing a floor that
4  exhibited these conditions.  Harrington has never even been hired to inspect a floor.  He instead
5  relies solely upon the personal experience of other installers who contacted him when the flooring
6  they installed developed these conditions.  Harrington has never made an effort to verify
7  information provided by these installers and has not retained any evidence of his consultations.
8  (*Id.* at 7-9.)  These activities cannot be characterized as a "methodology," nor do they add up to
9  the level of personal experience necessary to qualify him as an expert under *Daubert*.

### 1.  *Daubert* Applies Equally to All Expert Testimony.

In responding to Lumber Liquidators' arguments that Harrington's testimony should be excluded, Plaintiffs fundamentally misapprehend the standard under which the Court is required to assess his opinions.  First, they argue, without any support, that the *moving party* must provide "evidence as to the 'standards,' or 'methodology' or 'peer review'" applicable to the challenged expert's opinions so that the Court has some "metric to measure if Harrington's opinion is 'junk science' or not."  (Doc. 138-3 at 16.)  This is not so.  Rather, it is sufficient for the moving party merely to point out that the expert has not employed *any* standards or methodology in rendering his or her opinions, as is the case with Harrington.  *See, e.g., Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (2017).  In other words, it is the expert's responsibility to develop his own methodology, and an "opinion" that is unsupported by any standards, whether self-imposed or generally accepted, is the very definition of junk science.

Plaintiffs next suggest that Harrington's opinions do not need to comply with *Daubert* because "the bamboo flooring industry is [not] deeply rooted in some level of scientific framework" (Doc. 138-3 at 19), an admission that further calls into question Harrington's "no need to see anything, just rip it out" opinion.  Plaintiffs attempt to support this statement with Harrington's testimony that an individual does not need to study chemistry, engineering, or material sciences or obtain a technical certification in order to "handle wood flooring claims." (*Id.*)  While that may be true, it is irrelevant.  Harrington is not applying for a job as a claims

manager; he is attempting to offer an expert opinion in a court of law regarding the appropriate remedy in a class action case involving flooring that he has never inspected.

Even assuming that Harrington's testimony is not strictly scientific in nature, however, Plaintiffs are again incorrect in arguing that *Daubert* does not apply.  The Supreme Court has expressly found that *Daubert* applies to *all* expert testimony, regardless of its nature.  *Kumho Tire*, 526 U.S. at 147 (citations omitted) ("We, like the parties, believe that it applies to all expert testimony . . . Rule [702] applies its reliability standard to all 'scientific,' 'technical,' or 'other specialized' matters within its scope.")  There is likewise no support for Plaintiffs' assertion that an expert's methodologies, peer reviewed publications, and related criteria must only be evaluated if that expert is a scientist.  (Doc. 138-3 at 20-21.)  Indeed, Plaintiffs have cited no case law in support of this argument, and the Supreme Court again found to the contrary in *Kumho Tire*:

> We must therefore disagree with the Eleventh Circuit's holding that a trial judge may ask questions of the sort *Daubert* mentioned only where an expert 'relies on the application of scientific principles,' but not where an expert relies 'on skill- or experience-based observation.'  We do not believe that Rule 702 creates a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts.

*Id.* at 151 (internal citations omitted).

The critical failure in Harrington's opinion is that he utilized *no* methodology in rendering his opinions—a fact that Plaintiffs' opposition brief does not dispute, short-circuiting the Court's *Daubert* inquiry at the outset.  How can the Court evaluate whether Harrington's methodology is generally accepted, for example, when he has failed to follow one in evaluating Plaintiffs' flooring claims?  *See, e.g., Nease*, 848 F.3d 219, 232 (excluding plaintiff's engineering expert where he "conducted no tests and used no 'methodology' for reaching his opinions other than merely observing dirt on the speed control assembly components"); *see also Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635 (10th Cir. 2007) (no abuse of discretion in excluding expert who "employed no methodology whatsoever – reliable or otherwise.")

Though Harrington expressed "familiar[ity] with" the NWFA standards for inspecting hardwood flooring, he could not have followed or otherwise relied on them here because he failed to conduct a single inspection.  (Ex. 1, at 238:16-239:11).  Similarly, he touts his role in

"developing the North American flooring industry's first set of Bamboo flooring manufacturing standards and installation guidelines" (Doc. 132-15), but these standards have yet to be finalized, and more importantly, are not relevant to the *remediation* of bamboo flooring or determining the appropriate remedy with respect to the specific flooring in this case. Thus, because Harrington's opinions are not based on any discernible (or professed) methodology, they must be excluded.

### 2. Harrington's Experience Does Not Qualify Him as an Expert.

Harrington's purported "experience" with bamboo flooring does not save his opinions either. Though Plaintiffs make much of Harrington's association with the National Wood Flooring Association ("NWFA"), including that he was "selected" to teach a class offered by the NWFA "on bamboo," there is no evidence that *any* course on bamboo, let alone Harrington's class, is *required* to achieve that certification.[1] Such a conclusion is supported by the fact that Harrington admits that he has only presented the course a total of four times. (Ex. 1 at 294:13-296:13). In addition, according to the NWFA's website, the class is not even currently *available*.[2]

Plaintiffs also claim that Lumber Liquidators itself has attested to Harrington's "knowledge and expertise," citing to a July 2014 email from an employee to Harrington. (Doc. 138-3 at 17-18.) But evidence of a single employee emailing Harrington on a single occasion hardly translates to a concession that Lumber Liquidators views Harrington as a credible expert witness in remediation issues in this lawsuit.

### 3. The Court May Consider Harrington's Bias in Evaluating his Testimony on Class Certification.

Plaintiffs' final argument is that the Court cannot consider Harrington's bias in evaluating

---

[1] Plaintiffs' assertion that any individual seeking to become a certified bamboo flooring inspector "has to" take Mr. Harrington's course (Doc. 138-3 at 17) is completely unfounded. To support it, Plaintiffs cite solely to Mr. Harrington's testimony that he "[doesn't] think" anyone else teaches the same course he teaches on bamboo. *Id.* But they ignore the remainder of his testimony, in which he recalled at least one other individual who also teaches the same class. (Ex. 1 at 364:12-22).

[2] *See http://member.nwfa.org/events/event_list.asp?DGPCrSrt=&DGPCrPg=1* for schedule of available courses, last accessed on May 3, 2017.

1  his testimony at the class certification stage. (Doc. 138-3 at 20.) Notably, they make no attempt
2  to rehabilitate Harrington's credibility, and they do not dispute that Harrington's employer is a
3  direct competitor of Lumber Liquidators. (*Id.*) Instead, they incorrectly claim that Lumber
4  Liquidators offered no support for its argument, without offering any contrary authority. *Id.* In
5  addition to the California District Court case cited in Lumber Liquidators' opening brief, *Brown v.*
6  *China Integrated Energy, Inc.*, No. CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 19177, at
7  *18 (C.D. Cal. Feb. 17, 2015), numerous cases from other jurisdictions confirm that the Court may
8  properly consider Harrington's bias on class certification. *See, e.g., In re Hydrogen Peroxide*
9  *Antitrust Litig.*, 552 F.3d 305, 324 (3rd Cir. 2008) ("Resolving expert disputes in order to
10 determine whether a class certification requirement has been met is always a task for the court –
11 no matter whether a dispute might appear to implicate the 'credibility' of one or more experts, a
12 matter resembling those usually reserved for a trier of fact."); *In re Intel Corp. Microprocessor*
13 *Antitrust Litig.*, MDL Docket No. 05-1717-LPS, 2012 U.S. Dist. LEXIS 141137 at *18-19 (D.
14 Del. Sept. 28, 2012) (same); *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 135
15 (D.P.R. 2010) ("the court must act as finder of fact, making such [expert] credibility
16 determinations in order to grant or deny class certification under Rule 23"); *In re Evanston*
17 *Northwestern Healthcare Corp. Antitrust Litig.*, 268 F.R.D. 56, 86 (N.D. Ill. 2010). Accordingly,
18 the Court may properly weigh Harrington's credibility here, and in doing so, may consider
19 evidence of bias.

20 **B)     Phillip Waier.**

21 Lumber Liquidators does not object to Waier's testimony simply because "he has not
22 calculated classwide damages"; the failing is more fundamental. (Doc. 138-3 at 21.) Waier has
23 provided no workable damages model, and the barebones structure Waier does provide is based
24 upon unfounded assumptions and leaps of faith – not experience, testing and demonstrated fact.

25 **1. Waier Offers No Model for Calculating All of Plaintiffs' Alleged
        Damages—Restitution and Cost of Removal and Replacement—and Fails
26      to Demonstrate That Damages May be Measured across the Entire Class.**

27 Waier ignores large swaths of the claimed damages. He offers no method to calculate or
28 opinion about the calculability of the costs for repairing portions of flooring or of consequential

5

damage to class members' homes, though they are sought, *see* Compl. ¶¶ 4, 129, 142, and no opinion about calculating the restitution amount, i.e., the price paid in excess of the value received, (Doc. 111 at 18). Plaintiffs' remove-and-replace remedy is a disguised "full refund." Under California law, a full refund may be had only if the product has no value. *See Chowning v. Kohl's Dep't Stores, Inc.*, No. CV15-08673 RGK, 2016 WL 1072129, at *6 (C.D. Cal. Mar. 15, 2016). Even assuming the alleged defect, Morningstar had some value at the time of purchase, as the lead Plaintiff admitted. (Ex. 2 at 320:7-16.) Therefore, Plaintiffs must offer a means of determining "the excess of what the plaintiff gave the defendant over the value of what the plaintiff received" for each class member; Waier offered none. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988-89 (9th Cir. 2015) (quotation marks omitted); *see, e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *8, 14 (N.D. Cal. Dec. 15, 2014) (decertifying a class for offering no restitution measure). Despite admissions from Harrington and Waier that repairing portions of flooring, rather than removing and replacing the whole, may be appropriate in individual cases, Waier ventured no opinion on the prospects of estimating repair or how he would determine which homes needed repair versus full replacement.[3] Thus, Waier's projection about calculating the "total cost of bamboo flooring removal and replacement on a geographically-specific basis" offers no help in determining whether the classes' damages may be measured class-wide, and so should be excluded.

### 2. Waier's Opinion Lacked a Sufficient Factual Foundation Because it is Premised upon Assumptions of Similarity, Unacquainted with Any Facts.

Plaintiffs assert, without citation, that "[t]he cost of removing flooring is known, and it makes virtually no difference whether it is bamboo or hardwood," and misleadingly state that "labor cost are [sic] for installing a . . . bamboo floor are nationally and regionally collected by R.S. Means," that "RS Means publications contain labor and material costs for the entire United

---

[3] *See* Ex. 1 at 317:16-322:7, 327:3-8; Ex. 3 at 63:6-66:8, 89:2-92:7, 93:14-94:4, 149:12-15. Without restitution or repair models, "individual issues predominate." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 496 (N.D. Cal. 2008).

1  States" and that "[o]nce the replacement material is determined, … RS[] Means labor costs for
2  removal and replacement are applied." (Doc. 138-3 at 2, 22.)  The first two statements were
3  assumed by Waier, who confessed to having no data or experience with bamboo to support them.[4]
4  The remaining three statements are misleading because they imply that estimating repair and
5  replacement costs for the class may be done by simply plugging known numbers into an
6  established mathematical formula.

7  At his deposition, Waier was not able to say "whether the cost of removing and replacing
8  Morning Star was the same as other types of flooring," being wholly unfamiliar with the steps for
9  preparation, installation, and removal for Morningstar.  (Ex. 3 at 25:9-14, 58:16-59:3, 108:1-7,
10 121:20-123:1, 153:1-156:11.)  And the RS Means Manual to which Plaintiffs refer contains only
11 data for expected labor hours (a national average) required for installation of nail down bamboo—
12 no data regarding floating or glue down bamboo, and none on removal of bamboo.  (*Id.* at 118:4-
13 17, 123:19-124:19, 126:19-128:15 & Ex. 8 (Page 340); Doc. 114 ¶ 6; *see* Doc. 132-5 ¶ 4.)  To
14 come up with "location specific material cost and labor rate," including "appropriate contractor
15 markups," Waier conceded that research is required.  (Doc. 114 ¶¶ 6, 8; *see* Ex. 3 at 145:5-
16 146:12.)  Without knowledge of whether the data he had bore directly upon removal and
17 replacement of the flooring at issue, and lacking whole categories of data that would be needed to
18 make any estimation, Waier offered an opinion that was too skeletal and abstract to permit this
19 Court to affirm its validity, *see Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 25–26 (D.D.C.
20 2012), and too bereft of factual foundation to support certification, *Allied Orthopedic Appliances,*
21 *Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 176–77 & n.30 (C.D. Cal. 2007) ("A concrete,
22 workable formula must be described before certification is granted." (internal quotation marks
23 omitted) (collecting cases)).[5]  It should thus be excluded under Rule 702(b).

---

25 [4] (Ex. 3 at 21:15-22:14, 79:5-80:6, 101:11-16, 102:5-11, 107:19-22, 121:20-123:1, 123:19-125:17,
26 125:20-126:9, 156:13-18, 159:10-20, 160:3-11).

[5] Plaintiffs cite a nonprecedential opinion of the California Court of Appeals that mentions
27 Waier's testimony on class damages.  (Doc. 138-3 at 23.)  That opinion did not consider Waier's

**C)** **Peter Nelson and Emily Hopps.**

Plaintiffs make inconsistent and undeveloped arguments in response to Lumber Liquidators' grounds for excluding the opinions and testimony of Nelson and Hopps. At the outset, Plaintiffs contend that Lumber Liquidators made "no effort whatsoever" to refute SGH's "main findings" and conclusion that Morning Star is "defective." (Doc. 138-3 at 3.) A few pages later, they apparently change their mind—now arguing that Lumber Liquidators' *entire argument* is simply a *rebuttal* of SGH's conclusions." (*Id.* at 8 (emphasis added).) Notably, Plaintiffs concede ████████████████████████████████████████████████████████████████████. (*Id.* at 10.) And while Plaintiffs try to hide Nelson and Hopps' failures to follow established scientific protocol by calling them a "minor modification" (*id.* at 10-11), these mistakes were a *gross* deviation from the protocol and injected fatal error into every step of the data driving Nelson and Hopps' opinions.

Plaintiffs' arguments, complete with distractions and red herrings, fail to rehabilitate the speculative and unreliable opinions and conclusions generated by Nelson and Hopps.[6] As such, this Court should exclude the opinions and testimony of Nelson and Hopps.

**1.  Nelson and Hopps' gross deviation from established protocol injected fatal error into the data underlying their conclusions, rendering their conclusions inaccurate and unreliable.**

Plaintiffs concede, as they must, that they failed . Subsequently, Plaintiffs argue in desperation that this failure was insignificant and that their methodology was still conducted in "*general* accordance" with the methodology because it was "not challenged on appeal." (Doc. 138-41 at 12.) Accordingly, it has no relevance. *See People v. Avila*, 133 P.3d 1076, 1129 (Cal. Ct. App. 2006) ("[C]ases are not authority for propositions not considered." (quotation marks omitted)).

---

[6] Moreover, Plaintiffs' submission of a Declaration from Nelson (Doc. 138-16) adds no value to Plaintiffs' arguments, yet further highlights the flaws in their opinions.

1  standards.  (Doc. 138-3 at 10 (emphasis added).)  Nelson attempts to mitigate the mistakes from

4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Nelson Decl. ¶ 3, Doc. 138-16.)

5  This is not true.  Nelson's representation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



13  (SGH Rep., Doc. 112-15 at 22 (emphasis added).)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And if A minus B = C, and B ▮▮▮▮▮▮▮▮▮▮▮▮

17  ▮▮▮▮ is grossly inaccurate, then so is the conclusion generated in "C."

18  As explained in Lumber Liquidators' opening memorandum, ▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Doc. 132-3 at 21.)  This deviation

20  introduced substantial error ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:

[REDACTED]

(Burnett Rep., Doc. 132-22 at 8 (emphasis in original).)

Indeed, Courts have excluded expert opinions where the expert's gross deviation from established protocol rendered the expert's opinion unreliable. *See, e.g.*, *Good Technology Corp. v. Mobileiron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347 at *21-22 (N.D. Cal. 2015) (excluding expert's royalty damages calculation in patent case where the expert deviated from the standard theorem he relied on by 10%); *Watec Co. Ltd. v. Liu, et al.*, No. CV00-10893 FMC (RNBx), 2002 U.S. Dist. LEXIS 28539 at *3-8 (C.D. Cal. 2002) (excluding expert opinion based on a survey "not conducted according to accepted survey principles" and finding that the expert's "methodology has produced a biased and fatally flawed report"); *see also Guinn v. Astrazeneca Pharmaceuticals LP, et al.*, No. 09-11104, 602 F.3d 1245, 1255 (11th Cir. 2010) (excluding expert opinion where the "reliability of [her] methodology was called into question by her failure to conduct the standard diagnostic techniques she normally used to rule out potential alternative causes"). So too should this Court excluded the opinions of Nelson and Hopps.[7]

### 2. Nelson and Hopps manipulated the data by exposing the samples to extreme relative humidity levels.

In addition to injecting error by grossly deviating from established protocol, Nelson and Hopps further manipulated their outcome to support their preconceived opinion by [REDACTED].[8]

---

[7] Nelson's declaration highlights yet another gross deviation from established protocol: [REDACTED]

[8] Notably, even with all of Plaintiffs' errors, the testing at normal ranges (i.e., 50% RH) passes, i.e., the sample does not expand or contract enough to cause any gapping, cupping, buckling, etc.

1  Plaintiffs contend that SGH's ███████████████████

2  ███████████████ (Doc. 138-3 at 8.) Yet Plaintiffs cite several sources, such as the 2017

3  American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE") that

4  directly contradict their argument. ASHRAE sets standard relative humidity levels of (1) 40-60%

5  for museums and libraries, (2) 50-60% for natatoriums, and (3) 20-60% for health care facilities.

6  (*Id.* at 9.)

7      No matter how Plaintiffs spin it, the math does not add up. ███████████

8  ████████████████████████████████. (*See also* Doc. 132-22 at 11-14 (citing

9  common ranges of RH).) Here, Nelson and Hopps did not test the samples at "common" ranges.

10  Rather, they subjected the samples to extreme ranges █████████████████

11  ████████████████████████████████████████████████

12  █████████

13      Nelson and Hopps' many testing mistakes have a domino effect—ending in the result that

14  their opinion is neither reliable nor helpful to the trier of fact.

15      **3.    Plaintiffs fail to rebut Lumber Liquidators' attacks as to Nelson and Hopps' anecdotal and flawed sampling.**

16

17      In its opening memorandum, Lumber Liquidators argued that Nelson and Hopps relied on

18  testing of an entirely anecdotal sample of Morning Star—██████████████

19  ██████████—to make the improper extrapolation that all Morning Star is defective. (Doc.

20  132-3 at 18.) Plaintiffs do not dispute, nor can they, the extremely small number of samples they

21  tested. Instead, Plaintiffs attempt to distract the Court by pointing to █████████

22  ████████████████████████████████ (Doc. 138-3 at 5-

23  6.) Plaintiffs even suggest that Lumber Liquidators ██████████████

24  ████████████████████████████████████████████████

25  ███████████████████ (*Id.* at 5.) Both are unfounded distractions that do not remedy the

26  ─────────────────────────

27  (Doc. 132-22 at 2.)

28

LUMBER LIQUIDATORS' REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES
CASE NO. 3:14-CV-05373-TEH

1  vastly unrepresentative and inadequate sampling conducted by SGH.

2      First, Plaintiffs' statement that ████████████████████████████
3  ████████████████████████████████████████████████████████████████████████
4  ██ ██████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████ Plaintiffs and SGH just chose not to do so.

12     Second, Plaintiffs attempt to argue that their sampling methodology is adequate under
13 *Daubert* because ████████████████████████████████████████████████████████
14 ████████████████. (Doc. 138-3 at 6.)  This is, again, misdirection meant to detract from the fatal
15 flaws in sampling methodology. ██████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████
18 ██████████████████████████████████

19     Here, SGH ████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████████
22 ██████████████████████████████ Sample sizes must be adequate and representative in order to
23 draw any reliable conclusions. *Cf. Hershey Foods Corp. v. Waterman S.S Corp.*, No. 82 CIV.
24 0533 (DNE), 1994 WL 281929 (S.D.N.Y. June 22, 1994) *aff'd sub nom. Hershey Foods Corp. v.*
25 *Waterman S.S. Corp.*, 43 F.3d 1458 (2d Cir. 1994) (expert failed to apply proper sampling where
26 expert took an inadequate sample that would not be representative of the population of materials).
27 Further, SGH's small sample is not *representative* of the population at large.  (Van Liere Rep. at
28 9-10, Doc. 132-24.)  SGH took a biased sample ██████████████████████████████

1  ███████████████████████████████████████████████████████████████████████.

2  (*Id.* at 9.)  If a sample is *biased*—or known to have more issues compared to the general

3  population—it is unrepresentative and any testing results derived from that biased sample cannot

4  be extrapolated to the general population of *all* Lumber Liquidators' Morning Star bamboo.

### 4. The results from Nelson and Hopps' flawed testing cannot be extrapolated to render a reliable opinion regarding all Morning Star bamboo products.

Having improperly couched Nelson and Hopps' gross failures to follow existing protocols as "minor," Plaintiffs go on to argue that Nelson and Hopps can reliably extrapolate their testing to conclude that all Morning Star bamboo is defective.  (Doc. 138-3 at 12.)  As part of this argument, Plaintiffs contend that Nelson and Hopps ███████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███

    ████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████

        ████████████████████████████████
        ████████████████████████████████
        ████████████████████████████████
        ████████████████████████████████
        ████████████████████████████████
        ████████████████████████████████
        ██████████████████

███████████████████████         ███████████████████████████████████████

███████████████████████████████████████

[redacted]

Plaintiffs' Exhibit 28, [redacted]

[redacted]

that has "too great an analytical gap" to pass muster under *Daubert. General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (2007). Moreover, Plaintiffs ignore the undisputed fact [redacted]

[redacted]

As a last resort, Plaintiffs attempt to salvage their opinions by arguing that even if they did not follow established protocols, they are just using the data to show a trend. [redacted]

[redacted] Rather, Plaintiffs use the SGH report to support their central claim—that Morning Star has an "overarching defect," that the "bamboo is unable to withstand typical and foreseeable residential ambient moisture. (Pls.' Mot. for Class Cert at 3, Doc. 111 (citing to SGH Report).) Even assuming, however, that Nelson and Hopps' opinions are reliable (which they are not), [redacted]

LUMBER LIQUIDATORS' REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES

### 5. Plaintiffs fail to rebut Lumber Liquidators' argument that Nelson and Hopps' "company knowledge" opinion should be excluded.

Finally, Plaintiffs' feeble attempt to argue that Nelson and Hopps are somehow qualified to opine that Plaintiffs' alleged defects should have been "expected" and known by Lumber Liquidators is unfounded. Plaintiffs do not distinguish the *Fosamax* case, where the District Court for the Southern District of New York rejected an expert's opinion regarding company knowledge as "conjecture." (*Compare* Doc. 132-3 at 22, *citing In re Fosamax Products Liability Litigation*, 645 F. Supp. 2d 164, 189 (S.D.N.Y. 2009), with Doc. 138-3 at 15.) Instead, Plaintiffs argue that because Nelson and Hopps reviewed "countless materials" produced by Lumber Liquidators," they should be able to opine on company knowledge because it will be "helpful to the trier of fact." (Doc. 138-3 at 15.) A paid witness's conjecture about what a company (where he never worked) "knew" is unfounded speculation and, therefore, not relevant. Relevance, however, is only one part of the *Daubert* inquiry. Plaintiffs must also show how Nelson and Hopps' "company knowledge" opinion is *reliable.* This they have not done and cannot do.

In their opposition memorandum, Plaintiffs' many attempts at distraction and misdirection cannot rehabilitate Nelson and Hopps' speculative and unreliable opinions. Ultimately, Nelson and Hopps' biased sampling, flawed testing, and gross deviation from an established protocol resulted in an opinion that is precisely the type that should be excluded under this Court's gatekeeping function under *Daubert.*

## CONCLUSION

For the foregoing reasons, Lumber Liquidators respectfully requests that the Court grant this Motion and exclude Plaintiffs' expert witnesses' opinions from any use in this case, including class certification.

1
2
3   Respectfully submitted,
    MCGUIREWOODS LLP
4
5   By:   /s/ Bethany G. Lukitsch
          Bethany G. Lukitsch
6         Attorneys for Lumber Liquidators, Inc.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28