UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LUMBER LIQUIDATORS, INC.,<br><br>    Defendant. | Case No. 14-cv-05373-RS<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION; AND GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE EXPERT WITNESSES** |

## I. INTRODUCTION

Plaintiffs Dana Gold, John Triana, Edwin Mendez, Laura Norris, Donald Fursman, and Tammy Emery bring this putative class action challenging Lumber Liquidators' business practices with respect to the sale and marketing of Morning Star Strand Bamboo Flooring. Plaintiffs now move for certification of six classes pursuant to Rule 23(b)(3). Lumber Liquidators opposes certification and also moves to exclude plaintiffs' expert witnesses. For the reasons outlined below, plaintiffs' motion for certification is granted and defendant's motion to exclude is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs Gold, Triana, Mendez, Norris, Fursman, and Emery are residents of California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia, respectively. All six plaintiffs purchased and installed Lumber Liquidator's Morning Star bamboo flooring in their homes, and shortly thereafter allegedly began experiencing product defects. Gold has experienced warping, splitting, buckling and shrinking. Triana has experienced cracking, splitting, peeling, and cupping.

Mendez has experienced buckling and shrinking. Norris has experienced cupping, shrinking, warping, and splitting. Fursman has experienced shrinking and gapping. Emery has experienced delaminating, warping, splitting, shrinking, scratching, and deterioration.

Plaintiffs allege that Lumber Liquidators' Morning Star Strand Bamboo Flooring "is defectively designed, tested, and manufactured, and will warp, buckle, splinter, and unreasonably scratch and dent when used in its intended manner. These failures are common in the Product regardless of when, where, or how it is installed." FAC at ¶ 117. Additionally, plaintiffs allege that Lumber Liquidators "communicate[d] representations about the durability and quality of the Product and about its warranty to the general public and contractors," yet "concealed from and/or failed to disclose to Plaintiffs and Class Members the defective nature of the Product." *Id.* at ¶104. As a result of this alleged misconduct, plaintiffs and class members claim to have suffered actual damages.

Plaintiffs bring this putative class action pursuant to Rule 23(b)(3). They advance eight claims for relief under various business and consumer protection laws from California, Pennsylvania, Minnesota, West Virginia, and Florida, and seek certification of six classes. The first five classes consist of individuals in Florida, Illinois, Minnesota, Pennsylvania, and West Virginia, who purchased, for personal, family, or household use, Morning Star Strand Bamboo flooring manufactured and sold by Lumber Liquidators from January 1, 2008 to the present. The sixth class consists of persons and entities in California who purchased Morning Star Strand Bamboo flooring manufactured and sold by Lumber Liquidators from January 1, 2008 to the present.

**III. LEGAL STANDARD**

**A. Class Certification Under Rule 23**

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which represents more than a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by*

273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Rule 23(a) provides that a court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four Rule 23(a) prerequisites are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Relevant here is Rule 23(b)(3), which permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Dukes*, 131 S. Ct. at 2551); *see also Mazza*, 666 F.3d at 588. This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *See Comcast*, 133 S. Ct. at 1432.

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

**B. Federal Rule of Evidence 702**

Federal Rule of Evidence 702 states that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified by knowledge, skill, experience, training, or education; (2) the

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact at issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the principles and methods to the facts of the case.

The Ninth Circuit has interpreted Rule 702 as requiring expert testimony to be both relevant and reliable. *City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014). Expert opinion testimony is relevant when the knowledge underlying it has a valid connection to the pertinent inquiry. *Id.* at 1044. It is reliable when such knowledge "has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* The court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

## II. DISCUSSION

### A. Rule 23(a) Requirements

#### 1. Numerosity

Numerosity is satisfied if the potential class members are so numerous that the alternative—joinder of individual plaintiffs—is "impracticable." Fed. R. Civ. P. 23(a)(1). While there is no fixed number that satisfies the numerosity requirement, generally, a class greater than forty is sufficient while one less than twenty-one is not. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). Here, each of plaintiffs' proposed classes has well over a thousand members. Accordingly, numerosity is satisfied.

#### 2. Commonality

Rule 23(a)(2) requires some "questions of fact and law which are common to the class." This commonality requirement is construed less rigorously than the "predominance" requirement of Rule 23(b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each

claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 131 S. Ct. at 2551) (internal alteration omitted). Stated differently, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 131 S. Ct. at 2551). This does not mean that every question of law or fact must be common to the class; rather, "all that Rule 23(a)(2) requires is a single *significant* question of law or fact." *Id.* (internal quotation marks omitted).

Here, plaintiffs argue the commonality requirement is met because the case presents several common questions: (1) whether Morning Star Strand Bamboo flooring is defective because it does not stand up to foreseeable ambient moisture; (2) whether Lumber Liquidators knew about the alleged defect; (3) whether Lumber Liquidators failed to disclose the alleged defect; and (4) whether Lumber Liquidator's conduct violated consumer protection laws.

By contrast, Lumber Liquidators contends that commonality is not satisfied primarily because the defect alleged by plaintiffs is not susceptible to common proof. First, "typical" residential ambient moisture can vary from city to city, state to state, season to season, home to home, and even day to day, and thus "foreseeable" residential ambient moisture is subjective. Second, the alleged defect arises from the interaction between the "unique circumstances of that flooring's acclimation, the installation in the class member's home, and the specific environmental conditions in each home during and after installation." Opp'n at 10:1-4. This is evidenced, Lumber Liquidators argues, by the inspections of Plaintiff Emery's and Plaintiff Triana's bamboo floors which reveal that: a) Emery's "buckling" problems were caused by Emery failing to install proper moldings and connections as specified by the product's instructions; and b) Triana's problems stemmed from excessive moisture seeping up through the concrete floor, not "ambient" moisture. Third, the presence of a uniform defect is belied by the fact that only 2.6% of the 390,000 customers who purchased Morning Star bamboo during the class period ever complained of performance issues.

Lumber Liquidators arguments may prove compelling later in this litigation in attacking the merits of plaintiffs' claims. They are not, however, enough to defeat commonality. Here, the claims of all prospective class members involve the same alleged defect (inability to withstand normal humidity changes) in the same product (Morning Star Strand Bamboo). While individual factors such as geography, acclimation, or installation may affect the onset of flooring problems, they do not affect whether the flooring's alleged inability to withstand normal humidity changes undermines its durability and/or makes it unable to last the promised 30 years. The latter question is "central to the validity" of the claims of all class members and is capable of resolution in "one stroke." *Dukes*, 564 U.S. at 350. This common question meets "the relatively 'minimal' showing required to establish commonality." *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon*, 150 F.3d at 1020 (9th Cir. 1998)). Accordingly, plaintiffs' other proposed common questions need not be addressed.

### 3. Typicality

Under Rule 23(a)(3) the representative plaintiffs' claims must be typical of those advanced by the class. Admittedly, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n. 13 (1982). Typicality, however, like adequacy, aims at ensuring that plaintiffs are proper parties to proceed with the suit. The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). That said, "[t]ypicality refers to the nature of the claim or defense of the class representative," and less so, "the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Weinberger v. Thornton,* 114 F.R.D. 599, 603 (S.D. Cal. 1986)). "Under the rule's permissive standards, representative claims are 'typical' if they are *reasonably co-extensive* with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (emphasis added).

ORDER RE CLASS CERTIFICATION AND EXCLUSION OF EXPERTS
CASE NO. 14-cv-05373-RS
6

Plaintiffs argue their claims are typical of the claims of all proposed class members because they each purchased and installed flooring that was manufactured in the same way and they each were subjected to the same deceptive conduct: Lumber Liquidator's failure to disclose the product's defect. Moreover, plaintiffs allege they have all been injured by Lumber Liquidators and seek relief under the same legal theories. *Id.*

In response, Lumber Liquidators argues typicality is not satisfied due to differences between several of the named plaintiffs. First, plaintiffs approached their flooring purchases with different levels of knowledge and experience, conducted varying amounts of pre-purchase research and comparison shopping, and eventually selected flooring for different reasons and with different expectations. Second, they took widely divergent approaches to acclimating their flooring to their homes prior to installation, and used different installation methods (e.g., some plaintiffs installed their own flooring, while others employed independent contractors for that purpose). Lastly, plaintiffs' complaints about their flooring vary widely and some have even acknowledged that their flooring problems are seasonal in nature and that they do not know whether the damage they are claiming is due to moisture-related issues.

The Ninth Circuit addressed similar arguments in *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010). In *Wolin*, Land Rover opposed certification on the grounds that the named plaintiffs' "claims [were] not typical because their tires indicate[d] wear that is not the kind attributable to vehicle alignment." *Id.* at 1175. The Ninth Circuit rejected this argument, noting that the named plaintiffs alleged that they, "like all prospective class members, were injured by a defective alignment geometry in the vehicle," and that the class was advancing the "same legal theories" based on violations of consumer protection laws. *Id.* The court also held that, even if Land Rover were correct that the wear on the named plaintiffs' tires was due to a different cause than the wear on class members' tires, the named plaintiffs, "like the rest of the class, may have a viable claim regardless of the manifestation of the defect." *Id.* In other words, even though the named plaintiffs' tires may have been worn for other reasons, plaintiffs' theory

was that their vehicles still suffered from the same alignment defect, and this was sufficient to make the named plaintiffs' claim typical of the proposed class.

The same reasoning applies here. Plaintiffs are asserting injuries stemming from a uniform design defect and seeking relief under the "same legal theories." "Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect." *Id.* Therefore, differences in how plaintiffs acclimated their flooring and installed their floors, or in how their flooring manifested problems does not defeat typicality where the alleged defect is in the product itself. *See Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 516 (D.S.C. 2007) (rejecting defendant's contention that maintenance and installation issues precluded class certification "because Plaintiffs allege TrimBoard is completely unsuitable as an exterior trim product and will fail during its useful life even if all instructions are followed."). Typicality is satisfied.

**4. Adequacy**

Rule 23(a)(4) requires that named plaintiffs be capable of adequately representing the interests of the entire class, including absent class members. This inquiry turns on: (1) whether the named plaintiff and class counsel have any conflicts of interest with other class members; and (2) whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

In determining whether Class Counsel is proper, courts generally consider the factors set out in Rule 23(g)(1)(A): (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit in representing the class. Defendant does not challenge the adequacy of plaintiffs' class counsel. Plaintiffs' class counsel has experience litigating consumer class actions, has already expended significant resources in pursuing plaintiffs' claims, and commits to having the resources and funding needed to take the case through trial and any appeals. Plaintiffs' class counsel is therefore deemed adequate to represent the plaintiffs.

With respect to the named plaintiffs, they claim they have shown their commitment to representing the class by providing discovery, being deposed, and having their floors inspected. Furthermore, they claim to have no conflicts with other class members because they have all experienced the same defect in their flooring.

Lumber Liquidators challenges the adequacy of three of the class representatives. Plaintiffs Emery and Norris are challenged on the ground that both had remedial work done on their bamboo floors by their installers. This challenge, however, is unavailing. Neither Emery nor Norris were able fully to address their flooring issues by the repairs they obtained. Also, because the flooring itself is allegedly defective, both plaintiffs' floors remain susceptible to future problems. Thus, Emery and Norris are adequate class representatives.

Lumber Liquidators also argues Plaintiff Mendez is not adequate because he lacks standing to sue for two independent reasons. First, Mendez received a $500 refund "in full and final settlement of any and all claims" he raised or referenced in past communication with Lumber Liquidator's regarding his flooring purchase. Second, during the pendency of this litigation, Mendez's bamboo flooring was destroyed by a kitchen pipe leak and his insurance replaced his entire floor. Plaintiffs counter that Mendez only released claims relating to glue—not the uniform defect alleged in this suit. Plaintiffs also argue that while Mendez had his bamboo flooring replaced, he had to pay $2,205.67 to cover his insurance deductible and other out-of-pocket costs related to removal and replacement, damages that are recoverable under the applicable Illinois consumer protection statute.

Plaintiffs' arguments are insufficient to establish Mendez's adequacy. Regardless of whether Mendez released the claims in this suit when he received his $500 refund, the fact that he already replaced the allegedly defective flooring in his home is problematic. Because Mendez no longer has the defective flooring in his home, he no longer shares an interest with putative class members whose primary goal is to obtain full replacement of their bamboo flooring. *See Ellis*, 657 F.3d 970 (finding former employers would not share an interest with class members whose primary goal was to obtain injunctive relief barring discriminatory promotion practices).

That being said, as long as a proposed class satisfies all other requirements of Rule 23, a court may certify the class conditioned on the substitution of an adequate named plaintiff. *See, e.g., Nat'l Fed'n of Blind v. Target Corp.*, 582 F.Supp. 2d 1185, 1201 (N.D. Cal. 2007) (*citing Kremens v. Bartley*, 431 U.S. 119, 135 (1977)). Here, the Illinois class does satisfy all other Rule 23 requirements and the record suggests the existence of numerous individuals who could serve as adequate class representatives. The Illinois class will therefore be conditionally certified pending plaintiffs' substitution of an adequate named plaintiff in the place of Plaintiff Mendez.

### B. Rule 23(b) Requirements

#### 1. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance analysis "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022. Thus, it "focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). The main concern is "the balance between individual and common issues." *Id.* at 546 (quotation marks and citation omitted).

#### a. Plaintiffs' Claims Under State Consumer Protection Statutes

"Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011) (quotation marks omitted). A court must analyze these elements to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT–LCD I*, 267 F.R.D. at 310–11.

##### i. CLRA and UCL Claims

Plaintiffs seek to certify claims on behalf of a California Class for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and California's Consumer Legal Remedies Act ("CLRA"), (Cal. Civ. Code § 1770(a)). The UCL prohibits "any unlawful,

1  unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading
2  advertising." Cal. Bus. & Prof. Code § 17200. Similarly, the CLRA provides relief to "any
3  consumer who suffers any damage as a result of the use or employment" of any unlawful "method,
4  act, or practice." Cal. Civ. Code § 1780(a).

California's UCL and CLRA "rely on the same objective test, that is, whether members of the public are likely to be deceived." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citations and internal quotation marks omitted). Consequently, these statutes are particularly amenable to class certification "because they will not require the court to investigate 'class members' individual interaction with the product," *id.* at 480, and "courts in California routinely certify consumer class actions arising from alleged violations of the CLRA . . . and UCL." *Id.* (collecting cases). *See also Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 512 (6th Cir. 2015) (finding neither the UCL nor CLRA "require individualized proof of reliance or causation such that classwide proof will never suffice.").

### ii. FDUTPA Claims

Plaintiffs seek to certify claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* A claim under the FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages. *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009). The Eleventh Circuit has described these elements as being objective. *Carriuolo v. General Motors Co.*, 823 F.3d 977, 985–986 (11th Cir. 2016). The first element is satisfied when a plaintiff "show[s] that a reasonable consumer would have been harmed by defendant's conduct." *Bowe v. Public Storage*, 318 F.R.D. 160, 182 (S.D. Fla. 2015). This inquiry can be based on classwide proof and lends itself more easily to class certification where a defendant's conduct is the same as to all class members. *Id.* Where that scenario arises, "causation and damages may also be amenable to class-wide resolution." *See Carriuolo*, 823 F.3d at 986.

### iii. ICFA Claims

Plaintiffs seek to certify claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq.* A claim under the ICFA has five elements: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the occurrence of the deception in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff that is (5) a result of the deception. *De Bouse v. Bayer*, 922 N.E. 2d 309, 313 (Ill. 2009). When seeking relief based on the misrepresentation, concealment, or omission of a material fact a plaintiff must prove: (1) the misrepresentation or concealment of a material fact; (2) an intent by the defendant that plaintiff rely on that misrepresentation or concealment; and (3) the deception occurred in the course of conduct involving trade or commerce. *Mackinac v. Arcadia Nat'l Life Ins. Co.*, 648 N.E. 2d 237, 239 (Ill. App. Ct. 1995). Under the ICFA, an "omission is 'material' if the plaintiff would have acted differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act." *Id.* (citation omitted). Thus, the "standard for materiality under the ICFA is an objective standard" whereby a plaintiff's reliance on a material omission is presumed." *Tait*, 289 F.R.D. at 483 (citations omitted).

In light of this objective test, whether Lumber Liquidators engaged in a deceptive act is subject to proof by common evidence. Furthermore, where the alleged wrongful conduct is an omission of material fact, elements two and three are also provable through common evidence. The ICFA does require that plaintiffs show "the allegedly deceptive act 'proximately caused any damages' suffered." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 996 (C.D. Cal. 2015) (quoting *De Bouse*, 922 N.E. 2d at 309). Where the alleged misconduct is uniform towards the whole class, however, courts have found that individual inquiries into proximate causation do not preclude certification of a class. *See In re Glaceau Vitaminwater Mktg. & Sales Practice Litig.*, No. 11-cv-00925 DLI RML, 2013 WL 3490349, at *9 (E.D.N.Y. July 10, 2013); *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E. 2d 6, 16 (Ill. App. Ct. 2011).

### iv. MCFA Claims

Plaintiffs seek to certify claims for violation of the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. Ann. § 325F.68, *et seq.* The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." *Id.* § 325F.69. A valid MCFA claim has three elements: (1) the defendant engaged in prohibited conduct; (2) causation; and (3) damages. *See Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W. 2d 2, 15 (Minn. 2001). The MCFA does not contain a private right of action. *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1016 (D. Minn. 2012). Under Minnesota's Private Attorney General Statute, however, a plaintiff can seek damages for violations of the MCFA if, in addition to the MCFA elements, a plaintiff adequately alleges a public benefit. *Id.*

An omission is actionable under the MCFA when "special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts," such as when a party "has special knowledge of material facts to which the other party does not have access" or when a party makes misleading partial disclosures. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014).

Here, common proof can address: a) whether Lumber Liquidators engaged in prohibited conduct; b) whether plaintiffs' MCFA claim serves a public benefit; c) whether Lumber Liquidators had a duty to disclose, and, if so, whether this meets the causation element; and d) what damages are due to the class as a result of the uniform defect alleged. Indeed, in *Grp. Health Plan*, the Supreme Court of Minnesota recognized:

> in cases . . . where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove causal nexus need not include direct evidence of reliance by individual consumers of defendants' products. Rather, the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the

district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct.

*Id.* at 14. Thus, in proving a MCFA violation in this case, common issues would predominate.

### v. UTPCPL Claims

Plaintiffs seek to certify claims for violation of the Pennsylvania Unfair Trade Practices & Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. and Const. Stat. Ann. §201-1 *et seq.* This statute prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 201-3. A claim under the UTPCPL has three elements: (1) justifiable reliance on wrongful conduct or representation; (2) causation; and (3) injury. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004). The Supreme Court of Pennsylvania has confirmed that the UTPCPL does not entitle class members to a presumption of reliance; each plaintiff must allege and prove justifiable reliance. *See Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227–28 (3d Cir. 2008).

In *Weinberg*, the plaintiffs sought class certification of UTPCPL claims based on allegations that a gas station used false advertising to induce customers to purchase gasoline with a higher level of octane than the plaintiffs needed. *Id.* at 443–44. The state trial court rejected class certification finding that individual issues predominated over common ones because individual consumers needed to prove justifiable reliance. *Id.* at 444. The Supreme Court of Pennsylvania later affirmed this reasoning holding that all plaintiffs, whether alleging fraud or false advertising, must prove justifiable reliance under the UTPCPL. Determining justifiable reliance for each plaintiff would predominate over common issues of law and fact. *Id.* at 446.

Here, while recognizing the need to prove justifiable reliance for each class member, plaintiffs claim this "inquiry does not outweigh the predominantly common issues," including whether Lumber Liquidator's conduct constitutes an unfair or deceptive practice and whether that conduct harmed class members. Plaintiffs also correctly highlight that the Ninth Circuit does not treat the need for individual inquiries into reliance and damages as necessarily precluding certification as long as common issues focusing on the defendant's conduct predominate. *Just*

*Film, Inc. v. Buono*, 847 F.3d 1108, 1121-22 (9th Cir. 2017). Accordingly, the UTPCPL claims do not fail the predominance requirement.

### vi. CCPA Claims

Plaintiffs seek to certify claims for violation of West Virginia's Consumer Credit and Protection Act ("CCPA"), W. Va. Code §§ 46A-6-101 *et seq.* The CCPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 46A-6-104. The statute expressly prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby," and "any statement or representation with regard to the sale of goods . . . which is false, misleading or deceptive or which omits to state material information . . . ." *Id.* § 46A-6-102(7)(M)-(N). A claim under the CCPA has three elements: (1) unlawful conduct by a seller; (2) an ascertainable loss on the part of the consumer; and (3) proof of a causal connection between the alleged unlawful conduct and the consumer's ascertainable loss. *White v. Wyeth*, 705 S.E.2d 828, 837 (W. Va. 2010). West Virginia's Supreme Court has recognized that:

> [w]here concealment suppression or omission is alleged, and proving reliance is an impossibility, the causal connection between the deceptive act and the ascertainable loss is established by presentation of facts showing that the deceptive conduct was the proximate cause of the loss. In other words, the facts have to establish that 'but for' the deceptive conduct or practice a reasonable consumer would not have purchased the product and incurred the ascertainable loss.

Given this objective standard, each element is potentially susceptible to common proof.

### b. Proving Damages on a Classwide Basis

In *Comcast*, the Supreme Court explained that to satisfy the predominance requirement, damages must be "capable of measurement on a classwide basis." 133 S. Ct. at 1433. Lumber Liquidators argues plaintiffs have not shown that they have a method of calculating damages in

this manner. Yet, plaintiffs' expert Phillip Waier—whose testimony, as explained below, is admissible—opines that he can use RSMeans' data on the labor hours needed for each task associated with floor replacement, local trade labor rates, material pricing, and appropriate contractor markups to calculate total replacement costs. This process identifies an adequate model at the certification stage for calculating damages.

**2. Superiority**

In addition to predominance, Rule 23(b)(3) requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." The rule sets forth four factors to guide this determination: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (quotation marks and citation omitted).

Here, plaintiffs correctly argue that "[g]iven the large number of class members, the high cost of individual proof, and the common issues at the heart of the claims, the class action device is the superior method for adjudicating these claims." Mot. at 24:24–26. As mentioned above, the individual issues involved are secondary. In addition, given the high costs of litigation, the need for expert opinion, and the risks involved, individual suits likely would not make economic sense for a substantial number of putative class members. "These considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied." *Just Film*, 847 F.3d at 1123. Accordingly, superiority is satisfied.

**C. Exclusion of Plaintiffs' Expert Witnesses**

Lumber Liquidators seeks to exclude the testimony of plaintiffs' expert witnesses Daniel Harrington, Phillip Waier, Peter Nelson, and Emily Hopps. Towards this end, Lumber Liquidators

argues first, that Harrington lacks proper qualifications, bases his opinion on anecdote rather than sound methodology, and is potentially biased by his work for a direct competitor. Second, Waier's damages model was hastily assembled and not rooted in specific knowledge of the case. Lastly, the moisture testing of the bamboo flooring conducted by Nelson and Hopps deviated from standard protocols and involved too small of a sample size.

These arguments may well gain traction at the appropriate juncture. Lumber Liquidators persuasively points out that the expert testimony put forward by plaintiffs appears in some respects shaky. Shakiness, however, does not require exclusion. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The question now is not "whether the expert is right or wrong, just whether his [or her] testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car,* 738 F.3d at 969. Here, the expert testimony at issue largely meets that standard.

Harrington, while not a scientist, has fifteen years of experience working with bamboo flooring and dealing with claim inspection reports. His opinion is the product of his extensive experience and, while his position as a VP at Galleher Corporation raises questions about his motivations, his potential bias is better addressed through cross-examination than exclusion. While Waier may lack specific knowledge of this case, his testimony identifies a model that is *capable* of determining damages on a classwide basis. Finally, while Hopps and Nelson did use a relatively small sample size and appear to have deviated from standard protocols, "a slight modification of an otherwise reliable method does not render expert testimony inadmissible." *City of Pomona*, 750 F.3d at 1047. Lumber Liquidator's critiques of Nelson and Hopps' methods may suggest reasons for a jury to give their opinions less weight but they are not substantial enough to merit exclusion.

The one exception to this analysis is Nelson and Hopps' opinion that Lumber Liquidators: a) should have expected the alleged defects; and b) later became aware of them. Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury. *See Siring v. Oregon State Bd. of Higher Ed. ex. rel. Eastern Oregon University*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) (collecting cases). Exclusion on such grounds is appropriate here.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to exclude plaintiffs' expert witnesses is granted with regard to Nelson and Hopps' opinion as to Lumber Liquidators' state of mind and denied as to all other expert testimony. Plaintiffs' motion for class certification is granted and the California, Florida, Minnesota, Pennsylvania, and West Virginia classes are certified. Plaintiffs Gold, Triana, Norris, Fursman, and Emery are appointed as representatives of their respective classes. Michael F. Ram of Robins Kaplan LLP and Jeffrey B. Cereghino of Ram, Olson, Cereghino & Kopczynski LLP shall be appointed class counsel.

Given Plaintiff Mendez's failure to satisfy the adequacy prong of Rule 23(a), the Illinois class is conditionally certified pending substitution of an adequate class representative. Plaintiffs must substitute a new class representative for the Illinois class within forty-five (45) days of the issuance of this order and are granted leave to file a fifth amended complaint for this sole purpose. The parties shall meet and confer regarding the class notices and jointly submit agreed upon proposals within thirty (30) days of the issuance of this order.

**IT IS SO ORDERED**.

Dated: November 15, 2017

RICHARD SEEBORG
United States District Judge

ORDER RE CLASS CERTIFICATION AND EXCLUSION OF EXPERTS
CASE NO. 14-cv-05373-RS