UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>LUMBER LIQUIDATORS, INC.,<br><br>    Defendant. | Case No. 14-cv-05373-RS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

This class action arises from a dispute over whether Defendant Lumber Liquidators, Inc. ("LL") fraudulently omitted information about the susceptibility of its bamboo flooring to moisture-related damage. In November 2017, class certification was granted with respect to six state-specific classes.[1] LL now moves for summary judgment with respect to all claims asserted against it or, in the alternative, partial summary judgment with respect to certain claims and issues. For the reasons set forth below, this motion is denied.

## II. BACKGROUND

Plaintiffs Gold, Triana, Ference, Norris, Fursman, and Emery are the named plaintiffs for the California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia classes respectively. All six plaintiffs purchased and installed LL's bamboo flooring in their homes, and shortly

---

[1] The six states represented in this suit are California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia.

thereafter allegedly began experiencing product defects. LL is a flooring retailer that sells, among other things, bamboo flooring under the brand "Morning Star Strand Bamboo Flooring."

LL represented this flooring as "durable" and "twice as hard as oak." Thompson Decl., Ex. 52, Ex. 53 at 14, Ex. 54 at 9. The flooring also came with a 30-year warranty, which warned that ambient moisture could cause checks, cupping, gapping and other issues. Furthermore, to recover under the terms of the warranty customers must maintain a relative humidity of 30% to 50% in their homes. While consumers were not necessarily presented with a full copy of the warranty prior to purchase, the terms of the warranty were available on LL's website. Purchasers eventually received an invoice explaining how to obtain a copy of the full warranty terms.

LL also provided purchasers with installation instructions. These instructions were modified several times over the course of the class period. The version available at the beginning of the class period advised purchasers to test subflooring for moisture, discussed the benefits of installing a moisture barrier, and disclaimed liability for "moisture-related issues." Lukitsch Decl., Ex. H at 13. The instructions also warned that "failure to maintain humidity levels between 30-50%" could result in "edge cupping, sqeaking[,] delamination, splintering, or face checking." *Id.*, Ex. H at 20. Later versions of the installation instructions expanded upon and repeated many of these disclosures.

Despite these warning, LL received approximately 10,000 complaints related to movement of the bamboo flooring. LL staff acknowledged internally that "there is a product issue with the MS Bamboo" flooring. Thompson Decl., Ex. 19. Other internal documents indicate LL had misunderstood the expansion coefficient of bamboo. LL's Director of Quality Assurance acknowledged moisture-related issues internally, stating that the flooring changed in width by 30% more than expected. Despite these concerns, LL continued urging stores to sell Morning Star flooring and, in at least two instances, deleted negative online reviews describing shrinkage and expansion problems.

During the relevant time period, LL sold over a hundred different styles (or "SKUs") of bamboo flooring. LL sourced this flooring from ten independent providers: seven manufacturers

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-05373-RS

and three distributors.[2] According to LL, it does not specify the manufacturing process used to create these products. Plaintiffs, however, proffer testimony and documentary evidence that the manufacturing processes and raw materials used to make LL's bamboo flooring are functionally the same across different styles and manufacturers. Thompson Decl., Ex. 3 at 8, Ex. 4; *see also* Thompson Reply Decl., Ex. 80 at 50:23-51:3, 52:10-53:20, Ex. 85. Plaintiffs specifically contend LL's bamboo flooring is manufactured based on a single set of technical specifications provided by LL. Furthermore, Plaintiffs' experts tested 21 samples of bamboo flooring from four of LL's manufacturers and found that the flooring failed under normal residential humidity conditions.

In November 2017, class certification was granted with respect to six state-specific classes. These six classes included persons who had purchased LL's bamboo flooring between 2008 and the present. The parties subsequently stipulated to, and the Court approved, a modification limiting the class period to 2012 to the present. LL now seeks summary judgment with respect to all claims or, in the alternative, partial summary judgment with respect to certain discrete claims and issues.

### III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must ultimately decide "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). When making this evaluation, courts draw all reasonable inferences in favor of the non-moving party.

---

[2] LL represented at oral argument that the parties had come to an agreement that flooring from the three distributors would not be included in Plaintiffs' case. Plaintiffs did not contest this representation, accordingly this order will only address flooring sourced from the seven manufacturers.

*Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 520-21 (1991).

## IV. DISCUSSION

### A. Summary Judgment on All Claims

LL seeks summary judgment with respect to all claims asserted against it, arguing Plaintiffs cannot prove (1) the existence of any uniform defect, (2) LL's knowledge of this purported defect, (3) any omission of said defect, or (4) Plaintiffs' reliance on the alleged omission.[3] First, LL argues Plaintiffs' failure to identify the *cause* of the flooring's purported inability to withstand typical residential humidity levels prevents them from establishing a uniform defect. According to LL, proving the flooring cannot "withstand typical and foreseeable residential ambient moisture" is insufficient unless Plaintiffs can identify "the specific process or specification" that caused the defect. Def. Mot. Summ. J. 20. LL further contends the absence of a uniform defect prevents Plaintiffs from showing LL had knowledge of any such defect. Finally, LL argues disclosure of moisture-related problems in the installation instructions and warranty materials definitively proves the company did not fraudulently omit this information from its advertising.

In response to LL's argument regarding the absence of a uniform defect, Plaintiffs point to evidence that the challenged flooring was produced using the same basic process and raw materials. Plaintiffs also proffer expert testimony that a random sample of LL's bamboo flooring was unable to withstand typical residential ambient moisture. Finally, Plaintiffs argue the consistent manner of failure across different styles of flooring purchased by consumers suggests a common defect. This evidence is sufficient to create a material dispute of fact regarding whether Morning Star flooring was uniformly unable to withstand typical residential humidity levels. While LL argues the specifications it provides to manufacturers are not sufficiently detailed to establish the existence of a common defect, that is ultimately a disputed question which must be

---

[3] LL appears to concede that reliance is not an element of all the claims at issue in this suit. Accordingly, this issue is more appropriately addressed on a state-by-state basis in Part B.3.

resolved at trial.

Plaintiffs have also proffered evidence that LL staff were aware of, and actively discussed, moisture-related difficulties with the Morning Star flooring. Accordingly, there is, at a minimum, a material dispute of fact regarding LL's knowledge of this purported defect. Finally, while it is true LL's warranty materials and instruction manuals discuss moisture-related issues, there is a material dispute regarding whether these disclosures would put reasonable consumers on notice that their flooring would fail even under typical residential conditions. Moreover, the degree to which customers had access to these materials prior to purchase is unclear. Accordingly, LL's motion for summary judgment on all claims is denied.

### B. Partial Summary Judgment

In the event the motion for summary judgment on all claims is denied, LL seeks partial summary judgment with respect to (1) flooring from certain manufacturers, (2) certain styles of flooring, and (3) various state claims.

#### 1. Lack of Testing of Flooring from Certain Manufacturers

LL seeks summary judgment with respect to flooring sourced from three of the seven manufacturers, noting that Plaintiffs' experts did not test or examine flooring from these sources. In the absence of direct evidence about the performance of flooring from these manufacturers, LL argues, partial summary judgment is appropriate. As discussed in Part A, Plaintiffs point to evidence that all Morning Star flooring was produced using the same raw materials and basic manufacturing process. In addition, Plaintiffs proffer expert testimony that samples from four of LL's manufacturers were unable to withstand typical residential humidity. Together, this evidence is sufficient to permit a fact-finder to infer that all Morning Star flooring suffers from the same defect. Accordingly, partial summary judgment is denied with respect to this issue.

#### 2. Lack of Testing of Certain Styles/SKUs of Bamboo Flooring

LL also seeks partial summary judgment with respect to any flooring styles that Plaintiffs' experts did not test or examine. As LL notes, Plaintiffs' experts tested only 21 out of over a hundred SKUs. Plaintiffs, however, argue the evidence that the manufacturing process was

substantially the same across different flooring styles support a reasonable inference that the defects found in these samples affect all Morning Star flooring. Plaintiffs also point to the similar manner of failure across different SKUs as evidence that the same defect is present in all of LL's bamboo flooring. Finally, Plaintiffs insist the question of whether the sample size was large enough to support these inferences remains a question of fact not properly resolved at summary judgment. Those arguments are persuasive for essentially the same reasons set forth in Part A and Part B.1. LL's motion for partial summary judgment with respect to untested SKUs is therefore denied.

### 3. Partial Summary Judgment with Respect to State Claims

#### a. California Class Claims

The California Class advances three claims under California law: one under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and two under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* LL reprises its argument that Plaintiffs cannot establish a uniform defect, and therefore cannot show LL intended to conceal this defect, as required under the CLRA. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). LL also argues customer complaints and online comments regarding moisture-related issues are insufficient to show LL was aware of the alleged defect. *See Punian v. Gillette Co.*, No. 14-cv-05028, 2015 WL 4967535, at *10-11 (N.D. Cal. Aug. 20, 2015).

These arguments fail largely for the reasons explained in Part A. Additionally, with respect to intent, of consequence for summary judgment are internal communications indicating LL staff and management were aware of moisture-related problems yet deleted at least two customer complaints regarding floor movement. This evidence is sufficient to identify a material dispute of fact regarding whether LL intended to withhold pertinent information from consumers.

LL further argues it had no duty to disclose moisture-related issues and challenges Plaintiffs' ability to show reliance, as required under both the UCL and the CLRA. In LL's view, named plaintiff Dana Gold's admission that she read the written warranty agreement precludes any finding that she relied upon purported omissions in LL's marketing materials. LL also

contends that a reasonable consumer would have read the warranty materials, thereby precluding any finding of class-wide reliance.

A duty to disclose, however, exists when a defendant has "exclusive knowledge of material facts not known to the plaintiff." *Norcia v. Samsung Telecomm. Am., LLC*, No. 14-cv-00582, 2015 WL 4967247, at *6 (N.D. Cal. Aug. 20, 2015) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997)). According to Plaintiffs, LL had exclusive knowledge that its bamboo flooring would not withstand typical residential ambient humidity, whereas purchasers were left in the dark. Moreover, reliance can be established based on whether a reasonable person would consider the omission materially misleading. *See McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 183-84 (Cal. Ct. App. 2010).

Ultimately, Plaintiffs have presented sufficient evidence for a reasonable fact-finder to conclude LL had exclusive knowledge that its flooring tended to expand or otherwise deform, even under typical residential conditions. With respect to reliance, there is a material dispute of fact over whether the warranty materials adequately disclosed moisture-related problems. Accordingly, summary judgment is denied with respect to Plaintiffs' California claims.

### b. Florida Class Claim

The Florida class claim is based on Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. § 501.201 *et seq.* LL argues that, under this statute, a plaintiff must show the defendant knowingly concealed a material fact that the defendant had a duty to disclose. *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. Dist. Ct. App. 2000). According to LL, such a duty arises only in the context of a fiduciary relationship or some other relationship of confidence. *Id.* at 880. Plaintiffs respond with contrary authority holding that this claim does not depend upon any duty to disclose.[4] In any event, Plaintiffs argue, a duty to disclose generally arises where a party to a transaction "has knowledge of material facts to which the other party

---

[4] *Morris v. ADT Sec. Servs.*, 580 F. Supp. 2d 1305, 1310 (S.D. Fla. 2008); *Velasco v. Chrysler Grp., LLC*, No. cv 13-0808, 2014 WL 4187796, at *8 (C.D. Cal. Aug. 22, 2014).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 14-cv-05373-RS
7

does not have access." *Hooper v. Barnett Bank of W. Fla.*, 474 So. 2d 1253, 1257 (Fla. 1985); *see also TransPetrol*, 764 So. 2d at 880. Here, Plaintiffs argue, LL had superior knowledge that its bamboo flooring would not withstand normal variations in relative humidity and therefore had a duty to disclose these shortcomings.

Plaintiffs' argument is persuasive. The case relied upon by LL to establish a duty to disclose as an element of a FDUTPA claim, *TransPetrol*, did not specifically deal with this statute. Ultimately, the district court cases holding that there is no duty to disclose requirement under FDUTPA are more relevant and persuasive. Even were there a duty to disclose requirement under this statute, Plaintiffs have provided sufficient evidence to enable a fact-finder reasonably to conclude LL had superior knowledge of the flooring's moisture-related problems, and therefore had a duty to disclose these issues. Accordingly, summary judgment is denied with respect to this claim.

### c. Illinois Class Claim

The Illinois class alleges a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 Ill. Comp. Stat. 505/1 *et seq.* Under this act, Plaintiffs must establish (1) LL had knowledge of the omitted information, (2) the omitted information was material, and (3) LL intended to induce customer reliance on this omission. *Miller v. William Chevrolet/Geo, Inc.*, 762 N.E.2d 1, 14-15 (Ill. App. Ct. 2001). According to LL, Plaintiffs cannot show LL intended to induce reliance on an omission of information about the bamboo flooring's susceptibility to damage because LL disclosed the possibility of moisture-related complications in the warranty materials and installation instructions.

As explained in Part A, there are material disputes of fact regarding when consumers received these materials and whether they adequately disclosed the extent of Morning Star flooring's susceptibility to damage from ambient moisture. Furthermore, Plaintiffs argue LL's statements regarding the strength and durability of bamboo flooring suggests a desire to conceal the product's tendency to buckle or otherwise deform. Ultimately, despite the disclosures in the warranty materials and installation instructions, Plaintiffs have provided sufficient evidence to

allow a reasonable jury to conclude LL intentionally withheld information about the flooring's moisture-related problems.

In the event the Illinois claim survives summary judgment, LL seeks partial summary judgment with respect to punitive damages. Under the Illinois statute, punitive damages are available where a defendant's conduct is "characterized by wantonness, malice, oppression," or other aggravating circumstances. *Clodfelter v. United Processing, Inc.*, No. 08-cv-2131, 2008 WL 4225557, at *5 (C.D. Ill. Sept. 12, 2008) (quotation omitted). In light of the disclosures in the warranty materials and installation instructions, LL argues, Plaintiffs cannot plausibly show that any lack of disclosure was willful or malicious. Plaintiffs, however, point to internal emails by LL staff stating that the flooring was failing, even when the installation guidelines were followed. Accordingly, Plaintiffs argue, they have presented a triable issue regarding whether LL's continued advertising and sale of this product despite concealed defects merits punitive damages. Ultimately, there is sufficient evidence for a reasonable fact-finder to conclude LL deliberately sold defective flooring and hid these defects from consumers. Accordingly, LL's request to foreclose punitive damages on this claim through summary judgment is denied.

### d. Minnesota Class Claim

The Minnesota class brings a claim under Minnesota's Consumer Fraud Act. Minn. Stat. Ann. § 325F.68 *et seq.* Under Minnesota law, a party to a transaction is generally not obligated to disclose all material facts. *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W. 2d 682, 697-98 (Minn. 2014). Only "special circumstances may trigger a duty to disclose material facts," including "a confidential or fiduciary relationship," "special knowledge of material facts," or a need to speak to prevent an affirmative communication from misleading another party. *Id.* According to LL, no such special circumstances exist here.

The Minnesota statute also requires proof of actual reliance on the claimed omission. *See Higgins v. Harold-Chevrolet-Geo, Inc.*, No. A04-596, 2004 Minn. App. LEXIS 1303, at *10 (Minn. Ct. App. Nov. 23, 2004). According to LL, class representative Laura Norris admitted to reading through the installation instructions and the invoice advising her of the availability of a

written warranty for the product. This admission, LL contends, prevents Norris from showing she relied on any omission regarding moisture-related problems.

Plaintiffs respond that LL had a duty to disclose based on its prior statements that the bamboo flooring was "durable" and "hard as oak." Furthermore, Plaintiffs contend, LL had special knowledge of the defects in its products and therefore had a duty to disclose for this reason as well. With respect to reliance, Plaintiffs note that Norris was not provided with the complete warranty until after she purchased her flooring. In any event, Plaintiffs contend the information contained in the installation instructions and warranty documents would not put a consumer on notice of the flooring's defects.

Once again, Plaintiffs' arguments are persuasive. Plaintiffs have adduced sufficient evidence for a reasonable fact-finder to conclude LL had special knowledge about the defects in its flooring and therefore had a duty to disclose these defects to customers. Finally, the question of reliance is subject to a material dispute regarding whether the warranty documents and instruction manuals put Norris on notice that the bamboo flooring might fail even under normal residential conditions. Accordingly, summary judgment is denied with respect to the Minnesota class claim.

*e. Pennsylvania Class Claim*

The Pennsylvania claim arises under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. 73 P.S. § 201-1 *et seq.* Federal courts in Pennsylvania have held that "silence cannot amount to fraud in the absence of a duty to speak." *See e.g.*, *Gaines v. Krawczyk*, 354 F. Supp. 2d 573, 585-86 (W.D. Pa. 2004) (quotation omitted). According to LL, the company had no duty to disclose the alleged defects because there was no confidential or fiduciary relationship between the parties. See *id.*

Under Pennsylvania law, however, a duty to speak may arise outside the context of a fiduciary relationship. In particular, a duty arises where a party to a transaction is the sole source of information about the product, or the defects in the product are not reasonably discoverable to the purchaser. *See Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 612 (3d Cir. 1995); *Zwiercan v. Gen. Motors. Corp.*, 58 Pa. D. & C. 4th 251, 2002 WL 3105383, at *3 (Pa.

Com. Pl. 2002); *see also Gaines*, 354 F. Supp. 2d at 586 (acknowledging that a duty to speak may arise even outside of a confidential or fiduciary relationship). Plaintiffs argue LL was the only source of information about the reliability of its bamboo flooring. Accordingly, they insist, a reasonable jury could conclude LL had a duty to disclose the flooring's inability to withstand typical residential conditions.

Plaintiffs have the stronger argument. Plaintiffs have adduced sufficient evidence to enable a reasonable fact-finder to conclude the defects in LLs flooring were not reasonably discoverable prior to purchase, thereby giving rise to a duty to disclose under Pennsylvania law. Accordingly, summary judgment is denied with respect to the Pennsylvania claim.[5]

*f.  West Virginia Class Claim*

The West Virginia claim arises under West Virginia's Consumer Credit and Protection Act. W. Va. Code § 46A-6-101. This statute provides for relief where a plaintiff has shown "the concealment, suppression or omission of any material fact" and that the defendant intended for consumers to rely on that omission. *Id.* § 46A-6-102(7)(M). LL ultimately reprises its arguments that Plaintiffs cannot show the existence of a uniform defect, that LL had knowledge of said defect, that LL intended to omit material facts, or that LL in fact concealed moisture-related problems. As each of these arguments has already been rejected, summary judgment is denied with respect to the West Virginia claim.

**C.  Motions to Seal**

LL and Plaintiffs each seek to seal documents associated with this motion for summary judgment. *See* Dockets 241, 247, 251. These requests to seal are proper, with two exceptions. First, LL seeks to seal the Simpson Gumpertz & Heger ("SGH") report in its entirety. *See* Docket 241-21. This request is clearly too broad. In particular, SGH's methods, observations, and conclusions are likely not sealable. To the extent that the SGH report discloses sensitive sales data, pricing information, or information about LL's business strategy, these facts may be redacted.

---

[5] LL's remaining arguments regarding the Pennsylvania claim reprise arguments already rejected in the preceding sections of this order.

Most of this report should, however, be made available to the public. Plaintiffs' redactions of their opposition brief are similarly overbroad. Docket 247-4. For example, general statements by LL staff regarding customer complaints and moisture-related problems with the bamboo flooring are not sealable. Similarly, general statements that LL's bamboo flooring is manufactured using the same raw materials and basic process does not appear particularly sensitive. These are merely a few examples of the sorts of statements that cannot appropriately be sealed.

The parties shall meet and confer in an attempt to agree on the narrowest possible sealing order with respect to these two documents and shall jointly submit such a proposed order no later than January 18, 2019. The proposed order shall clearly identify the portions of these two documents that the parties agree should be filed under seal and concisely state the basis for such sealing consistent with Local Rule 79-5. The parties' remaining requests to seal are granted.

## IV. CONCLUSION

For the reasons set forth above, LL's motion for summary judgment is denied in its entirety.

**IT IS SO ORDERED**.

Dated: 01/02/2019

RICHARD SEEBORG
United States District Judge