Jeffrey B. Cereghino, SBN #099480
Email: jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP
101 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone: (415) 433-4949

Michael F. Ram, SBN #104805
Email: mram@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040

Charles J. LaDuca, Admitted Pro Hac Vice
Email:  charles@cuneolaw.com
Brendan Thompson, Admitted Pro Hac Vice
Email:  brendant@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 200016
Telephone:  (202) 789-3960

*Class Counsel*

*[Additional Counsel Appear on Signature Page]*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, TAMMY EMERY, MARY LOUISE FERENCE, LAURA NORRIS, DONALD FURSMAN, and JOHN TRIANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | No.  3:14-cv-05373-RS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION<br>Complaint Filed:  December 8, 2014<br><br>The Honorable Richard Seeborg<br>DATE:        November 14, 2019<br>TIME:        1:30 p.m.<br>LOCATION:    Courtroom 3 - 17th Floor |

TO:     THE CLERK OF THE COURT; and

TO:     DEFENDANT LUMBER LIQUIDATORS, INC. AND ITS ATTORNEYS OF
RECORD:

PLEASE TAKE NOTICE that on November 14, 2019 at 1:30 p.m., in Courtroom 3, 17th Floor, of the San Francisco Courthouse for the U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs will move for preliminary approval of a class action settlement.

This motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Michael F. Ram and Julie N. Green, the records and file in this action, and on such other matter as may be presented before or at the hearing of the motion.

# TABLE OF CONTENTS

**Page Number**

I.    INTRODUCTION .......................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................... 1

   A.  Plaintiffs' claims ........................................................................................ 1

   B.  The Court denies Lumber Liquidators' motion to dismiss............................ 2

   C.  Plaintiffs engage in discovery and work with experts................................... 2

   D.  The Court grants class certification, the Ninth Circuit denies Lumber Liquidators'
       Rule 23(f) petition, and Class Members receive notice. ................................. 3

   E.  The parties prepare for trial. ......................................................................... 4

   F.  The parties negotiate the settlement. ............................................................ 5

   G.  Settlement terms ........................................................................................ 5

       1.    The proposed Settlement Class ............................................................ 5

       2.    The relief to Settlement Class Members .............................................. 6

       3.    The proposed release ........................................................................... 6

       4.    The Proposed Settlement Administrator ............................................... 6

       5.    CAFA Notice ...................................................................................... 7

III.  STATEMENT OF ISSUES............................................................................. 7

IV.   AUTHORITY AND ARGUMENT ............................................................... 7

   A.  The Settlement Class should be preliminarily certified. .................................. 7

   B.  The Settlement Class satisfies the requirements of Rule 23(a). ...................... 8

   C.  The Settlement Class satisfies the requirements of Rule 23(b)(3). .................. 9

   1.  Common questions predominate over questions affecting individual
       class members............................................................................................. 9

       2.    A class action is superior to other available methods of adjudication. .................... 11

B.  The proposed settlement should be preliminarily approved. ........................................... 12

   1.     The settlement is the result of arm's-length, non-collusive negotiations................. 13

   2.     The relief provided by the settlement is adequate taking into account the strength of Plaintiffs' case and the risk, cost, and delay of trial and appeal...................... 14

   3.     The settlement compares favorably to other similar settlements. ........................... 16

   4.     Counsel and the parties are well informed of the strengths and weaknesses of the claims and defenses and support the settlement. .......................................... 18

   5.     The Settlement Fund will be fairly allocated to Settlement Class Members. .......... 19

   6.     Class Counsel will request approval of a fair and reasonable fee............................ 22

C.  The Notice Plan complies with Rule 23(e) and due process. ........................................... 23

D.  The schedule for final approval ....................................................................................... 24

V.  **CONCLUSION** ................................................................................................................ 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**

28 U.S.C. § 1715(b)................................................................................................... 7

Class Action Fairness Act of 2005 ............................................................................ 7

**FEDERAL RULES**

Fed. R. Civ. P. 23 ........................................................................................... *passim*

**FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)............................................. 10, 23

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ................... 19

*Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007) .................................. 8

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ............ 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................. 15

*Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838
    (C.D. Cal. Apr. 4, 2016) ....................................................................................... 22

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)................................................... 6

*Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02858-JST, 2014 WL 1900682
    (N.D. Cal. May 12, 2014)...................................................................................... 16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................... 8

*Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2018 WL 4003286
    (N.D. Cal. Aug. 22, 2018) ..................................................................................... 10

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832
    (N.D. Cal. Apr. 22, 2010) ..................................................................................... 13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................... 9, 10, 16

*Hickox-Huffman v. US Airways, Inc.*, No. 10-cv-05193-VKD, 2018 WL 5291990
    (N.D. Cal. Oct. 22, 2018) ...................................................................................... 10

*Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358
    (N.D. Cal. Feb. 6, 2013) ........................................................................................ 22

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) .................. 11

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......................... 14

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 536661 (N.D. Cal., Feb. 11, 2019) ................................................. 10, 13

*In re Hyundai & Kia Fuel Econ. Litig.*, 15-56014, 2019 WL 2376831
   (9th Cir. June 6, 2019) ......................................................................... 9, 10

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing,
   Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 (AJT/TRJ)
   (E.D. Va. Oct. 9, 2018) ......................................................................... 15

*In re Nat'l Collegiate Athletic Ass'n*, No. 4:14-md-2541-CW, 2017 WL 6040065
   (N.D. Cal. Dec. 6, 2017) ........................................................................ 21

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ................................... 20

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................... 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC,
   2018 WL 2183253 (N.D. Cal. May 11, 2018) .............................................. 22

*Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2018 WL 5013764
   (W.D. Wash. Oct. 16, 2018) ..................................................................... 10

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
   (C.D. Cal. 2004) .............................................................................. 14, 19

*Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322 (W.D. Wash. 2009) ................................. 21

*Reickborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329
   (N.D. Cal. Feb. 3, 2015) ........................................................................ 16

*Rinky Dink, Inc. v. World Business Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073
   (W.D. Wash. May 31, 2016) ..................................................................... 15

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................... 13

*Schofield v. Delta Air Lines, Inc.*, No. 18-cv-00382-EMC, 2019 WL 955288
   (N.D. Cal. Feb. 27, 2019) ....................................................................... 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................. 20

*Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780 (9th Cir. 2007)................................ 22

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) .................................. 10

*Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 6439167
 (N.D. Cal. Dec. 7, 2018) ........................................................................................... 12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ................................... 9

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................... 11

*Vincent v. Hughes Air W.*, 557 F.2d 759 (9th Cir. 1977) ............................................ 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................. 8

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .................... 8, 11, 12

# I.    INTRODUCTION

Plaintiffs Dana Gold, Tammy Emery, Mary Louise Ference, Laura Norris, Donald Fursman, and John Triana move for preliminary approval of their proposed national class settlement with defendant Lumber Liquidators, Inc. After more than four years of hard-fought litigation, Lumber Liquidators has committed $14 million in cash and up to $16 million in store credit vouchers to fully resolve the claims of a proposed Settlement Class of all individuals in the United States and its territories who purchased Morning Star Strand Bamboo flooring (the "Flooring") for personal, family, or household use from January 1, 2012 to March 15, 2019.

The settlement merits preliminary approval. It was carefully negotiated at arm's-length with the assistance of experienced mediators after the parties completed complex and substantial discovery, the Court granted class certification and denied Lumber Liquidators' *Daubert* and summary judgment motions, and the parties and their counsel commenced trial preparations.  This resolution ensures that Settlement Class Members are compensated and eliminates the risk of trial, appeal, and collecting a judgment from a financially challenged defendant.

The proposed settlement was negotiated shortly before trial after more than four years of highly-contested litigation. It is fair, reasonable, and adequate, particularly in light of the risks and cost of continued litigation. Plaintiffs request that the Court grant their motion for preliminary approval, preliminarily certify the proposed national Settlement Class, and approve the proposed notice plan.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' claims

Plaintiff Dana Gold filed this class action lawsuit on December 8, 2014, alleging that Lumber Liquidators' Morning Star Bamboo Flooring was uniformly defective and would not last its warranted 30-year lifespan. ECF No. 1. Following amendments, Plaintiffs asserted claims for violations of the consumer protection laws of California, Florida, Illinois, Minnesota,

Pennsylvania, and West Virginia on behalf of proposed classes of consumers of each of those states, alleging that the Morning Star Strand Bamboo flooring was unable to withstand normal variations in a home's ambient moisture, causing the Flooring to buckle, warp, gap, shrink and splinter,  and that Lumber Liquidators concealed the defect from consumers. ECF Nos. 57, 63, 171, 223.

**B.      The Court denies Lumber Liquidators' motion to dismiss.**

Lumber Liquidators filed motions to dismiss Plaintiffs' claims and to strike some of Plaintiffs' class claims in August 2015. ECF Nos. 31-33. Plaintiffs opposed the motions. ECF Nos. 39-42. Following an October 26, 2015 hearing, ECF No. 49, the Court denied the motion to strike and granted, in part, and denied, in part, the motion to dismiss. ECF No. 54.

**C.      Plaintiffs engage in discovery and work with experts.**

The parties engaged in extensive discovery over several years. Plaintiffs served numerous interrogatories and requests for production on Lumber Liquidators and received approximately 855,000 pages of documents in response. Ram Decl. ¶ 4.  The parties conducted fourteen (14) fact witness depositions (of Lumber Liquidators employees, third-party witnesses, and the Named Representatives) and seven (7) expert depositions. *Id.*  Plaintiffs also served subpoenas on two inspection groups that work with Lumber Liquidators to inspect warranty claim submissions. *Id.*

Each Plaintiff responded to Lumber Liquidators' document requests and interrogatories, sat for deposition, and had the Flooring in their home inspected by Lumber Liquidators' expert. *Id.*

Plaintiffs also retained and worked closely with several experts. Engineers Peter Nelson and Emily Hopps of Simpson, Gumpertz & Heger inspected and tested the Flooring and reviewed Lumber Liquidators' internal documents. Ram Dec. ¶ 5.  They produced a report in support of Plaintiff's motion for class certification and a supplemental report before trial and were deposed twice. *Id.* Daniel Harrington is a bamboo flooring expert who opined on the replacement of Plaintiffs' and class members' flooring. *Id.*  He provided a declaration in

support of class certification and a subsequent report and was also deposed twice. *Id.* Phil

Waier, formerly of R.S. Means, provided a damages model that assessed the cost of removing

class members' defective Flooring, the cost of the replacement product, and the cost of labor.

*Id.* Mr. Waier was also deposed twice. *Id.*

> **D.** **The Court grants class certification, the Ninth Circuit denies Lumber Liquidators' Rule 23(f) petition, and Class Members receive notice.**

In February 2017, Plaintiffs filed a motion, supported by substantial evidence and

expert testimony, requesting certification of six state classes of Morning Star Bamboo flooring

purchasers. ECF Nos. 111-15. Extensive briefing followed Plaintiffs' certification motion.

Lumber Liquidators opposed Plaintiffs' motion and moved to strike Plaintiffs' experts'

testimony. ECF Nos. 132-33. Plaintiffs filed a reply and opposed the motion to strike. ECF

Nos. 138, 143-44. Lumber Liquidators filed a reply to its motion to strike and a sur-reply to

Plaintiffs' certification motion. ECF Nos. 140, 152. The parties also briefed Plaintiffs' motion

for leave to amend their complaint to narrow the proposed class definitions. ECF Nos. 154-55,

165, 166-67. After the district court ruled on the motion for leave to amend, the parties filed

supplemental briefs addressing class certification and the *Daubert* motion. ECF Nos. 176, 177-

78.

Following a hearing, the district court granted Plaintiffs' motion and certified classes of

consumers in California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia who

purchased Lumber Liquidators' Morning Star Strand Bamboo flooring from January 1, 2008 to

the present. The court denied Lumber Liquidators' motion to exclude the testimony of

Plaintiffs' experts except as to testimony relating to whether the company should have expected

the alleged defect and was aware of it. ECF No. 215. Plaintiffs then filed a motion to correct

the California Class definition. ECF No. 219.  The Court granted the motion. ECF No. 222.

The parties subsequently stipulated to narrow the class period. ECF Nos. 243-44.

Lumber Liquidators filed a Rule 23(f) petition, which Plaintiffs opposed.  Ram Decl. ¶

7. After the Court amended the California Class definition, Lumber Liquidators filed an

---

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                    CASE NO. 3:14-CV-05373-RS

1   amended Rule 23(f) petition. Plaintiffs filed an opposition. *Id.* The Ninth Circuit denied the

2   petition on March 1, 2018. *Id.*

3        Plaintiffs worked with notice administrator Rust Inc. to prepare a proposed notice plan

4   consisting of direct mail and publication notice. ECF No. 245. The Court approved the notice

5   plan on September 28, 2018. ECF No. 246. Rust implemented the notice program approved by

6   this Court.  Lumber Liquidators provided a detailed customer database that enabled notices to

7   be directly mailed to class members.  Litigation notice was augmented by a web-based notice

8   program on social media and publication in several industry related magazines.  Only 18 class

9   members opted out of the class.  Ram Decl., ¶ 8.  The Court denied Lumber Liquidators'

10  motion to dismiss on jurisdictional grounds and motion for summary judgment.

11       Lumber Liquidators moved to dismiss Plaintiffs' complaint under Rule 12(b)(2),

12  arguing that the Court lacked jurisdiction over Lumber Liquidators as to the non-California

13  Plaintiffs and classes. ECF No. 172. Plaintiffs opposed. ECF No. 185. Lumber Liquidators also

14  moved to transfer the case to the Eastern District of Virginia. ECF No. 191. Plaintiffs opposed

15  that motion as well. ECF No. 196. The Court denied both motions. ECF No. 206.

16       Lumber Liquidators filed a motion for summary judgment on August 15, 2018, arguing

17  that all of Plaintiffs' claims should be dismiss on various factual and legal grounds. ECF No.

18  241. Plaintiffs opposed. ECF No. 247. The Court denied the motion on January 2, 2019. ECF

19  No. 256.

20       **E.**    **The parties prepare for trial.**

21       While Lumber Liquidators' motion for summary judgment was pending and after the

22  Court's order denying it, the parties focused on preparing for trial. Trial was scheduled to begin

23  on February 25, 2019. Plaintiffs worked on a proposed trial plan, compiled documents and

24  deposition excerpts to use as evidence, prepared Plaintiffs, class members, and experts for

25  witness testimony, and worked on the joint pretrial statement. Ram Decl. ¶ 9.

26  \\\

27  \\\

**F.     The parties negotiate the settlement.**

The parties participated in mediations on December 13, 2017 and January 26, 2018 with the Honorable Edward A. Infante (Ret.) (JAMS); and May 17, 2018 and October 4, 2018 with Bruce A. Friedman (JAMS). Ram Decl. ¶ 10.  The parties continued to work to finalize the terms of the settlement, including numerous e-mail exchanges and conference calls to come to an agreement on the settlement details.  *Id.*

**G.     Settlement terms**

The terms of the settlement are memorialized in the parties' Class Action Settlement Agreement ("SA"), attached as Exhibit 1 to the Ram Declaration.

1.     The proposed Settlement Class

The proposed Settlement Class is broader than the six state classes the Court previously certified because it includes purchasers in all fifty states and the United States territories. The Settlement Class is defined as:

> All individuals in any of the fifty states and all territories of the United States who purchased, for personal, family, or household use, Morning Star Strand Bamboo Flooring sold by Lumber Liquidators, Inc. from January 1, 2012 to the present.
>
> Excluded from the Settlement Class are Defendant, its legal representatives, assigns and successors, and any entity in which Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

The expansion of the proposed Settlement Class will provide relief to all purchasers of Lumber Liquidators' Morning Star Bamboo flooring since January 1, 2012 throughout the United States and its territories. The expanded Settlement Class will also allow Lumber Liquidators to resolve all potential claims relating to the flooring as part of a single settlement. As discussed below, it is appropriate to certify the Settlement Class (for settlement purposes only) because the same overarching common issues predominate over individualized issues and the other Rule 23 requirements remain satisfied.

\\\

2.     The relief to Settlement Class Members

Lumber Liquidators will pay $14 million in cash and $14 million in store credit vouchers to resolve this case.  SA § nn (under "Definitions"), and A.1.  If more than 7% of Settlement Class Members file valid claims, Lumber Liquidators will pay an additional $2 million in store credit vouchers.  SA § A.1. No amount of the Settlement Fund will revert to Lumber Liquidators.

If the $14 million cash portion of the Settlement Fund is not exhausted after payment of all claims, attorneys' fees, costs, service awards, and administration costs, an additional proportional payment will be made to all Settlement Class Members who received a cash payment. SA § 6(a). If any amount of the cash portion of the Settlement Fund remains (because, for example, of uncashed checks), Plaintiffs propose to distribute the remaining cash *cy pres* to Habitat for Humanities. SA § B.6.(c).  This recipient is related to the subject matter of the lawsuit and to Settlement Class Members because it provides housing for people in need. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (requiring "a driving nexus between the plaintiff class and the *cy pres* beneficiaries" (citation omitted)).  Counsel and the parties have no relationship with Habitat for Humanities.  Ram Decl. ¶ 11.

3.     The proposed release

In exchange for receiving the settlement benefits, Settlement Class Members will release all claims asserted in this case or that they could have asserted or could in the future assert against the Released Parties relating to the claims asserted in this case and their purchase and use of Morning Star Strand Bamboo flooring. SA §§ A – E (RELEASE BY ALL SETTLEMENT CLASS MEMBERS).

4.     The Proposed Settlement Administrator

The proposed settlement administrator is CPT Group.  Three settlement administrators s Counsel reviewed the proposals and picked CPT Group based on their pricing and experience. Ram Decl., ¶ 12.  The anticipated cost of notice and administration is estimated at $500,000. Declaration of Julie N. Green On Behalf Of CPT Group, Inc. in Support of Motion For

Preliminary Approval ("Green Decl."), ¶ 26, attached as Exhibit B to SA.  This will come out of the settlement fund.  SA, ¶ 1.A.  It is reasonable relative to the value of the settlement.

5. <u>CAFA Notice</u>

This settlement is subject to the requirements of the Class Action Fairness Act of 2005, which requires that notice containing certain required information be served upon the appropriate State and Federal officials within ten days of the filing of a proposed settlement. 28 U.S.C. § 1715(b). The Settlement Administrator will prepare and mail the CAFA notice. SA § c. ("Definitions").

## III.    STATEMENT OF ISSUES

Whether the Court should grant preliminary approval of the proposed settlement so the Settlement Class may receive notice of its terms.

## IV.    AUTHORITY AND ARGUMENT

The Court's role at preliminary approval is to determine whether it is appropriate to provide notice of the proposed settlement to the class. Because the proposed Settlement Class is broader than the classes the Court previously certified, Plaintiffs first address certification of the Settlement Class. Plaintiffs then address the merits of the proposed settlement. Finally, Plaintiffs discuss the proposed Notice Plan and a proposed schedule for final approval.

**A.    The Settlement Class should be preliminarily certified.**

The Settlement Class satisfies the requirements of Rule 23 (a) and (b)(3).[1] The Rule 23(a) requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." \\\

---

[1] For settlement purposes only, Lumber Liquidators does not dispute this characterization. If the proposed settlement is not approved, Lumber Liquidators reserves its right to contest national class certification.

**B.     The Settlement Class satisfies the requirements of Rule 23(a).**

The proposed Settlement Class satisfies the numerosity requirement. As the Court recognized, the six single-state classes the Court previously certified each had well over one thousand members, satisfying numerosity. ECF No. 215 at 4. The broader nationwide class has approximately 300,000 class members, also satisfying the requirement. *See Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). As the Court recognized in its class certification order, the common question of "whether the flooring's inability to withstand normal humidity changes undermines its durability and/or makes it unable to last the promised 30 years" is "'central to the validity' of the claims of all class members and is capable of resolution in 'one stroke.'" ECF No. 215 at 6 (quoting *Dukes*, 564 U.S. at 350). This same common question is at the heart of the claims of all members of the broader Settlement Class as well.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of Settlement Class members because they stem from the same alleged design defect and seek relief under the same legal theories. ECF No. 215 at 7-8; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (typicality was satisfied where the tires on all class members' vehicles suffered from the same alleged defect and regardless of manifestation of the defect).

Finally, the adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this determination, "courts must resolve two questions: '(1) do the named plaintiffs and their

counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted). The Court previously found that Plaintiffs have no conflict of interest with the other proposed class members and have demonstrated their commitment to the class by actively participating in the litigation. ECF No. 215 at 8-10.[2] Nothing has changed. Plaintiffs and their counsel have continued to vigorously represent the class and have no conflicts of interest with any Settlement Class Members.

### C.   The Settlement Class satisfies the requirements of Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Both requirements are satisfied for the Settlement Class, just as they were in the context of contested class certification. *See* ECF No. 215 at 10-16.

#### 1.   Common questions predominate over questions affecting individual class members.

"When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) (citation omitted); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.").  In cases involving consumer fraud, predominance is "'readily met'" because "a company's mass marketing efforts, common to all consumers, misrepresented the company's product[.]"  *In re Hyundai & Kia Fuel Econ. Litig.*, 15-56014, 2019 WL 2376831,

---

[2] The Court found that Plaintiff Mendez was not an adequate representative. *Id.* Plaintiffs substituted Mary Louise Ference in his place. ECF No. 223.

at *7 (9th Cir. June 6, 2019) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997)).

Moreover, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or for settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *7.  As the Supreme Court has explained, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.  "Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *7 (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2018)).

The Ninth Circuit has held that "differences between state consumer protection laws" do not preclude certification of a Rule 23(b)(3) settlement class where there is a "common nucleus of facts and potential legal remedies." *Hanlon,* 150 F.3d at 1022-23; *see In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *8; *see* also *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301, 303-04 (3d Cir. 2011) (stating that "variations in the rights and remedies available to injured class members under the various laws of the fifty states [do] not defeat commonality and predominance" for certifying a settlement class because settlement "obviates the difficulties inherent in proving the elements of varied claims at trial[.]").

Recent cases have approved nationwide settlement classes based on state law claims: *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 2019 WL 2376831, at *13, *18 (certifying nationwide settlement class applying California consumer protection law); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2018 WL 4003286, at *4 (N.D. Cal. Aug. 22, 2018) (state law breach of contract claims); *see also Hickox-Huffman v. US Airways, Inc.*, No. 10-cv-05193-VKD, 2018 WL 5291990, at *1-2 (N.D. Cal. Oct. 22, 2018) (breach of contract claim); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *7 (N.D. Cal., Feb. 11, 2019)("there are common patterns on the certain key elements among the various state laws" of misrepresentation, fraudulent concealment,

consumer protection, and implied and express warranty); *Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2018 WL 5013764, at *1, 5 (W.D. Wash. Oct. 16, 2018) (certifying for settlement purposes consumer protection and warranty claims asserted by a nationwide class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, (N.D. Cal. Aug. 15, 2018) (certifying claims for breach of contract and negligence for settlement purposes).

Common questions predominate over any questions affecting only individual members. The common questions include whether Lumber Liquidators failed to disclose the defect, namely that the Flooring was unable to withstand normal variations in the home's ambient moisture through its advertising, warranties and other express representations. Other common questions include whether Settlement Class Members were harmed, and whether Settlement Class Members are entitled to relief. These common questions are all based on a common set of facts and can be resolved using the same evidence for all class members making class certification appropriate. As in *Hanlon*, here, the common questions present "a significant aspect of the case" such that "they can be resolved for all members of the class in a single adjudication,"

One question common to all Settlement Class members is whether the Flooring is defective.

2.      A class action is superior to other available methods of adjudication.

Class certification is "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The purpose of the superiority requirement is to ensure judicial economy and that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (citation omitted). Courts consider four factors in evaluating the superiority requirement:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims

1  in the particular forum; and

2      (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

3

4      Classwide resolution is the only practical method of addressing the allegedly wrongful

conduct at issue in this case. Pursuing individual claims against a well-defended company like

5

Lumber Liquidators would be prohibitively expensive.  *See Valentino v. Carter-Wallace, Inc.*,

6

97 F.3d 1227, 1234-35 (9th Cir. 1996) ("A class action is the superior method for managing

7

litigation if no realistic alternative exists."). It is also "far more efficient" to litigate Plaintiffs'

8

claims "on a classwide basis rather than in thousands of individual and overlapping suits."

9

*Wolin*, 617 F.3d at 1176. Plaintiffs are not aware of any pending litigation involving the same

10

claims, and this Court is well-positioned to oversee the resolution of these claims on a

11

classwide basis given its familiarity with the issues.

12      **B.      The proposed settlement should be preliminarily approved.**

13      While courts agree that their role at preliminary approval is to determine whether it is

14

appropriate to send notice of a proposed settlement to the class, they do not always use the

15

same standard to make that determination. In the past, courts have focused only on whether the

16

proposed agreement appears to be non-collusive, is free of "obvious deficiencies," and

17

generally falls within the range of "possible" approval. *See, e.g., In re Tableware Antitrust*

18

*Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007); *see also Terry v. Hoovestol, Inc.*, No.

19

16-cv-05183-JST, 2018 WL 6439167, at *4 (N.D. Cal. Dec. 7, 2018). Some courts in this

20

district have applied the factors set forth in *Hanlon*, 150 F.3d at 1026, and *Churchill Village,*

21

*L.L.C. v. General Electric*, 361 F.3d 566, 575-76 (9th Cir. 2004), which are used by courts to

22

determine whether a settlement is fair, adequate, and reasonable at the final approval stage.

23

24          (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
          likely duration of further litigation; (3) the risk of maintaining class action status
25          through trial; (4) the amount offered in settlement; (5) the extent of discovery
          completed and the stage of the proceedings; (6) the experience and views of
26          counsel; (7) the presence of a governmental participant; (8) the reaction of the
          class members to the proposed settlement; and (9) whether the settlement is a
27          product of collusion among the parties.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT               CASE NO. 3:14-CV-05373-RS

The recent amendments to Rule 23(e) provide additional guidance, requiring parties to provide courts with sufficient information to determine that it will likely be able to approve the settlement as fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(B)(i).[3] Plaintiffs will address the factors outlined by all three standards, many of which overlap. In addition, Plaintiffs will provide the information outlined in the Northern District of California's Procedural Guidance for Class Action Settlements. *See generally In re Chrysler-Dodge-Jeep*, 2019 WL 536661, at \*8-10 (considering the Procedural Guidance and the overlapping factors courts in this Circuit consider at preliminary approval).

>    1.    The settlement is the result of arm's-length, non-collusive negotiations.

The parties negotiated the settlement at arm's length over the course of approximately two years with the assistance of two experienced mediators. The parties mediated four times with two different mediators, and frequently exchanged information *inter alia* related to the Defendant's financial condition, candid assessments of estimated trial results and consequences. This negotiation process favors approval of the settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *Schofield v. Delta Air Lines, Inc.*, No. 18-cv-00382-EMC, 2019 WL 955288, at \*6 (N.D. Cal. Feb. 27, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." (citation omitted)). Courts "may presume that through negotiation, the Parties,

---

[3] The considerations are whether:
>    (A) the class representatives and class counsel have adequately represented the class;
>    (B) the proposal was negotiated at arm's length;
>    (C) the relief provided for the class is adequate, taking into account:
>    >    (i) the costs, risks, and delay of trial and appeal;
>    >    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    >    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    >    (iv) any agreement required to be identified under Rule 23(e)(3[made in connection with the proposed settlement]; and
>    (D) the proposal treats class members equitably relative to each other.

counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). In addition, none of the "red flags" the Ninth Circuit identified as potentially suggesting collusion—when counsel receive a disproportionate portion of the settlement, a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, or a reversion of any funds to the defendant—is present here. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). No discussion of attorney fees occurred whatsoever in the negotiations. Ram Decl., ¶ 10.

        2.      <u>The relief provided by the settlement is adequate taking into account the strength of Plaintiffs' case and the risk, cost, and delay of trial and appeal.</u>

Lumber Liquidators has agreed to pay $14 million in cash and up to $16 million in store credit vouchers to settle Plaintiffs' and Settlement Class Members' claims. The Settlement Fund will be used to pay the costs of notice and settlement administration, attorneys' fees, costs and expenses, and service awards to the Plaintiffs. Once these amounts are paid, the remainder of the Settlement Fund and approximately $14,000,000 in vouchers and $2,000,000 more if 7% claims rate is achieved will be distributed to Settlement Class Members who timely file a claim form.  SA, ¶ A.1.a.-e.

The proposed Settlement is a fair resolution of Plaintiffs' claims given the risk of trial and the inevitable appeals if Plaintiffs prevailed. Plaintiffs believe they have a case for liability and have the evidence to prove that the Morning Star Bamboo flooring does not withstand normal variations in a home's ambient moisture. But, success was not guaranteed. Lumber Liquidators contends that its flooring is not defective and asserted several defenses to Plaintiffs' claims. Lumber Liquidators is represented by highly skilled counsel who would undoubtedly continue to vigorously defend their client. And the Court expressed some skepticism about the persuasiveness of Plaintiffs' experts' opinions in its class certification order. Dkt. No. 215 at 17.

Plaintiffs would not only have to prevail at trial, but also retain any favorable judgment

through the appellate process. Litigating this case through trial and any appeals would be expensive and time-consuming and would present risk to both parties. *See Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.").

Even if Plaintiffs prevailed, they likely faced difficulty collecting on a judgment. Evidence that a defendant cannot pay a larger settlement or judgment supports settlement approval. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1295 (9th Cir. 1992) (courts consider whether the defendant can pay a large judgment or a larger settlement); *see also Rinky Dink, Inc. v. World Business Lenders, LLC*, No. C14-0268-JCC, 2016 WL 3087073, at *2 (W.D. Wash. May 31, 2016) (approving settlement providing class members a fraction of their statutory damages because the defendants' financial condition meant "they are unable to pay a larger settlement amount").

Proving damages was one of the challenges in this case. Plaintiffs intended to seek aggregate damages totaling the cost of the product or the cost of removal and replacement, with an alternative award based on per square foot measures of actual damaged Flooring. Lumber Liquidators intended to challenge these methods of calculating damages. Regardless, it is unlikely that Lumber Liquidators could pay any sizeable judgment. Lumber Liquidators recently settled the MDL claims relating to its laminate flooring products for $22 million in cash and $14 million in store credit vouchers. *See* Order at 4, *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 (AJT/TRJ) (E.D. Va. Oct. 9, 2018), ECF No. 1705. As the court explained in granting final approval of that settlement, Lumber Liquidators' "financial situation presented a significant challenge during settlement negotiations." *Id.* at 11. Lumber Liquidators "has also paid millions of dollars in regulatory fines and destroyed millions of dollars in nonconforming inventory." *Id.* at 11-12. In addition, Lumber Liquidators' "stock

decreased from a high of $114.19 per share in October 2013 to an August 2018 price of $17.31 per share." *Id.* at 11. As of September 24, 2019, the stock closed at $9.08 per share.[4]  Just as in the MDL, given the volume of product at issue and the company's financial condition—combined with the amounts it has paid to resolve the MDL claims—"Lumber Liquidators could never afford to satisfy a judgment that awarded anything close to a full refund for purchasers." *Id.* at 12; *see also Reickborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding the defendants' financial condition "highlights the reasonableness of the settlement amount").

The settlement provides class members with cash payments and store credit vouchers, that can be used for any product in a Lumber Liquidators store or installation labor costs from Lumber Liquidators flooring installation network. It eliminates the risk of later payments at a reduced rate due to higher costs and losses in the course of litigation—and the risk of no payment at all. "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations to the class." *Dyer v. Wells Fargo Bank, N.A.*, No. 13-cv-02858-JST, 2014 WL 1900682, at *6 (N.D. Cal. May 12, 2014); *see also Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

3.     The settlement compares favorably to other similar settlements.

Below is the information about Lead Class Counsel's past comparable settlements requested by the Northern District of California's Procedural Guidance for Class Action Settlements. The principal case which bears relevance is *In re Kitec Plumbing Systems Liability Litig.*, MDL No. 3:09-md-2098-F (N.D. Tex. 2009), which is referenced below.  It was a national class, with a comparable class size and involved plumbing components in residences and other structures.  The case had compensation variables more complex than this matter, but still involved submission of claims forms with supporting documentation. Perhaps more on

---

[4] https://www.marketwatch.com/investing/stock/ll.

point, but not a case that involved class counsel, is Lumber Liquidators MDL referenced above. In the MDL the estimated class size was over 760,000. Relative to the class size in this matter, approximately 300,000, it was about 2.5 times larger. However, the class member compensation delta between both cases is only six million, which augers well for the value of this settlement when contrasting class compensation and class size.

The Lumber Liquidators MDL approved settlement provided for 22 million in cash and 14 million in vouchers. The present proposed settlement class is less than 40% of the Lumber Liquidators MDL approved class, but the class benefits are almost 84% of the Lumber Liquidators MDL classes. The value of the vouchers in the proposed settlement is directly related to the physical damage to the Flooring, which generated this case. In the MDL the issue had nothing to do with physical damage, but rather involved economic loss. In the proposed settlement class members can use the vouchers to repair their damaged floor, or replace them with different products and include labor costs in that compensation.

|  | *In re Kitec Plumbing Systems Liability Litig.*, MDL No. 3:09-md-2098-F (N.D. Tex.) | *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 (AJT/TRJ) (E.D. Va.) |
|---|---|---|
| **Settlement fund** | $125,000,000.00 | $36,000,000.00 |
| **Number of class members** | Unknown | Approximately 760,000 |
| **Number of class members to whom notice was sent** | 13,264 | Unknown, but over one million emails and postcards sent, and with the online banner ads, approximately 73% of class received notice |
| **Methods of notice** | Notice Program, Media Campaign | E-mail, postcards, online banner advertisements |

|  | *In re Kitec Plumbing Systems Liability Litig.*, MDL No. 3:09-md-2098-F (N.D. Tex.) | *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 (AJT/TRJ) (E.D. Va.) |
|---|---|---|
| **Claim forms submitted** | 5,744 | 178,859 (as of 10/9/18 date of final approval) |
| **Amounts distributed to cy pres recipients** | 41 payments for total of $182,500.00 | Unknown at this time |
| **Administrative costs** | Invoiced to date - $1,436,744.16 | Unknown at this time |
| **Attorneys' fees and costs** | $25,000,000.00 | Fees have not yet been awarded but will be up to 33.3% of $36,000,000 Settlement Fund |
| **Non-monetary relief available (e.g., discount coupons)** | None | $14,000,000 in vouchers |
| **Number of class members who availed themselves of non-monetary relief** | N/A | Unknown at this time |
| **Aggregate value of non-monetary relief redeemed by class members or assignees or transferees** | N/A | Unknown – claims process still pending |
| **Injunctive relief and benefit to class** |  | N/A |

\\\

\\\

4.   Counsel and the parties are well informed of the strengths and weaknesses of the claims and defenses and support the settlement.

Because this case has been litigated for more than four years, through a motion for class certification and Rule 23(f) petition, summary judgment, and trial preparation, counsel and the parties are well versed in the claims and defenses. The Court's rulings on the various motions provided the parties and their counsel with additional insight into the strengths and weaknesses of their respective positions. Plaintiffs also engaged in substantial discovery, including receiving and reviewing 855,000 pages of documents produced by Lumber Liquidators and third parties, and taking 21 depositions. It is with this foundation that Class Counsel, who are experienced in litigating, and trying to verdict these types of class action cases, endorse the settlement. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." (citation omitted)); *Nat'l Rural Telcoms*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

5.   The Settlement Fund will be fairly allocated to Settlement Class Members.

The plan of allocation will be fair and equal to all class members. Class Counsel suggests two compensation levels, which correspond with the nature of the claims and damages articulated in this litigation.

Compensation Level One Benefits will be predicated upon amount of Product purchased and installed in class members' homes. This information will be determined via Defendant's records or by a claimant's submission. All class members are entitled to submit a claim and compensation will be determined on a pro-rata basis and equally distributed. Class counsel anticipates a combination of cash and vouchers to be allocated to Compensation Level One Benefit claimants.

1    Compensation Level Two Benefits are related to actual compensable damage and the

2    amount of the damage.  Claimants will submit the actual or estimated cost of any repairs

3    directly related to the claims made in this litigation. Claimants will submit photographs of their

4    flooring following simple claims guidelines that demonstrate a manifestation of the conditions

5    plead in the operative class complaint, such as warping, gapping, shrinking, cupping and

6    splintering. The repair estimates must also meet claims guidelines, which will include

7    statements about the cause of the manifested damage, the scope of the damage, any related non-

8    flooring elements that are impacted by the intended repair, such as baseboards. Class members

9    who submit Compensation Level Two Benefits claims will be eligible for Compensation Level

10   One Benefits claims except for a deduction for flooring square footage in an approved

11   Compensation Level Two Benefits claim.

12   Class Counsel, in consultation with the Claims Administrator and prior experiences in

13   similar class cases, estimates the claims rate to range between 10 and 20%.  Utilizing that

14   claims rate range, Class Counsel estimates compensation on average to be between 15% and

15   20% of the Flooring purchase price for Compensation Level One Benefits to class members.

16   The average payment is based on an average per home install cost of $1,542. This amount was

17   established during the discovery process.

18   The forgoing is predicated upon Class Counsel's and the Claims Administrator's

19   experience in dozens of building product cases. Compensation Level Two Benefits claimants

20   are estimated to have a claims rate between 15% and 25%, however the percentage of

21   Compensation Level Two claimants relative to class size is expected to be lower.  That

22   expectation is informed by Defendant's warranty claim rate for claimants complaining of the

23   manifestation of damage (under 10%), Class Counsel's interaction with class members, and

24   Class Counsel's observations of class representatives' homes as to amount of flooring

25   manifesting damage relative to the total floor area. The estimated range of compensation is

26   between 50% and 65% of the Flooring repair or replacement costs, however amount of damage

27   Flooring and labor rates may alter these estimates.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          CASE NO. 3:14-CV-05373-RS

1    Once again, claimants will receive a combination of cash and vouchers to be determined

2    by Class Counsel upon completion of the claims period and identification of eligible claimants.

3    It is anticipated that Compensation Level Two class members may receive a high pro-rata

4    distribution than Compensation Level One claimants due to their damaged Flooring, and the

5    absence of damage in Compensation Level One claimants.  In addition, the Claim Form

6    provides for an election by Compensation Level Two claimants as to whether they prefer more

7    cash and less Store-credit vouchers or the opposite.  Those claimants electing Store-credit

8    Vouchers will likely receive a higher value compensation.

9    Plaintiffs will request service awards of $7,500 each. The Ninth Circuit has explained

10   that service awards that are "intended to compensate class representatives for work undertaken

11   on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust*

12   *Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). The factors courts consider include

13   the class representative's actions to protect the interests of the class, the degree to which the

14   class has benefitted from those actions, the time and effort the class representative expended in

15   pursuing the litigation, and any risk the class representative assumed. *Staton v. Boeing Co.*, 327

16   F.3d 938, 977 (9th Cir. 2003). Plaintiffs devoted significant time assisting Class Counsel in this

17   case over the past four years, including assisting with development of the case, responding to

18   discovery, being deposed, and having their flooring inspected by Lumber Liquidators. Ram

19   Decl. ¶ 14.  Service awards of $7,500 are reasonable and in line with awards approved by

20   federal courts in California and elsewhere. *See, e.g., In re Nat'l Collegiate Athletic Ass'n*, No.

21   4:14-md-2541-CW, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (awarding $20,000

22   incentive awards to each of four class representatives and collecting cases approving similar

23   awards); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329-30 & n.9 (W.D. Wash.

24   2009) (collecting cases approving awards ranging from $5,000 to $40,000).

25   \\\

26   \\\

27   \\\

---

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                    CASE NO. 3:14-CV-05373-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

6.      Class Counsel will request approval of a fair and reasonable fee.

Class Counsel will file a motion for an attorneys' fee award of up to 33.33% of the Settlement Fund and for reimbursement of their approximately $879,409 in out-of-pocket litigation costs. As of March 2019, Class Counsel have incurred over $8,451,396 in lodestar, litigating and settling this case. Ram Decl. ¶ 16.

Class Counsel's current lodestar is $8,451,396. It will increase.  Thus, a 33.33 % fee of $28 to $30 million will represent only a modest multiplier for a case where Plaintiffs certified six classes, survived summary judgment, and were ready for trial.

The Court in *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 used the face value of the vouchers, finding that the vouchers were not coupons under CAFA because they can be redeemed for flooring at the same rate as customers who purchase with cash and do not require class members to make additional purchases with their own money. Taking the vouchers at face value, Class Counsel's fee request represents a multiplier of 1.1 to 1.2 on their current lodestar, which is within the typical range of multipliers in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) Courts often approve higher multipliers appropriate when using the lodestar method as a crosscheck for an award based on the percentage method. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of approximately 6.85 was "well within the range of multipliers that courts have allowed" when crosschecking a fee based on a percentage of the fund); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (4.375 multiplier was reasonable in crosschecking a fee of 25% of a settlement fund). Here, Class Counsel's lodestar will increase (reducing the multiplier) as the settlement process progresses, including time attending the preliminary approval hearing and, if the Court grants preliminary approval, overseeing the Settlement Administrator's work, responding to class member inquiries about the case, preparing the motion for final approval of the settlement, and attending the fairness hearing.

1   Class Counsel will also request reimbursement of $879,409 in litigation costs, which

2   includes fees paid to experts for their work on the case. These out-of-pocket expenses were

3   reasonably, necessary, and directly related to the work performed on behalf of the Settlement

4   Class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Corson v. Toyota*

5   *Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB, 2016 WL 1375838, at *9 (C.D. Cal. Apr. 4,

6   2016) ("Expenses such as reimbursement for travel, meals, lodging, photocopying, long-

7   distance telephone calls, computer legal research, postage, courier service, mediation, exhibits,

8   documents scanning, and visual equipment are typically recoverable"); *Hopkins v. Stryker*

9   *Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013)

10  (awarding costs for document review, depositions, and experts).

11  **C.      The Notice Plan complies with Rule 23(e) and due process.**

12  Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all

13  class members who would be bound by" a proposed settlement, voluntary dismissal, or

14  compromise. Class members are entitled to the "best notice that is practicable under the

15  circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R.

16  Civ. P. 23(c)(2)(B). The amendments to Rule 23(c)(2)(B) provide that "notice may be by one or

17  more of the following: United States mail, electronic means, or other appropriate means." To

18  comply with due process, notice must be "the best notice practicable under the circumstances,

19  including individual notice to all members who can be identified through reasonable effort."

20  *Amchem*, 521 U.S. at 617. The notice must state in plain, easily understood language: (i) the

21  nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or

22  defenses; (iv) that a class member may enter an appearance through an attorney if the member

23  so desires; (v) that the court will exclude from the class any member who requests exclusion;

24  (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class

25  judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

26  Class Notice will be by individual mail utilizing the same process previously approved

27  by this Court, supplemented by email, national press release and social media advertisements.

Green Decl., ¶¶ 11 – 12.  Ms. Green estimates the class reach to be approximately 91%.  *Id.* at ¶ 12.  The manner and content of the proposed Notice Plan complies with Rule 23 and due process, as well as the District's Procedural Guidance for Class Action Settlements. Similar notice plans are commonly used in class actions like this one and constitute the best notice practicable under the circumstances.  *Id.; see, e.g., In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1:15-md-2627 (AJT/TRJ) (E.D. Va.).

### D.     The schedule for final approval

The next steps in the settlement approval process are to schedule a Final Approval Hearing, notify Settlement Class Members of the settlement and hearing, and provide Settlement Class Members with the opportunity to submit Claim Forms and object, opt out, or comment on the Settlement. The parties propose the following schedule:

| Event | Date |
| --- | --- |
| Notice to be disseminated | 30 days after entry of preliminary approval order |
| Deadline for Settlement Class Members to file and request exclusion | Not less than 45 days after notice is sent |
| Deadline for filing claims ( Claims Period) | 180 days after notice is sent |
| Deadline for Class Members to Object to Settlement. | 15 days after motion for final approval and attorney fees |
| Class Counsel to file motion for final approval | Not less than 120  days after entry of preliminary approval order |
| Class Counsel to file motion for attorneys' fees | Not less than 120 days after entry of preliminary approval. |
| Class Counsel Response to objections. | 10 days before Final Approval Hearing. |
| Final Approval Hearing | 45 days after conclusion of the claims period |

\\\

\\\

# V.    CONCLUSION

Plaintiffs request that the Court enter an order that: (1) certifies the proposed Settlement Class for settlement purposes only; (2) grants preliminary approval of the proposed settlement; (3) directs notice to be disseminated to Settlement Class Members in the form and manner proposed by the parties; (4) appoints CPT to serve as the Settlement Administrator; and (5) sets a schedule and hearing date for final approval of the settlement and related deadlines.

Respectfully Submitted,

Dated:  October 4, 2019                    By:  /s/ Jeffrey B. Cereghino
                                           Jeffrey B. Cereghino, SBN #099480
                                           Email: jbc@cereghinolaw.com
                                           CEREGHINO LAW GROUP
                                           101 Montgomery Street, Suite 1800
                                           San Francisco, California  94104
                                           Telephone: (415) 433-4949
                                           Facsimile: (415) 433-7311

                                           Michael F. Ram, SBN #104805
                                           Email: mram@robinskaplan.com
                                           ROBINS KAPLAN LLC
                                           2440 West El Camino Real, Suite 100
                                           Mountain View, California 94040
                                           Telephone: (650) 784-4040
                                           Facsimile: (650) 784-4041

                                           Charles J. LaDuca, *Admitted Pro Hac Vice*
                                           Email:  charles@cuneolaw.com
                                           Brendan Thompson, *Admitted Pro Hac Vice*
                                           Email:  brendant@cuneolaw.com
                                           Ralph Michael Smith, *Admitted Pro Hac Vice*
                                           Email: mike@cuneolaw.com
                                           CUNEO GILBERT & LaDUCA, LLP
                                           4725 Wisconsin Avenue, NW, Suite 200
                                           Washington, DC 200016
                                           Telephone:  (202) 789-3960
                                           Facsimile:  (202) 789-1813

                                           *Class Counsel*

Beth E. Terrell, SBN #178181
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray
Email: jmurray@terrellmarshall.com
TERRELL MARSHALL LAW GROUP
PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

Jordan L. Chaikin, *Admitted Pro Hac Vice*
Email:  jchaikin@yourlawyer.com
PARKER WAICHMAN LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, Florida 34134
Telephone:  (239) 390-1000
Facsimile:  (239) 390-0055

Michael McShane
Email:  mmcshane@audetlaw.com
Jonas P. Mann
Email:  jmann@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Robert K. Shelquist, *Admitted Pro Hac Vice*
Email:  rkshelquist@locklaw.com
Rebecca A. Peterson, SBN #241858
Email:  rapeterson@locklaw.com
LOCKRIDGE GRINDAL NAUEN
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981

Charles E. Schaffer, *Admitted Pro Hac Vice*
Email:  cschaffer@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106
Telephone:  (215) 592-1500
Facsimile:  (215) 592-4663

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Erica C. Mirabella
Email: erica@mirabellallc.com
132 Boylston Street, 5th Floor
Boston, Massachusetts 02116
Telephone: (617) 580-8270

Daniel C. Calvert, *Admitted Pro Hac Vice*
Email:  dcalvert@yourlawyer.com
PARKER WAICHMAN LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, Florida 34134
Telephone:  (239) 390-1000
Facsimile:  (239) 390-0055

*Additional Plaintiffs' Counsel*

**CERTIFICATE OF SERVICE**

I, Michael F. Ram, hereby certify that on October 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David S. Reidy (SBN 225904)
dreidy@mcguirewoods.com
Anthony Q. Le (SBN 300660)
ale@mcguirewoods.com
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Bethany G. Lukitsch (SBN 314376)
blukitsch@mcguirewoods.com
MCGUIREWOODS LLP
Wells Fargo Center
South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071-3103
Telephone: 213.457.9875
Facsimile: 213.457.9895

Diane Flannery (Pro Hac Vice)
dflannery@mcguirewoods.com
Robert Francis Redmond, Jr.
rredmond@mcguirewoods.com
Christopher Edward Trible
ctrible@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: 804.775.1015
Facsimile: 804.698.2047

*Attorneys for Defendant Lumber Liquidators, Inc.*

Dated this 4th Day of October, 2019

ROBINS KAPLAN LLP

By: */s/ Michael F. Ram*
Michael F. Ram

Michael F. Ram, SBN #104805
mram@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040

*Attorneys for Plaintiffs and Proposed Class*