Michael F. Ram, (SBN 104805)
mram@robinskaplan.com
ROBINS KAPLAN LLP
2440 W El Camino Real, Suite 100
Mountain View, CA  94040
Telephone:     (650) 784-4040
Facsimile:     (650) 784-4041

Jeffrey B. Cereghino, (SBN 099480)
jbc@cereghinolaw.com
CEREGHINO LAW GROUP
101 Montgomery Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-4949

Brendan S. Thompson, *Admitted Pro Hac Vice*
brendant@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016
Telephone:   (202) 789-3960

*Attorneys for the Plaintiff Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, TAMMY EMERY, MARY LOUISE FERENCE, LAURA NORRIS, DONALD FURSMAN, and JOHN TRIANA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware corporation; and DOES 1 through 200, inclusive,<br><br>Defendants. | No. 3:14-cv-05373-RS<br><br>**DECLARATION OF MICHAEL F. RAM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

I, Michael F. Ram, declare as follows:

1.      I am a partner with Robins Kaplan LLP and one of the counsel for the Plaintiffs and proposed class.  I respectfully submit this declaration in support of Plaintiff's motion for class certification and preliminary approval of the proposed class action settlement. I have personal knowledge of the facts in this declaration.

2.      To efficiently and effectively prosecute this consumer class action, my co-counsel and my firm have worked cooperatively to pursue Plaintiffs' and the proposed class members' claims.  These efforts have included the work described in the next few paragraphs.

3.      <u>Pleadings and related motions</u>.  Plaintiffs' counsel researched and drafted the class action complaint, and subsequent amended complaints, opposed Defendant's motion to dismiss and motion to strike, as well as a much later motion to dismiss on jurisdictional ground.

4.      <u>Discovery</u>. Discovery in this case was extensive and spanned over several years. Plaintiffs served numerous interrogatories and requests for production on Lumber Liquidators and received approximately 855,000 pages of documents in response.  The parties engaged in 14 fact witness depositions (of Lumber Liquidators employees, third-party witnesses, and the Named Representatives) and seven (7) expert depositions.  Plaintiffs also served subpoenas on two inspection groups that work with Lumber Liquidators to inspect warranty claim submissions.  Each Plaintiff responded to Lumber Liquidators' document requests and interrogatories, sat for deposition, and had the flooring in their home inspected by Lumber Liquidators' expert.

5.      <u>Work with Experts</u>.  Plaintiffs also retained and worked closely with several experts. Engineers Peter Nelson and Emily Hopps of Simpson, Gumpertz & Heger inspected and tested the flooring and reviewed Lumber Liquidators' internal documents.  They produced a report in support of Plaintiff's motion for class certification and a supplemental report before trial and were deposed twice.  Daniel Harrington is a bamboo flooring expert who opined on the replacement of Plaintiffs' and class members' flooring.  He provided a declaration in support of class certification and a subsequent report and was also deposed twice.  Phil Waier,

formerly of R.S. Means, provided a damages model that assessed the cost of removing class members' flooring, the cost of the replacement product, and the cost of labor. Mr. Waier was also deposed twice.

6.  <u>Class Certification</u>. Plaintiffs' attorneys' work included preparing a motion, supported by substantial evidence and expert testimony, to certify six state classes of Morning Star Bamboo flooring purchasers, and extensive briefing to address Defendant's opposition as well as a motion to strike Plaintiffs' experts' testimony. Plaintiffs' counsel also moved for leave to amend their complaint to narrow the proposed class definitions and both parties filed supplemental briefs addressing class certification and the *Daubert* motion. Once the class certification motion was granted and the other motions resolved, Plaintiffs then filed a motion to correct the California Class definition.

7.  <u>Lumber Liquidators' Rule 23(f) petitions</u>. Plaintiffs' counsel then had to file and opposition to Defendant's Rule 23(f) petition, and amended Rule 23 (f) petition after the Court amended the California Class definition. The Ninth Circuit denied the petition on March 1, 2018.

8.  <u>Class Notice</u>. Plaintiffs' counsel worked with notice administrator Rust Inc. to prepare a proposed notice plan consisting of direct mail and publication notice which, after approval by the Court, was implemented. Notices were directly mailed to class members, and was augmented by a web-based notice program on social media and publication in several industry related magazines. A total of 18 class members opted out of the class.

9.  <u>Motion for Summary Judgment and Trial Preparation</u>. Plaintiffs' counsel opposed Defendant's motion for summary judgment, which was ultimately denied by the Court. The parties prepared for trial set to begin on February 25, 2019. Plaintiffs' work included a proposed trial plan, compiling documents and deposition excerpts to use as evidence, preparing Plaintiffs, class members, and experts for witness testimony, and working on the joint pretrial statement.

10.     <u>Mediation and Settlement</u>. The parties participated in mediations on December 13, 2017 and January 26, 2018 with the Honorable Edward A. Infante (Ret.) (JAMS); and May 17, 2018 and October 4, 2018 with Bruce A. Friedman (JAMS).  Since the October 2018 mediation, the parties continued to work to finalize the terms of the settlement, including numerous e-mail exchanges and conference calls to come to an agreement on the settlement details.  No discussion of attorney fees occurred whatsoever in the negotiations.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.

11.     The Settlement Agreement provides that if any amount of the cash portion of the Settlement Fund remains (because, for example, of uncashed checks), Plaintiffs propose to distribute the remaining cash as *cy pres* to Habitat for Humanities.  Counsel and the parties have no relationship with Habitat for Humanities.

12.     The proposed settlement administrator is CPT Group.  Three settlement administrators submitted proposals concerning notice by mail and publication.   Class Counsel reviewed the proposals and picked CPT Group based on their pricing and experience.

13.     My co-counsel and my firm are prepared to continue to devote the resources necessary to representing the interests of the proposed class. We have committed the necessary attorneys to the litigation, and will dedicate additional resources as necessary to take this case through trial, and any appeals. We are able to fund the case, even if the case were to take several years to resolve.  Information about our team's experience in successfully prosecuting similar cases can be found at http://www.robinskaplan.com/lawyers/michael-ram, http://www.robinskaplan.com/lawyers/marie-appel, https://cuneolaw.com/brendan-s-thompson, https://cuneolaw.com/charles-j-laduca, and https://profiles.superlawyers.com/california-northern/san-francisco/lawyer/jeffrey-b-cereghino/13a69cf6-3641-429f-821e-4f195b093bef.html.

14.     The named plaintiffs have demonstrated their commitment to diligently representing class members' interests.  They have devoted significant time assisting Class Counsel in this case over the past four years, including assisting with development of the case,

responding to discovery, being deposed, and having their flooring inspected by Lumber Liquidators.

15.     I have practiced complex business litigation in this District since 1982, and for the last quarter century have focused my practice on consumer class actions. I have represented plaintiffs in class actions concerning financial services, investment fraud, defective products, privacy violations, and employment in California state courts and in federal courts across the country. I also have experience as a defense lawyer practicing with Morrison & Foerster in San Francisco. In my opinion, the settlement achieved is fair, reasonable, and constitutes an excellent result for the class given the circumstances and legal challenges presented by this case.

16.     Class Counsel will file a motion for an attorneys' fee award of up to 33.33% of the Settlement Fund and for reimbursement of their approximately $879,409 in out-of-pocket litigation costs. As of September 12, 2019, Class Counsel have incurred over $8,451,396 in lodestar.

I declare under penalty of perjury that this declaration is true. Executed at Mountain View, California, this 4th day of October, 2019.

                          */s/ Michael F. Ram*
                          Michael F. Ram

## CERTIFICATE OF SERVICE

I, Michael F. Ram, hereby certify that on October 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David S. Reidy (SBN 225904)
dreidy@mcguirewoods.com
Anthony Q. Le (SBN 300660)
ale@mcguirewoods.com
MCGUIREWOODS LLP
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.844.9944
Facsimile: 415.844.9922

Bethany G. Lukitsch (SBN 314376)
blukitsch@mcguirewoods.com
MCGUIREWOODS LLP
Wells Fargo Center
South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071-3103
Telephone: 213.457.9875
Facsimile: 213.457.9895

Diane Flannery (Pro Hac Vice)
dflannery@mcguirewoods.com
Robert Francis Redmond, Jr.
rredmond@mcguirewoods.com
Christopher Edward Trible
ctrible@mcguirewoods.com
MCGUIREWOODS LLP
800 East Canal Street
Richmond, Virginia 23219-3916
Telephone: 804.775.1015
Facsimile: 804.698.2047

*Attorneys for Defendant Lumber Liquidators, Inc.*

Dated this 4th Day of October, 2019

ROBINS KAPLAN LLP

By: */s/ Michael F. Ram*
Michael F. Ram

Michael F. Ram, SBN #104805
mram@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040

*Attorneys for Plaintiffs and Proposed Class*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

DANA GOLD, TAMMY EMERY, MARY
LOUISE FERENCE, LAURA NORRIS,
DONALD FURSMAN, and JOHN TRIANA,
on behalf of themselves and all others
similarly situated,

No. 3:14-cv-05373-RS

Plaintiffs,

v.

LUMBER LIQUIDATORS, INC., a Delaware
corporation; and DOES 1 through 200, inclusive,

Defendants.

## AGREEMENT OF COMPROMISE AND SETTLEMENT

IT IS HEREBY AGREED by, between, and among Representative Plaintiffs Dana Gold,

Tammy Emery, Mary Louise Ference, Laura Norris, Donald Fursman, and John Triana, in their

individual and representative capacities on behalf of themselves and a putative Settlement Class

(as defined herein) ("Plaintiffs"), and Defendant Lumber Liquidators, Inc. (hereinafter "Lumber

Liquidators") (collectively "Parties"), by and through their duly authorized counsel, that, in

consideration of the promises and covenants set forth in this Agreement of Compromise and

Settlement (hereinafter "Agreement" or "Settlement Agreement") and upon entry by the United

States District Court for the Northern District of California (the "Court") of a Final Order and

Judgment approving the settlement as set forth in this Agreement, the claims asserted against

Lumber Liquidators shall be settled, dismissed, and compromised on a nationwide basis upon the

terms and conditions set forth in this Agreement.

1

## RECITALS

A.    WHEREAS, on December 8, 2014, Plaintiff Dana Gold filed a nationwide class action lawsuit against Lumber Liquidators, in the United States District Court for the Northern District of California, *Gold, et al. v. Lumber Liquidators, Inc., et al.*, 3:14-cv-05373, seeking to recover damages on behalf of herself and a class of individuals who had purchased allegedly defective Morning Star Bamboo sold by Lumber Liquidators.  On February 13, 2015, Plaintiffs filed a nationwide First Amended Class Action Complaint, adding Tammy Emery, Edwin Mendez, and Christopher Massaro as plaintiffs, and asserting a nationwide class action as well as four state sub-classes for California, Illinois, New York, and West Virginia.

B.    WHEREAS, on August 3, 2015, Lumber Liquidators filed motions to dismiss Plaintiffs' First Amended Class Action Complaint and to strike the class allegations.   On September 11, 2015, Plaintiffs filed responses to Lumber Liquidators' motions to dismiss and strike.  On September 25, 2015, Lumber Liquidators filed replies in support of its motions to dismiss and strike.  On October 26, 2015, the Court heard arguments on Lumber Liquidator's motions.  On November 30, 2015, the Court entered an order granting in part and denying in part Lumber Liquidators' motions.

C.    WHEREAS, on December 16, 2015, Plaintiffs filed a nationwide Second Amended Class Action Complaint, adding Russel Dornon, Laura Norris, John Foster, Donald Fursman, and John Triana as plaintiffs and asserting eight state sub-classes for California, Florida, Illinois, Minnesota, New York, Ohio, Pennsylvania, and West Virginia.

D.    WHEREAS, on January 20, 2016, Plaintiffs filed a nationwide Third Amended Class Action Complaint, removing Russel Dornon and John Foster as plaintiffs and asserting seven state sub-classes for California, Florida, Illinois, Minnesota, New York, Pennsylvania, and West

Virginia.  On February 3, 2016, Lumber Liquidators filed an answer to Plaintiffs' Third Amended Class Action Complaint.

E.       WHEREAS, the Parties engaged in extensive discovery.

F.       WHEREAS, approximately fourteen (14) fact depositions and seven (7) expert depositions were conducted.

G.       WHEREAS, Lumber Liquidators produced pursuant to discovery requests approximately 855,000 pages of documents.

H.       WHEREAS Plaintiffs responded to multiple sets of discovery including document production requests and interrogatories.

I.       WHEREAS, on February 17, 2017, Plaintiffs filed a motion and memorandum in support of class certification.  On April 14, 2017, Lumber Liquidators filed an opposition to Plaintiffs' motion for class certification and a motion to exclude Plaintiffs' expert witnesses.  On April 28, 2017, Plaintiffs filed an opposition to Lumber Liquidators' motion to exclude.  On May 5, 2017, Lumber Liquidators filed its brief in support of its motion to exclude.  On May 8, 2017, Plaintiffs filed a reply in support of its motion for class certification.  On May 19, 2017, Lumber Liquidators filed a sur-reply in opposition to Plaintiffs' motion for class certification.

J.       WHEREAS, on May 23, 2017, Plaintiffs filed a Motion for Leave to file their Fourth Amended Class Action complaint, requesting leave to narrow the class definition to no longer include the nationwide class and to make other revisions to the class definition.  On June 6, 2017, Lumber Liquidators filed its opposition to Plaintiffs' motion for leave.  On June 9, 2017, Plaintiffs filed their reply in support of their motion for leave.  On June 19, 2017, the Court heard arguments on Plaintiffs' motion for leave.  On June 22, 2017, the Court granted in part and denied in part Plaintiffs' motion for leave.  On June 26, 2017, Plaintiffs filed a Fourth Amended Class

Action Complaint, removing the nationwide class allegations and limiting the alleged defective product to Morning Star Strand Bamboo Flooring. This Fourth Amended Class Action Complaint asserted a six- state class action for California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia.

K.      WHEREAS, on July 10, 2017, Lumber Liquidators filed a motion to dismiss the Fourth Amended Class Action Complaint for lack of personal jurisdiction. On July 24, 2017, Plaintiffs filed an opposition to Lumber Liquidators' motion to dismiss. On July 31, 2017, Lumber Liquidators filed a reply in support of its motion to dismiss Plaintiffs' Fourth Amended Class Action Complaint for lack of personal jurisdiction.

L.      WHEREAS, on July 10, 2017, Plaintiffs filed a supplemental brief in support of class certification and in opposition to Lumber Liquidators' motion to exclude Plaintiffs' expert witnesses. On July 10, 2017, Lumber Liquidators filed a supplemental brief in opposition to Plaintiffs' motion for class certification and in support of its motion to exclude Plaintiffs' expert witnesses.

M.      WHEREAS, on August 8, 2017, Lumber Liquidators filed a motion to transfer the case under FRCP 1404. On August 23, 2017, Plaintiffs filed an opposition to motion to transfer the case under FRCP 1404. WHEREAS, on September 19, 2017, the Court denied Lumber Liquidators' motion to dismiss Plaintiffs' Fourth Amended Class Action Complaint for lack of jurisdiction and transfer the case.

N.      WHEREAS, on October 3, 2017, Lumber Liquidators filed an answer to Plaintiffs' Fourth Amended Class Action Complaint.

O.      WHEREAS, on November 13, 2017, the Court heard arguments on the Plaintiffs' motion for class certification and Lumber Liquidators' motion to exclude Plaintiffs' expert

witnesses.  On November 15, 2017, the Court granted Plaintiffs' motion for class certification and granted in part and denied in part Lumber Liquidators' motion to exclude Plaintiffs' expert witnesses.

P.      WHEREAS, on December 1, 2017, Lumber Liquidators filed a petition for permission to appeal the Court's order granting class certification with the United States Court of Appeals for the Ninth Circuit.  On December 11, 2017, Plaintiffs filed an answer to Lumber Liquidators' petition for permission to appeal.  On March 19, 2018, the United States Court of Appeals for the Ninth Circuit denied Lumber Liquidator's petition.

Q.      WHEREAS, on February 2, 2018, Plaintiffs filed a Fifth Amended Class Action Complaint asserting a six-state class action for California, Florida, Illinois, Minnesota, Pennsylvania, and West Virginia.  On February 16, 2018, Lumber Liquidators filed an answer to Plaintiffs' Fifth Amended Class Action Complaint.

R.      WHEREAS, on August 15, 2018, Lumber Liquidators filed a motion for summary judgment.  On September 26, 2018, Plaintiffs filed a stipulation to modify the class period from 2008-present to 2012-present.  On September 27, 2018, the Court granted Plaintiffs' stipulation to modify the class period.  On September 28, 2018, Plaintiffs filed an opposition to Lumber Liquidators' motion for summary judgment.  On November 2, 2018, Lumber Liquidators filed a reply in support of its motion for summary judgment.  On November 5, 2018, the Court heard arguments on the motion for summary judgment.  On January 2, 2019, the Court denied Lumber Liquidators' motion for summary judgment.

S.      WHEREAS, throughout this litigation, the Parties have engaged in extensive, arms-length negotiations regarding the settlement of claims involving the Flooring.

T.      WHEREAS, the Parties participated in mediations on December 13, 2017 and

January 26, 2018 with the Honorable Edward A. Infante (Ret.) (JAMS); and May 17, 2018 and

October 4, 2018 with Bruce A. Friedman (JAMS).

U.      WHEREAS, Plaintiffs and Class Counsel have evaluated the time and expense that

will be necessary to prosecute this case to final judgment, the delays that are likely before any

judgment may be entered, and the uncertainty inherent in predicting the outcome of any complex

litigation such as this and, based upon such evaluation, have concluded that further proceedings in

this action are likely to be further protracted, complex, and expensive, and that the outcome is

uncertain.

V.      WHEREAS, without conceding any lack of merit of any of their claims, Plaintiffs

and Class Counsel have concluded that it is in the best interests of the putative class to settle these

actions on the terms set forth herein, and that the settlement with Lumber Liquidators embodied

in this Agreement is fair, reasonable, and adequate to Plaintiffs and the Class.

W.      WHEREAS, while denying any fault, wrongdoing, or liability, and relying on the

provisions of this Agreement that the settlement embodied herein shall in no event be construed

as or deemed to be evidence of an admission or a concession on the part of Lumber Liquidators

(or any of its predecessors, successors, parent or subsidiary companies, affiliates, officers,

directors, agents, attorneys, representatives, insurers, suppliers, distributors or vendors) of any

fault, wrongdoing, or liability whatsoever, or that any of the allegations in the Complaint are true,

and without conceding any infirmity in its defenses, Lumber Liquidators considers it desirable to

enter into this Agreement in order to avoid further expense, to dispose of burdensome and

protracted litigation, and to avoid the uncertain outcome of proceeding with this litigation.

## DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the following meanings:

a.      "Approved Claim" means a Claim submitted by a Claimant that the Settlement Administrator determines to be accurate, timely, and eligible.

b.      "Approved Claimant" means a Settlement Class Member whose Claim has been approved by the Settlement   Administrator pursuant to the terms of this Settlement Agreement.

c.      "CAFA Notice" means the notice to be sent by the Settlement Administrator to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

d.      "Claim" means the form provided for Settlement Class Members to submit to obtain a Settlement Award under this Settlement Agreement.

e.      "Claimant" means a Settlement Class Member who has submitted a Claim by the Claim Deadline.

f.      "Claim Deadline" means the date by which all Claim Forms must be postmarked, or received by the Settlement Administrator, to be considered timely. The Claim Deadline shall be 180 days after the Notice Date

g.      "Claim Form" means the form provided for Settlement Class Members to submit to obtain a Settlement Award under this Settlement Agreement, as set forth in Exhibit C to this Settlement Agreement.

h.      "Class Counsel" for this case are Charles LaDuca and Brendan Thompson from Cuneo Gilbert & LaDuca, LLP; Michael Ram of Robins Kaplan; and Jeffrey Cereghino of the Cereghino Law Group.

7

i.      "Class Notice" means the Notice of Proposed Class Action Settlement to be sent to the Settlement Class, pursuant to the terms of the Court's Preliminary Approval Order and any other Notices as may be ordered by the Court. The initial Class Notice shall be substantially in the form attached as Exhibit A to this Settlement Agreement.

j.      "Class Period" means January 1, 2012 through March 15, 2019.

k.      "Complaint" means Plaintiffs' operative class action lawsuit filed against Lumber Liquidators in the United States District Court for the Northern District of California, *Gold, et al. v. Lumber Liquidators, Inc., et al.*, 3:14-cv-05373.

l.      "Court" means the United States District Court for the Northern District of California.

m.      "Damages" shall refer to claims of cupping, warping, buckling, splintering, scratching, cracking, shrinking, delaminating, deteriorating, gapping, and/or other damages to the Flooring, baseboards, moldings and/or subfloor as alleged in the Operative Complaint.

n.      "Days" mean calendar days, excluding federal holidays.

o.      "Defendant" means Lumber Liquidators, Inc.

p.      "Effective Date" means the first date by which all of the following events shall have occurred:

(1)     The Court has entered the Preliminary Approval Order.

(2)     The Court has entered the Final Approval Order and Judgment approving the Settlement Agreement in all respects, dismissing the Gold litigation with prejudice.

(3)     The time for appeal from the Final Approval Order and Judgment shall have expired, or if any appeal of the Final Approval Order and Judgment as to the Settlement Agreement is taken, that appeal shall have been finally determined by the

8

highest court, including any motions for reconsideration and/or petitions for writ of certiorari, and which Final Approval Order and Judgment is not subject to further adjudication or appeal.

q.      "Eligible Claimant" means all Settlement Class Members who either: (i) purchased the Flooring for personal, family or household use and own the residence with the Flooring when the Settlement Class Member submits a Claim; (ii) previously owned such a residence and, prior to making the Claim, sold or transferred the residence and at the time of the sale or transfer retained the right to make a claim for the Flooring pursuant to a valid documented assignment; or (iii) prior owner of such a residence who paid for repairs to the Flooring directly arising from the types of damage alleged in the operative complaint and seeks reimbursement.  Eligible Claimants must timely submit a completed and accurate Claim Form by the Claim Deadline to be considered for any award payment pursuant to Section B of Consideration to Plaintiffs and Available Benefits, below.

r.      "Final Approval and Fairness Hearing" means the hearing at which the Court will: (1) determine whether to grant Final Approval of this Settlement Agreement; (2) consider any timely objections to this Settlement Agreement; and (3) consider Class Counsel's request for an award of attorneys' fees, costs and expenses.

s.      "Final Approval Order and Judgment" shall mean the order finally approving this Settlement Agreement and dismissing the Complaint.

t.      "Flooring" shall mean Morning Star Strand Bamboo flooring sold by Lumber Liquidators at any time during the Class Period including but not limited to the list of product names and SKU numbers attached as Exhibit D.

u.      "Notice" means, collectively, the communications by which purchasers of

9

Flooring are to be notified of this Settlement Agreement and the Court's Preliminary Approval of this Settlement Agreement as required by Fed. R. Civ. P. 23(e) and any subsequent communications to purchasers of Flooring as ordered by the Court.

   v.  "Notice Date" shall be thirty (30) days after entry of the Preliminary Approval Order, or as soon as possible thereafter.

   w.  "Notice Plan" means the notice program used by Parties and the Settlement Administrator to inform Settlement Class Members about the Settlement Agreement.

   x.  "Operative Complaint" shall mean the last amended complaint filed with the Court.

   y.  "Party" and "Parties" means Plaintiffs and Lumber Liquidators.

   z.  "Person(s)" shall mean any natural person, individual, corporation, association, partnership, trust, or any other type of legal entity.

   aa. "Preliminary Approval" or "Preliminary Approval Order" means the Court's entry of an order of initial approval of this Settlement Agreement pursuant to Fed. R. Civ. P. 23.

   bb. "Proof of Damages" means submission of 1) Verified responses to the Claim Form; 2) Photographs depicting Damages to the Flooring; 3) Paperwork from a Certified Flooring Inspector or Installer detailing the labor and materials necessary to repair the Damages; 4) an averment from the Settlement Class Member that he/she followed all installation instructions to the best of his/her ability and/or hired a certified flooring installer to perform the installation according to Lumber Liquidators' installation instructions; and 5) an averment that the Damages are not due to any sudden or accidental water damage, including but not limited to wet mopping, leakage from a refrigerator, dishwasher, ice maker or water heater, and/or flooding.   The Settlement Administrator, at its sole discretion, may request additional proof not listed above, if

10

necessary, to assess the validity of a claim.

cc.     "Released Claims" shall have the meaning set forth in this Settlement Agreement.

dd.     "Released Parties" shall have the meaning set forth in this Settlement Agreement.

ee.     "Releasing Parties" shall have the meaning set forth in this Settlement Agreement.

ff.     "Representative Plaintiff(s)" means Dana Gold, Tammy Emery, Mary Louise
Ference, Laura Norris, Donald Fursman, and John Triana.

gg.     "Request for Exclusion" means a request to opt-out or be excluded from the Class
which is timely submitted upon receiving and complying with instructions contained in the
Notice.

hh.     "Service Awards" means cash awards paid to the Representative Plaintiffs for
their service in this case.

ii.     "Settlement Administrator" means CPT Group.

jj.     "Settlement Agreement" or "Agreement" or "Settlement" refers to this document,
and supersedes any prior agreements or discussions.

kk.     "Settlement Award" means the award that each Settlement Class Member shall be
entitled to receive pursuant to the terms of the Settlement Agreement if he or she timely submits
an Approved Claim.

ll.     "Settlement Class Member" means persons in the United States who purchased,
for personal, family, or household use, the Flooring during the Class Period, including but not
limited to those persons that are part of the litigation class certified by this Court on November
15, 2017 as subsequently amended by Orders of December 22, 2017 and September 27, 2018.
Excluded from the Class are (1) Defendant, (2) all present and former affiliates and/or officers or
directors of Defendant, (3) the Judge to whom this case is assigned and any member of the

11

Judge's immediate family and judicial staff, (4) all individuals who have already entered into a release or prior settlement with Lumber Liquidators related to the Flooring during the Class Period, (5) contractors, persons, or other entities who purchased the Flooring for resale, and (6) all persons who timely request to be excluded from this Settlement pursuant to the Notice.

mm.   "Settlement Fund" means $14 million in cash and $14 million in Store-credit Vouchers, with a potential additional $2 million in Store-credit Vouchers based on obtaining a claims percentage of more than 7%, for an aggregate settlement of up to $30 million.

nn   "Store-credit Vouchers" or "Vouchers" means product vouchers which may be used for any product Defendant sells or labor costs through Defendant's flooring installation network and distributed by the Claims Administrator as part of this Settlement Agreement.

## CONSIDERATION TO PLAINTIFFS AND AVAILABLE BENEFITS

### A.   Consideration to Plaintiffs:

In exchange for the terms and conditions set forth herein, Defendant will provide the following consideration:

1.   A common fund will be established whereby Lumber Liquidators will pay $14 million dollars in cash and $14 million dollars in Store-credit Vouchers.  An additional $2 million dollars in Store-credit Vouchers will be provided upon a 7% claims rate being reached. The Settlement Fund shall be paid in the following manner:

a.   Within 5 days of the Court's preliminary approval of settlement, Lumber Liquidators will transfer $1,000,000.00 to the settlement fund escrow account to be used to pay for Notice and the Settlement Administrator's fees.

b.   Within 30 days of the Final Approval Order, Lumber Liquidators will

transfer $13,000,000.00 in cash (Cash) to the settlement fund escrow account.

c.     Lumber Liquidators will work with Plaintiffs' Counsel and the Settlement Administrator to prepare up to $16,000,000.00 worth of Store-credit Vouchers (Vouchers) for distribution to Approved Claimants.

d.     The payments described above constitute the entire payment due from Defendant or any of the Released Parties under the Settlement Agreement. The Parties agree and acknowledge that none of the settlement funds paid by Defendant under the Settlement Agreement shall be deemed to be, in any way, a penalty or a fine of any kind.

2.     An escrow account shall be established and administered by Class Counsel under the Court's continuing supervision and control. No disbursements of funds from the escrow account will occur without order of the Court. The escrow account is intended by the Parties to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treasury Reg. 1.468B-1, and to that end, the Parties shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.

3.     Lumber Liquidators shall have no responsibility or liability relating to the administration, investment, or distribution of the Settlement Fund, which shall be the sole responsibility of Class Counsel and the Settlement Administrator.

4.     Following the Effective Date, Lumber Liquidators shall not be entitled to any reverter or return of common fund benefits.

**B.      Benefits under this Settlement Agreement:**

1.      To be entitled to participate in the Settlement Fund, a Settlement Class Member, who has not requested exclusion pursuant to the Notice, must submit a valid Claim Form on or before the deadline established by the Court.  Any Settlement Class Member who does not submit a timely and valid Claim shall not be entitled to participate in this Settlement, but nonetheless shall be barred and enjoined from asserting any of the Released Claims described herein.

2.      Settlement Class members with an Approved Claim will be issued Cash and/or Vouchers.  Claimants will be limited to one recovery per household, but if multiple purchases were made, the total purchase price of all purchases will be used to calculate the award.

Benefits to Eligible Claimants will be issued in accordance with the criteria below subject to participation, eligibility and, Damages, if any:

Compensation Level One: All Approved Claimants will be eligible to receive benefits  from the Compensation Fund.   Level One benefits will be calculated on a pro-rata basis based on the total purchase price of the Flooring.  The exact pro-rata percentage will be determined by taking the total value of all claims submitted and allocating the available Cash/Vouchers from the Compensation Fund on an equal percentage basis to each claimant.

Compensation Level Two:   Any Approved Claimant with Flooring that is manifesting warping, cupping, buckling, scratching, cracking, delaminating, splintering, deteriorating or gapping (Manifested Conditions) may submit, in the Claim Form, proof of Manifested Conditions to be eligible for Level Two Benefits.  Level Two Benefits will be determined based on the value of the repair cost pursuant to a Contractors Bid, photographs and other requirements as part of the Settlement Class member's proof of Manifested Conditions. Both Level One and Level Two Benefits shall be allocated equally on a pro-rata basis within each Level, however Class Counsel reserves the right to allocate the percentages of Vouchers and Cash paid to Level One and Level Two Approved Claimants dependent upon claims rate and value of respective claims. It is anticipated that Level One benefits will consist of more value in Vouchers than in Cash.

The amount of Funds allocated to both Compensation Levels shall be all the available Compensation Fund, net of administrative and attorney fees, costs and Service Awards.  Class Members may submit both Compensation Level One and Level Two claims, however Class

14

Members who submitted both Level One and Level Two claims will have approved Level Two claims deducted from their total Flooring Claims.

Both Compensation Level One and Compensation Level Two Benefits shall be allocated equally on a pro-rata basis within each level however Class Counsel reserves the right to allocate the percentages of Vouchers and Cash paid to Compensation Level One and Compensation Level Two Approved Claimants dependent upon claims rate, value of respective claims and potential claimant weighted election of benefits in Compensation Level Two between more Cash and less Vouchers or more Vouchers and less Cash

3.      At the time of making a settlement claim, or within 10 days of receiving notice that their claim is approved, Settlement Class members may designate a family member, a nationally recognized charity or a third party to be the recipient of the Vouchers.

The Settlement Administrator will determine whether a charity is a nationally recognized charity for purposes of this Settlement. If a third party is designated to be the recipient of the Vouchers, the Settlement Class member must notify the settlement administrator within 10 days after designation as to the identity of the third party including all contact information. The third party may not transfer or sell any of the Vouchers.

4.      Settlement Class Members may use their Vouchers to purchase any product Defendant sells or for labor to install any Lumber Liquidators' product and may have the product shipped to a third party within the United States. Except as described above, Vouchers will not be transferrable, nor may they be sold or redeemed for cash.

5.      Defendant will provide the Vouchers, good for one per household,

(a)      Vouchers are good for 3 years from date of issuance, one per household, with the following exceptions based on state escheat laws:

15

(b)    Vouchers issued to Approved Claimants in the following states shall have no expiration date: California, Connecticut, Florida, Maine, Minnesota, New Jersey, Rhode Island, and Washington.

(c)    Vouchers issued to Approved Claimants in the following states shall have the expiration dates identified below:

(i)      Colorado – 5 year expiration

(ii)     D.C. – 5 year expiration

(iii)    Georgia – 5 year expiration

(iv)    Hawaii – 5 year expiration

(v)     Illinois – 5 year expiration

(vi)    Louisiana – 5 year expiration

(vii)   Maryland – 4 year expiration

(viii)  Mississippi – 5 year expiration

(ix)    New York – 5 year expiration

(x)     New Mexico – 5 year expiration

(xi)    North Dakota – 6 year expiration

(xii)   South Dakota – 5 year expiration

(xiii)  Virginia – 5 year expiration

6.    The Parties agree that the total amount of Cash shall not exceed the amount set forth in the Settlement Fund described above.

(i)      In the event that the Cash portion of the Settlement Fund is not exhausted and after all claims, attorneys' fees, costs, service awards, and administration costs been paid, Approved Claimants will receive a proportional additional cash payment.

16

    (ii)    If after having paid all attorneys' fees, costs, service awards, and administrative costs,  the Cash portion of the Settlement Fund is reduced such that it cannot pay claimants the anticipated amount, the Cash payments will be proportionally reduced across all the Approved Claimants.

    (iii)    If any amounts remain in the Cash portion of the Settlement Fund (for example because of uncashed checks), Plaintiffs' counsel may seek a *cy pres* award.

## PRELIMINARY APPROVAL OF SETTLEMENT

Class Counsel shall prepare the motion seeking Preliminary Approval of the Settlement Class and the Parties shall work in good faith to support the motion.  The Court shall be asked to approve the terms and conditions of the Settlement Agreement, the Notice to the Class, the method of Notice, the Claim Form, and the procedure for submitting claims.  As part of this Settlement, Plaintiffs will file a Sixth Amended Complaint to facilitate resolving all issues on a nationwide basis.  This motion seeking preliminary approval must comply with the United States District Court for the Northern District of California's Class Action Settlement Guidance.

## SETTLEMENT CLAIMS ADMINISTRATOR

The Settlement Administrator, CPT Group, has been selected based on cost, experience and reputation. The Settlement Administrator will work to:

1.    Send Notice to members of the Class;

2.    Maintain and monitor a Settlement website;

3.    Review, evaluate, and pay where eligible, claims;

4.    Monitor and maintain any Requests for Exclusion, Claim Forms, and any and all other written communications from Class Members in response to the Notice for a period of one (1) year following the end of the Claim Period, or pursuant to further order of the Court.  All

17

written communications received by the Settlement Administrator from Class Members relating to the Settlement Agreement shall be available and provided upon request to Class Counsel and Counsel for Lumber Liquidators.

5.  Distribute the proceeds of the Settlement Fund pursuant to the Settlement Agreement;

6.  Confirm the issuance of payment to the Approved Claimants;

7.  Provide any necessary certifications to the Court concerning the administration and processing of the claims; and

8.  Timely respond to inquiries from Class Counsel, their co-counsel, Counsel for Lumber Liquidators, the Court, and Settlement Class Members.

## NOTICE OF PROPOSED SETTLEMENT

**A.  Notice Program**

Class Counsel shall work with the Settlement Administrator to prepare the Notice Plan. Class Members shall receive constitutionally adequate Notice of the Settlement.  Class Counsel shall submit to the Court for approval the Notice Plan. The Notice Plan will provide the best Notice practicable under the circumstances of the foregoing actions, conform to all aspects of Federal Rule of Civil Procedure 23, satisfy the Due Process Clause of the United States Constitution, and comply with the terms and conditions of the Agreement.  Class Counsel shall work with the Settlement Administrator and/or other class notice specialists, as necessary, to prepare drafts of the proposed Class Notice.  Lumber Liquidators shall have the right to review and approve the proposed Class Notice, including the content of the Settlement website. If any objections to the proposed Class Notice cannot be resolved by the Parties, they shall be submitted to the Court for resolution.

18

**B.      Class Member Contact Information**

Lumber Liquidators shall provide Class Counsel and the Settlement Administrator with the contact information within its possession (included the name, e-mail address, telephone number, physical mailing address, and total value of Flooring purchased) of each reasonably identifiable person who falls within the definition of the Settlement Class by the time this Settlement Agreement is executed ("Class Member Information").  Lumber Liquidators warrants and represents that the Class Member Information provided to Class Counsel accurately reflects the information retained by Lumber Liquidators in the ordinary course of business.

**C.      Settlement Website**

Prior to the Notice Date, the Settlement Administrator shall establish an Internet website, www.bamboosettlement.com that will inform Settlement Class members of the terms of this Settlement, their rights, dates and deadlines and related information. The website shall include, in .pdf format and available for download, the following: (i) the Long Form Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Settlement Agreement (including all of its Exhibits), (v) the Operative Complaint filed in this case; and (vi) any other materials agreed upon by the Parties and/or required by the Court.  The Internet website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically.  The Internet website shall also make the Claim Form available for download.

**D.      Toll-Free Telephone Number**

Commencing by the Notice Date, the Settlement Administrator shall establish a toll-free telephone number, through which Settlement Class members may obtain information about the Settlement, and request an electronic copy of the Long Form Notice and/or the Claim Form,

19

pursuant to the terms and conditions of this Settlement.  The Claim Form will be mailed to all persons who request one via the toll-free phone number maintained by the Settlement Administrator.

### E.     Direct Notice – United States Mail

By the Notice Date, the Settlement Administrator will send the Long Form Notice (Notice) United States Postal Service ("USPS") first class mail to all Settlement Class Members for whom a physical mailing address can be identified from the Class Member Information. Each Notice will include a claim number and to the extent available purchase information for each individual class member. Prior to the initial mailing of the Notice, postal mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS.   Notices that are returned as undeliverable by the USPS and have a forwarding address will be re-mailed to that forwarding address, and Notices that are returned as undeliverable by the USPS without a forwarding address will be subject to address verification ("skip tracing"), utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc. to locate updated addresses.  Notices will then be re-mailed to updated addresses located through skip tracing.

### F.     Direct Notice – E-mail Notice

By the Notice Date, the Settlement Administrator shall e-mail each Settlement Class Member included in the Class Member Information provided by Defendant ("Email Notice"). The content of the Email Notice shall substantially conform to the information provided in the Claim Form and will contain a link that the Settlement Class members can click to take them directly to the claim filing page on the settlement agreement website where they can enter their individualized claim number and confirmation code.

### G.      Publication

By the Notice Date, and subject to the requirements of this Agreement and the

Preliminary Approval Order, the Settlement Administrator will provide Notice to the Settlement

Class as follows: Publishing the publication notice and digital notice pursuant to the Preliminary

Approval Order and as set forth in the Notice Plan described in the Declaration of the Settlement

Administrator attached hereto as Exhibit B; Publishing, on or before the Notice Date, the Long

Form Notice on the settlement website (www.bamboosettlement.com), as specified in the

Preliminary Approval Order and as set forth in the Notice Plan described in the Declaration of

the Settlement Administrator attached hereto as Exhibit B; and Providing the Internet address, in

the Long Form Notice, to the settlement website (www.bamboosettlement.com).

### H.      Notice to Appropriate Federal and State Officials

Not later than 10 days after for the Court enters the Preliminary Approval Order, the

Settlement Administrator shall comply with 28 U.S.C. § 1715.

## SETTLEMENT CLASS MEMBERS' RIGHT OF EXCLUSION

A Settlement Class Member may opt out of the Settlement Class.   To exercise this

exclusion right, the Settlement Class Member must send written notification of the decision to

request exclusion via first class mail to Class Counsel.  The request for exclusion must bear the

signature of the Settlement Class Member (even if represented by counsel), state the Settlement

Class Member's name, email address, address of the property(ies) that has Flooring installed and

specify the number of units of residential property or other structures at each address containing

Flooring. The request should also include substantially the following statement "I want to opt out

of the Settlement Class in the Lumber Liquidators bamboo flooring litigation."  If the Settlement

Class Member has entered into a written or oral agreement to be represented by counsel, the request

for exclusion shall also be signed by the attorney who represents the Settlement Class Member. Such request must be postmarked or personally delivered on such schedule as the Court may direct. In seeking Preliminary Approval of this Settlement, the Parties will request that the deadline for submission of requests for exclusion shall be set on a date no less than 45 days after the publication of the Notice. Exclusions sent by any Settlement Class Member to incorrect locations shall not be valid. Any Settlement Class Member who submits a timely request for exclusion shall not be permitted to object to the Settlement.

Except for those Settlement Class Members who have properly and timely opted out of the Class, all Settlement Class Members will be deemed Settlement Class Members for all purposes under this Settlement and shall be bound by all the terms and provisions of the Settlement Agreement, and any order related to the Settlement, whether or not such Settlement Class Members received actual notice or have objected to the Settlement, and whether or not such Settlement Class Member makes a Claim or participates in the Settlement.

Any Settlement Class Member who has not timely and properly filed a written request for exclusion from the Settlement Class shall be bound by this Settlement and by all subsequent proceedings, orders, and judgments. Any Settlement Class Member who elects to opt out of the Settlement Class pursuant to this Agreement shall not be entitled to relief under or be affected by this Agreement.

Settlement Class Members who have elected to opt out of the Settlement Class may withdraw their opt out requests prior to the Effective Date, but only if they accept the benefits and terms of this Settlement and dismiss with prejudice any other pending action against Lumber Liquidators arising from damage to their homes or other structures because of any alleged defects in any Flooring.

22

Class Counsel shall have the right to contact persons who file exclusion requests and to challenge the timeliness and validity of any exclusion request, as well as the right to effect the withdrawal of any exclusion filed in error and any exclusion request which a Settlement Class Member wishes to withdraw for purposes of participating in the Settlement as set forth in this Agreement.  The Court shall determine whether any of the contested opt outs is valid.

Within five (5) days of the closing of the opt out period, Class Counsel shall provide counsel for Lumber Liquidators, by electronic mail, facsimile, and/or hand delivery, with a list identifying each person who has requested exclusion from the Settlement Class and attaching copies of all such requests for exclusion.

If the number of Requests for Exclusion exceeds 1% of the total class size, Lumber Liquidators has the option to terminate the Settlement Agreement.

Plaintiffs and Plaintiffs' Counsel in the Gold Litigation covenant and agree to take no actions, directly or indirectly, designed or intended to influence any putative member of the Settlement Class to opt out of the settlement, file a claim, or to assist others in doing so. The parties acknowledge, however, that if and when Plaintiffs' Counsel in the Gold Litigation answer Settlement Class Member questions pertaining to their respective matters, the Parties' settlement, or the Settlement Agreement or related matters, answering these questions shall not constitute taking action to influence any putative member of the Settlement Class to opt out of the settlement or to assist others in doing so.

## SETTLEMENT CLASS MEMBERS' RIGHT OF OBJECTION

A.      Settlement Class Members who do not request exclusion from the Class may object to the Settlement Agreement. Settlement Class Members who choose to object to the Settlement must file written notices of intent to object with the Court and serve copies of any

23

such objection on Class Counsel and Counsel for Lumber Liquidators. Any Settlement Class

Member may appear at the Final Approval and Fairness Hearing, in person or by counsel, and be

heard to the extent permitted under applicable law and allowed by the Court. The right to object

to the Settlement Agreement must be exercised individually by an individual Settlement Class

Member and, except in the case of a deceased, minor, or incapacitated Person or where

represented by counsel, not by the act of another Person acting or purporting to act in a

representative capacity.

To be effective, an objection to the Settlement Agreement that is filed with the Court

must:

1.      Contain a caption that includes the case name and the case number as

follows: *Gold, et al. v. Lumber Liquidators, Inc., et al.*, 3:14-cv-05373 (N.D. of Cal.).

2.      Provide the name, mailing address, e-mail address, telephone number and

signature of the Settlement Class Member filing the intent to object, and identify his or her

individual counsel, if any;

3.      Provide a valid proof of membership in the Settlement Class;

4.      File a written letter or brief detailing the specific basis for each objection,

including any legal and factual support the objector wishes to bring to the Court's attention and

any evidence the objector wishes to introduce in support of the objection with the Court not later

than thirty (30) days prior to the Final Approval and Fairness Hearing;

5.      Be served contemporaneously on Class Counsel and Counsel for Lumber

Liquidators (unless filed via the Court's ECF system, such that copies will be transmitted

electronically to these counsel);

6.      Contain the number of class action settlements objected to by the

24

Settlement Class Member in the last three (3) years;

   7. List prior representations of objectors in class action cases by the objector's counsel and all sanctions or discipline ordered by any court, bar association or governmental agency against that counsel.

   8. State whether the objecting Settlement Class Member intends to appear at the Final Approval and Fairness Hearing, either in person or through counsel.

   9. State that the objecting Settlement Class Member is financially capable and prepared to post a bond in an amount to be determined by the Court to adequately compensate class members for the loss of value to Settlement Class Member compensation occasioned by any delay in payment due to an objection, or notice of appeal.

Any Settlement Class Member who does not file a timely and adequate notice of intent to object in accordance with this Settlement Agreement waives the right to object or to be heard at the Final Approval and Fairness Hearing, unless the Court permits otherwise, and shall be forever barred from making any objection to the Settlement. To the extent any Settlement Class Member objects to the Settlement Agreement, and such objection is overruled in whole or in part, such Settlement Class Member will be forever bound by this Settlement Agreement, the Final Approval Order, and Judgment of the Court.

   B. The filing of an objection allows Class Counsel and Counsel for Lumber Liquidators to request the Court to notice such objecting Settlement Class Member for and take his or her deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objecting Settlement Class Member to make himself or herself available for a deposition or to comply with expedited discovery requests may result in the Court striking

the Settlement Class Member's objection and otherwise denying that Settlement Class Member the opportunity to make an objection or be further heard.  The Parties reserve the right to ask the Court to tax the costs of any such discovery to the objecting Settlement Class Member's separate counsel should the Court determine that the objection is frivolous or is made for an improper purpose.

C.      If the objection is made through an attorney, the written objection must also include: (1) the identity and number of the Settlement Class Members represented by objector's counsel; and (2) the number of such represented Settlement Class Members who have opted out of the Settlement Class.

## REPORT BY SETTLEMENT ADMINISTRATOR

A.      No later than thirty (30) days before the Final Approval and Fairness Hearing, the Settlement Administrator shall provide to Class Counsel and Counsel for Lumber Liquidators the following information:

    i.      The number of Notices mailed or sent to Settlement Class Members;

    ii.     The number of claims submitted

    iii.    The number of Settlement Class Members to date who have submitted Approved Claims;

    iv.     The number of Settlement Class Members who have submitted Requests for Exclusion from the Settlement Classes and the names of such persons;

    v.      Any information about any objections to the Settlement Agreement that the Settlement Administrator has not previously forwarded; and

    vi.     Any other tracking information reasonably requested by Class Counsel or Counsel for Lumber Liquidators.

26

B.     A report stating the total number of Settlement Class Members who have submitted timely and valid Requests for Exclusions and the names of such Settlement Class Members shall be filed by Class Counsel not later than ten (10) days before the Final Approval and Fairness Hearing.

## FINAL APPROVAL

A.     If the Court preliminarily approves the Settlement Agreement, Class Counsel, with the cooperation of counsel for Lumber Liquidators, shall submit a motion for final approval of the Settlement Agreement by the Court at a date set by the Court, but no later than one hundred twenty (120) days from the date of Notice.  The parties may submit supplemental memoranda in support of the motions for final settlement approval or the awarding of costs and fees at a date set by the Court, but no later than ten (10) days before the Final Approval and Fairness Hearing.  The motion seeking final approval shall take into consideration the United States District Court for the Northern District of California's Class Action Settlement Guidance.

B.     The Notice to the Settlement Class shall contain a date, time and location for the Final Approval and Fairness Hearing to be conducted by the Court. The Parties shall jointly request the Court to set a hearing on Final Approval of the Settlement Agreement approximately forty-five (45) days from the end of the claims period or such later date as the Court may determine.

C.     The Parties shall request the Court upon final approval of this Settlement Agreement, to enter the Final Approved Order and Judgment, which shall include:

i.     Grant final approval to the Settlement and Settlement Agreement as fair, reasonable, adequate, in good faith and in the best interests of the Settlement Class, and order the Parties to carry out the provisions of this Settlement Agreement;

27

      ii.      Dismiss with prejudice and without costs the Complaint and litigation against Lumber Liquidators and the Released Parties;

      iii.      Adjudge that Releasing Parties are conclusively deemed to have released Lumber Liquidators and the Released Parties of the Released Claims;

      iv.      Bar and permanently enjoin each Settlement Class Member who has not timely submitted a Request for Exclusion from prosecuting against the Released Persons any and all of the Released Claims;

      v.      Reserve continuing and exclusive jurisdiction by the Court to preside over any ongoing proceedings relating to the Claims or this Settlement Agreement; and

      vi.      Determine under Fed. R. Civ. P. 54(b) that there is no just reason for delay and direct that the Final Judgment as to the Released Parties to be final and appealable and entered forthwith.

## CLASS COUNSEL FEES AND ADMINISTRATIVE COST

A.      Plaintiffs' Counsel will apply to the Court by motion for an award to Plaintiffs' Counsel for attorneys' fees of up to 33.33% of the Settlement Fund, and for actual costs and expenses, together with the cost of notice and administrative costs to be paid from the Settlement Fund.

B.      Within forty-five (45) days of Effective Date of the Final Approval Order and Judgment and entry by the Court of an order awarding attorneys' fees, costs, and expenses ("Fee, Cost, and Expense Order"), any awarded attorneys' fees, costs, and expenses shall be paid to Class Counsel from the Escrow Account by the Escrow Agent, notwithstanding the existence of or pendency of any appeal or collateral attack on the Settlement or any part thereof or the Fee, Cost, and Expense Order.  In the event that the Effective Date does not occur or the Settlement

Agreement is terminated pursuant to its terms, or if, as the result of any appeal or further proceedings on remand, or successful collateral attack, the Fee, Cost, and Expense Order is reversed or modified pursuant to a final court order and attorneys' fees, costs, and expenses have been paid out of the Escrow Account to any extent, then Class Counsel shall be obligated and does hereby agree, within ten (10) business days after receiving notice of the foregoing from Lumber Liquidator's Counsel or from a court of appropriate jurisdiction, to refund to the Escrow Account such attorneys' fees, costs, and expenses that have been paid, plus interest thereon at the same rate as would have been earned had those sums remained in the Escrow Account.

## SERVICE AWARDS

Subject to approval by the Court, each of the named Representative Plaintiffs in the Sixth Amended Complaint will receive $7,500 for their participation in this litigation.  If a husband and wife, or other co-purchasers were both Plaintiffs, they are entitled to a single Service Award. This amount is to be paid from the Settlement Fund.

## CLAIM PROCESSING AND DISTRIBUTION OF SETTLEMENT

A.      Class Members may electronically complete and sign the appropriate Claim Form and submit it to the Settlement Administrator via an electronic Claim Form submission process to be established by the Settlement Administrator. Alternatively, Settlement Class Members may submit such Claim Form via U.S. mail. A Claim Form shall be considered defective if the Claimant fails to timely submit the Claim Form, provide the required information on the Claim Form, or fails to electronically or physically sign certifying that the Claimant is entitled to the benefit sought.

B.      Within thirty (30) days of the entry of the Final Approval Order and Judgment, the Settlement Administrator will notify Class Counsel of any Settlement Class Member who has

submitted a deficient Claim Form, and those Settlement Class Members will be given ten (10) calendar days from the date of the deficiency notice to cure the deficiency.

C.      Within sixty (60) days of the Effective Date, the Settlement Administrator will distribute the checks and the vouchers.

D.      Cash payments made pursuant to this Settlement Agreement will be made to Approved Claimants via physical checks mailed to the address provided on the Claim Form. Store-credit Vouchers will be mailed to the address of the Approved Claimant (or appropriate assignee), provided on the Claim Form. Class Counsel and Counsel for Lumber Liquidators shall confer before the Settlement Administrator begins to distribute the checks or Store-credit Vouchers to the Approved Claimants. If an appeal is filed, distribution of Settlement Fund to Approved Claimants will be stayed until further order by the Court.

E.      The Class Members acknowledge that the Claims process may take longer than described above due to the number of potential Settlement Class Members. The Settlement Administrator will employ all due commercially reasonable speed to distribute claimed cash payments and Store-credit Vouchers to Approved Claimants as set forth herein.

F.      The Settlement Class Members shall be entitled solely to the Settlement Funds and Store- Credit Vouchers for settlement and satisfaction against Defendant and the Released Parties for the Released Claims and shall not be entitled to any other payment or relief from Defendant or the Released Parties. The Representative Plaintiffs, Settlement Class Members and their counsel, Class Counsel, as well as the Settlement Administrator will be reimbursed and indemnified solely out of the Settlement Funds.  Defendant and the other Released Parties shall not be liable for any costs, fees, or expenses of any description, including any costs, fees or expenses of the Representative Plaintiffs or their attorneys, experts, advisors, or other

30

representatives of the Settlement Class.

## RELEASE BY ALL SETTLEMENT CLASS MEMBERS

A.       Effective upon Final Approval, Plaintiffs, for and on behalf of themselves, and every member of the Settlement Class, every purchaser of Flooring during the Class Period, and each of their respective heirs and assigns, except for those who have requested to be excluded from the Classes, (hereafter the "Releasing Parties") jointly and severally, hereby RELEASE, HOLD HARMLESS, FOREVER DISCHARGE, AND SHALL FOREVER BE ENJOINED FROM PROSECUTION against Defendant and the Released Parties of any and all claims, causes of action, lawsuits, proceedings, damages, judgments, losses, penalties, liabilities, rights, obligations, duties, demands, liens, actions, administrative proceedings, remedies, costs, fees of any kind, expenses, and claims of any kind whatsoever, including based on fraud, whether known or unknown, contingent or unsuspected, disclosed or undisclosed, liquidated or unliquidated, asserted or unasserted, accrued or un-accrued, in law, in equity or otherwise, in contract, tort, warranty, strict liability or otherwise, that have been, could have been, or in the future can or might be asserted in any court, tribunal or proceeding (including but not limited to any claims arising under federal, state, foreign or common law, including any federal or state consumer protection law), by or on behalf of Plaintiffs or any member of the Settlement Class, whether individual, direct, class, representative, legal, equitable, or other type or in any other capacity against Defendant and the Released Parties, which the Releasing Parties ever had, now have, or may have had, from the beginning of time to the Effective Date, by reason of, arising out of, relating to, or in connection with the acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations, omissions, or any other matter whatsoever related directly or indirectly to: (1) the Plaintiffs' and Settlement Class Members' purchase

31

and/or use of Morning Star Strand Bamboo Flooring sold by Lumber Liquidators between January 1, 2012 and March 15, 2019; (2) the manufacture, sale, distribution, labeling, marketing or advertising of Flooring during the Class Period; (3) Defendant's warranty related to the Flooring purchased during Class Period for any claim that the product is subject to premature cracking, splitting, buckling, warping, cupping, and shrinking or moisture-related issue and/or (4) any claim by Plaintiffs or Settlement Class Members of any nature related to Flooring sold by Defendant between January 1, 2012 to March 15, 2019, except as specified below (hereafter the "Released Claims").

The Released Claims, however, shall not include any claims to enforce the Settlement Agreement, personal injury claims, or the request of Class Counsel for fees, costs, and expenses as set forth in, or as related to, this Settlement Agreement.

B.     The "Released Parties" shall include Lumber Liquidators, Inc., its parent, subsidiaries, and affiliates, including but not limited to, Lumber Liquidators Holdings, Inc.; Lumber Liquidators Services, LLC; Lumber Liquidators Leasing, LLC; individual Lumber Liquidators retail stores located throughout the United States; the China Regional Office; and the seven suppliers of Flooring[1]. All of these entities shall be released including but not limited to any controlling persons, associates, affiliates, or subsidiaries and each and all of their respective past or present officers, members, managers, directors, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, insurers, consultants, experts, accountants, bankers, testing laboratories, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, joint ventures, personal

---

[1] The seven suppliers are: (1) Maisoon International; (2) Zhejiang Chanxiang Senda Bamboo & Wood; (3) Zhejiang Tianzhen Bamboo & Wood; (4) Changxing Jingwei Bamboo Products; (5) Wuxi Boda Bamboo & Wood Industrial; (6) Fujian Jianou Huayu Bamboo Industry; and (7) Yixing New Senda.

or legal representatives, estates, administrators, predecessors, successors, and assigns.

C.     In agreeing to the foregoing waiver, the Releasing Parties expressly acknowledge and understand that they may hereafter discover facts in addition to or different from those which they now believe to be true with respect to the subject matter of the claims released herein, but expressly agree that they have taken these possibilities into account in electing to participate in this release, and that the release given herein shall be and remain in effect as a full and complete release notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk.

D.     As of the Effective Date, by operation of the entry of the Final Approval Order and Judgment, each Class Member who does not file a valid Request for Exclusion, automatically, upon entry of the Final Approval Order and Judgment, shall be held to have fully released, waived, relinquished, and discharged the Released Parties from the Released Claims, to the fullest extent permitted by law, and shall be enjoined from continuing, instituting, or prosecuting any legal proceeding against the Released Parties relating in any way whatsoever to the Released Claims.

E.     The Releasing Parties, on behalf of themselves and their respective assigns, agree not to sue or otherwise make a claim against any of the Released Parties that is in any way related to the Released Claims.

F.     With respect to the Released Claims, the Releasing Parties shall expressly waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States which is similar, comparable or equivalent to California Civil Code Section 1543, which provides:

A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor or released party.

## DISMISSAL

The Releasing Parties stipulate and agree that upon the Court's entry of the Final Approval Order and Judgment, and after expiration of any appeals of that Order, *Gold, et al. v. Lumber Liquidators, Inc., et al.*, 3:14-cv-05373 (N.D. Cal.) shall be DISMISSED WITH PREJUDICE.

## CONFIDENTIALITY

This Agreement of Compromise and Settlement and its terms shall remain confidential from the public until a jointly approved press release can be prepared. Lumber Liquidators, however, may disclose this proposed settlement to regulators, such as the Department of Justice, Securities and Exchange Commission ("SEC"), and the Attorneys General of certain states, as well as to certain financial, auditing, or other business consultants and may make public disclosures in its filings with the SEC. The Parties also agree that they will cooperate in drafting a joint press release regarding the settlement to be issued upon the issuance of the Final Approval Order.

Otherwise, the Parties and their counsel agree that they will not affirmatively seek media coverage in print, Internet, or other media regarding this Settlement Agreement, but may naturally respond to press or media inquiries by describing the settlement as a good result for the class, or other substantially similar words. Nothing in this paragraph, however, restricts the Parties from:

    a.    Publishing the Settlement Agreement and the result on their websites;

    b.    Utilizing media as set forth in the Court-approved Notice plan;

34

    c.      Issuing a press release with language to be agreed upon between the Parties;

    d.      Truthfully responding privately to inquiries concerning the Settlement Agreement from their clients, including Settlement Class Members; or

    e.      Truthfully responding to any press or media inquiries regarding details of the Settlement Agreement.

Plaintiffs and Plaintiffs' Counsel also agree that they will not make any statements or engage in any conduct which disparages Defendant's or Release Parties' conduct, character, or business reputation or the conduct, character, or reputation of any agent of such entity.

## AMENDMENT

This Agreement may be modified, amended or supplemented only by written agreement signed by or on behalf of all Parties, and if such modification, amendment or supplement is to be executed and become effective subsequent to the entry of the Preliminary Approval Order, only with the approval of the Court.

## AUTOMATIC TERMINATION OF SETTLEMENT AGREEMENT AND TERMINATION RIGHTS

In the event that this Settlement Agreement does not become a final, enforceable contract that is approved by the Court and upheld on appeal for any reason:

A.      Except as expressly stated herein, this Settlement Agreement shall automatically become null and void and have no further force or effect, and all proceedings that have taken place with regard to this Settlement shall be without prejudice to the rights and contentions of the Parties;

B.      If the Settlement Agreement is not preliminarily or finally approved by the Court, the Parties will resume the litigation of *Gold, et al. v. Lumber Liquidators, Inc., et al.*, 3:14-cv-

35

05373 (N.D. Cal.) at the procedural juncture as of January 26, 2019, including the Fifth Amended Complaint remaining the operative complaint;

     C.      If this Settlement Agreement; the order preliminarily approving the Settlement Agreement and/or Final Order and Judgment approving this Settlement Agreement is vacated, materially modified or reversed, in whole or part, this Settlement Agreement will be deemed terminated, unless the Parties, in their sole discretion within thirty (30) days of receipt of such ruling, agree to proceed with the Settlement Agreement as modified by the Court or on appeal.

     D.      If the Settlement Agreement is terminated, any Settlement Funds in the Settlement Fund Escrow Account or that have come into possession of the Plaintiffs or Class Counsel, except for any funds paid or owed to the Settlement Administrator or to any other Notice consultant or provider, or any funds otherwise paid or owed for any Settlement administration or Notice-related purpose, shall be returned to Defendant within ten (10) Days of termination.

     E.      This Section and the Section on Confidentiality shall survive any termination of this Settlement Agreement.

<div align="center">

**SETTLEMENT ADMISSIBILITY**

</div>

     This Settlement Agreement, any provision of this Settlement Agreement and the fact of this Settlement Agreement having been made, shall not be admissible or entered into evidence for any purpose except by the Parties to enforce the terms of the Settlement Agreement; nor will any information produced solely in connection with any of the Parties' mediations be admissible.

<div align="center">

**SEVERABILITY**

</div>

     With the exception to provisions contained herein, in the event any covenant, term or other provision contained in this Settlement Agreement is held to be invalid, void or illegal, the same shall be deemed severed from the remainder of this Settlement Agreement and shall in no

<div align="center">36</div>

way affect, impair or invalidate any other covenant, condition or other provision herein.  If any covenant, condition or other provision herein is held to be invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

## INCORPORATION OF EXHIBITS

All attached exhibits are hereby incorporated by reference as though set forth fully herein and are a material part of the Settlement Agreement.

## GOVERNING LAW AND COMPLIANCE WITH TERMS OF SETTLEMENT AGREEMENT

All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the Parties shall be governed by the laws of California, without giving effect to its law of conflict of laws.

The Court shall have continuing and exclusive jurisdiction to resolve any dispute that may arise with regard to the terms and conditions of this Settlement Agreement, and the Parties hereby consent to such jurisdiction.

## PREPARATION OF SETTLEMENT AGREEMENT, SEPARATE COUNSEL AND AUTHORITY TO ENTER SETTLEMENT AGREEMENT

A.      The Parties and their counsel have each participated and cooperated in the drafting and preparation of this Settlement Agreement. Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any Party as drafter of the Settlement Agreement.

B.      In entering this Settlement Agreement, each Party has relied upon the advice of the Party's own attorneys of choice and has not relied upon any representation of law or fact by any other Party hereto.

C.      This Settlement Agreement, including exhibits attached hereto, supersedes any and all prior agreements, including, without limitation, the Memorandum of Understanding, and it constitutes the entire understanding between and among the Parties with regard to the matters herein.  There are no representations, warranties, agreements, or undertakings, written or oral, between the Parties hereto, relating to the subject matter of this Settlement Agreement which are not fully expressed herein, with the exception of the Stipulated Undertaking re Attorney Fees and Costs in connection with the proposed Class Action Settlement.

D.      The Parties each represent and warrant that each of the Persons executing this Settlement Agreement is duly empowered and authorized to do so.

## COUNTERPARTS

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

## BINDING EFFECT

This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and to their respective heirs, assigns, and successors-in-interest.

## ENTIRE AGREEMENT

This Settlement Agreement represents the entire agreement between the Parties and supersedes all other oral and written agreements and discussions.  Each of the Parties covenants that he, she or it has not entered into this Settlement Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein.  Each Party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further

38

consideration have been made by any Person,

## NOTICE

All notices, requests, demands and other communications to the Parties or their counsel required or permitted to be given pursuant to this Settlement Agreement shall be in writing and shall be delivered personally or mailed postage-prepaid by First Class U.S. Mail to the following persons at their addresses set forth as follows:

**Class Counsel for Plaintiffs:**

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016

Michael F. Ram
Robins Kaplan
2440 West El Camino Real, Suite 100
Mountain View, CA 94040

Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street, Suite 1800
San Francisco, CA 94104

**Counsel for Defendant Lumber Liquidators, Inc.**

Diane P. Flannery
McGuireWoodsLLP
800 East Canal Street
Richmond, VA 23219

Bethany Lukitsch
McGuire WoodsLLP
Wells Fargo Center,  South Tower
355 South Grand Street, Suite 4200
Los Angeles,  CA. 90071

WHEREFORE, the undersigned, being duly authorized, have caused this Settlement

Agreement to be executed on the dates shown below and agreed that it shall take effect on the

last date of execution by all undersigned representatives of the Parties.

Dated this _____th day of September 2019.

**Class Counsel for Plaintiffs:**


_____
Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016

_____
Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040


_____
Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street, Suite 1800
San Francisco, CA 94104

**Defendant, Lumber Liquidators, Inc.**


_____
Lee Reeves
Sr. Vice President, Chief Legal Officer & Corporate Secretary
Lumber Liquidators, Inc.
3000 John Deere Road
Toano, VA 23168

WHEREFORE, the undersigned, being duly authorized, have caused this Settlement

Agreement to be executed on the dates shown below and agreed that it shall take effect on the

last date of execution by all undersigned representatives of the Parties.

Dated this _____th day of September 2019.

**Class Counsel for Plaintiffs:**

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016


Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040


Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street, Suite 1800
San Francisco, CA 94104


**Defendant, Lumber Liquidators, Inc.**


Lee Reeves
Sr. Vice President, Chief Legal Officer & Corporate Secretary
Lumber Liquidators, Inc.
3000 John Deere Road
Toano, VA 23168

WHEREFORE, the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below and agreed that it shall take effect on the last date of execution by all undersigned representatives of the Parties.

Dated this __30__ th day of September 2019.

**Class Counsel for Plaintiffs:**

_____
Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 20016

_____
Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040

_____
Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street, Suite 1800
San Francisco, CA 94104

**Defendant, Lumber Liquidators, Inc.**

_____
Lee Reeves
Sr. Vice President, Chief Legal Officer & Corporate Secretary
Lumber Liquidators, Inc.
3000 John Deere Road
Toano, VA 23168

40

Counsel for Defendant Lumber Liquidators, Inc.

Bethany Lukitsch
McGuireWoodsLLP
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071

115535747_1.docx

# Exhibit A
# to Settlement Agreement

**If you purchased Lumber Liquidator's Morning Star Strand Bamboo flooring, you may be eligible to receive payment from a Class Action Settlement.**

A Settlement has been reached in a class action lawsuit concerning consumers who sued Lumber Liquidators, Inc. ("Lumber Liquidators" or "Defendant"), claiming that Defendant's Morning Star Strand Bamboo products ("MS Strand Bamboo") are unable to withstand typical ambient moisture which Lumber Liquidators failed to disclose to consumers. The Court has not decided that Lumber Liquidators did anything wrong. The Parties agreed to the Settlement to resolve the lawsuit.

You are eligible to participate in this Settlement if you purchased Morning Star Strand Bamboo for personal, family or household use between January 1, 2012 and March 15, 2019. To receive payment under the Settlement, you must submit a Claim Form.

To receive a monetary payment, you **must submit** a Claim Form by _____, 2020. Claim Forms can be found at www.bamboosettlement.com or can be requested by calling 1-XXX-XXX-XXXX.

If you do not want to be bound by the Settlement, you must submit a written Request for Exclusion. If you exclude yourself, you cannot get a payment, but you preserve the right to sue Lumber Liquidators for the claims alleged in the lawsuit. Any Request for Exclusion must be submitted by _____, 2019, either online at www.bamboosettlement.com or mailed and postmarked to *Gold, et al. v. Lumber Liquidators, Inc.*, c/o CPT Group, Inc. 50 Corporate Park, Irvine, CA 92606.

You can also object to the Settlement. An objection is a written statement explaining why do not think the Settlement is fair. Any objection must be submitted to the Court by _____, 2020. You cannot object if you exclude yourself from the Settlement.

There will be a final approval hearing for this settlement to determine whether the Court will approve of the settlement, scheduled for _____, 2020 at _____ a.m./p.m. in the _____ Building, Courtroom ____, located _____.

This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.bamboosettlement.com, by contacting Class Counsel whose contact information can be found at www.bamboosettlement.com, by contacting the Settlement Administrator at 1-XXX-XXX-XXXX, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, <<Address>>, Courtroom __ City, CA Zip, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA.
*Gold, et al. v. Lumber Liquidators, Inc.*, Case No. 3:14-cv-05373-RS

# CLASS ACTION NOTICE

**If you purchased Lumber Liquidator's Morning Star Strand Bamboo flooring, you may be eligible to receive payment from a Class Action Settlement.**

*The United States District Court for the Northern District of California authorized this notice.*
*This is **not** a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit concerning consumers who sued Lumber Liquidators, Inc. ("Lumber Liquidators" or "Defendant"), claiming that Defendant's Morning Star Strand Bamboo Flooring products ("MS Strand Bamboo") are unable to withstand typical ambient moisture which Lumber Liquidators failed to disclose to consumers. The Court has not decided that Lumber Liquidators did anything wrong. The Parties agreed to the Settlement to resolve the lawsuit. For instruction on how to obtain a copy of the Settlement Agreement, please see question 16.

- This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Judge Richard Seeborg of the United States District Court for the Northern District of California is overseeing the Settlement.

- You are eligible to participate in this Settlement if you purchased Morning Star Strand Bamboo for personal, family or household use between January 1, 2012 and March 15, 2019. To receive payment under the Settlement, you must submit a Claim Form. Settlement Class Members who do not exclude themselves from the Settlement will be bound by the Settlement even if they do not submit Claim Forms.

**Please read this Notice carefully and in its entirety.**
**Your rights may be affected by the proposed Settlement of this lawsuit,**
**and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS | |
| --- | --- |
| **SUBMIT A CLAIM FORM BY _____, 2020** | **This is the only way to receive monetary payment from the Settlement.** By remaining in the Settlement, whether or not you submit a Claim Form, you will give up any rights to sue Lumber Liquidators separately about the same legal claims in this lawsuit. Claim Forms are available at www.bamboosettlement.com or by calling 1-888-xxx-xxxx. For more details about the claim process, please see questions 4, 5 and 6 below. |
| **EXCLUDE YOURSELF FROM THE CLASS BY _____, 2019** | If you request to be excluded from the Settlement, you will not be eligible to receive any monetary payment, but you will keep your right to sue Lumber Liquidators about the same legal claims in this lawsuit. Requests for Exclusion must be submitted by _____, 2019 by mail to *Gold v. Lumber Liquidators, Inc.;* c/o CPT Group, Inc. 50 Corporate Park, Irvine, CA 92606. For more details about excluding yourself from the Settlement, please see questions 8 and 10 below. |
| **OBJECT BY _____, 2020** | You may write to the Court about why you do, or do not, like the Settlement. You must remain in the Settlement (i.e., not exclude yourself) to object to the Settlement. Objections must be submitted to the Court by _____, 2020. For more details about objecting to the Settlement, please see questions 9 and 10 below. |
| **APPEAR IN THE LAWSUIT OR ATTEND THE FINAL APPROVAL HEARING ON _____, 2020 AT \_\_\_\_ P.M.** | You may ask to speak in Court about the fairness of the Settlement. Written notice of your intent to appear at the final approval hearing in the Lawsuit must be filed with your Objection and submitted to the Court by _____, 2020. You may enter your appearance in Court through an attorney at your own expense if you so desire. For more details about appearing in this lawsuit or attending the final approval hearing, please see questions 9, 13, 14 and 15 below. |
| **DO NOTHING** | By doing nothing, you will *not* receive any monetary payment but you will give up any rights to sue Lumber Liquidators separately about the same legal claims in this lawsuit. |

- Your rights and options – **and the deadlines to exercise them** – are further explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. The Settlement Benefit (*i.e.*, the compensation described herein) will be made available if the Court approves the Settlement, and after any appeals are resolved, if they are resolved in favor of settlement approval.

## 1. Why did I get this notice?

If you purchased Morning Star Strand Bamboo between January 1, 2012 and March 15, 2019, you may be a Class Member and have a right to know about the Settlement and your options. If you have received word of this Notice by mail or e-mail, you have been identified from available records as a purchaser of the flooring at issue in the lawsuit. You also may have received this Notice because you requested more information after reading the Settlement Website. If the Court approves the Settlement, and if objections and all appeals are resolved in favor of settlement approval, a settlement administrator approved by the Court will oversee the distribution of the Settlement Benefits that the proposed Settlement allows. You can follow the progress of the Settlement on the settlement website, www.bamboosettlement.com.

## 2. What is the lawsuit about?

Plaintiffs claim that Defendant, the seller of MS Strand Bamboo, omitted information about MS Strand Bamboo products over a period of years concerning the flooring's ability to withstand ambient moisture.

Plaintiffs contend that Defendant knowingly failed to disclose that its MS Strand Bamboo flooring was defective in that it was unable to withstand typical ambient moisture variations causing the product to cup, shrink, delaminate, buckle, splinter, scratch, crack, warp, swell, gap and ultimately fail prematurely in advance of its 30-year warranty.

The Defendant denies all claims and allegations and contends that the product performs properly, however Defendant entered into this Settlement in order to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding with this litigation.

## 3. Am I part of the class?

If you purchased Morning Star Strand Bamboo between January 1, 2012 and March 15, 2019, you may be a Class Member. The Settlement Agreement defines a "Class Member" as all persons in the United States who purchased, for personal, family, or household use, the Flooring during the Class Period. Excluded from the Class are (1) Defendant, (2) all present and former affiliates and/or officers or directors of Defendant, (3) the Judge to whom this case is assigned and any member of the Judge's immediate family and judicial staff, (4) all individuals who have already entered into a release or prior settlement with Lumber Liquidators related to the Flooring during the Class Period, (5) contractors, persons, or other entities who purchased the Flooring for resale, and (6) persons who timely request to be excluded from this Settlement pursuant to the Notice.

### THE SETTLEMENT BENEFITS

## 4. What does the Settlement provide?

Each Class Member shall be entitled to receive a "Settlement Award" pursuant to the terms of the Settlement Agreement if he or she timely submits an Approved Claim. A common fund (Compensation Fund) will be established whereby Lumber Liquidators will pay $14 million dollars in Cash and $14 million dollars in Store-credit Vouchers (Vouchers) to the approved claimants. An additional $2 million dollars in Vouchers will be provided upon a 7% claims rate being reached.

Settlement Class members with an Approved Claim will be issued both Cash (in the form of a check) and a Lumber Liquidator's Voucher. The Voucher has an expiration date of not less than three (3) years but it may longer dependent upon where your property is located. See Section 4(a) for details of expiration periods. Vouchers are transferable to a third party one time. See Section 4(a) for more details regarding transferability.

Claimants will be limited to one recovery per household, but if multiple purchases were made, the total purchase price of all purchases will be used to calculate the award.

Benefits to eligible claimants will be issued in accordance with the criteria below subject to participation, eligibility and, Damages, if any:

Compensation Level One : All Approved Claimants will be eligible to receive benefits from the Compensation Fund.  Level One benefits will be calculated on a pro-rata basis based on the total purchase price of the Flooring. The exact pro-rata percentage will be determined by taking the total value of all claims submitted and allocating the available Cash/Vouchers from the Compensation Fund on an equal percentage basis to each claimant.

Compensation Level Two:  Any Approved Claimant with Flooring that is manifesting warping, cupping, buckling, scratching, cracking, delaminating, splintering, deteriorating or gapping (Manifested Conditions) may submit, in the Claim Form, proof of Manifested Conditions to be eligible for Level Two Benefits.  Level Two Benefits will be determined based on the value of the repair cost pursuant to a Contractors Bid, photographs and other requirements as part of the Settlement Class member's Proof of Manifested Conditions.  Both Level One and Level Two Benefits shall be allocated equally on a pro-rata basis within each Level, however Class Counsel reserves the right to allocate the percentages of Vouchers and Cash paid to Level One and Level Two Approved Claimants dependent upon claims rate and value of respective claims. It is anticipated that Level One benefits will consist of more value in Vouchers than in Cash.

The amount of Funds allocated to both Compensation Levels shall be all the available Compensation Fund, net of administrative and attorney fees, costs and Service Awards.

Class Members may submit both Compensation Level One and Level Two claims, however Class Members who submitted both Level One and Level Two claims will have approved Level Two claims deducted from their total Flooring Claims.

The following example illustrates this claims policy: A Class Member purchased 600 square feet of eligible Flooring. The entirety of the Flooring is eligible for Compensation Level One.  The Class Member also submits a claim for Compensation Level Two, for 200 square feet of Flooring.  If the Level Two claim is approved the Class Member will receive compensation for 200 square feet of Level Two Flooring and 400 square feet of Level One Flooring.

Class Counsel estimates Compensation Level One claims may receive between 15%-20% of their product purchase price in a combination of Cash and Vouchers   These estimates are predicated upon average size floor purchase of under 700 square feet.   Compensation Level Two purchasers, with approved claims may receive between 50-65% of their Flooring purchase price. Level Two claimants will only be compensated for the actual Flooring impacted by Manifested Conditions, however Level Two claimants may submit a Level One claim for the remainder of the Flooring.

Compensation Level Two Class Members will also have the opportunity to make an election as to whether they prefer compensation more weighted toward Vouchers or Cash.   Those claimants electing to receive compensation weighted toward Vouchers may receive greater total compensation percentages.

The forgoing is an estimate only, and based on the number of anticipated claims, the estimated Flooring average square footage, and the costs of repair or replacement of damaged Flooring. The number of Class Members submitting claims may vary from the estimates, as will the costs of repair or replacement of the Flooring which will alter the estimated compensation amounts.

4(a).  Vouchers. Settlement Class members may transfer Vouchers to a family member, a nationally recognized charity or a third party. A Settlement Class Member at the time of making the claim may designate a Voucher transferee or do so within 10 days after written notification that their claim is approved.  The Settlement Administrator will determine whether a charity is a nationally recognized charity for purposes of this Settlement. If a third party is designated to be the recipient of the Vouchers, the Settlement Class member must notify the

Settlement Administrator within 10 days of written notification of their claim approval as to the identity of the third party including all contact information. The third party may not transfer or sell any of the Vouchers.

Settlement Class Members may use their Vouchers to purchase any product sold by Lumber Liquidators or for labor to install the product or have Lumber Liquidator products shipped to a third party within the United States. Except as described above, Vouchers will not be transferrable, nor may they be sold or redeemed for cash.

Defendant will provide Vouchers, good for one per household. Vouchers issued to Approved Claimants shall expire three years after issuance except in the following states: California, Connecticut, Florida, Maine, Minnesota, New Jersey, Rhode Island, and Washington which have no expiration date;

North Dakota- 6 year expiration; Colorado, Georgia, District of Columbia, Hawaii, Illinois, Louisiana, New York, New Mexico, Mississippi, South Dakota, Virginia – 5 year expiration; and Maryland – 4 year expiration.

The total amount of Cash shall not exceed the settlement fund described above.

(i)    In the event that the Cash fund is not exhausted after all claims, attorneys' fees, costs, service awards, and administration costs have been paid, Approved Claimants will receive a proportional additional Cash payment.

(ii)    If any amounts remain in the Cash settlement fund (for example, because of uncashed checks), Plaintiffs' counsel may seek a cy pres award. No settlement funds or benefits will revert to Lumber Liquidators

## 5. When will I get my monetary payment?

The hearing to consider the fairness of the Settlement is scheduled for _____, 2020 at ___ p.m. If the Court approves the Settlement, and you submit a Claim Form that is approved by the Settlement Administrator, you will receive payment within approximately _____ days after the Settlement has been finally approved and/or after any appeals process is complete approving the Settlement. The payment will be made in the form of a check and/or Voucher and will be mailed to the address you provided on your claim form.

## HOW TO GET THE SETTLEMENT BENEFITS

## 6. How do I get my settlement payment?

If you are a Class Member and want to receive a payment under the Settlement, you must complete and submit a Claim Form. Claim Forms can be found and submitted through the Settlement Website: www.bamboosettlement.com by no later than _____, 2020 or they can be mailed and postmarked by no later than _____, 2020 to the following address:

*Gold v. Lumber Liquidators, Inc.*
c/o CPT Group, Inc.
50 Corporate Park
Irvine, CA 92606

To submit a Claim Form on-line or to request a paper copy, go to www.bamboosettlement.com or call toll-free, 1-888-XXX-XXXX.

## YOUR RIGHTS AND OPTIONS

### 7. What happens if I do nothing at all?

If you do nothing, then you will remain in the Class and will not receive any payment from this Settlement. If the Court approves the Settlement, you will be bound by its terms, you will no longer have the ability to sue with respect to the claims being resolved by the Settlement, and your claims will be released and dismissed.

The Settlement Agreement describes the released claims in more detail, so please read it carefully. If you have any questions, you can contact the lawyers listed in question 16 for free, or you can talk to another lawyer of your own choosing if you have questions about what this means.

### 8. How do I exclude myself from the Settlement?

If you exclude yourself from the Settlement – which is sometimes called "opting-out" – you will not get any money from the Settlement. However, you may then be able to separately sue or continue to sue Lumber Liquidators for the legal claims that are the subject of the lawsuit.

To exclude yourself from the Settlement, you must submit a valid and timely Request for Exclusion to the Settlement Administrator. In order to be valid, your Request for Exclusion must be signed and dated by you. It must state your name, email address if available, address of the property(ies) that has the Flooring installed and specify the number of units of residential property or other structures at each address containing the Flooring. It must also state "I want to opt out of the Settlement Class in the Lumber Liquidators bamboo flooring litigation" or words to similar effect that make clear your intention to be excluded from the Settlement. In order to be timely, your request for exclusion must be submitted by _____, 2019 at www.bamboosettlement.com or by U.S. Mail to Gold v. Lumber Liquidators, Inc. c/o CPT Group, Inc., 50 Corporate Park, Irvine, CA 92606, postmarked on or before that date.

### 9. How do I object to the Settlement?

If you are a Class Member, you can object to the Settlement if you do not think it is fair. The Court will consider your views. However, you cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If this is what you want to happen, you must object.

To object, you must submit to the Court a written objection entitled "Objection to Class Settlement in *Gold v. Lumber Liquidators, Inc.*, Case No. 3:14-cv-05373-RS (N.D. of Cal.)" that identifies all the reasons for your objection and any legal and factual support. Your written objection must also include (1) your name, address, telephone number, email address if available, and if represented by counsel, your counsel's name, address, telephone number and email address; (2) whether you or your counsel intend on appearing at the Final Approval Hearing; (3) whether the objection applies only to you, to a specific subset of the Class, or the entire Class; (4) information/documents showing that you are a Class Member (i.e. Proof of Purchase or a verification under penalty of perjury as to purchase of the Flooring the Class Period); (5) the number of class action settlements objected to by you in the last three (3) years; (6) list of prior representations by the your counsel and all sanctions or discipline ordered by any court, bar association or governmental agency against your counsel; (7) state that as the objecting Settlement Class Member you are financially capable and prepared to post a bond in an amount

to be determined by the Court to adequately compensate class members for the loss of value to Settlement Class Member compensation occasioned by any delay in payment due to an objection, or notice of appeal.

Your written objection must be served jointly on Class Counsel and Counsel for Lumber Liquidators (unless filed via the Court's ECF system, such that copies will be transmitted electronically to these counsel), by _____, 2020:

**Class Counsel:**

| | | |
|---|---|---|
| Charles LaDuca | Michael F. Ram | Jeffrey B. Cereghino |
| Brendan Thompson | Robins Kaplan LLP | Cereghino Law Group |
| CUNEO GILBERT & LADUCA LLP | 2440 West El Camino Real | 101 Montgomery Street |
| 4725 Wisconsin Avenue, NW | Suite 100 | Suite 1800 |
| Suite 200 | Mountain View, CA 94040 | San Francisco, CA 94104 |
| Washington, DC 20016 | | |

**Counsel for Defendant Lumber Liquidators, Inc.**      **Court Address:**

Bethany Lukitsch      *Insert Court Info here…*
McGuireWoodsLLP
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071

### 10. What is the difference between objecting and excluding myself from the Settlement?

Objecting means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Settlement means that you do not want to be part of the Class. If you exclude yourself, then you have no basis to object to the Settlement.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in this case?

The Court appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Robins Kaplan, and Cereghino Law Group to represent Class Members as "Class Counsel." Class Counsel believe, after conducting an extensive investigation, that the Settlement is fair, reasonable, and in the best interests of the Class Members. You will not be charged for these lawyers. If you want to be represented by a different lawyer in this case, you may hire one at your own expense. If you have any questions about the Settlement, you can contact Class Counsel at the contact information listed in Question 16.

### 12. How will the lawyers be paid?

Plaintiffs' Counsel will apply to the Court by motion for an award to Plaintiffs' Counsel for attorneys' fees of up to 33.33% of the settlement fund, and for actual costs and expenses, together with the cost of notice and administrative costs to be paid from the Settlement Fund. Also, subject to approval by the Court, each of the named Representative Plaintiffs will receive $7,500 ("Service Awards"), in recognition of their efforts on behalf of the Class.

## THE COURT'S FINAL APPROVAL HEARING FOR THE SETTLEMENT

### 13. Where and when will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval at _____ p.m. on _____, 2020 in Courtroom ____ at the _____ Federal Building, located at _____. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider Class Counsel's request for attorneys' fees and costs; and to consider the request for the Services Awards to the Plaintiffs. At that hearing, the Court will be available to hear any Objections and arguments concerning the fairness of the Settlement. The hearing may be postponed to a different date or time without notice, so please check www.bamboosettlement.com or call 1-888-XXX-XXXX from time to time. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the time and date of such hearing.

### 14. Do I have to come to the Final Approval Hearing?

No. You do not need to attend the Final Approval Hearing in order to receive payment under the Settlement. Class Counsel will answer any questions the Court may have on behalf of the Class Members. But, you are welcome to attend the Final Approval Hearing at your own expense. If you submit an Objection, you do not have to come to Court to talk about it. If you submitted your Objection on time, the Court will consider it. You may also pay to have another lawyer attend on your behalf, but that is not required.

### 15. May I speak at the Final Approval Hearing?

Yes. You, or any lawyer you retain, may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your Objection to the Settlement a statement saying that it is your intent to appear at the Final Approval Hearing. Your Objection and notice of intent to appear must be submitted to the Court and postmarked no later than _____, 2020.

## GETTING MORE INFORMATION

### 16. Are more details available?

Yes. This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.bamboosettlement.com, by contacting Class Counsel at the information listed below, or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, _____, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You can also call the Settlement Administrator at 1-888-XXX-XXXX.

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real
Suite 100
Mountain View, CA 94040

Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street
Suite 1800
San Francisco, CA 94104

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

# Exhibit B
# to Settlement Agreement



1

2

3

4

5

6

7

8

9

10    **UNITED STATES DISTRICT COURT**

11    **NORTHERN DISTRICT OF CALIFORNIA**

12

13    DANA GOLD, TAMMY EMERY, MARY          Case No. 3:14-cv-05373-RS
      LOUISE FERENCE, LAURA NORRIS,
14    DONALD FURSMAN, and JOHN TRIANA, on    **DECLARATION OF JULIE N.**
      behalf of themselves and all others similarly   **GREEN ON BEHALF OF CPT**
15    situated,                              **GROUP, INC. IN SUPPORT OF**
                                             **MOTION FOR PRELIMINARY**
16                    Plaintiffs,            **APPROVAL**

17            v.

18    LUMBER LIQUIDATORS, INC., a Delaware
      corporation; and DOES 1 through 200, inclusive,
19
                      Defendants.
20

21

22

23

24

25

26

27

28

## DECLARATION OF JULIE N. GREEN

I, Julie N. Green, declare and state as follows:

1.      I am the Senior Vice President of Operations, Class Action Services of CPT Group, Inc., ("Settlement Administrator" or "CPT"). The following statements are based on my personal knowledge and information provided to me by Counsel and other CPT employees working on this matter and, if called on to do so, I could and would testify competently thereto.

2.      For this matter, CPT will provide Notice and Claims Administration services as provided in the Settlement Agreement.

3.      CPT Group, Inc. is located at 50 Corporate Park, Irvine, CA 92606.

4.      I have been employed by CPT for 14 years, managing the operations department and supervising multiple Notice and Claims Administration programs. As Senior Vice President of Operations, I am responsible for the oversight, supervision and evaluation of all departments and positions related to the administration of class action matters to ensure superior quality and successful execution of each component required to complete the settlement process. In my career at CPT, I have been responsible for the design and implementation of thousands of class action administration plans. I submit this declaration at the request of Counsel in support of their Motion for Preliminary Approval of the proposed settlement.

### EXPERIENCE RELEVANT TO THIS CASE

5.      CPT is a leader in the settlement administration industry. As a company, CPT has extensive experience in providing court approved notice of class actions and administering various types of notice programs and settlements. In the past 30-plus years, we have provided notification and/or claims administration services in thousands of class action cases. Throughout our history, CPT has disbursed billions of dollars in settlement funds, and serviced over 65,000,000 class members. CPT offers a wide range of class action administrative services for developing, managing and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume ("CPT CV") is attached as **Exhibit A,** which provides detailed information concerning our class action claims administration qualifications and experience.

1      6.      As a class action settlement claims administrator, CPT is accustomed to being

2   selected by the parties and approved by both Federal and State Courts throughout the United States

3   to provide notice of settlement and claim processing services. In this capacity, CPT provides all

4   services related to the implementation of class action settlements including (a) all types of legal

5   notice, such as direct mailing, email notification, and publication programs, including digital and

6   social media platforms; (b) establishing dedicated URL and case websites with on-line claim filing

7   capabilities; (c) call center support with dedicated toll-free interactive voice response (IVR)

8   telephone number; (d) electronic and hard copy claims processing; (e) receiving/processing other

9   communications about the settlement; (f) secure data management and reporting; (f) paper and

10  electronic payment distribution through check, gift card, merchandise credits and other means; (g)

11  Qualified Settlement Fund reporting and banking services; (h) filing applicable tax returns; (i)

12  filing any required reports with the court; (j) all other tasks related to the administration of class

13  action settlements that may be requested by the parties or court.

14     7.      CPT is entrusted by counsel and appointed by the court to handle nationwide

15  complex settlements. Some of our current representative matters include: *Jacobo, et al., v. Ross*

16  *Stores, Inc.*, (C.D. Cal.) Case No. 17-56241, D.C. No. 2:15-cv-04701-MWF-AGRx; *Bokelman v.*

17  *FCH Enterprises, Inc.,* (D. Haw), Case No. 18-cv-00209-RJB-RLP; *Krinsk, et al. v Monster*

18  *Beverage Corporation, et al.,* San Diego Superior Court, Case No. 37-2014-00020192-CU-BT-

19  CTL; *Lim, et al. v. Vendini, Inc.,* California Superior Court Case No. 1-14-CV-259897; *Mount v*

20  *Wells Fargo Bank,* Superior Court of California Case No. BC395959; *Manouchehri v Styles For*

21  *Less, Inc.,* United States District Court Case No. 14cv2521 NLS; *Kerr, et al. v. Zacks Investment*

22  *Research, Inc., et al.,* United States District Court Case No. 16-CV-01352 GPC BLM; *Hinshaw v.*

23  *Vizio, Inc.,* United States District Court Case No. SA CV14-00876-DOC (ANx); *Kerr v. The New*

24  *York Times Company, et al.*, California Superior Court Case No. 37-2016-000010125-CU-MC-

25  CTL; *Hightower, et al. v. JPMorgan Chase Bank, N.A.,* United States District Court Case No. 11-

26  CV-01802-PSG-PLAx; *Romero, et al. v. Loacker USA, Inc.,* California Superior Court Case No.

27  1-14-CV-274434; *Hoover v. Hi-Tech Pharmacal Co., Inc.,* United States District Court Case No.

28

DECLARATION OF JULIE N. GREEN
- 3 -

1   EDCV 13-00097 JGB (OPx); *Michigan Finance Authority, et al. v. Kiebler, et al.*, Michigan Court

2   of Claims Case No. 13-000166-MZ.

3                                       **CASE BACKGROUND**

4        8.     CPT understands this is a nationwide class action lawsuit alleging that Lumber

5   Liquidators, Inc. (herein referred to as "Defendant" or "Lumber Liquidators") sold the defective

6   product Morning Star Strand Bamboo Flooring and that Defendant denies these allegations. A

7   "Settlement Class Member" means the following:

8                All persons in the United States who purchased, for personal, family, or

9                household use, the Flooring during the Class Period.  Excluded from the

10               Class are (1) Defendant, (2) all present and former affiliates and/or

11              officers or directors of Defendant, (3) The Judge to whom this case is

12              assigned and any member of the Judge's immediate family and judicial

13              staff, (4) all individuals who have already entered into a release or prior

14              settlement with Lumber Liquidators related to the Flooring during the

15              Class Period, (5) contractors, persons, or other entities who purchased the

16              Flooring for resale, (6) person who timely request to be excluded from

17              this Settlement pursuant to the Notice.

18        9.     CPT also understands that Settlement Class Members who submit a timely and

19   valid Claim Form will have the right to receive a Settlement Benefit in the form of a cash payment

20   and a store-credit voucher. A common fund will be established whereby Lumber Liquidators will

21   pay $14 million dollars in cash and $14 million dollars in Store-credit Vouchers.  An additional

22   $2 million dollars in store-credit vouchers will be provided upon a 7% claims rate being reached.

23                              **NOTICE PLAN OVERVIEW**

24        10.    The objective of the Notice Plan is to provide adequate notice of the Action to

25   Settlement Class Members as defined above in paragraph 8. It is CPT's understanding that the

26   parties' estimate a total class size of approximately 330,000 members.

27        11.    The Notice Program described below and proposed for this Settlement is intended

28   to reach Settlement Class Members primarily through direct notification. In total, CPT understands

that Defendant has contact information for approximately 90% of the class. Where such information does not exist or is not feasible to obtain, publication notice will be utilized. Specifically, the proposed notification plan includes the following components:

     a.    CPT will directly mail the Long Form Class Notice, attached hereto as **Exhibit B,** to all potential Settlement Class Members for whom Defendant has a mailing address in its records.

     b.    CPT will directly email the E-mail Notice, attached hereto as **Exhibit C,** to any potential Settlement Class Members for whom Defendant has only a valid email address in its records.

     c.    CPT will launch an internet banner and social media network advertisement campaign (estimated to reach 10% of the Class);

     d.    CPT will place a onetime Nationwide Press Release on PR Newswire;

     e.    CPT will establish and maintain a dedicated Settlement Website that provides case information as well as the Court documents, including the information necessary to file a claim electronically or by mail;

     f.    CPT will establish and maintain a 24-hour, IVR toll-free telephone line where callers may obtain information about the case, with call center associates available to answer questions during normal business hours.

    12.    The Notice Plan is designed to reach approximately 10% of the class nationwide through internet banner and social media advertisements, and approximately 90% via direct notification through mail and email. After accounting for potential overlap, we estimate the combined reach will be approximately 91.81%. Based on the information provided by the parties and terms of the Settlement Agreement, CPT believes this Notice Plan will provide the best notice possible given the circumstances. It allows for Settlement Class Members to receive notice and information about the Settlement through various methods, and where a potential Settlement Class Members' contact information is available, the plan provides for direct notice. It is CPT's experience that the notification plan as outlined within this declaration is consistent with other class action notice plans that have been approved by both state and federal courts nationwide.

## <u>DIRECT NOTICE TO SETTLEMENT CLASS MEMBERS</u>

13.     To satisfy due process CPT understands that it will send direct Notice via USPS first class mail or by email where direct contact information is available.

14.     Lumber Liquidators shall provide CPT with the contact information for potential Class Members for whom it has in its possession, including names, e-mail addresses, phone numbers, physical mailing addresses, and total value of Flooring purchased. Upon receipt, CPT will scrub the data to reduce duplicate records and update the addresses prior to mailing through National Change of Address (NCOA) to increase the success rate of deliverability of the Class Notice. Each Class Member will be assigned a unique mailing ID that will be utilized throughout the settlement administration process.

15.     **Class Notice:** CPT will directly mail the proposed "Long Form" Class Notice to all Settlement Class Members for whom Lumber Liquidators provides a physical mailing address. The Class Notice will provide information about the settlement, as well as the settlement website address to encourage Settlement Class Members to access the "Frequently Asked Questions ("FAQs"), the Claim Form , as well as the other case documents to learn more about the proposed settlement, including the information necessary to file a claim electronically or by mail.

16.     CPT will track any Class Notices that are returned as undeliverable from the post office and re-mail anything returned with a forwarding address. Those returned without will be subject to skip tracing utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, etc. to locate updated addresses. Notices will then be re-mailed to updated addresses located through skip tracing.

17.     **E-mail Notice:** CPT will directly e-mail the Class Notice to any Settlement Class Members for whom Lumber Liquidators provides an e-mail address and no physical mailing address. The Class E-mail Notice will provide information about the settlement, as well as a link to the settlement website to encourage Settlement Class Members to access Claim Form, "FAQs" and other settlement documents to learn more about the proposed settlement, including the information necessary to file a claim electronically or by mail.

1

**PUBLICATION NOTICE**

2

    18.    **Internet Notification:** To adequately reach potential Settlement Class Members,

3 CPT will place banner display notices - ranging in sizes from 300x250, 160x600, 728x90 - on the

4 Google Display Network (accessible via desktop and mobile devices) and banner notices on

5 applicable demographic websites. In addition, CPT will commence a social media campaign on

6 the following Networks: Twitter, Facebook, Instagram, and possibly LinkedIn. This campaign

7 with target the audience by placing 963,575 ad impressions over the course of a 8-week period.

8 To aid in the legitimacy of our notice campaign, CPT will run a Nationwide press release on PR

9 Newswire.

10

    19.    **Website**: CPT will maintain and administer a dedicated settlement website with a

11 case specific Domain/URL (www.bamboosettlement.com) that will be informative and easy for

12 Settlement Class Members to navigate.  The website will be in English, optimized for mobile users

13 and maximize search engine optimization through key words and metadata to increase search

14 engine rankings. The Settlement Website will include links to the Settlement Agreement, the Long

15 Form Class Notice, the Claim Form, "FAQs", and other relevant filings and orders as instructed

16 by the Parties or the Court. In addition, the website will provide the information necessary to file

17 a claim either electronically or by mail. The website address or a hyperlink will be displayed on

18 all print and digital notifications.

19

    20.    **Toll-Free Number**: CPT will set up a 24-hour, toll-free IVR telephone support line

20 to provide Settlement Class Members with (a) general information about the Action and

21 Settlement; (b) frequently asked questions and answers; and (c) information relating to filing a

22 claim, objecting to the Settlement, opting out of the Settlement, and other deadlines relating to the

23 Settlement. Call center associates will be available during normal business hours to assist

24 Settlement Class Members with additional questions.

25

26

**NOTIFICATION TIMELINE**

27

    21.    Pursuant to the terms of the parties' Settlement Agreement, CPT will implement

28 the various aspects of the Notice Proposal, as set forth in the timing chart below:

---

DECLARATION OF JULIE N. GREEN

- 7 -

| Item Description | Date |
|---|---|
| Settlement Website and Toll-Free Telephone Number Live | _____, 2019 (or no later than 3 calendar days before the Notice Date). |
| Direct mail and email notification commence ("Notice Date") | _____, 2019 (or no later than 30 calendar days from preliminary approval) |
| Internet Banner/Social Media Ad campaign begins | _____, 2019 (or no later than 30 calendar days from preliminary approval) |

## CLAIMS PROCESS

22.    Pursuant to the Settlement Agreement, Class Members may electronically complete and sign the appropriate Claim Form and submit it to CPT via an electronic Claim Form submission process (i.e. through the settlement website). Alternatively, Class Members may submit such Claim Forms via U.S. mail. The Claim Form shall be considered defective if the Claimant fails to timely submit the Claim Form, provide the required information on the Claim Form, or fails to electronically or physically sign certifying that the Claimant is entitled to the benefit sought. CPT will notify Class Counsel of any Class Member who has submitted a deficient Claim Form, and those Class Members will be given ten (10) calendar days from the date of the deficiency notice to cure the deficiency.

23.    Settlement Class Members who submit timely and valid claims shall be entitled to receive a "Settlement Award" pursuant to the terms of the Settlement Agreement. Settlement Class members with an Approved Claim will be issued both cash (in the form of a check) and a Lumber Liquidator's store-credit Voucher.  Claimants will be limited to one recovery per household, but if multiple purchases were made, the total purchase price of all purchases will be used to calculate the award.

## OBJECTIONS AND REQUESTS FOR EXCLUSION

24.    **Objections**: It is CPT's understanding that Objections must be served jointly on Class Counsel and Counsel for Lumber Liquidators (unless filed via the Court's ECF system, such that copies will be transmitted electronically to these counsel). However, to the extent any

1  Settlement Class Members submit Objections to CPT, CPT will receive these Objections and
2  provide them to Counsel for the Parties.

3     25.    **Requests for Exclusion**: CPT will be responsible for receiving and processing
4  Requests for Exclusion.

5                                **ADMINISTRATION FEES**

6     26.    CPT's costs for the notice and administration of this Settlement are currently
7  estimated at $500,000.00, subject to change once the class data is received and the voucher
8  program details are solidified. CPT understands that it will be paid from the settlement fund.

9

10                                    **CONCLUSION**

11    27.    The Notice Program as described herein is consistent with similar effective, court-
12  approved notice programs, will provide the best notice practicable given the circumstances, and
13  meets due process requirements. This Notice Program is designed to provide the Settlement Class
14  Members with clear, concise, and plain language notice of their legal rights and options and meets
15  requirements under Rule 23 and this District's Procedural Guidance for Class Action Settlements.
16  With combined efforts, including internet banner and social media campaign, print publication,
17  and direct notification, CPT expects to reach at least 91% of the Class.

18

19    I declare under penalty of perjury under the laws of the United States and state of
20  California that the foregoing is true and correct.

21

22    Executed on September 24th, 2019 at Irvine, California.

23

24

25                                    _Julie N. Green_
                                      JULIE N. GREEN
26

27

28

# EXHIBIT A



50 Corporate Park, Irvine CA 92606 ● (800) 542-0900 ● www.cptgroup.com

## CURRICULUM VITAE

### COMPANY PROFILE

CPT Group, Inc., founded in 1984, is a leading provider of notice and settlement class action administration services and has been appointed as the third-party administrator by all major courts in the State of California and numerous United States District Courts. Located in Irvine, CA, CPT's client base includes over 10,500 attorneys, both local and nationwide, that have entrusted CPT to bring their experience, expertise and proven excellence to their settlements for administration. Throughout our history, CPT has disbursed billions of dollars in Settlement funds, and serviced over 65,000,000 class members and administrated approximately 4,000 cases. CPT offers a wide range of class action administrative services for developing, managing and executing all stages of integrated settlement plans. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design and web hosting. Experienced CPT staff currently handles the following types of class action cases: Wage and Hour, FLSA, Employment/ADA, Consumer/Product, Insurance, Securities, Finance, Antitrust, and ERISA.

Once designated by the parties and approved by the court as the third-party administrator, CPT assumes full responsibility in overseeing management of the class database, notification to the class members, claims processing, and disbursement of settlement payments. The operations, IT and production facilities are all located at the corporate headquarters in Irvine. The integrity of CPT's work is strengthened by the staff's ability to work in close proximity and keep the work handled in-house. The IT data center is accessible 24/7/365 to authorized CPT personnel. CPT uses internal IT expertise and follows internal business as well as IT policies and procedures to support its daily administration and service operations.

CPT prides itself on being the industry's premier class action administrator, offering comprehensive and cost-effective class action administration services, utilizing leverages that decades of personal insight and firsthand knowledge from multiple disciplines and legal arenas have provided. CPT is NIST SP 800-171 compliant, administrates hundreds of cases per year, and has disbursed over a billion dollars in settlement funds. With a structured service platform and practice-area expertise, CPT can effectuate the services it provides accurately and expeditiously.

CPT is entrusted by counsel and appointed by the court to handle nationwide, complex, large project settlements. Some of our current representative matters include:

- *Bokelman v. FCH Enterprises, Inc.,* (D. Haw), Case No. 18-cv-00209-RJB-RLP;
- *Krinsk, et al. v Monster Beverage Corporation, et al.,* San Diego Superior Court, Case No. 37-2014-00020192-CU-BT-CTL
- *Lim, et al. v. Vendini, Inc.,* California Superior Court Case No. 1-14-CV-259897;
- *Mount v Wells Fargo Bank,* Superior Court of California Case No. BC395959;
- *Manouchehri v Styles For Less, Inc.,* United States District Court Case No. 14cv2521 NLS;
- *Kerr, et al. v. Zacks Investment Research, Inc.,* et al., United States District Court Case No. 16-CV-01352 GPC BLM;
- *Hinshaw v. Vizio,* Inc., United States District Court Case No. SA CV14-00876-DOC (ANx);
- *Kerr v. The New York Times Company,* et al., California Superior Court Case No. 37-2016-000010125-CU-MC-CTL;
- *Hightower, et al. v. JPMorgan Chase Bank,* N.A., United States District Court Case No. 11-CV-01802-PSG-PLAx;
- *Romero, et al. v. Loacker USA, Inc.,* California Superior Court Case No. 1-14-CV-274434;
- *Hoover v. Hi-Tech Pharmacal Co., Inc.,* United States District Court Case No. EDCV 13-00097 JGB (OPx);
- *Michigan Finance Authority, et al. v. Kiebler, et al.,* Michigan Court of Claims Case No. 13-000166-MZ.

## AREAS OF EXPERTISE

- **Project Management –** To ensure a smooth claims administration process, CPT Group acts as a neutral third party and provides comprehensive case administration from start to finish. Following the timeline set forth in the Settlement Agreement and Court Order, our team of Case Managers ensures that all actions required by the Claims Administrator are met.

- **Claims Administration –** CPT Group executes an extensive Quality Assurance process throughout the duration of the claims period. Any and all responses received from Class Members are processed according to our strict internal procedures and in accordance with Settlement Agreement. Once claims processing is completed, Counsel is provided with all required reporting, including, where applicable, a list of approved claimants and the settlement calculations for each.

- **Call Center –** CPT Group maintains a Call Center to provide support for Class Members between the hours of 9:00 AM and 5:30 PM, Monday through Friday, except for major holidays. The Call Center is specially trained to field questions pertaining to the important features of each case. Our Call Center representatives are all bilingual in English and Spanish, and upon special request, CPT can provide support in other languages.

- **Data Management/Reporting –** CPT Group will standardize and analyze the class data provided by Counsel to compile the master mailing list. CPT Group prepares weekly status reports for each case that summarize the status of returns and responses such as mail pieces and claim form submissions. These live reports can also be accessed by verified Counsel for each case 24-hours a day on our secured website. CPT Group, Inc. is NIST SP 800-171 compliant, which ensures that necessary measures are taken to guarantee that all class member data is handled and stored in a safe and secure manner.

- **Noticing Expertise –** CPT Group will format the court-approved Notices, Claim Forms, and Exclusion Forms whether the method of notification be standard mail or electronic distribution. CPT Group maintains an on-site printing and mail house, which ensures the utmost quality control. Regardless of class size, CPT strives to execute the class notification process using cost-effective and accurate methods.

- **Settlement Fund Administration –** CPT Group's staff of accounting professionals oversees the disbursement process for each case in strict detail and in accordance with the terms of the Settlement Agreement. Utilizing a Qualified Settlement Fund (QSF) for each case, CPT maintains its settlement account through a federally insured bank where access to each Settlement Account is restricted to authorized personnel. Bank accounts for each case are reconciled monthly and are available to each client upon request. On behalf of the QSF, CPT Group pays and reports all applicable State and Federal tax withholdings and liability, and issues and reports W-2 wages and 1099 income, as required, for each case.

## SERVICES

- Settlement Notification
- Pre-Certification Notification
- Data Analysis
- Bilingual Call Center
- Publication & Media Campaigns

- Claims Processing
- Class Certification Notification
- Secure Data Management
- In-House Print & Mail House
- Website Hosting

- Settlement Fund Administration
- Electronic Notification
- Secure Data Reporting
- NCOA & Skip Tracing
- Website Design

## REFERENCES

For reference, the following Exhibits are attached:

1. CPT's Information Security Statement.
2. CPT's Data and Settlement Fund Transmission Methods
3. CPT's Company Brochure.
4. CPT's Client Testimonials.

# EXHIBIT 1



## Information Security Statement
### Confidential

CPT Group, Inc. ("Company" or "CPT") maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations and is designed to (a) ensure the security, privacy and confidentiality of Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of the Class Member Information, and (c) deny unauthorized access to, use, deletion, or modification of Class Member Information.  As part of an ongoing effort, throughout its business CPT has implemented the following security controls and procedures:

1) Company uses Class Member Information only for the purposes for which Client provided it, as described in any Agreements and/or Court Order's governing the provisions of the Company's services on any particular engagement.
2) Company has designated one of more specifically named employees to be responsible for the administration of its Information Security Program.
3) Company has and maintains processes for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of the Company's operations and evaluating the effectiveness of the safeguards for controlling these risks.
4) Company runs and analyzes daily Risk Assessment and Threat Intelligence scans on all company computer stations, servers and protected network subnets.  These scans search for any software vulnerabilities along with data containing sensitive information ("SI").
5) All computers are provisioned with an advanced security stack.  Company's Endpoint Protection centrally reports activity, handles patch management and security policies.  Company's security stack is based on DNS and content filtering, deep packet inspection at the firewall level, antivirus/antimalware, email filtering and user behavior analysis. Each endpoint is monitored with modern Data Loss Prevention ("DLP") software.   Company's DLP system prevents connection to unauthorized external storage, cloud systems or email accounts.  It actively blocks screen prints and will not allow confidential user information to be sent out of our trusted network.
6) Login access to Company email or systems requires two factor authentication, which requires not only a password and username but also something physical, like user location, secure ID token or biometrics.
7) Company regularly monitors, tests and updates its Information's Security Program.
8) Company restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.
9) Company performs an annual audit of its Information Security Program. This includes a review of the controls: vulnerability scans, secure software development life cycle, patch management, intrusion detection and prevention, encryption of storage media and devices. Company makes reasonable changes to its Information Security Program to ensure it can maintain safeguards that are appropriate for the Class Member Information at issue.
10) At Client's request, but only when and in a manner consistent with applicable Agreements and/or Court Orders, Company will securely destroy or return all Class Member Information in its possession and certify to Client in writing that Company has done so. If Company destroys Class Member Information rather than return it, Company will use destruction methods that are in compliance with all applicable state and federal laws and regulation including NIST Special Publication 800-88, Revision 1 (2014). This obligation to return or destroy information shall not apply to Class Member Information that is stored in backup or other disaster recovery systems, archives or other storage systems that make it impractical to

destroy the information, but if Company retains Class Member Information for these reasons, its obligation under the Settlement Agreement will continue to apply for so long as it retains the information. Additionally, the Company will retain all hard copy documents (i.e. Claim Forms, etc.) for a period of 6 months, at which time they are scanned and shredded on Company premises in compliance with NIST Cybersecurity Framework.

11) Company performs extensive background checks (County Criminal, County Civil and National Criminal Database Search) of all its employees, including a review of their references, employment edibility, and education verification to ensure they do not pose a risk to the security of Class Member Information or Clients employees. Company will provide, upon request, a copy of its background check requirements for Clients review and approval. Nothing in this document shall compel Company to disclose the results of such background information of its employees.

12) Company conducts a monthly third-party credentialed vulnerability assessment with Trustwave. Vulnerabilities rated as high are patched/resolved with 48 hours. Medium is 1 week and Low is within 2 weeks. If a vulnerability cannot be resolved within our standard time, a compensating control will be introduced to protect the vulnerable systems. To ensure Company receives timely information regarding new threats and vulnerabilities, Company subscribes to US-CERT notices as well as notices are received from Sonicwall our firewall manufacturer. New threats are communicated to our executive and leadership team to disseminate to all employees within the company.

13) Company has implement the following safeguards for systems that process, store or transmit Class Member Information:
   - Identify and Access Management;
   - Windows password complexity with a specific length, history, upper and lower characters, numbers, expiration every 45 days, and separate password for email and computer;
   - Two-Factor authentication for remote access;
   - Removable media devices, personal web-based email, instant message, or online storage (i.e. Dropbox, Google Drive, iCloud, etc.) are blocked and restricted by the firewall;
   - Company uses the Microsoft Azure cloud to host corporate email. Remote access to the email system is disabled;
   - Company uses the HTTPS or FTP standard for all data transmissions, and shall ensure that all Client Data is encrypted while in transmission between Company's data center and the Company's computer system or other device (as applicable) and at rest, consistent with the NIST standard, but no less than a 128-bit key for symmetric encryption and a 1024-bit key for asymmetric encryption.
   - Company requires its clients and self to transfer files with personal Class Member Information via a secure transmission protocol through Citrix Sharefile FTP which secures file during transfer with SSL/TFL encryption protocols and in storage using AES 256-bit encryption. Links to file expire after 7 days. Company requires all files transferred in this method to be password protected during transmission and password to be provided telephonically. Files are retrieved by Company, and then deleted manually upon successful download (or auto-deleted after 7 days from upload by system)'
   - Upon hire and annually thereafter, security training of all employees using the online security training platform Knowbe4. Users are required to do one hour of security training per year in additional to 20 minutes of training per quarter. Users are required to take tests online to ensure they've retained the knowledge. Topics covered are spear phishing emails, compromised website, social engineering, strong passwords, ransomware, handling sensitive information, mobile device security;
   - Company actively tests security defenses. Staff participate in simulated phishing exercises to reinforce previous training. Company also conducts monthly external penetration tests and daily internal vulnerability scans to ensure the integrity of our security measures;
   - Preventing terminated employees from accessing Class Member Information;
   - Appropriately configured and updated firewall, antivirus, and spyware software;
   - Separation of Duties;
   - Business Continuity Planning;

- Disaster Recovery Planning;
- Pandemic Recovery Planning

14) Company's physical security requires that employees use an encoded card-key to gain access to the facility as all doors are mechanically locked at all times.  Employees can only enter or exit through a front door or back door, both of which are protected by security cameras.  Inside the facility, secure areas in the office that contain checks or sensitive material are also protected by the electronic card-key badge access and limited to select employees. Security cameras monitor the areas that contain the sensitive material and audits are conducted periodically on the area. Access to the server room is strictly limited to only five individuals and protected by the encoded card-key badge access. Security cameras monitor the inside and outside of the secured area with audits being conducted periodically.

15) Company staff are required to maintain in compliance with the Information Security Policies, Compliance Manual, and Non-Disclosure Agreement. The matters covered in the Code of Business Conduct and Ethics are of the utmost importance to the Company and are essential to the Company's ability to conduct its business in accordance with its stated values. We expect all of our officers, directors, employees, agents, contractors and consultants to adhere to these rules in carrying out their duties for the Company. The Company will take appropriate action against any officer, director, employee, agents, contractor or consultant whose actions are found to violate these policies or any other policies of the Company. Disciplinary actions may include immediate termination of employment or business relationship at the Company's sole discretion.  If the Company has suffered a loss, then it may pursue its remedies against the individuals or entities responsible. If laws have been violated, then the Company will fully cooperate with the appropriate authorities.

## Definitions

1) **"Class Member Information"** means Class Member name, address, or other contact information and class member claim filing information necessary for Company to perform services required by applicable Agreements or Court Orders in context to the Administration of a Settlement or other Class Action litigation.

2) **"Client"** means collectively Plaintiff Counsel and Defense Counsel.

3) **"Client Data"** means proprietary or personal data regarding Client or any of its Class Members under the Settlement Agreement, as provided by Client.

4) **"Company"** means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.

5) **"Sensitive Personal Information"** means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall not include any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.

# EXHIBIT 2



## TRANSMISSION METHODS FOR SENSITIVE INFORMATION

CPT Group, Inc. ("CPT") maintains strict guidelines for the submission, transfer, and protection of Client Data and Wire Information.

A.  **CLIENT DATA TRANSMISSION METHODS**

Counsel shall submit all Client Data to CPT as follows:

1. Link provided by CPT to secure FTP (sharefile) for transfer of data files.
2. All files uploaded should be password protected.
3. Password provided to CPT personnel telephonically.
4. Once files are uploaded to and retrieved, files are deleted (files set on autodelete after 7 days of upload).

Counsel agrees and acknowledges that the above method is the only method authorized by CPT to receive Client Data.  Attempts to transmit Client Data by other means are customarily not accepted.  In the event Counsel utilizes other means to transmit or attempt to transmit Client Data, CPT disclaims all responsibility for such transmissions or attempted transmissions.

B.  **BANK WIRE INFORMATION**

*Incoming from Defense Counsel to QSF.*

CPT provides Qualified Settlement Fund bank account wire instructions to Defense Counsel as follows:

1. Wire instructions are printed in PDF format, are uploaded with password protection, and are made available to Defense Counsel via secure Sharefile.
2. CPT will call Defense Counsel directly and provide the password telephonically.
3. Defense Counsel is requested to then call CPT prior to wiring funds to confirm receipt of all applicable information.

Defense Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate QSF wire instructions.  CPT will decline attempts by Defense Counsel to receive such instructions by other means.  In the event Defense Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction or loss of such wire instructions.

*Outgoing from QSF to Plaintiff Counsel.*

1. CPT does not send passwords via email either internally or externally.
2. For wire instructions for Plaintiff Counsel, such instructions should be communicated to CPT either by phone or by secure Sharefile.
3. CPT will confirm wire information on file with the bank name and last four digits of the account number only.

Plaintiff Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate wire instructions.  CPT will decline attempts by Plaintiff Counsel to receive such instructions by other means.  In the event Plaintiff Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction or loss of such wire instructions.

# EXHIBIT 3



The Industry's Premier
Class Action Administrator



**CPT Group is the Nation's premier Class Action Claims Administrator handling a broad spectrum of cases with value-added, single-source expertise, and premier service.**

Putting CPT Group in place as your Administrator influences every element of the process thereafter. Rely on us to analyze, plan, and administrate with integrity, drawing from a broad base of administration experience with class action settlement and beyond.

### Value Added Philosophy

CPT Group's cadre of experts understands how each piece of the administrative puzzle fits seamlessly into the big picture. Dynamic, capable, and service-centric our elite staff delivers peak productivity and value. The longevity of our Administrators, stringently tested Case Managers, and trusted Consultants merge to assure neutrality, attention to detail and quality for "true-number" proposals and no costly surprises.

### Best In Class Service

From informed Case Managers who are your single point of contact, to secure in-house resources, we work as one to bring you superior service you can rely on. Count on us to be fully up to date, aware of all contingencies, and espond with speed and accuracy.

## Capabilities

Selecting CPT Group is the first step in determining the outcome of your settlement. Multifaceted capabilities, the distinct advantage of experience, particularly in cross category settlements, require that all pieces are organized, positioned correctly and put into place.

## One team. One purpose. We put you first.

### Proprietary Technology and Superior Workflow

Without doubt, the security of settlement information is of the utmost importance.

## AdminLink: Internal Case
### Information Access Management

Exclusive proprietary technology offers access to real time reports, response rates and more, 24/7. With AdminLink, our operations staff can access current case information in one single location, ensuring every CPT staff member involved in your case is up to date and has all the information they need at their fingertips.

### Comprehensive Marketing

Our onsite print/mail house and web development team not only affords you greater value and tighter security, we assure full legal compliance in all materials and up to date information for all class members, thereby reducing demands on client time and resources.

## Comprehensive Service

### Pre-Settlement Consulting

Entrusting class action administration to CPT Group is the first step in the confident achievement of the goals of the goals of the lawsuit. Our full spectrum consultation services address every critical area of need, providing clear and actionable planning combined with cost-effective administration.

- Preliminary Approval Declarations
- Settlement Agreement Consultation
- Timelines
- Scheduling
- Statistical Reporting
- Notice Campaign Planning
- Neutral Third Party Administrator

### Legal Notification

CPT Group is adept at third-party data hosting and communication services using proprietary technology across multiple platforms, including print, media and online. Clear-language documents, translated according to class member needs, support and guide members through a seamless case rollout, regardless of scope or complexity.

- Pre-Certification/Belaire West/Privacy Mailing
- Class Certification Noticing
- Settlement Notification
- Formatting Legal Notices
- Electronic Notification email/website
- Translation Services
- In-House Production
- Expert Legal Noticing Campaigns
- In-House Translation Services

### Data Management

Quality, accuracy, speed and security are the cornerstones of CPT's proprietary technology and data management systems. We developed our specialized data management, analysis and reporting tools to move the skillset up, innovate new and better solutions and create a superior workflow with complete and timely accountability and efficiency.

- Data Analysis
- Data Entry
- Data Management
- Secure Data Transfer
- Data Reporting

### Class Member Assistance

Customer response and targeted outreach receive multilevel attention. We have a massive capacity to handle this all-important aspect of settlement administration. Our multilingual call center offers class members 1:1 responsiveness. Interactive Voice Response assures that class members receive the assistance and support they require. Our proprietary, case-specific call tracking system uses dedicated toll-free numbers, and highly trained



representatives to document and maintain an accurate class member history of interaction.

- Live Call Center Support (multilingual)
- Interactive Voice Response (IVR) capabilities
- Proprietary Call Tracking System

## Claims Administration

At the heart of CPT's administrative capabilities is our ability to process claims accurately, efficiently and in full compliance. Our skilled approach to using technology and controlling management costs is the bedrock of our effectiveness. Regardless of class size or case intricacy, we address all aspects of administration to provide comprehensive and complete solutions.

- In-House Secure Data Processing
- Track & Process Undeliverable Mail
- Claims Processing (mail/online)
- Host & Maintain Case Websites
- Secure Claims Validation

## Settlement Fund Administration

CPT's centralized fund distribution process manages fully audited and securely supervised accounts, handling all aspects of Federal and State tax filings and forms printing and distribution to all recipients.

- Secure Disbursement Processing

- Qualified Settlement Fund (QSF) Management (establish/maintain)
- Federal and Multi-State Tax Reporting (W2/1099)
- Physical Checks, ACH, eCheck, Merchant eGift Cards, Merchant Physical Gift Cards, and Prepaid Debit Cards Options
- Escheatment of Unclaimed Settlement Funds Cy Pres Distribution

## Widespread Experience

- FLSA
- Wage & Hour
- Labor & Employment
- PAGA
- Consumer
- Product Liability
- Data Breach Notification

- Government Services
- Insurance
- Securities
- Finance
- Antitrust
- ERISA

## Contact Us 800.542.0900

CPT Group, Inc. is not just part of the solution. It is the solution. Please allow us to answer your questions and discuss your immediate and future needs.

# EXHIBIT 4



## What our clients have to say about CPT Group, Inc.

*"I have worked with CPT for 10+ years. CPT is detail-oriented, excellent at meeting deadlines, anticipates potential issues while proposing resolutions, mindful of sensitive private information and safeguards it accordingly, reliable and communicates proactively. CPT is priced competitively for service that surpasses its competition. I have worked with numerous service providers; CPT is by far the best."*
**Anthony Orshansky, Esq.,** CounselOne, P.C.

*"CPT has extraordinary customer service. They always go above and beyond to resolve any questions we may have. Their responses to our emails are always prompt and are incredibly helpful with last minute needs. Their weekly reports are incredibly useful!"*
**Craig Ackermann, Esq.,** Ackermann & Tilajef, P.C.

*"I have successfully worked with CPT in administering several multi-million settlements and several Bel-Air privacy notices. CPT was cost-conscious in each instance, often capping their costs to ensure Court approval. Moreover, they quickly respond to inquiries, and expeditiously address problems that surface — maintaining a professional demeanor at all times."*
**Raul Perez, Esq.,** Capstone Law, APC.

*"I have utilized the services of CPT over the past five or six years to handle all aspects of wage and hour class actions of various sizes. They consistently deliver on time with extremely competitive pricing. The case managers are reliable, efficient and accessible to handle any issue that comes up. I am so pleased with CPT's handling of wage and hour matters that I am now turning to them to administer our consumer class actions as well."*
**Marcus J. Bradley, Esq.,** Bradley & Grombacher, LLP.

*"CPT's employees pay great attention to detail, are extremely hard-working, are particularly conscious of deadlines, foresee potential issues that may arise and address them proactively, are smart, high-IQ individuals and are easy to work with. I've worked with many of the "best" Class Action Administration firms, and CPT is the best!"*
**Zach Dostart, Esq.,** Dostart Hannink & Coveney, LLP.

*"CPT Group is by far my preferred Settlement Administrator!"*
**Tim Johnson, Esq.,** Ogletree Deakins Nash Smoak & Stewart

*"CPT is always quick to respond ot any calls or emails and work on the tasks needed. They follow up and always keep their word on pricing. We have used CPT many times and never once have had an unpleasant experience. That is hard to find with any vendor."*
**Doug Johnson, Esq.,** Johnson & Johnson

*"CPT understands Class Actions and the requirements for properly noticing the Class. They have experience project manager overseeing the Administration."*
**Diana Khoury, Esq.,** Cohelan Khoury & Singer

*"I am extremely happy with all that you have done with the administration of this matter. Excellent service, from start to finish, as to all matters and you stayed within budget! You don't know how happy that makes me. CPT is our #1 admin company. Please feel free to use me as a reference."*
**Denise M. Caprioli, Esq.,** McMillion & Hirtensteiner

*"I routinely go back to CPT for class action services because they have proven over and over that they provide excellent service for a great value. When I hire CPT, I know that I can get instant, personal attention on any issue that comes up, and that my matter will be handled with the attention to detail that I expect. I lke being able to call and reach people I trust."*
**Jeff Ames, Esq.,** Paul Plevin Sullivan & Connaughton

*"I have used CPT successfully over the last four or five years on a variety of wage hour class action cases. I find them to be very professional class action administrators in their on-time delivery of work product, their great process of keeping counsel updated and their reasonable pricing. I will use them again."*
**Robert Yonowitz, Esq.,** Fisher & Phillips LLP

*"Fast, friendly responses to all my questions. High quality work."*
**Patrick Stark, Esq.,** Ford, Walker, Haggerty, & Behar

*"CPT can handle all aspects of our wage and hour class actions, from privacy opt out notices to administering claims. CPT handles these matters quickly and efficiently and always on budget."*
**Derek S. Sachs, Esq.,** Lewis Brisbois Bisgaard & Smith LLP

*"It's one thing to retain a third-party administrator. It's another to retain professionals who communicate well and will go the extra mile to ensure that all parties are completely satisfied."*
**Joel P. Kelly, Esq.,** Jackson Lewis

*"CPT is great, they have tremendous service, knowledgeable staff and make the experience seamless and efficient. I would recommend them for jobs big or small."*
**Eric B. Kingsley, Esq.,** Kingsley & Kingsley

*"CPT is as professional as they come. Their team really goes the extra mile to work with you and your team. Do yourself a favor and get to know the CPT Group."*
**Brian S. Kabateck, Esq.,** Kabateck Brown Kellner, LLP

*"On behalf of the defendants, we were extremely pleased with the service that CPT Group provided and would not hesitate using your services again."*
**Philip L. Ross, Esq.,** Littler Mendelson, P.C.

*"I truly appreciate your patience and assistance on this. I will certainly recommend you and your company in the future when "class action administration" services are needed...it seems the administration part of the case has been handled with minimal headaches for me personally."*
**Rhonda Wolf, Esq. General Counsel,** United Oil Company

*"I have used CPT Group as a wage and hour class action administrator in several cases. On each occasion, CPT has been thorough, responsive, and efficient. I have enjoyed working with CPT and look forward to working with CPT in the future."*
**Howard Z. Rosen, Esq.,** Posner & Rosen LLP

*"The administration of a class action settlement–even an uncomplicated one—involves a lot of moving parts, and there are a lot of companies that proclaim expertise in this filed. But my "go to" claims/settlement administrator is CPT Group because they manage things seamlessly—which is something my Firm counts on. CPT anticipates and solves problems before they become big "issues." And they are all good people too."*
**Dylan Pollard, Esq.,** Pollard & Bailey

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA.**
*Gold, et al. v. Lumber Liquidators, Inc.*, Case No. 3:14-cv-05373-RS

# CLASS ACTION NOTICE

**If you purchased Lumber Liquidator's Morning Star Strand Bamboo flooring, you may be eligible to receive payment from a Class Action Settlement.**

*The United States District Court for the Northern District of California authorized this notice.*
*This is **not** a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit concerning consumers who sued Lumber Liquidators, Inc. ("Lumber Liquidators" or "Defendant"), claiming that Defendant's Morning Star Strand Bamboo Flooring products ("MS Strand Bamboo") are unable to withstand typical ambient moisture which Lumber Liquidators failed to disclose to consumers. The Court has not decided that Lumber Liquidators did anything wrong. The Parties agreed to the Settlement to resolve the lawsuit. For instruction on how to obtain a copy of the Settlement Agreement, please see question 16.

- This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them. Judge Richard Seeborg of the United States District Court for the Northern District of California is overseeing the Settlement.

- You are eligible to participate in this Settlement if you purchased Morning Star Strand Bamboo for personal, family or household use between January 1, 2012 and March 15, 2019. To receive payment under the Settlement, you must submit a Claim Form. Settlement Class Members who do not exclude themselves from the Settlement will be bound by the Settlement even if they do not submit Claim Forms.

**Please read this Notice carefully and in its entirety.**
**Your rights may be affected by the proposed Settlement of this lawsuit,**
**and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS | |
|---|---|
| **SUBMIT A CLAIM FORM BY** _____, 2020 | **This is the only way to receive monetary payment from the Settlement.** By remaining in the Settlement, whether or not you submit a Claim Form, you will give up any rights to sue Lumber Liquidators separately about the same legal claims in this lawsuit.<br><br>Claim Forms are available at www.bamboosettlement.com or by calling 1-888-xxx-xxxx. For more details about the claim process, please see questions 4, 5 and 6 below. |
| **EXCLUDE YOURSELF FROM THE CLASS BY** _____, 2019 | If you request to be excluded from the Settlement, you will not be eligible to receive any monetary payment, but you will keep your right to sue Lumber Liquidators about the same legal claims in this lawsuit. Requests for Exclusion must be submitted by _____, 2019 by mail to *Gold v. Lumber Liquidators, Inc.;* c/o CPT Group, Inc. 50 Corporate Park, Irvine, CA 92606. For more details about excluding yourself from the Settlement, please see questions 8 and 10 below. |
| **OBJECT BY** _____, 2020 | You may write to the Court about why you do, or do not, like the Settlement. You must remain in the Settlement (i.e., not exclude yourself) to object to the Settlement. Objections must be submitted to the Court by _____, 2020. For more details about objecting to the Settlement, please see questions 9 and 10 below. |
| **APPEAR IN THE LAWSUIT OR ATTEND THE FINAL APPROVAL HEARING ON** _____, 2020 AT \_\_\_\_ **P.M.** | You may ask to speak in Court about the fairness of the Settlement. Written notice of your intent to appear at the final approval hearing in the Lawsuit must be filed with your Objection and submitted to the Court by _____, 2020. You may enter your appearance in Court through an attorney at your own expense if you so desire. For more details about appearing in this lawsuit or attending the final approval hearing, please see questions 9, 13, 14 and 15 below. |
| **DO NOTHING** | By doing nothing, you will *not* receive any monetary payment but you will give up any rights to sue Lumber Liquidators separately about the same legal claims in this lawsuit. |

- Your rights and options – **and the deadlines to exercise them** – are further explained in this Notice.
- The Court in charge of this case still has to decide whether to approve the Settlement. The Settlement Benefit (*i.e.,* the compensation described herein) will be made available if the Court approves the Settlement, and after any appeals are resolved, if they are resolved in favor of settlement approval.

## 1. Why did I get this notice?

If you purchased Morning Star Strand Bamboo between January 1, 2012 and March 15, 2019, you may be a Class Member and have a right to know about the Settlement and your options. If you have received word of this Notice by mail or e-mail, you have been identified from available records as a purchaser of the flooring at issue in the lawsuit. You also may have received this Notice because you requested more information after reading the Settlement Website. If the Court approves the Settlement, and if objections and all appeals are resolved in favor of settlement approval, a settlement administrator approved by the Court will oversee the distribution of the Settlement Benefits that the proposed Settlement allows. You can follow the progress of the Settlement on the settlement website, www.bamboosettlement.com.

## 2. What is the lawsuit about?

Plaintiffs claim that Defendant, the seller of MS Strand Bamboo, omitted information about MS Strand Bamboo products over a period of years concerning the flooring's ability to withstand ambient moisture.

Plaintiffs contend that Defendant knowingly failed to disclose that its MS Strand Bamboo flooring was defective in that it was unable to withstand typical ambient moisture variations causing the product to cup, shrink, delaminate, buckle, splinter, scratch, crack, warp, swell, gap and ultimately fail prematurely in advance of its 30-year warranty.

The Defendant denies all claims and allegations and contends that the product performs properly, however Defendant entered into this Settlement in order to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding with this litigation.

## 3. Am I part of the class?

If you purchased Morning Star Strand Bamboo between January 1, 2012 and March 15, 2019, you may be a Class Member. The Settlement Agreement defines a "Class Member" as all persons in the United States who purchased, for personal, family, or household use, the Flooring during the Class Period. Excluded from the Class are (1) Defendant, (2) all present and former affiliates and/or officers or directors of Defendant, (3) the Judge to whom this case is assigned and any member of the Judge's immediate family and judicial staff, (4) all individuals who have already entered into a release or prior settlement with Lumber Liquidators related to the Flooring during the Class Period, (5) contractors, persons, or other entities who purchased the Flooring for resale, and (6) persons who timely request to be excluded from this Settlement pursuant to the Notice.

### THE SETTLEMENT BENEFITS

## 4. What does the Settlement provide?

Each Class Member shall be entitled to receive a "Settlement Award" pursuant to the terms of the Settlement Agreement if he or she timely submits an Approved Claim. A common fund (Compensation Fund) will be established whereby Lumber Liquidators will pay $14 million dollars in Cash and $14 million dollars in Store-credit Vouchers (Vouchers) to the approved claimants. An additional $2 million dollars in Vouchers will be provided upon a 7% claims rate being reached.

Settlement Class members with an Approved Claim will be issued both Cash (in the form of a check) and a Lumber Liquidator's Voucher. The Voucher has an expiration date of not less than three (3) years but it may longer dependent upon where your property is located. See Section 4(a) for details of expiration periods. Vouchers are transferable to a third party one time. See Section 4(a) for more details regarding transferability.

Claimants will be limited to one recovery per household, but if multiple purchases were made, the total purchase price of all purchases will be used to calculate the award.

Benefits to eligible claimants will be issued in accordance with the criteria below subject to participation, eligibility and, Damages, if any:

Compensation Level One : All Approved Claimants will be eligible to receive benefits from the Compensation Fund. Level One benefits will be calculated on a pro-rata basis based on the total purchase price of the Flooring. The exact pro-rata percentage will be determined by taking the total value of all claims submitted and allocating the available Cash/Vouchers from the Compensation Fund on an equal percentage basis to each claimant.

Compensation Level Two: Any Approved Claimant with Flooring that is manifesting warping, cupping, buckling, scratching, cracking, delaminating, splintering, deteriorating or gapping (Manifested Conditions) may submit, in the Claim Form, proof of Manifested Conditions to be eligible for Level Two Benefits. Level Two Benefits will be determined based on the value of the repair cost pursuant to a Contractors Bid, photographs and other requirements as part of the Settlement Class member's Proof of Manifested Conditions. Both Level One and Level Two Benefits shall be allocated equally on a pro-rata basis within each Level, however Class Counsel reserves the right to allocate the percentages of Vouchers and Cash paid to Level One and Level Two Approved Claimants dependent upon claims rate and value of respective claims. It is anticipated that Level One benefits will consist of more value in Vouchers than in Cash.

The amount of Funds allocated to both Compensation Levels shall be all the available Compensation Fund, net of administrative and attorney fees, costs and Service Awards.

Class Members may submit both Compensation Level One and Level Two claims, however Class Members who submitted both Level One and Level Two claims will have approved Level Two claims deducted from their total Flooring Claims.

The following example illustrates this claims policy: A Class Member purchased 600 square feet of eligible Flooring. The entirety of the Flooring is eligible for Compensation Level One. The Class Member also submits a claim for Compensation Level Two, for 200 square feet of Flooring. If the Level Two claim is approved the Class Member will receive compensation for 200 square feet of Level Two Flooring and 400 square feet of Level One Flooring.

Class Counsel estimates Compensation Level One claims may receive between 15%-20% of their product purchase price in a combination of Cash and Vouchers  These estimates are predicated upon average size floor purchase of under 700 square feet.  Compensation Level Two purchasers, with approved claims may receive between 50-65% of their Flooring purchase price. Level Two claimants will only be compensated for the actual Flooring impacted by Manifested Conditions, however Level Two claimants may submit a Level One claim for the remainder of the Flooring.

Compensation Level Two Class Members will also have the opportunity to make an election as to whether they prefer compensation more weighted toward Vouchers or Cash.  Those claimants electing to receive compensation weighted toward Vouchers may receive greater total compensation percentages.

The forgoing is an estimate only, and based on the number of anticipated claims, the estimated Flooring average square footage, and the costs of repair or replacement of damaged Flooring. The number of Class Members submitting claims may vary from the estimates, as will the costs of repair or replacement of the Flooring which will alter the estimated compensation amounts.

4(a). Vouchers. Settlement Class members may transfer Vouchers to a family member, a nationally recognized charity or a third party. A Settlement Class Member at the time of making the claim may designate a Voucher transferee or do so within 10 days after written notification that their claim is approved.  The Settlement Administrator will determine whether a charity is a nationally recognized charity for purposes of this Settlement. If a third party is designated to be the recipient of the Vouchers, the Settlement Class member must notify the

Settlement Administrator within 10 days of written notification of their claim approval as to the identity of the third party including all contact information. The third party may not transfer or sell any of the Vouchers.

Settlement Class Members may use their Vouchers to purchase any product sold by Lumber Liquidators or for labor to install the product or have Lumber Liquidator products shipped to a third party within the United States. Except as described above, Vouchers will not be transferrable, nor may they be sold or redeemed for cash.

Defendant will provide Vouchers, good for one per household. Vouchers issued to Approved Claimants shall expire three years after issuance except in the following states: California, Connecticut, Florida, Maine, Minnesota, New Jersey, Rhode Island, and Washington which have no expiration date;

North Dakota- 6 year expiration; Colorado, Georgia, District of Columbia, Hawaii, Illinois, Louisiana, New York, New Mexico, Mississippi, South Dakota, Virginia – 5 year expiration; and Maryland – 4 year expiration.

The total amount of Cash shall not exceed the settlement fund described above.

(i)     In the event that the Cash fund is not exhausted after all claims, attorneys' fees, costs, service awards, and administration costs have been paid, Approved Claimants will receive a proportional additional Cash payment.

(ii)    If any amounts remain in the Cash settlement fund (for example, because of uncashed checks), Plaintiffs' counsel may seek a cy pres award.  No settlement funds or benefits will revert to Lumber Liquidators

## 5. When will I get my monetary payment?

The hearing to consider the fairness of the Settlement is scheduled for _____, 2020 at ___ p.m. If the Court approves the Settlement, and you submit a Claim Form that is approved by the Settlement Administrator, you will receive payment within approximately _____ days after the Settlement has been finally approved and/or after any appeals process is complete approving the Settlement. The payment will be made in the form of a check and/or Voucher and will be mailed to the address you provided on your claim form.

### HOW TO GET THE SETTLEMENT BENEFITS

## 6. How do I get my settlement payment?

If you are a Class Member and want to receive a payment under the Settlement, you must complete and submit a Claim Form. Claim Forms can be found and submitted through the Settlement Website: www.bamboosettlement.com by no later than _____, 2020 or they can be mailed and postmarked by no later than _____, 2020 to the following address:

*Gold v. Lumber Liquidators, Inc.*
c/o CPT Group, Inc.
50 Corporate Park
Irvine, CA 92606

To submit a Claim Form on-line or to request a paper copy, go to www.bamboosettlement.com or call toll-free, 1-888-XXX-XXXX.

## YOUR RIGHTS AND OPTIONS

### 7. What happens if I do nothing at all?

If you do nothing, then you will remain in the Class and will not receive any payment from this Settlement. If the Court approves the Settlement, you will be bound by its terms, you will no longer have the ability to sue with respect to the claims being resolved by the Settlement, and your claims will be released and dismissed.

The Settlement Agreement describes the released claims in more detail, so please read it carefully. If you have any questions, you can contact the lawyers listed in question 16 for free, or you can talk to another lawyer of your own choosing if you have questions about what this means.

### 8. How do I exclude myself from the Settlement?

If you exclude yourself from the Settlement – which is sometimes called "opting-out" – you will not get any money from the Settlement. However, you may then be able to separately sue or continue to sue Lumber Liquidators for the legal claims that are the subject of the lawsuit.

To exclude yourself from the Settlement, you must submit a valid and timely Request for Exclusion to the Settlement Administrator. In order to be valid, your Request for Exclusion must be signed and dated by you. It must state your name, email address if available, address of the property(ies) that has the Flooring installed and specify the number of units of residential property or other structures at each address containing the Flooring. It must also state "I want to opt out of the Settlement Class in the Lumber Liquidators bamboo flooring litigation" or words to similar effect that make clear your intention to be excluded from the Settlement. In order to be timely, your request for exclusion must be submitted by _____, 2019 at www.bamboosettlement.com or by U.S. Mail to Gold v. Lumber Liquidators, Inc. c/o CPT Group, Inc., 50 Corporate Park, Irvine, CA 92606, postmarked on or before that date.

### 9. How do I object to the Settlement?

If you are a Class Member, you can object to the Settlement if you do not think it is fair. The Court will consider your views. However, you cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If this is what you want to happen, you must object.

To object, you must submit to the Court a written objection entitled "Objection to Class Settlement in *Gold v. Lumber Liquidators, Inc.*, Case No. 3:14-cv-05373-RS (N.D. of Cal.)" that identifies all the reasons for your objection and any legal and factual support. Your written objection must also include (1) your name, address, telephone number, email address if available, and if represented by counsel, your counsel's name, address, telephone number and email address; (2) whether you or your counsel intend on appearing at the Final Approval Hearing; (3) whether the objection applies only to you, to a specific subset of the Class, or the entire Class; (4) information/documents showing that you are a Class Member (i.e. Proof of Purchase or a verification under penalty of perjury as to purchase of the Flooring the Class Period); (5) the number of class action settlements objected to by you in the last three (3) years; (6) list of prior representations by the your counsel and all sanctions or discipline ordered by any court, bar association or governmental agency against your counsel; (7) state that as the objecting Settlement Class Member you are financially capable and prepared to post a bond in an amount

to be determined by the Court to adequately compensate class members for the loss of value to Settlement Class Member compensation occasioned by any delay in payment due to an objection, or notice of appeal.

Your written objection must be served jointly on Class Counsel and Counsel for Lumber Liquidators (unless filed via the Court's ECF system, such that copies will be transmitted electronically to these counsel), by _____, 2020:

**Class Counsel:**

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real
Suite 100
Mountain View, CA 94040

Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street
Suite 1800
San Francisco, CA 94104

**Counsel for Defendant Lumber Liquidators, Inc.**

Bethany Lukitsch
McGuireWoodsLLP
Wells Fargo Center, South Tower
355 S. Grand Ave., Suite 4200
Los Angeles, CA 90071

**Court Address:**
*Insert Court Info here...*

### 10. What is the difference between objecting and excluding myself from the Settlement?

Objecting means telling the Court that you do not like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Settlement means that you do not want to be part of the Class. If you exclude yourself, then you have no basis to object to the Settlement.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in this case?

The Court appointed the law firms of Cuneo Gilbert & LaDuca, LLP, Robins Kaplan, and Cereghino Law Group to represent Class Members as "Class Counsel." Class Counsel believe, after conducting an extensive investigation, that the Settlement is fair, reasonable, and in the best interests of the Class Members. You will not be charged for these lawyers. If you want to be represented by a different lawyer in this case, you may hire one at your own expense. If you have any questions about the Settlement, you can contact Class Counsel at the contact information listed in Question 16.

### 12. How will the lawyers be paid?

Plaintiffs' Counsel will apply to the Court by motion for an award to Plaintiffs' Counsel for attorneys' fees of up to 33.33% of the settlement fund, and for actual costs and expenses, together with the cost of notice and administrative costs to be paid from the Settlement Fund. Also, subject to approval by the Court, each of the named Representative Plaintiffs will receive $7,500 ("Service Awards"), in recognition of their efforts on behalf of the Class.

## THE COURT'S FINAL APPROVAL HEARING FOR THE SETTLEMENT

### 13. Where and when will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval at _____ p.m. on _____, 2020 in Courtroom ___ at the _____Federal Building, located at _____. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider Class Counsel's request for attorneys' fees and costs; and to consider the request for the Services Awards to the Plaintiffs. At that hearing, the Court will be available to hear any Objections and arguments concerning the fairness of the Settlement. The hearing may be postponed to a different date or time without notice, so please check www.bamboosettlement.com or call 1-888-XXX-XXXX from time to time. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the time and date of such hearing.

### 14. Do I have to come to the Final Approval Hearing?

No. You do not need to attend the Final Approval Hearing in order to receive payment under the Settlement. Class Counsel will answer any questions the Court may have on behalf of the Class Members. But, you are welcome to attend the Final Approval Hearing at your own expense. If you submit an Objection, you do not have to come to Court to talk about it. If you submitted your Objection on time, the Court will consider it. You may also pay to have another lawyer attend on your behalf, but that is not required.

### 15. May I speak at the Final Approval Hearing?

Yes. You, or any lawyer you retain, may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include in your Objection to the Settlement a statement saying that it is your intent to appear at the Final Approval Hearing. Your Objection and notice of intent to appear must be submitted to the Court and postmarked no later than _____, 2020.

## GETTING MORE INFORMATION

### 16. Are more details available?

Yes. This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.bamboosettlement.com, by contacting Class Counsel at the information listed below, or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, _____, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays. You can also call the Settlement Administrator at 1-888-XXX-XXXX.

Charles LaDuca
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

Michael F. Ram
Robins Kaplan LLP
2440 West El Camino Real
Suite 100
Mountain View, CA 94040

Jeffrey B. Cereghino
Cereghino Law Group
101 Montgomery Street
Suite 1800
San Francisco, CA 94104

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

# EXHIBIT C

**If you purchased Lumber Liquidator's Morning Star Strand Bamboo flooring, you may be eligible to receive payment from a Class Action Settlement.**

A Settlement has been reached in a class action lawsuit concerning consumers who sued Lumber Liquidators, Inc. ("Lumber Liquidators" or "Defendant"), claiming that Defendant's Morning Star Strand Bamboo Flooring products ("MS Strand Bamboo") are unable to withstand typical ambient moisture which Lumber Liquidators failed to disclose to consumers. The Court has not decided that Lumber Liquidators did anything wrong. The Parties agreed to the Settlement to resolve the lawsuit.

You are eligible to participate in this Settlement if you purchased Morning Star Strand Bamboo for personal, family or household use between January 1, 2012 and March 15, 2019. To receive payment under the Settlement, you must submit a Claim Form.

To receive a monetary payment, you **must submit** a Claim Form by _____, 2020. Claim Forms can be found at www.bamboosettlement.com or can be requested by calling 1-XXX-XXX-XXXX.

If you do not want to be bound by the Settlement, you must submit a written Request for Exclusion. If you exclude yourself, you cannot get a payment, but you preserve the right to sue Lumber Liquidators for the claims alleged in the lawsuit.  Any Request for Exclusion must be submitted by _____, 2019, either online at www.bamboosettlement.com or mailed and postmarked to *Gold, et al. v. Lumber Liquidators, Inc.*, c/o CPT Group, Inc. 50 Corporate Park, Irvine, CA 92606.

You can also object to the Settlement. An objection is a written statement explaining why do not think the Settlement is fair. Any objection must be submitted to the Court by _____, 2020. You cannot object if you exclude yourself from the Settlement.

There will be a final approval hearing for this settlement to determine whether the Court will approve of the settlement, scheduled for _____, 2020 at _____ a.m./p.m. in the _____ Building, Courtroom _____, located _____.

This Notice summarizes the Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.bamboosettlement.com, by contacting Class Counsel whose contact information can be found at www.bamboosettlement.com, by contacting the Settlement Administrator at 1-XXX-XXX-XXXX, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, <<Address>>, Courtroom __ City, CA Zip, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

# Exhibit C
# to Settlement Agreement

CPT ID: <<ID>>

<table>
<tr><td>

**Your claim must be postmarked or submitted online by: <<deadline>>**

</td><td>

# CLAIM FORM
## *Lumber Liquidator's Morning Star Strand Bamboo Flooring Litigation*
In the United States District Court
for the Northern District of California
Case No. 3:14cv-05373

</td></tr>
</table>

## PART 1: CLAIMANT INFORMATION

CPT ID: <<ID>>
<<Name>>
<<Address1>> <<Address2>>
<<City>>, <<State>> <<Zip Code>>
<<Barcode>>

CORRECT NAME AND ADDRESS HERE:

_____

_____

_____

Email Address: _____
Telephone Number: ( _____ ) _____ - _____

Sq. Ft Purchased: <<MergedData>>
Purchase Price: <<MedgedData>>

**Section A:  *Express Lane Claim:*** *If you do not want to itemize or document damages to your Lumber Liquidators' Strand Bamboo flooring, baseboards, or sub-floor, you may still participate in the Settlement if you are a qualified Class Member.*

**Check the appropriate box to the right of each statement below:**

1. Did you purchase Lumber Liquidator's Morning Star Strand Bamboo (the Product) between January 1, 2012 through March 15, 2019 for personal, household or residential use? ☐ Yes        ☐ No

2. Is the square footage purchase that is referenced above accurate? ☐ Yes        ☐ No

   - *If the square footage purchased or purchase price is not correct complete Part 2.*

   - *To make an Express Lane Claim, skip Section B then sign and date Part 4 of the claim form.*

## Section B: Itemized Claims – Compensation Level Two

3. Are you seeking additional compensation beyond the Compensation Level One class distribution for any flooring boards that manifest warping, shrinking, cupping, gapping, buckling, scratching, crackling, delaminating, deteriorating, and/or shrinkage (manifested defects)? ☐ Yes        ☐ No

   - If yes, please attach a repair estimate from a licensed contractor or flooring installer to repair/replace the flooring and any baseboards, moldings and/or or sub-floor damaged as a result of the repair/replacement efforts along with at least three photographs depicting the flooring issues for which you are seeking compensation from close, medium and long range.  The contractor's repair estimate **should** include the square footage of flooring manifesting defects, the cost to repair, and a floor plan depicting where the flooring boards manifesting defect are located.

4. To your knowledge did you and/or your contractor read and follow the Product installation instructions during the installation process? ☐ Yes ☐ No

5. Were any of the flooring boards you are claiming manifesting defects damaged by a continuous or repeated seepage or leakage over a period of weeks, months or years, of water from a plumbing system, or from within or around any plumbing fixtures, including sink and or a sudden discharge of water from the plumbing systems including dishwasher, hot water heater and sink? ☐ Yes        ☐ No

6. Have you repaired any portion of your floor? ☐ Yes   ☐ No

- If so, state the reason for the repair and provide repair documentation including repair invoices and proof of payment.

Compensation Election:  I(we) understand that compensation for itemized claims will include a combination of cash and vouchers. I (we) further understand that vouchers may be used to purchase **any** Lumber Liquidator product and/or be used for labor costs with Lumber Liquidator Installation Services. I (we) further understand that compensation amounts, and components are determined by Class Counsel depending upon number of claimants. It is anticipated claimants electing to receive more vouchers may receive a higher compensation percentage.

Choose One from the following:

☐  More Cash-Less Vouchers          ☐  Less Cash -More Vouchers

### PART 2: SUPPORTING DOCUMENTATION

If your claim form **does not** accurately state the square footage of Product purchased, you will need to provide Supporting Documentation that shows your purchase(s) during the Time Period(s) of which you are claiming you purchased the Class Flooring is required. You must attach documentation (such as a receipt) to evidence your Class Purchase of Morning Star Strand Bamboo Flooring.

### PART 3: TRANSFER STORE-CREDIT VOUCHER

If you would like to transfer your Store-credit Voucher to a third-party please complete Part 3. Further information concerning transfers can be found on the website, or by calling the Settlement Administrator.

I, (We) request that our Store-credit Vouchers be transferred to _____

Address of Transferee: _____

Phone Number (if known): ( __ __ __ ) __ __ __ - __ __ __ __

### PART 4: SIGN AND SUBMIT

☐  I (we) understand and agree that by submitting a claim I (we) will be barred from making any further claims for the Product.

I declare under penalty of perjury that:

(i)  I purchased Morning Star Strand Bamboo Flooring from Lumber Liquidators during the eligible date range as indicated by my selection above, and

(ii)  all information I provided in this Claim Form and in the attached Supporting Documentation is true and correct.

Signature: _____  Date: _____ / _____ / _____
                                                              M M        DD           YYYY

Print Name: _____

| If submitting by <u>mail</u>, send your Claim Form and Supporting Documentation to: | If submitting <u>online</u>, complete the electronic Claim Form available at: |
|---|---|
| *Lumber Liquidator's Bamboo Flooring Settlement* c/o CPT Group, Inc. 50 Corporate Park Irvine, CA 92606 | www.bamboosettlement.com |

If you have questions concerning the claim form, or potential compensation ranges for Express Lane claims or Itemized Claims please visit the above-referenced website for further information.

**BE SURE TO SIGN THE CLAIM FORM AND SUBMIT IT WITH YOUR SUPPORTING DOCUMENTATION TO THE SETTLEMENT ADMINISTRATOR POSTMARKED OR SUBMITTED ELECTRONICALLY NO LATER THAN <u>&lt;&lt;DEADLINE&gt;&gt;</u>**

# Exhibit D
# to Settlement Agreement

| Article | Created On | Article Description |
|---|---|---|
| 10026422 | 12/19/2012 | MS Amber City Bam 5/8"x3-3/4" Str |
| 10035119 | 2/26/2014 | MS Bamboo 3/8" x 3 3/4" Carb Clic |
| 10035126 | 2/26/2014 | MS Bamboo 3/8" x 3 3/4" Nat Clic |
| 10015495 | 8/13/2010 | MS Bamboo 3/8x3-3/4" Str Carb Clic |
| 10007172 | 8/13/2010 | MS Bamboo 5/8x3-3/4" Str Carb |
| 10012933 | 8/13/2010 | MS Bamboo 5/8x3-3/4" Str Nat |
| 10022062 | 6/25/2011 | MS Bamboo 9/16"x5" Stained Str |
| 10015491 | 8/13/2010 | MS Bamboo 9/16x4-3/4" Str Carb Clic |
| 10015503 | 8/13/2010 | MS Bamboo 9/16x4-3/4" Str Nat Clic |
| 10035062 | 2/20/2014 | MS Banhu Bamboo 1/2 x 5" Clic |
| 10021588 | 4/13/2011 | MS Brushed White Bam 9/16x5-3/8" Str |
| 10035069 | 2/20/2014 | MS Coffee Bean Bam 1/2 x 5" Clic Str |
| 10036060 | 5/6/2014 | MS Copperstripe Bamboo 1/2 x 5" Clic |
| 10016736 | 8/13/2010 | MS DIS Shing Palace Bam 9/16x5-1/4" Str |
| 10035213 | 3/12/2014 | MS Dizi Bamboo 7/16x3-3/4" Str |
| 10034980 | 2/19/2014 | MS Gansu Bamboo 7/16x3-3/4" Str |
| 10034942 | 2/18/2014 | MS Gehu Bamboo 1/2 x 5" Clic |
| 10034995 | 2/19/2014 | MS Gehu Bamboo 7/16x3-3/4" Str |
| 10034985 | 2/19/2014 | MS Guoyue Bamboo 7/16x3-3/4" Str |
| 10034926 | 2/18/2014 | MS Guzheng Bamboo 1/2 x 5" Clic |
| 10035121 | 2/26/2014 | MS Hazelnut Bam 1/2"x5" Clic |
| 10034954 | 2/18/2014 | MS Hei Bamboo 1/2 x 5" Clic |
| 10026173 | 10/30/2012 | MS HS 9/16 x 5 1/8 Silver Strand |
| 10023638 | 1/27/2012 | MS HS 9/16 x 5 1/8 Strand Antique |
| 10021937 | 6/8/2011 | MS HS Ant Walnut Bam 9/16x5 |
| 10034141 | 1/29/2014 | MS HS Brushed Cinnamon Str 1/2 x5 Clic |
| 10029207 | 4/17/2013 | MS HS Dynasty 9/16" x 5-1/8" STR |
| 10034908 | 2/18/2014 | MS HS Gaohu Bamboo 1/2 x 5" Clic |
| 10034914 | 2/18/2014 | MS HS Hei Bamboo 1/2 x 5" Clic |
| 10023898 | 2/27/2012 | MS HS Honey Str Bamboo 9/16x5-1/8" |
| 10035073 | 2/20/2014 | MS HS Mtn Ember Bam 1/2 x 5" Clic Str |
| 10034919 | 2/18/2014 | MS HS Pipa Bamboo 1/2 x 5" Clic |
| 10033628 | 1/9/2014 | MS HS Silver Strand 1/2 x5 Clic |
| 10023914 | 2/28/2012 | MS HS Songjiang Bamboo 9/16x5-1/8" |
| 10023919 | 2/28/2012 | MS HS Str Danyang Bamboo 3/8 x 3 3/4" |
| 10023891 | 2/27/2012 | MS HS Str Nantong Bamboo 9/16x5-1/8" |
| 10033619 | 1/9/2014 | MS HS Weathrd Chstnt Bam 1/2 x5 Clic Str |
| 10035217 | 3/12/2014 | MS HS Winter Wheat Bamboo 1/2 x 5" Clic |
| 10034924 | 2/18/2014 | MS HS Zheng Bamboo 1/2 x 5" Clic |
| 10034929 | 2/18/2014 | MS HS Zhu Bamboo 1/2 x 5" Clic |
| 10023910 | 2/28/2012 | MS HSWB Hanshan Bamboo 9/16x5-1/8" |
| 10023938 | 2/29/2012 | MS HSWB Wthrd Chstnt Bam 9/16x5-1/8" |
| 10034932 | 2/18/2014 | MS Hubei Bamboo 1/2 x 5" Clic |
| 10034934 | 2/18/2014 | MS Jinghu Bamboo 1/2 x 5" Clic |
| 10035189 | 3/12/2014 | MS Liuan Bam 1/2 x 5" Clic Str |
| 10035193 | 3/12/2014 | MS Mei Bamboo 1/2 x 5" Clic |

| | | |
|---|---|---|
| 10035197 | 3/12/2014 | MS Mei Bamboo 7/16x3-3/4" Str |
| 10034149 | 1/30/2014 | MS Mocha Espresso Bam 1/2 x 5" Clic Str |
| 10035209 | 3/12/2014 | MS Pipa Bamboo 1/2 x 5" Clic |
| 10016147 | 8/13/2010 | MS Qing Xiamen Bam 5/8x3-3/4" Str |
| 10038059 | 10/30/2014 | MS Roasted Sable 1/2x5 5/16" QC Str |
| 10034951 | 2/18/2014 | MS Ruan Bamboo 1/2 x 5" Clic |
| 10034989 | 2/19/2014 | MS Shantou Bamboo 7/16x3-3/4" Str |
| 10029290 | 4/24/2013 | MS Siegel Bamboo 1/2 x 5" Str QC |
| 10035411 | 3/26/2014 | MS Smokehouse Bamboo 1/2 x 5" Clic |
| 10005598 | 8/13/2010 | MS STN Arcadia Bamboo 5/8x3-3/4" |
| 10011245 | 8/13/2010 | MS STN Arcadia Dark Bamboo 5/8x3-3/4" |
| 10024105 | 3/12/2012 | MS STN Aub Saddle Bam 1/2x5" Str" Clic |
| 10013324 | 8/13/2010 | MS STN Beijing Palace Bam 5/8x3-3/4" |
| 10010382 | 8/13/2010 | MS STN Bonsai Bamboo 5/8x3-3/4" |
| 10012138 | 8/13/2010 | MS STN Dali Bamboo 5/8x3-3/4" |
| 10000903 | 8/13/2010 | MS STN Forbidden City Bam 5/8x3-3/4" |
| 10023616 | 1/27/2012 | MS STN French Roast Bam 5/8"x3-3/4" Str |
| 10003039 | 8/13/2010 | MS STN Great Silk Road Bam 5/8x3-3/4" |
| 10015281 | 8/13/2010 | MS STN Hazelnut Bam 5/8x3-3/4" Str |
| 10006532 | 8/13/2010 | MS STN HS Imp Palace Bam 5/8x3-3/4" |
| 10004561 | 8/13/2010 | MS STN HS Potala Pal Bam 5/8x3-3/4" |
| 10034996 | 2/19/2014 | MS STN Hu Bamboo 7/16x3-3/4" Str |
| 10015499 | 8/13/2010 | MS STN Kobra Bam 9/16x4-3/4" Str Clic |
| 10029145 | 4/10/2013 | MS STN Praline Antique Bam 1/2 x5"Clic |
| 10003151 | 8/13/2010 | MS STN Qing Drag Bam 9/16x3-3/4" Str |
| 10023620 | 1/27/2012 | MS STN Qing Dragon Bam 5/8"x3-3/4" Str |
| 10010906 | 8/13/2010 | MS STN Qing Kobra Bam 9/16x3-3/4" Str |
| 10015277 | 8/13/2010 | MS STN Qing Scorp Bam 5/8x3-3/4" Str |
| 10006035 | 8/13/2010 | MS STN Qing Spyder Bam 5/8x3-3/4" Str |
| 10015285 | 8/13/2010 | MS STN Qing Zebra Bam 5/8x3-3/4" Str |
| 10024670 | 5/29/2012 | MS STN Scarlet Antique Bam 1/2 x 5" Str |
| 10024662 | 5/29/2012 | MS STN Scarlet Nt Bam 1/2x5" Str Clic |
| 10005251 | 8/13/2010 | MS STN Suzhou Garden Bam 5/8x3-3/4" |
| 10000314 | 8/13/2010 | MS STN Tai Shan Bam 5/8x3-3/4" Nat |
| 10009424 | 8/13/2010 | MS STN Tai Shan Snow 5/8x3-3/4" |
| 10007165 | 8/13/2010 | MS Tiger Bamboo 5/8x3-3/4" Str |
| 10034145 | 1/30/2014 | MS Tobacco Spice Bam 1/2 x5" Clic Str |
| 10029354 | 4/30/2013 | MS WB 9/16 x 5 1/8 Smoked Almond Str |
| 10035201 | 3/12/2014 | MS WB Longjing Bamboo 1/2 x 5" Clic |
| 10035205 | 3/12/2014 | MS WB Longjing Bamboo 7/16x3-3/4" Str |
| 10033579 | 1/8/2014 | MS WB Pagoda 1/2x5 Clic Str |
| 10023906 | 2/28/2012 | MS Woven Ginger Bamboo 1/2 x 5" Str QC |
| 10026410 | 12/19/2012 | MS XD Amber City Bamboo 1/2 x 5" Str QC |
| 10039150 | 5/7/2015 | MS XD Antique Hazel Bam 1/2x5-1/8 Str |
| 10023754 | 2/6/2012 | MS XD Bamboo 1/2 x 5" Str Carb Clic |
| 10023750 | 2/6/2012 | MS XD Bamboo 1/2 x 5" Str Nat Clic |
| 10024089 | 3/9/2012 | MS XD Bamboo 1/2 x 5" Strand Antique QC |

| | | |
|---|---|---|
| 10039153 | 5/7/2015 | MS XD Carb Bamboo 1/2"x5-1/8" Str |
| 10033608 | 1/8/2014 | MS XD HS Ant Hazel Bam 1/2 x5" Clic Str |
| 10039149 | 5/7/2015 | MS XD HS Antique Hazel Bam 1/2x5-1/8 Str |
| 10039148 | 5/7/2015 | MS XD HS Honey Bam 1/2" x 5-1/8" Str |
| 10033624 | 1/9/2014 | MS XD HS Honey Str Bam 1/2 x5 Clic Str |
| 10033615 | 1/9/2014 | MS XD HS Strand Antique 1/2 x5 Clic |
| 10039147 | 5/7/2015 | MS XD HS Strand Antique Bam 1/2x 5-1/8" |
| 10039152 | 5/7/2015 | MS XD Natural Bam 1/2" x 5-1/8" Str |
| 10035407 | 3/26/2014 | MS XD Pearl City 1/2 x 5" Clic |
| 10023625 | 1/27/2012 | MS XD STN Frnch Roast BAM 1/2x5"Str Clic |
| 10029353 | 4/30/2013 | MS XD STN Peking Antique Bam 1/2 x5"Clic |
| 10039151 | 5/7/2015 | MS XD Strand Antique Bam 1/2x 5-1/8" |
| 10034961 | 2/18/2014 | MS Xian Bamboo 1/2 x 5" Clic |
| 10034948 | 2/18/2014 | MS Yanqin Bamboo 1/2 x 5" Clic |
| 10034153 | 1/30/2014 | MS Yinwan Antiq Bam 1/2 x 5" Clic Str |
| 10042257 | 11/22/2016 | MSXD DS Silver Stone Bam 1/2 x 5-1/8 |
| 10040815 | 4/14/2016 | MSXD DS Warm Cognac Bam 1/2 x 5-1/8 |
| 10033593 | 1/8/2014 | MSXD English Toffee Bam 1/2 x5" Clic Str |
| 10023902 | 2/28/2012 | MSXD Fall Harvest Bamboo 1/2 x 5" Str QC |
| 10032997 | 11/20/2013 | SP Amber City Bam 7/16x3-3/4" Str |
| 10032986 | 11/19/2013 | SP Bamboo 7/16x3-3/4" Str Carb |
| 10032987 | 11/19/2013 | SP Bamboo 7/16x3-3/4" Str Nat |
| 10033002 | 11/20/2013 | SP STN French Roast Bam 7/16x3-3/4" Str |
| 10032976 | 11/19/2013 | SP STN Hazelnut Bam 7/16x3-3/4" Str |
| 10023940 | 2/29/2012 | MS HSWB Wthrd Chstnt Bam 9/16x5-1/8"-OD |
| 10026715 | 1/3/2013 | MS WB 9/16 x 5 9/16" Pearl City Str-OD |
| 10032988 | 11/19/2013 | SP Bamboo 7/16x3-3/4" Str Carb-OD |
| 10016732 | 8/13/2010 | MS DIS Sufong Palace Bam 9/16x5-1/4" Str |
| 10023768 | 2/6/2012 | UNF Strand Carb 5/8x3-3/4" |
| 10023770 | 2/6/2012 | UNF-1BASECOAT Strand Carb |