1  Michael F. Ram, SBN 104805
   mram@robinskaplan.com
2  Marie N. Appel, SBN 187483
   mappel@robinskaplan.com
3  ROBINS KAPLAN LLP
4  2440 West El Camino Real, Suite 100
   Mountain View, California 94040
5  Telephone: (650) 784-4040

6  [Additional Counsel Appear on Signature Page]

7  *Class Counsel*

          UNITED STATES DISTRICT COURT
8
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10  DANA GOLD, TAMMY EMERY, MARY          No.  3:14-cv-05373-RS
    LOUISE FERENCE, LAURA NORRIS,
11  DONALD FURSMAN, and JOHN TRIANA, on   **MOTION OF THE PLAINTIFF
    behalf of themselves and all others similarly   CLASS FOR ATTORNEYS' FEES
12  situated,                             AND EXPENSES**

13            Plaintiffs,                 <u>CLASS ACTION</u>

14       v.                               JURY TRIAL DEMAND
15
                                          Complaint Filed:  December 8, 2014
16  LUMBER LIQUIDATORS, INC., a Delaware
    corporation; and DOES 1 through 200,  DATE:        September 24, 2020
17  inclusive,                            TIME:        1:30 p.m.
                                          LOCATION:    Courtroom 3 - 17th Floor
18            Defendants.                 The Honorable Richard Seeborg

19

20

21

22

23

24

25

26

27

1

## TABLE OF CONTENTS

2

I. **INTRODUCTION** ......................................................................................................... 1

3

II. **ARGUMENT** ............................................................................................................... 4

4

   **A.** **Under the applicable lodestar method, class counsel's fee is reasonable.** ................. 4

5

     1.   Under California law, the lodestar method generally applies to fee-shifting cases,

6

     including those at issue here. ............................................................................................ 4

7

     2.   As the prevailing party, the Plaintiff Class is entitled to an award of attorneys' fees

8

     under Cal. Civil Code section 1780. ............................................................................... 5

9

     3.   Where a settlement provides relief that is not easily monetized, the lodestar method is

     appropriate under both California and Ninth Circuit law. ............................................... 6

10

     4.   Under both California and Ninth Circuit law, the lodestar method provides a

11

     presumptively reasonable fee. ......................................................................................... 8

12

     5.   Class counsel's lodestar is reasonable. ........................................................................... 10

13

     6.   Class counsel's rates are reasonable. ............................................................................. 11

14

   **B.** **A percentage of the recovery cross-check confirms that class counsel's fee is**

   **reasonable** ............................................................................................................................ 11

15

     1.   A cross check against the percentage method is not required, but nevertheless

16

     confirms that the requested amount is reasonable. ........................................................ 12

17

       a)   **The vouchers have value.** ................................................................................... 13

18

       b)   **Fee awards under fee-shifting cases need not be proportional to the value of**

19

       **the recovery** ............................................................................................................... 15

20

   **C.** **This case is distinguishable from the Lumber Liquidators' MDL settlement in the**

   **Fourth Circuit.** ................................................................................................................... 16

21

   **D.** **Class Counsel's lodestar fees are proper irrespective of CAFA's "coupon"**

22

   **provisions** ............................................................................................................................ 18

23

     1.   The vouchers are not coupons. ...................................................................................... 19

24

     2.   The lodestar method is appropriate even under CAFA's "coupon" provisions. ........ 21

25

     3.   Alternatively, the Court could calculate a lodestar fee based on the cash portion of the

26

     settlement plus a percentage fee based on the redeemed value of the vouchers. .............. 22

27

---

**E.    The requested expenses and costs are fully documented, necessarily incurred and reasonable.**................................................................................................ **23**

**F.    The Class Representative service awards are reasonable and appropriate.**............ **23**

**III.  CONCLUSION.** .......................................................................................... **24**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

**California Cases**

*Burke v. Ipsen*, 189 Cal. App. 4th 801 (2010) ................................................................ 6

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) ............................................. 7, 8

*Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (2007) ............................ 6

*Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509 (2003). .................................................. 5, 16

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ........................................................ 9

*Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480 (2016) ..................................... 13

*Vo v. Las Virgenes Mun. Water Dist.,* 79 Cal. App. 4th 440 (2000) ....................................... 15

**California Statutes**

Cal. Civ. Code § 1760 ................................................................................ 5, 6

California Civil Code section 1780 .......................................................... *passim*

**Federal Statutes**

28 U.S.C. § 1712 ................................................................................ passim

28 U.S.C. § 1712(a) .................................................................... 3, 18, 19, 21

28 U.S.C. § 1712(b) ......................................................................... 3, 18

28 U.S.C. §1712(c) ...................................................................... 3, 18, 22

**Federal Rules**

Fed. R. Civ. P. 23(f) ..................................................................... iii

**Federal Cases**

*Ballen v. City of Redmond*, 466 F.3d 736 (9th Cir. 2006) ........................................................ 11

*Chambers v. Whirlpool Corp.,* 214 F.Supp.3d 877 (C.D. Cal. 2016) ................................ *passim*

*Close v. Sotheby's, Inc.*, 909 F.3d 1204 (9th Cir. 2018) ............................................................ 4

*Congdon v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 91604, 2019 WL 2327922 (N.D.
   Cal. May 31, 2019), *appeal dismissed*, No. 19-16309, 2019 WL 4854343 (9th
   Cir. July 12, 2019) ................................................................................................................ 15

*Cunningham v. Cnty. of L.A.*, 879 F.2d 481 (9th Cir. 1988) ...................................................... 9

*Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886 (9th Cir. 2019) ............................................... 20

*Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997 (9th Cir. 2002) ........................... 8

*Foos v. Ann, Inc.*, 2013 WL 5352969 (S.D. Cal. Sept. 24, 2013) ............................................ 14

*Fowler v. Wells Fargo,* No. 4:17-cv-02092-HSG (N.D. Cal.) .................................................. 11

*Garner v. State Farm Mut. Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832
   (N.D. Cal. Apr. 22, 2010) ..................................................................................................... 24

*Giroux v. Essex Prop. Trust* 2019 U.S. Dist. LEXIS 41968, 2019 WL 1207301
   (N.D. Cal. March 14, 2019) ................................................................................................ 3, 8

*Gonzales v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013) ................................................... 9

*Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577 (9th Cir. 2010) ............................................... 22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................... 7, 9

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011) ........... 7, 13

*In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297 (N.D. Ga. 1993 .................... 14

*In re Easysaver Rewards Litigation*, 906 F.3d 747 (9th Cir. 2018) .......................... 4, 19, 21, 22

*In re Galindo*, ADV 10-90473, 2013 WL 3389556 (B.A.P. 9th Cir. July 8, 2013) ................... 15

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ............................................ *passim*

*In re Online DVD Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) ................. 3, 19, 20

*In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ....... 24

*In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg.,
   Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ............................... 16, 17

*Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424 (N.D. Cal. July 10, 2009) .............................................. 5, 15, 16

*Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ............................ 4

*McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009). ...................................... 9

*Noll v. eBay*, 309 F.R.D. 593 (N.D. Cal. 2015).............................................................. 9

*Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010)........................... 5, 6

*Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir. 2010) ..................................... 11

*Rael v. Children's Place, Inc.*, No. 3:16-CV-00370-GPC-LL, 2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ........................................................................... 17

*Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975 (N.D. Cal. 2017) ................................ 5

*Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163 (C.D. Cal. 2014) .......... 5, 7

*Thalheimer v. City of San Diego*, 2012 U.S. Dist. LEXIS 59315 (S.D. Cal. 2012).................. 23

*Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53 (D. Mass. 2015)........................................ 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................................ 9, 10, 13

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016) ...................................... 7

## I.     INTRODUCTION

In the over five years since filing this action, Plaintiffs have diligently and aggressively prosecuted it in the face of Lumber Liquidators' consistently vigorous defense.  Plaintiffs successfully defended against motions to dismiss, *Daubert* motions, a motion for summary judgment, and a transfer of venue motion.  Plaintiffs nonetheless certified six state classes and defeated a subsequent Rule 23(f) petition.  The parties exchanged approximately 855,000 pages of discovery and engaged in approximately twenty fact and expert depositions.  Importantly, Plaintiffs expected and were prepared to proceed to trial when the parties settled.

Lumber Liquidators' financial difficulties compelled the settlement.  Significant and costly litigation in other jurisdictions and other events had drastically eroded Lumber Liquidators' financial health.  When Plaintiffs filed this case, Lumber Liquidators' stock was trading at approximately $70 per share.  It is currently hovering around $5 per share, a decrease of over 70%.  Information provided by Lumber Liquidators demonstrated that it would not have sufficient money to satisfy a class judgment in the range that the Class was seeking.  Class Counsel have substantial experience trying class actions.  Plaintiffs wanted to try the case.  Had Plaintiffs prevailed at trial, there was a distinct likelihood that Lumber Liquidators would declare bankruptcy and the class members would get little or nothing.

While Lumber Liquidators did not have–and does not currently have–substantial cash beyond what it is providing in this settlement, it does have a significant inventory of products and services that can provide class members additional valuable compensation for their claims.  Thus, in settlement, Lumber Liquidators is providing $14 million in cash and $14 to $16 million in store credit vouchers.[1]  Eligible claimants can use their vouchers to select from approximately 1350 total items[2] or to pay for installation by one of Lumber Liquidators' third-

---

[1] Based on the volume of claims, it appears that it will be $16 million in vouchers.

[2] https://www.lumberliquidators.com/ll/s/flooring-underlayment
https://www.lumberliquidators.com/ll/s/countertops
https://www.lumberliquidators.com/ll/s/floor-protection

party installers. These items include 500 different flooring options and approximately 850 different kinds of non-flooring items such as table and tile saws, thermostats, countertops, staircase materials, tools (knifes, screws, mops) butcher blocks, cleaning supplies and thermostats. The average price of the approximately 850 accessories is $40.00 with the most expensive product costing approximately $500.00 and the lowest costing $0.96.

To date, approximately 11% of Class Members have submitted claims, 98 Class Members have opted out, and at most one has objected.[3] Class Counsel successfully negotiated the best settlement possible in light of the risks, most notably Lumber Liquidators' deteriorating financial condition. Counsel have worked hard prosecuting this case, using their skill and expertise to achieve the best result possible for the Class Members. Accordingly, the Court should award a reasonable fee to compensate Counsel for their work.

Because this is a diversity case, the Court should apply California law to determine attorneys' fees. And because fees are provided for by fee-shifting provisions of California's and other states' consumer protection statutes, the lodestar method governs. Under the circumstances of this case, because the settlement is difficult to value, the most appropriate method is the lodestar approach. Therefore, even if, as the Court noted in its earlier order, the Court retains discretion to employ either the percentage of the fund or lodestar methods, the Court should exercise that discretion in favor of the lodestar method. Indeed, in a similar case diversity case under California law, in which the settlement provided both cash and in-kind relief, Judge Gilliam elected to use the lodestar method due to the difficulty in valuing the in-kind portion of the relief:

---

https://www.lumberliquidators.com/ll/s/floor-cleaning-care-maintenance-repair
https://www.lumberliquidators.com/ll/s/flooring-tools
https://www.lumberliquidators.com/ll/s/flooring-stairs-treads-risers
https://www.lumberliquidators.com/ll/s/wood-floor-grills-vents-grates
https://www.lumberliquidators.com/ll/s/wood-floor-grills-vents-grates

[3] One class member submitted an objection. The content of his objection indicated that he might be misunderstanding the settlement. Class Counsel contacted him to provide him with more information regarding the settlement benefits.

MOTION OF THE PLAINTIFF CLASS        2              No. 3:14-cv-05373-RS
FOR ATTORNEY'S FEES AND EXPENSES

> The challenge in using the percentage of recovery method in this case is that the settlement benefits are a hybrid: $350,000 in cash, plus the in-kind provision of credit monitoring services to class members. The Court obviously faces no challenge in valuing the cash component of the settlement. But the actual value of the credit monitoring services to Class Members is not self-evident.

*Giroux v. Essex Prop. Trust* 2019 U.S. Dist. LEXIS 41968, *13-14, 2019 WL 1207301 (N.D. Cal. March 14, 2019). The lodestar method takes into account all of the work that Class Counsel have done, avoids the intractable difficulties in quantifying the in-kind relief, and should be applied here.

Finally, the Court expressed concern over valuation of the vouchers under CAFA's coupon provisions in its Order Granting Preliminary Approval. As an initial matter, the vouchers are not "coupons" under binding Ninth Circuit case law because (i) the class members need not spend any additional money to use them, (ii) they can be spent on a vast array of products and services, and (iii) they are flexible (they don't expire in California and are freely transferrable). Thus, under *In re Online DVD Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015), the vouchers are not "coupons."

But even if the vouchers *were* coupons under CAFA, the Court should still apply the lodestar method per 28 U.S.C. section 1712(b). While section 1712(a) applies to settlements that provide only coupon relief, and section 1712(c) applies to settlements that provide coupon and injunctive relief, section 1712(b) applies to settlements, like this one, that (assuming the vouchers are "coupons") provide both coupon and cash relief. *See In re Easysaver Rewards Litigation*, 906 F.3d 747, 759 n.11 (9th Cir. 2018). And unlike the other two provisions, section 1712(b) provides that for settlements it governs, class counsel's fee "shall be based upon the amount of time class counsel reasonably expended working on the action," i.e., by the lodestar method. In the alternative, if the Court were to conclude that section 1712(c) applies to this settlement (finding that provision applies to any settlement that provides both coupon and non-coupon relief), class counsel's fee would be the sum of its lodestar attributable to the cash portion, plus the percentage of the redeemed value of the vouchers.

The Court should award class counsel its fee of $9,207,107.82, which is class counsel's

---

1  lodestar, with no multiplier.  Class counsel achieved a remarkable, valuable settlement for a

2  large class of consumers, particularly in light of Lumber Liquidators' position teetering at the

3  brink of insolvency.  The class relief—cash and vouchers—does not implicate CAFA's coupon

4  settlement provisions. But even if it did, under the applicable section of those provisions, the

5  lodestar method should be used to calculate class counsel's fee just the same.

6  **II.      ARGUMENT**

7      **A.      Under the applicable lodestar method, class counsel's fee is reasonable.**

8          In diversity cases, federal courts apply state law to determine both the right to attorney's

9  fees and the appropriate method to calculate the amount.  *Close v. Sotheby's, Inc.*, 909 F.3d

10  1204, 1208 (9th Cir. 2018) (applying state law to determine fee award in diversity jurisdiction

11  action); *see also Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir.

12  1995) (emphasis added) ("Ninth Circuit precedent has applied state law in determining not only

13  the right to fees, *but also in the method of calculating the fees*.") (emphasis added).

14          Because this is a diversity action the Court applies California state law in determining

15  the appropriate measure of fees.  And because the fee award is based on fee shifting statutes,

16  and the settlement is difficult to value, the lodestar method is most appropriate.  The lodestar

17  method provides a presumptively reasonable fee.

18              **1.      Under California law, the lodestar method generally applies to fee-
19                     shifting cases, including those at issue here.**

20          "Under a fee-shifting statute, [California] courts typically use the 'lodestar method,'

21  which 'calculates the fee by multiplying the number of hours reasonably expended by counsel

22  by a reasonable hourly rate.'"  *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 984

23  (N.D. Cal. 2017) (applying California law and lodestar method in a diversity action with fee

24  shifting statute); *see also Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163,

25  at *8 (C.D. Cal. 2014) (applying lodestar method as appropriate in fee-shifting case under

26  CLRA and similar consumer protection statutes of other states); *Jefferson v. Chase Home Fin.*,

27  C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424, at *3 (N.D. Cal. July 10,

2009) (applying lodestar method to determine "reasonable fees" under CLRA).

In this case, the payment of attorney's fees is based on fee-shifting statutes, specifically, California Civil Code section 1780 of the California Consumers Legal Remedies Act ("CLRA") and similar provisions in other state consumer protections statutes.  Since California law applies, the calculation of attorney's fees should be performed using the lodestar method.

> ## 2.  As the prevailing party, the Plaintiff Class is entitled to an award of attorneys' fees under Cal. Civil Code section 1780.

"Under [Civil Code section] 1780(e), the Court shall award costs and attorneys' fees to a prevailing plaintiff in an action under the CLRA. A plaintiff is the prevailing party if he or she obtained a 'net monetary recovery' or 'realized its litigation objectives,' including pursuant to a settlement agreement." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1169 (C.D. Cal. 2010) (citing *Kim v. Euromotors West/The Auto Gallery,* 149 Cal. App. 4th 170, 178–79 (2007)).  Section 1760 of the Consumers Legal Remedies Act requires that the CLRA "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.  Accordingly, "courts must construe the statute as allowing prevailing consumers reasonable attorney's fees." *Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509, 513 (2003).

Plaintiffs are the prevailing party here and are entitled to an award of attorney's fees under section 1780.  Plaintiffs sought to right a wrong committed by Lumber Liquidators when it sold its Morning Star strand bamboo flooring that it allegedly knew was defective because it could not withstand normal moisture conditions.  Class Members purchased flooring that would often shrink, buckle, warp, and split, often only after a few months, even though it is guaranteed to last 30 years.  This action provides compensation to Class Members who purchased the defective flooring, and provides additional compensation to Class Members whose floor has exhibited the defects.  Providing a remedy for a defective product serves the public interest by compensating Class Members and by helping to deter such conduct in the

1    future.

2        Here, the Class consists of potentially 330,951 members nationwide so the settlement

3    provides a compensation benefit to this large class of people.  *See Parkinson*, 796 F. Supp. 2d

4    at 1170-71 (finding that "Although . . . even a final total of 2,900 claimants, do[es] not amount

5    to a "large" class of persons by today's standards in class action cases, the number is not

6    without significance" and was sufficient to qualify as a "significant benefit conferred on a large

7    class of persons"); *see, e.g., Burke v. Ipsen*, 189 Cal. App. 4th 801, 823 (2010) (finding

8    substantial benefit under section 1021.5 met where "relief granted by the trial court will

9    directly affect almost 1,000 actual or potential members of the ADDA); *Estrada v. FedEx*

10   *Ground Package System, Inc.*, 154 Cal. App. 4th 1, 16–17 (2007) (holding that plaintiff's

11   success in obtaining relief for 209 employees satisfied "large class of persons" factor).

12       Plaintiffs obtained relief in the form of a net monetary recovery of $14 million, as well

13   as vouchers good for store credit at Lumber Liquidators worth $16 million.  The Class

14   Members can use the cash and vouchers to repair the flooring problems at the heart of this

15   lawsuit.  In accordance with the purpose of "protect[ing] consumers against unfair and

16   deceptive business practices and provid[ing] efficient and economical procedures to secure

17   such protection," an award of attorneys' fees here is appropriate.  Cal. Civ. Code § 1760.

18   Plaintiffs' Counsel have spent more than five years litigating this action in the face of vigorous

19   opposition by Defendant, invested numerous hours and obtained a good result to enforce

20   specific consumer protections.  Thus, an award of fees is appropriate.

21           **3.      Where a settlement provides relief that is not easily monetized, the
                       lodestar method is appropriate under both California and Ninth
22                     Circuit law.**

23       "Where a settlement produces a common fund for the benefit of the entire class, courts

24   have discretion to employ either the lodestar method or the percentage-of-recovery method." *In*

25   *re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (citation

26   omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same).

27   However, where the value of the entire settlement is difficult to ascertain, and fees are justified

---

1  under a fee-shifting statute, courts applying California law opt to use the lodestar method to

2  determine attorneys' fees.  *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546-

3  47 (9th Cir. 2016) (applying California law and lodestar method in unfair business practices

4  diversity action where total settlement was difficult to value because it based compensation on

5  an estimate of future product failure); *Hanlon,* 150 F.3d at 1029 (attorney's fees approved using

6  lodestar method where no class member was entitled to cash recovery, making valuation of the

7  settlement agreement more difficult); *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1809

8  (1996) (remanding to trial court to calculate fees using lodestar and stating "[Percentage of the

9  fund] method . . . should only be used where the amount was a 'certain or easily calculable sum

10  of money.'"); *Roberts v. Electrolux Home Prods.*, 2014 U.S. Dist. LEXIS 130163, at *8 (C.D.

11  Cal. 2014) (applying lodestar method as appropriate in fee-shifting case under section 1780 and

12  other states similar consumer protection statutes where relief was difficult to accurately

13  ascertain

14       California's seminal *Dunk* case is illustrative.  In *Dunk*, the court found that the case

15  was not appropriate for the percentage of the fund method to calculate attorneys' fees because,

16  "Although the ultimate settlement value to the plaintiffs could be as high as $26 million, the

17  true value cannot be ascertained until the one-year coupon redemption period expires.  This is

18  not the type of settlement that lends itself to the common fund approach."  *Id*.  The lodestar

19  method is also typically utilized in other situations where the relief obtained is "not easily

20  monetized," such as, for example, when injunctive relief is part of the settlement.  *Chambers v.

21  Whirlpool Corp.,* 214 F.Supp.3d 877, 893 (C.D. Cal. 2016) (citing *In re Bluetooth*, 654 F.3d at

22  941).

23       Another recent federal district court decision counsels in favor of applying the lodestar

24  method here.  Faced with a class settlement in *Giroux* that had both cash and in-kind

25  components, in a diversity case, Judge Gilliam recently held, "the lodestar method is the proper

26  measure of the reasonable fees to be awarded to Plaintiff's counsel."  2019 WL 1207301 at *13.

27  Judge Gilliam explained:

---

MOTION OF THE PLAINTIFF CLASS      7          No.  3:14-cv-05373-RS
FOR ATTORNEY'S FEES AND EXPENSES

> The challenge in using the percentage of recovery method in this case is that the settlement benefits are a hybrid: $350,000 in cash, plus the in-kind provision of credit monitoring services to class members. The Court obviously faces no challenge in valuing the cash component of the settlement. But the actual value of the credit monitoring services to Class Members is not self-evident.

*Id.* at *13-14; *see also Chambers*, 214 F. Supp. 3d at 893 (applying lodestar fee in diversity case because settlement was difficult to monetize).

In the instant case, an evaluation of attorneys' fees as "a straight percentage recovery" is problematic because, as the Court pointed out at the November 14, 2019 hearing, there is uncertainty as to the valuation of the settlement.  As in *Dunk,* the total value of the settlement here cannot be easily determined.  While it could be as high as $30 million, the true value cannot be readily determined at this time because Class Members will receive compensation in a combination of cash and/or vouchers.  At this time, the redemption rate is not yet known. While the vouchers can be used without requiring the Class Member to spend her own money, the value of the vouchers cannot be precisely determined now.  Because, the value of the settlement cannot be readily determined, the lodestar method is appropriately used to determine the amount of attorney's fees in this case.

### 4. Under both California and Ninth Circuit law, the lodestar method provides a presumptively reasonable fee.

The lodestar method provides a presumptively reasonable fee.  *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("There is a strong presumption that the lodestar figure represents a reasonable fee."); *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 484 (9th Cir. 1988) (lodestar method produces a "presumptively reasonable lodestar fee").

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Hanlon*, 150 F.3d at 1029 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The reasonable hourly rate is the prevailing market rate in the geographic community, taking into consideration "the experience, skill, and reputation of the attorney" in question.  *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 - 06 (9th Cir. 2013).

"The resulting figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hanlon*, 150 F.3d at 1029; *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (lodestar figure may be increased or decreased depending on a variety of factors, including the contingent nature of the fee award). "The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff[s]." *McCown v. City of Fontana*, 565 F.3d 1097, 1101-02 (9th Cir. 2009). Multipliers ranging from one to three are frequently awarded in cases when the lodestar method is applied. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (in a majority of collected cases the lodestar multiplier fell between 1.0 and 3.0); *Chambers*, 214 F. Supp. 3d at 901-02 (approving a 1.68 multiplier based solely on the lodestar method); *Noll v. eBay*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (confirming 1.6 multiplier as reasonable in cross-check).

The California Supreme Court has explained:

> A contingent fee must be higher than a fee for the same legal services paid as they are performed.  . . .  A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132 – 33 (internal quotations and citations omitted).

The attorneys' fee award in this case stands up when evaluated using the factors set forth in *Vizcaino*, 290 F.3d at 1048-50:

(a)   Class Counsel's procurement of relief is a good result for a nationwide class;

(b)   Class Counsel took on considerable risk to litigate against a well-financed Defendant with facially valid defenses; and

(c)   Class Counsel devoted considerable time to the litigation and settlement over many years and were prepared to try the case.

Here, Class Counsel procured relief in the form of cash payments and store credit vouchers that Class Members can use to repair the defective flooring.  The compensation to the Class Members is a good result for the nationwide class because most Class Members would

---

MOTION OF THE PLAINTIFF CLASS        9                    No.  3:14-cv-05373-RS
FOR ATTORNEY'S FEES AND EXPENSES

have ended up with no compensation without the settlement as Lumber liquidators was denying warranty claims, basing the defects on improper installation.

Class Counsel took on considerable risk in prosecuting this case, against a defendant willing to vigorously litigate and with facially valid defenses.  At the time of settlement, Class Counsel faced the prospect of having to not only have to prevail at trial, but also retain any favorable judgment through the appellate process. Litigating this case through trial and any appeals would be expensive and time-consuming and would present risk to both parties.

Even if Class Counsel prevailed, in light of Lumber Liquidators' current financial difficulties, they likely faced difficulty collecting on a judgment.  Proving damages was also going to present a challenge in this case.

Class Counsel filed this action in December 2014 and have been prosecuting this case vigorously for approximately five years in the face of Lumber Liquidators' vigorous defense. Plaintiffs successfully defended motions to dismiss, Daubert motions, a motion for summary judgment, and a transfer motion.  Plaintiffs certified six state classes and defeated a Rule 23(f) petition.  The parties exchanged approximately 855,000 pages of discovery and engaged in over twenty fact and expert depositions.  Plaintiffs were prepared to bring the case to trial when the parties settled.  As all of the factors in *Vizcaino* are satisfied, the Court should award reasonable attorney's fees.

## 5.   Class counsel's lodestar is reasonable.

This motion seeks compensation for Class Counsel who worked diligently against strenuous opposition to secure an excellent settlement for the Class in this technically difficult case. Class Counsel's actual lodestar in prosecuting this case will be higher than the requested fee. Class Counsel's actual lodestar is currently $9,207,107.82.  Exhibit D, p. 1 to Ram Decl.

Class Counsel also incurred the following reasonable and necessary expenses in the prosecution of this action: $887,224.60.  Exhibit D, p. 2 to Ram Decl.

This is not a case where the Plaintiffs settled at the outset.  On the contrary, Class Counsel defeated motions to dismiss and to transfer, certified multistate classes, defeated

summary judgment and *Daubert* motions, and were ready to try the case against zealous defense counsel.  The lodestar is reasonable under the circumstances.  Class Counsel will provide their daily time records if the Court wishes.

### 6.    Class counsel's rates are reasonable.

In addition to computing a reasonable number of hours, the district court must determine a reasonable hourly rate for the attorneys working on the case. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). The prevailing market rates in the relevant community determine the reasonable hourly rate for purposes of lodestar calculation.  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)   "Generally . . . the relevant community is the forum in which the District court sits." *Id.* at 454-55 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir 2008)). Here, Class Counsel's rates are reasonable. *See* Declarations filed with this brief.  They are consistent with the rates approved for these very attorneys by other courts in this district. Notably, the rates sought by Class Counsel are similar to those recently approved by Judge Gilliam in *Fowler v. Wells Fargo,* No. 4:17-cv-02092-HSG (N.D. Cal.)  (Ram Dec., ¶ 4) and those approved by judges in other prior litigation.

### B.    A percentage of the recovery cross-check confirms that class counsel's fee is reasonable

The Class Members will receive a combination of cash and/or store credit vouchers which they can use to repair their flooring or to purchase one of 1350 different products, at least 800 of which are non-flooring, general housewares, products such as tools and supplies. The vouchers can be used for any products Lumber Liquidators sells, or for labor provided by third-party installers through Lumber Liquidators' network of licensed installers to install any Lumber Liquidators product.  Settlement Agreement, ¶ B.4., p. 15.

The voucher's labor component elevates the voucher's value because the third-party installers are not Lumber Liquidator employees and Lumber Liquidators will pay the installers directly.  Simply put, Lumber Liquidators will pay an estimated 80-85% of the voucher's value

directly to the flooring contractors.

The claims rate is approximately 11% at present.  Declaration of Jeffrey Cereghino ("Cereghino Decl."), ¶ 11 filed with this brief. Class Counsel, in conjunction with the claims administrator utilized a 15-20% claims rate in estimations as to Class Member benefits.  As typically occurs in a building product class action claims programs, there is an initial flood of claims with decreasing claims over time. *Id.*

The data suggests a similar claims trajectory. *Id.*  The claims are declining to less than 1000 new claims each week. *Id.* The impact of a lesser than expected claims rate is the potential of increasing Class Member compensation. While it is premature to speculate as to actual Class Member compensation until the claims are all processed, the present claims data is consistent with projections. *Id.* We anticipate, based on average purchase price data that the range of Class Member compensation will be between 25%-40% of their purchase price. *Id.*

Another notable benefit is the use of two compensation levels. The first level is for Class Members who have no damage. The second is for those Class Members with some damaged flooring.  At present the claims rate for level two claimants, those with some damaged flooring is less than .06%, which is less than 1% of all claimants.  *Id.*  The significance of that claims rate is if it continues, and dependent upon the total value of the level two claims, is a potential compensation rate in the 50%-75% range. *Id.*  Clearly compensating class members more than half of their claim, without any deduction for time in service, is a benefit many class action settlements would gladly embrace as a measure of success.

> ### 1.  A cross check against the percentage method is not required, but nevertheless confirms that the requested amount is reasonable.

Where class benefits are not easily monetized, a cross-check against the class fund is "entirely discretionary." *Chambers* 214 F. Supp. 3d at 905 (applying lodestar method and citing *Yamada*, 825 F.3d at 547); *see also Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 504-05 (2016) (The Court has discretion to cross check a lodestar fee against the percentage method."). In *Chambers,* the court determined that a cross-check would likely not be helpful

because there was no common fund, the non-monetary benefits could not be precisely quantified, and the value of the claims, once known, only covered some of the class members. 214 F. Supp. 3d at 904. Because "the court's analysis would be imprecise to the point of uselessness[,] . . . "the court elect[ed] not to conduct a discretionary cross-check." *Id.* at 905 (citing *Yamada*, 825 F.3d at 547).

Where a cross-check is utilized, the benchmark in the Ninth Circuit is typically 25 percent. *See Vizcaino*, 290 F.3d at 1047 (approving 28 percent fee as justified by a benchmark of 25 percent adjusted according to specified case circumstances); *accord In re Bluetooth*, 654 F.3d 942 (district courts in the circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure").

### a)        The vouchers have value.

The vouchers that are to be provided as part of the proposed settlement in this case will have large monetary values and as a result should have excellent redemption rates and use. Declaration of Mark A. Diekmann, filed with this brief, ¶ 3. Based on a review of cases and research related to the field of vouchers, it appears that small value vouchers (between $5-10 dollar range) are not redeemed or used nearly as often as high value vouchers like those that the claimants will receive here. *Id.* ¶ 4. In other words, vouchers that are high in value are significant to recipients and redemptions rates are most often higher as a result of the high value. *Id.* In addition to the high value of the vouchers here, the vouchers have the following important benefits which advance and strengthen their value and will enhance redemption rates:

(1) They have long periods of time to be used and redeemed (at least three years).

(2) They may be transferred.

(3) They will be provided directly to claimants. Claimants who use a voucher to shop at a store that they are familiar with, or that they have shopped at before (as here where claimants are already Lumber Liquidators customers), will have a higher propensity to use the offered voucher as opposed to someone who has never shopped at the same store.

*Id.* These factors considered by experts in evaluating cases involving vouchers. For example,

in *In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 322 (N.D. Ga. 1993) experts estimated redemption rates between 50-75%. This was true even though the certificates had discounts of between $10 and $200 and varied depending on the airline, as well as the price of the ticket each would be used to purchase. For example, the discount varied from as little as 13% to as much as 20% of a round trip fare. *Id.* ¶ 6. The vouchers in our case are far more valuable and can be used without the need to spend any of the claimants' own money.

In *Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53 (D. Mass. 2015), a case against a retailer, the settlement had two classes of vouchers with one class receiving $25 vouchers and the other $10 vouchers. *Id.* ¶ 7. The vouchers were only good for 30 days - far less than the three-year minimum period in this case. The redemption rate was 33%. *Id.*

Vouchers and coupons are inherently different. In *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013), the court stated that a coupon is a discount on merchandise or services and a voucher provides free merchandise or services. Another case that is relevant is *Foos v. Ann, Inc.*, 2013 WL 5352969, at *3 (S.D. Cal. Sept. 24, 2013) where the court states:

> Defendant Ann Taylor notes the distinction between vouchers and coupon discussed above but argues that the Settlement Agreement here is not a coupon settlement within the meaning of CAFA. The Court concurs that the class members' ability to obtain $15.00 of free merchandise is a voucher because "class members who opt for the $15 off merchandise certificate will have the opportunity to receive free merchandise, as opposed to merely discounted merchandise," (Dft's Supp. Br. at 7.)

*Id.* ¶ 8.

Here the vouchers can be used for free merchandise as there are many items in Lumber Liquidators stores that could be completely purchased with the vouchers, especially in light of the large list of accessories offered at low prices. Class Members can choose from over 1,350 items and, depending on the value of the voucher and the product the Class Member seeks to purchase, the Class Member may not have to spend any of his or her own money.

\\\
\\\

\\\

**b)**   **Fee awards under fee-shifting cases need not be proportional to the value of the recovery**

The fee award need not "be equally justifiable under both the lodestar and the percentage methods." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1190 (9th Cir. 2013); *Congdon v. Uber Techs., Inc.*, 2019 U.S. Dist. LEXIS 91604, *8, 2019 WL 2327922 (N.D. Cal. May 31, 2019), *appeal dismissed*, No. 19-16309, 2019 WL 4854343 (9th Cir. July 12, 2019). Indeed, "[i]n fee-shifting cases like this one, a percentage cross-check is of less usefulness." *Congdon,* 2019 U.S. Dist. LEXIS 91604 at *8-9 (applying California law in fee-shifting case and citing 5 Newberg on Class Actions § 15:52 (5th edition) ("[W]hen awarding fees in fee-shifting cases, courts do not-indeed typically cannot-utilize a percentage cross-check because of the absence of a significant enough recovery fund to make the cross-check feasible.")).

Courts in this circuit have approved lodestar fees that represent a much larger fraction of the recovery. *Jefferson v. Chase Home Fin.*, C 06-6510 TEH, 2009 U.S. Dist. LEXIS 64607, 2009 WL 2051424, at *3 (N.D. Cal. July 10, 2009) (approving $600,000 fee award where recovery was only $68,000 stating, "California courts have approved attorneys' fees where there is significant disparity between the Plaintiffs' recovery and the lodestar fee award."); *In re Galindo*, ADV 10-90473, 2013 WL 3389556, at *7 (B.A.P. 9th Cir. July 8, 2013) (affirming award of fees and costs approximately 47 times actual damages in a CLRA case, and stating that "when public interests are at stake it is appropriate to award substantial attorney fees and costs notwithstanding relatively small actual damages"); *Hayward,* 108 Cal. App. 4th at 512 (finding that section 1780 allows prevailing consumers reasonable attorney's fees and confirming that fee award that was approximately twice the consumer's recovery was reasonable); *Vo v. Las Virgenes Mun. Water Dist.,* 79 Cal. App. 4th 440, 448 (2000) (affirming award of attorneys' fees 12.5 times the value of plaintiff recovery in fee shifting case under Cal. Gov. Code section 12900 *et seq.* (Fair Employment and Housing Act ("FEHA")).

In *Jefferson,* the court granted a $600,000 fee award in a consumer protection action,

rejecting defendant's contention that it was improper because it was disproportionate compared to the $68,000 class recovery[.]" *Jefferson*, 2009 WL 2051424 at *3.

> Under California consumer protection law, the size of Plaintiffs' recovery as compared to the fees award sought does not determine whether a deduction should be taken from the lodestar; on the contrary, the state courts are clear in explaining that consumer protection may require precisely the outcome that Defendant challenges of a disproportionate award.

*Id.* (citing *Hayward v. Ventura Volvo,* 108 Cal. App. 4th 509, 512 (2003)).  Under the rule from the California courts in considering the purpose of fee awards in consumer protection cases, "apparent disproportionality is not a reason to reduce the $600,000 award in this matter." *Id.* at *4.  In Civil Code section 1780 which provides "for recovery of attorney's fees allows consumers to pursue remedies in cases . . . where the compensatory damages are relatively modest. To limit the fee award to an amount less than that reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying section 1780." *Hayward*, 108 Cal. App. 4th at 512.

Here, taking the Vouchers, for now, at face value, the lodestar represents 30.69 percent of the $30 million recovery, reasonable as a cross check in a rare class action that was settled very close to trial.

**C.    This case is distinguishable from the Lumber Liquidators' MDL settlement in the Fourth Circuit.**

In *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 476 (4th Cir. 2020), concerning formaldehyde issues, the Fourth Circuit affirmed and denied an objector's appeal -- finding that class certification and a fee award were appropriate, but holding that the vouchers amounted to "coupons."  The court thus remanded to the district court to determine the fee award.  *Id.* at 492.  The MDL vouchers are different than the vouchers here and could only be used to purchase flooring or flooring tools and could only be transferred to a charity or a family member.  *Id.* at 478, 490.  In contrast, the vouchers here may be transferred to anyone the claimant chooses.  Settlement Agreement, ¶ B.3., p. 15.  Next, the vouchers [be consistent re capitalization of our Vouchers" here can be used for installation services offered by a licensed

and insured independent contractor within Lumber Liquidators' extensive network –for spot repairs, removal or installation. *Id*. at ¶ B.4., p. 15. Most importantly, claimants here can use their vouchers to select from approximately 1350 total items. These items include 500 different flooring options and approximately 850 different kinds of non-flooring items such as table and tile saws, thermostats, countertops, staircase materials, tools (knifes, screws, mops) butcher blocks, cleaning supplies and thermostats, and of increasing value in today's world, protective face masks. *See* footnote 2, page 2 herein. The average price of the approximately 850 accessories is $40.00 with the most expensive product costing approximately $500.00 (island top) and the lowest costing $0.96 (service kit for a floor nailer). *See Rael v. Children's Place, Inc*., No. 3:16-CV-00370-GPC-LL, 2020 WL 434482, at *7–10 (S.D. Cal. Jan. 28, 2020) (quoting *In re Easysaver Rewards Litigation*, 906 F.3d 747, 753 (9th Cir. 2018) (finding that plaintiffs did not have to "'hand over more of their own money before they can take advantage of' the vouchers. [Citation.] Plaintiffs present compelling evidence that the purchasing power of a $6 voucher at TCP is significant. Of the 1,024 items available for purchase online in October 2019, 435 were listed for sale under $6.00 (i.e., 42%). [Citation.] The median price point of those items was only $4.20. [Citation.] Also, about 760 items were listed for sale under $10.00 (i.e., about 75%). [Citation.]").

This evidence distinguishes the instant case from the MDL where the court found the purchase items were limited and there was no option to use the voucher towards installation services. *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig*. 952 F.3d at 471. As explained in the Declaration of Mark Diekmann, the vouchers here have real value and, as a result, will be redeemed. The Declaration of Bryan Kelley, Lumber Liquidator's Financial Planning and Analysis Manager, confirms this by noting that over a three year snapshot that 80% of all store credits greater than $100.00 were redeemed for a portion of their value.

\\\

\\\

\\\

**D.      Class Counsel's lodestar fees are proper irrespective of CAFA's "coupon" provisions.**

Even if the vouchers were coupons, under 28 U.S.C. section 1712 the lodestar approach would be required.  Indeed, attorney's fees for settlements involving coupons plus monetary relief are calculated by the lodestar method mandated by 28 U.S.C. § 1712(b).  *In re HP Inkjet Printer Litigation*, 716 F.3d at 1183; *see also Chambers,* 214 F.Supp.3d at 895 ("Where, as here, the settlement includes both coupon relief and monetary relief, CAFA authorizes the court to calculate attorney's fees utilizing the lodestar method. See 28 U.S.C. § 1712(b).").

Section 1712 focuses on attorney's fees awards in settlement that include coupons as defined by CAFA:

> **(a) Contingent fees in coupon settlements.**--If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
> **(b) Other attorney's fee awards in coupon settlements.**--
> > **(1) In general.**--*If a proposed settlement* in a class action provides for a recovery of *coupons* to class members, *and a portion of the recovery of the coupons is not used to determine the attorney's fee* to be paid to class counsel, any *attorney's fee award shall be based upon the amount of time class counsel reasonably expended* working on the action.
> > **(2) Court approval.**--Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. *Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.*
> **(c) Attorney's fee awards calculated on a mixed basis in coupon settlements.**--If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief--
> > **(1)** that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
> > **(2)** that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

1    *Id.* §§ 1712(a)-(c) (italics added).

2        Section 1712(a) applies to settlements that provide *only* coupon relief.  *In re HP Inkjet*

3    *Printer Litigation*, 716 F.3d 1173, 1183 (9th Cir. 2013).  Section 1712(c) applies only to

4    "mixed" settlements that include injunctive or equitable relief in addition to coupon relief.  *In*

5    *re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1184 (9th Cir. 2013); *Chambers*, 214 F.Supp.3d

6    at 895 (section 1712(c) applies only to "'an award of coupons to class members [that] also

7    provides for *equitable relief, including injunctive relief*,' (emphasis added), not monetary in the

8    form of cash payments[.]")"

9        Because, even if the vouchers are "coupons," this settlement includes a cash component

10   so section 1712(b) applies requiring that attorney's fees be calculated using the lodestar

11   method.

12       **1.     The vouchers are not coupons.**

13       Three factors guide the inquiry of whether vouchers are coupons under section 1712(a)

14   in this Circuit: (1) whether class members have "to hand over more of their own money before

15   they can take advantage of" a credit; (2) whether the credit is valid only "for select products or

16   services"; and (3) how much flexibility the credit provides, including whether it expires or is

17   freely transferrable.  *In re Online DVD,* 779 F.3d at 951.

18       In *In re Online DVD*, the Ninth Circuit held that a settlement paid in Walmart gift cards

19   was not a "coupon settlement." *Id.* at 949.  The gift cards gave "class members $12 to spend on

20   any item carried on the website of a giant, low-cost retailer[,]" without requiring class members

21   to spend any of their own money.  *Id.*  The court concluded that the gift cards in that case were

22   not coupons because they could be used for any product at the store or online, were freely

23   transferrable (though could not be resold), did not expire, and did not require consumers to

24   spend their own money.  *Id.*

25       In contrast, in *In re Easysaver Rewards Litigation*, the Ninth Circuit held that $20 credit

26   that had numerous restrictions, and could only be used for a few products, was a "coupon"

27   within the meaning of CAFA.  906 F.3d 747, 753 (9th Cir. 2018).  The credit expired after one

year, could not be used for holiday or same-day purchases, could not be combined with any other discount, and was limited to flowers, chocolates, fruit baskets and similar items. *Id.* at 757. The value of the credit was further limited because the defendant only had about 15 to 25 products under $20, which did not include shipping. *Id.* Thus, the court concluded that, to use the credit, class members would have to "'to hand over more of their own money before they can take advantage of the coupon[.]'" *Id.*

*Easysaver* is distinguishable from the instant case. Our Settlement does not require to class members to "hand over more of their own money" to redeem the vouchers. *See Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 897 (9th Cir. 2019) ("Because the Dancers can choose to receive compensation from the cash pool regardless of whether they continued working at Déjà Vu, the Settlement Agreement cannot be understood to require the Dancers to "reengag[e] in the same . . . activity that they believe led to their injury."). Instead, the store vouchers function as cash, add significant value to the settlement, and should not be treated as "coupons" under the Ninth Circuit's analysis.[4] They do not offer merely a "percent off" Lumber Liquidators' products. Rather, they are vouchers worth, on average, many hundreds of dollars, are designed to cover the price of a wide variety of products with a wide range of prices, or floor removal, repair or installation services, such that class members need not necessarily part with any more money to use them. They are widely transferable and valid at least 3 years and, in many states, like California, much longer or never expire.

This conclusion is supported by Lumber Liquidators' store credit redemption rate data. *See* Declaration of Bryan Kelley ("Kelley Decl.") (ECF 280-1). Lumber Liquidators issues store credit to customers to resolve customer complaints about its flooring products for a variety of circumstances. *Id.* ¶ 4. The store credit functions the same way as the vouchers proposed as part of this settlement. During the period of January 1, 2017 through November

---

[4] CAFA does not define a coupon. But, as the Ninth Circuit has noted, Congress's entire focus was, unlike here, "on settlements that involve a discount – frequently a small one – on class members' purchases." *In re Online DVD*, 779 F.3d at 950 (providing examples of a "coupon" from the Senate report: $30-40 off a cruise, $55 off the purchase of a new baby crib, and $1.25 off a $25 dollar video game).

30, 2019, Lumber Liquidators issued store credits ranging from $100 to $2,000 for approximately 8,100 distinct customers. *Id.* ¶ 5.  Over this nearly three year time period, eighty percent (80%) of all store credits issued greater than $100 to customers were redeemed for a portion or all of their value.  *Id.* ¶ 6.  Moreover, fifty percent (50%) of all store credits were redeemed within five (5) days and an overwhelming ninety percent (90%) of all store credits were redeemed within 140 days, or within approximately 4.5 months.  *Id.* ¶ 7.  The recent data over the last three years supports the conclusion that allotting three years for a consumer to redeem a voucher is a generous period of time and that it is highly likely that more than eighty percent (80%) of class members would redeem their vouchers within three years.  *Id.* ¶ 8.  The anticipated high redemption rate of these vouchers show that they are the functional equivalent of cash rather than a "coupon."

### 2.    The lodestar method is appropriate even under CAFA's "coupon" provisions.

The lodestar approach is mandatory where the settlement involves coupons plus other relief.  28 U.S.C. §1712(b) (requiring that where "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel," any attorney's fee award "*shall* be based *upon the amount of time class counsel reasonably expended working on the action.*" (emphasis added.)).  A lodestar fee award is therefore proper under subsection (b) (1) where the settlement provides part coupon relief, and part cash.  *See In re HP Inkjet Printer Litigation*, 716 F.3d at 1184 ("[T]he Senate Report from the Committee on the Judiciary states that 'Section 1712(b) confirms the appropriateness of determining attorney's fees on [a lodestar] basis in connection with a settlement *based in part on coupon relief.*' S. Rep. 109–14, at 30 [2005] (emphasis added)." (original emphasis)); *Chambers* at 895 (citing 28 U.S.C. § 1712(b) and stating "Where, as here, the settlement includes both coupon relief and monetary relief, CAFA authorizes the court to calculate attorney's fees utilizing the lodestar method.").

> Like § 1712(a), the language of § 1712(b) *is not permissive*—if class counsel wants to be paid "any" fees, and the "recovery of the coupons is not used to determine" those fees, the entirety of the payment "shall be" calculated "based

1    upon the amount of time class counsel reasonably expended working on the
     action," i.e., *using the lodestar method.*

2    *In re HP Inkjet Printer Litigation*, 716 F.3d at 1183 (emphasis added).  In *In re Easysaver*

3    *Rewards Litigation*, the Ninth Circuit more recently summarized its interpretation of section

4    1712:

5        Although settlements like this one that award coupons and monetary relief are not
6        expressly mentioned in *In re HP*, it must be the case that §1712(b) also
         encompasses the use of the lodestar method for this type of mixed settlement.
7        Such settlements would otherwise exist in a no-man's land with no guidance from
         § 1712.

8    906 F.3d at 759 n.11.  Hence, the Ninth Circuit has held that CAFA calls for the lodestar

9    method in these circumstances "to determine any portion of attorney's fees not attributable to

10   coupons."  *Easysaver*, 906 F.3d at 759.  "Section 1712(b)(2) further confirms that a court may,

11   in its discretion, apply an appropriate multiplier to any lodestar amount it awards under

12   subsection (b)(1) for obtaining non-coupon relief."  *In re HP Inkjet Printer Litigation*, 716

13   F.3d at 1183.

14           3.    <u>Alternatively, the Court could calculate a lodestar fee based on the cash</u>
15                 <u>portion of the settlement plus a percentage fee based on the redeemed</u>
16                 <u>value of the vouchers.</u>

17           Even if the Court determines that the vouchers are coupons and declines to apply

18   section 1712(b), the Court can calculate a lodestar fee based on section 1712(c):

19

20       The practical effect of § 1712(c) is that the district court must perform two
         separate calculations to fully compensate class counsel. First, under subsection
21       (a), the court must determine a reasonable contingency fee based on the actual
         redemption value of the coupons awarded. Second, under subsection (b), the
22       court must determine a reasonable lodestar amount to compensate class counsel
         for any non-coupon relief obtained. This lodestar amount can be further adjusted
23       upwards or downwards using an appropriate multiplier. § 1712(b)(2). In the
         end, the total amount of fees awarded under subsection (c) will be the sum of the
24       amounts calculated under subsections (a) and (b).

25   *In re HP Inkjet, Printer Litigation,* 716 F.3d at 1184–85.  The lodestar approach is appropriate

26   in a mixed settlement such as this, as long as the Court either, does not reference the value of

27   the settlement fund, or references it taking into account the voucher redemption rate.  *In re*

*Easysaver Rewards Litigation,* 906 F.3d at 759.

\\\

### E.   The requested expenses and costs are fully documented, necessarily incurred and reasonable.

Out-of-pocket litigation expenses are recoverable in a settlement such as this. *Grove v. Wells Fargo Fin., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) (reviewing cases upholding as part of fee awards reimbursement for non-taxable costs such as computerized legal research, travel, copying, courier); *accord Thalheimer v. City of San Diego*, 2012 U.S. Dist. LEXIS 59315, 26 (S.D. Cal. 2012) (allowing reimbursement for out-of-pocket "and otherwise non-taxable expenses such as telephone charges, copies, filing fees, courier and mailing fees, []internet research," and "necessary travel expenses" as part of fee award).

The amount of costs sought here, $887,224.60, is eminently reasonable for the services provided and the result obtained.  Exhibit C to Ram Decl and individual counsel declarations. These are charges that California lawyers commonly bill to their clients. Because the costs are reasonable, fully documented, and were necessarily incurred, as the declarations of Class Counsel set forth, an award of these costs should be approved.

### F.   The Class Representative service awards are reasonable and appropriate.

The Settlement allows Class Counsel to request and for Defendant to pay a service award to each of the named Representative Plaintiffs in the Sixth Amended Complaint an incentive award of $7,500 subject to Court approval.  Settlement, p. 29.  The Class Representatives' agreement to the Settlement are not conditioned in any manner on the award of a service award or its amount.

The six Class Representatives have given their time and accepted their responsibilities admirably, participating actively in this litigation as required and in a manner beneficial to the Class generally.  Ram Decl., ¶ 9.  Each was deposed, had his or her home inspected by defendant and its consultant, responded to requests for production of documents and admissions, and interrogatories. *Id.*  The Class Representatives worked diligently with counsel

to prepare and file pleadings, produce documents related to their floor failures and otherwise assisted in the prosecution of this litigation. *Id.* The Class Representatives were advised on their obligations in serving as class representatives to select adequate and skilled counsel, to cooperate with counsel, and to place the interests of the class on a level equal to or above their own interests. The Class Representatives have met and continue to meet these obligations, cooperating fully with counsel to fulfill their fiduciary duties to the class. *Id.*

The proposed service award is presumptively reasonable. *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards]."); see, e.g., *Garner v. State Farm Mut. Auto. Ins. Co., No.* CV 08 1365, 2010 WL 1687832, at *17 (N.D. Cal. Apr. 22, 2010). Here, there are no conditions placed on the service award nor does the amount of the award undermine the adequacy of the class representative. See N.D. Cal. Procedural Guidance for Class Action Settlements, §7 (citing *see, e.g., Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013)).

## III.    CONCLUSION

This was a very hard fought litigation. The Class obtained an excellent settlement under the circumstances.   The Court should award the fees, expensive and service stipends in the amounts requested.

RESPECTFULLY SUBMITTED AND DATED this 16th day of April, 2020.

/s/ Michael F. Ram                .

Michael F. Ram, SBN 104805
mram@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, California 94040
Telephone: (650) 784-4040
Facsimile: (650) 784-4041

Jeffrey B. Cereghino, SBN 099480
Email: jbc@cereghinolaw.com
CEREGHINO LAW GROUP LLP

649 Mission Street, Floor 5
San Francisco, CA 94105
Telephone: (415) 433-4949

Charles J. LaDuca, *Admitted Pro Hac Vice*
Email:  charles@cuneolaw.com
Brendan Thompson, *Admitted Pro Hac Vice*
Email:  brendant@cuneolaw.com
CUNEO GILBERT & LaDUCA, LLP
4725 Wisconsin Avenue, NW, Suite 200
Washington, DC 200016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813

*Class Counsel*

Beth E. Terrell, SBN 178181
Email: bterrell@terrellmarshall.com
Amanda M. Steiner, SBN 190047
Email: asteiner@terrellmarshall.com
TERRELL MARSHALL LAW GROUP
PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 319-5450

Michael McShane
Email:  mmcshane@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Telephone: (415) 568-2555
Facsimile: (415) 568-2556

Robert K. Shelquist, *Admitted Pro Hac Vice*
Email:  rkshelquist@locklaw.com
LOCKRIDGE GRINDAL NAUEN
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981

Charles E. Schaffer, *Admitted Pro Hac Vice*
Email:  cschaffer@lfsblaw.com
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania  19106

Telephone: (215) 592-1500
Facsímile: (215) 592-4663

Erica C. Mirabella
Email: erica@mirabellallc.com
132 Boylston Street, 5th Floor
Boston, Massachusetts 02116
Telephone: (617) 580-8270

Daniel C. Calvert, *Admitted Pro Hac Vice*
Email:  dcalvert@yourlawyer.com
PARKER WAICHMAN LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, Florida 34134
Telephone:  (239) 390-1000
Facsimile:  (239) 390-0055

*Additional Plaintiffs' Counsel*