Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Objector Benjamin Faber*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GOLD, et al., | Case No. 14-cv-05373-RS |
| Plaintiffs, | |
| v. | Judge:      Hon. Richard Seeborg |
| | Courtroom:  3, 17th Floor |
| LUMBER LIQUIDATORS, INC., | Date:       September 24, 2020 |
| Defendant. | Time:       1:30 P.M. |
| BENJAMIN FABER, | |
| Objector. | |

OBJECTION OF BENJAMIN FABER

DECLARATION OF JOHN

# TABLE OF CONTENTS

I.   Objector Faber is a member of the settlement class...................................................................1

II.  The district court has a fiduciary duty to the unnamed class members. ..................................2

III. The settlement may be approved as fair, but only if the Court defers $5.7 million of the fee
     request to ensure that class counsel's award is not disproportionate to the class benefit. .....................4

     A.   Because this is a coupon settlement, it requires heightened scrutiny.................................4

     B.   To avoid a potential disproportion, any immediate fee award should be limited to 25%
          of the $14 million cash fund. .................................................................................... 10

IV.  Granting counsel's full fee request now would violate the Class Action Fairness Act by
     awarding fees attributable to coupon relief on a basis other than the coupon's redemption
     rate. ............................................................................................................................... 14

CONCLUSION................................................................................................................ 16

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ........................................................................................ 3, 10

*Allen v. Similasan,*
   318 F.R.D. 423 (S.D. Cal. 2016) ............................................................................................3

*Antoninetti v. Chipotle Mexican Grill, Inc.,*
   49 F. Supp. 3d 710 (S.D. Cal. 2014) ...................................................................................... 13

*In re Bluetooth Headset Products Liability Litigation,*
   654 F.3d 935 (9th Cir. 2011) .......................................................................4, 10, 12, 14, 15

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
   109 F.3d 602 (9th Cir. 1997) .................................................................................................. 12

*Dardarian v. Officemax N. Am.,* No. 11-cv-00947
   2013 WL 12173924 (N.D. Cal. Jul. 12, 2013) ..........................................................................6

*Davis v. Cole Haan, Inc.,* No. 11-cv-01826
   2015 WL 7015328 (N.D. Cal. Nov. 12, 2015) ..................................................................... 9, 11

*Dennis v. Kellogg Co.,*
   697 F.3d 858 (9th Cir. 2012) .................................................................................. 3, 4, 10, 11

*In re Dry Max Pampers Litig.,*
   724 F.3d 713 (6th Cir. 2013) .....................................................................................2, 3, 4, 10

*In re Easysaver Rewards Litig.,*
   No. 09-cv-2094, 2020 U.S. Dist. LEXIS 77483 (S.D. Cal. May 1, 2020) ............................... 10, 12

*In re Easysaver Rewards Litig.,*
   906 F.3d 747 (9th Cir. 2018) ...................................................1, 4, 5, 7, 9, 11, 12, 14, 15

*Figueroa v. Sharper Image Corp.,*
   517 F. Supp. 2d 1291 (S.D. Fla. 2007) ....................................................................................5

*Galloway v. Kan City Landsmen, LLC,*
   833 F.3d 969 (8th Cir. 2016) ...........................................................................................10, 13, 14

*Galloway v. Kan City Landsmen, LLC,*
   2015 WL 13297964 (W.D. Mo. Feb. 20, 2015) ...................................................................... 14

*Golba v. Dick's Sporting Goods, Inc,*
   238 Cal. App. 4th 1251 (Cal. App. 4th Dist. 2015) ................................................................ 11

*Hadley v. Kellogg Sales Co.,*
   2020 WL 836673, 2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020)...................................6

*Henderson v. J.M. Smucker Co.,*
   2014 WL 2723876 (C.D. Cal. Feb. 28, 2014)............................................................................ 13

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ................................................................................................................ 12

*In re HP Inkjet Printer Litig,*
   716 F.3d 1173 (9th Cir. 2013) ...................................................................3, 5, 11, 12, 14, 15

*Jane Roes 1-2 v. SFBSC Management, LLC,*
   944 F.3d 1035 (9th Cir. 2019) .................................................................1, 3, 4, 5, 9, 10, 15

*Khatib v. County of Orange,*
   639 F.3d 898 (9th Cir. 2011) ..............................................................................................6

*Knapp v. Art.com,*
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................................... 6, 9

*Koby v. ARS Natl. Services, Inc.,*
   846 F.3d 1071 (9th Cir. 2017) ............................................................................................3

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prods. Liab. Litig.,*
   952 F.3d 471 (4th Cir. 2020) .................................................................................6, 7, 8, 9

*In re Mercury Interactive Corp. Sec. Litig.,*
   618 F.3d 988 (9th Cir. 2010) ..............................................................................................3

*In re Mexico Money Transfer Litig.,*
   267 F.3d 743 (7th Cir. 2001) ..............................................................................................5

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) .....................................................................................6, 8, 9

*Pearson v. NBTY, Inc.,*
   772 F.3d 778 (7th Cir. 2014) ...................................................................................2, 10, 11

*Redman v. RadioShack Corp.,*
   768 F.3d 622 (7th Cir. 2014) .................................................................................3, 10, 12

*Reed v. Continental Guest Servs. Corp.,* No. 10 Civ. 5642,
   2011 WL 1311886 (S.D.N.Y. Apr. 4, 2011) .....................................................................5

*Seegert v. Lamps Plus, Inc.,*
   377 F. Supp. 3d 1127 (S.D. Cal. 2018) ......................................................................... 6, 9

*Sobel v. Hertz Corp.,*
   2011 WL 2559565 (D. Nev. Jun. 27, 2011) ................................................................13-14

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ..............................................................................................4

*Synfuel Techs v. DHL Express (USA),*
   463 F.3d 646 (7th Cir. 2006) ..............................................................................................5

*In re Trans Union Corp. Privacy Litig.,* No. 00 C 4729
   2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ................................................................... 15

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ..................................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig.* ("*WPPSS*"),
    19 F.3d 1291 (9th Cir. 1994) ...............................................................................3

*Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW,
    2013 U.S. Dist. LEXIS 151180, 2013 WL 5718440 (N.D. Cal. Oct. 21, 2013) ........................... 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2019 WL 387322, 2019 U.S. Dist. LEXIS 15034 (N.D. Cal. Jan. 30, 2019)......................................3

## Rules

28 U.S.C. § 1711 notes §§ (a)(3), (a)(3)(A) ...................................................................4

28 U.S.C. § 1712(a) ...................................................................................... 1, 5, 13, 14, 15

28 U.S.C. § 1712(b).............................................................................................. 13, 14

28 U.S.C. § 1712(e)................................................................................................5

Advisory Committee Notes on 2018 Amendments to Rule 23 ................................................2

Fed. R. Civ. P. 23 ....................................................................................................4

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 10

Fed. R. Civ. P. 23(e)(2)(C)(iii) .............................................................................. 10

## Other Authorities

Elizabeth Chamblee Burch,
    *Publicly Funded Objectors*,
    19 THEORETICAL INQUIRIES IN LAW 47 (2018) ..............................................................2

Howard Erichson.,
    *Aggregation as Disempowerment*,
    92 NOTRE DAME L. REV. 859 (2016) ...........................................................................3

Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*,
    BOSTON GLOBE (Dec. 17, 2017)................................................................................2

Steven B. Hantler & Robert E. Norton,
    *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL. ETHICS 1343
    (2005) ...................................................................................................... 11

Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer
    Class Action Litigation*,
    49 UCLA L. REV. 991 (2002)...............................................................................4-5

S. REP. 109-14 (2005) ............................................................................................5-6

James Tharin & Brian Blockovich,
*Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL. ETHICS 1443 (2005)........................................ 11

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988) ................................................................................6

1

**INTRODUCTION**

2

Plaintiffs cannot avoid the limitations of the Class Action Fairness Act ("CAFA") by calling the

3

settlement relief "vouchers" rather than "coupons." The vouchers here are coupons under CAFA because

4

class members can use the vouchers to purchase items "from a limited universe" of flooring products from

5

defendant Lumber Liquidators. *See In re EasySaver Rewards Litig.*, 906 F.3d 747, 757-58 (9th Cir. 2018).

6

Because CAFA applies, so do its limitations on fee awards, including CAFA's requirement that fees be based

7

"on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a). The *Online DVD*

8

exception to § 1712 is a narrow exception for instruments that are actually gift cards nearly indistinguishable

9

from cash. It is not enough for an instrument to be *almost* as good as a Walmart gift card or even be better

10

than the average coupon: such an instrument is still a coupon for purposes of § 1712, whether the parties

11

characterize it as a coupon, a voucher, or an e-credit.

12

The settlement here has $14 million in cash, of which class counsel seeks $9.2 million. Because

13

§ 1712 requires the vouchers to be valued at the redemption rate, rather than the face value, this means that

14

even if the court generously assumes that class members will redeem 10% of the vouchers, class counsel

15

would still capture 60% of the settlement benefit ($9.2 million of $15.6 million ($14 million cash + $1.6

16

million redeemed coupons)). Such disproportion where class counsel favors themselves at the expense of

17

their clients flunks settlement fairness under Rule 23(e). *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050

18

(9th Cir. 2019) ("*Roes*").

19

The settlement could be approved as fair, however, if $5.7 million of that $9.2 million fee request was

20

held back until it was determined how many vouchers were actually used. Plaintiffs could be paid a 25%

21

percentage-of-recovery fee on the $14 million cash right now ($3.5 million) and the court could defer any

22

other fee award until the redemption rate of the vouchers was known. This would both satisfy Rule 23(e)

23

fairness and CAFA's restriction that fees be based on the amount of coupons actually redeemed.

24

**I.      Objector Faber is a member of the settlement class.**

25

During the class period Benjamin Faber purchased Morning Star Strand Bamboo flooring for

26

personal, family or household use. *See* Declaration of Benjamin Faber ¶ 3 (attached at Exh. 1). Faber is not

27

within any of the classes of persons excluded from the settlement. *Id.* He therefore has standing to object.

28

His full name is Benjamin Sidney Faber; his address is 1001 Cherry St. Suite 104, Columbia, MO 65201; his phone number is 573-777-9770; and his email address is ben@comocriminaldefense.com. *Id.* at ¶ 2.

Hamilton Lincoln Law Institute's Center for Class Action Fairness ("CCAF") represents Faber *pro bono*, and CCAF attorney Theodore H. Frank intends to appear at the fairness hearing on his behalf. CCAF represents class members *pro bono* where class counsel employs unfair procedures to benefit themselves at the expense of the class. *See, e.g., Pearson v. NBTY*, 772 F.3d 778, 787 (7th Cir. 2014) (CCAF "flagged fatal weaknesses in the proposed settlement" and demonstrated "why objectors play an essential role in judicial review of proposed settlements of class actions"); *In re Dry Max Pampers Litig.*, 724 F.3d 713, 716-17 (6th Cir. 2013) ("*Pampers*") (CCAF's client's objections "numerous, detailed, and substantive"); *see generally* Declaration of Theodore H. Frank ("Frank Decl.") (attached at Exh. 2). Since it was founded in 2009, CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 55-57 & n.37 (2018). Over that time CCAF has recouped more than $200 million for class members by driving settling parties to reach an improved bargain or by reducing outsized fee awards. *See* Andrea Estes, *Critics hit law firms' bills after class-action lawsuits*, BOSTON GLOBE (Dec. 17, 2017) (more than $100 million at time). Faber brings this objection through CCAF in good faith to protect the interests of the class. Faber Decl. ¶¶ 8-9. He has not objected to any other class action settlements in the last three years. *Id.* at ¶ 12. His objection applies to the entire class; he adopts any objections not inconsistent with this one.[1]

## II. The district court has a fiduciary duty to the unnamed class members.

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval."

---

[1] The Notice instructs objectors to list "prior representations by your counsel and all sanctions or discipline ordered by any court, bar association or governmental agency against your counsel." This demand consigns objectors to underclass litigant status, and, in any event, is irrelevant to the merits of any objections. The Court should eschew it as unreasonable. *See generally* Rule 23 Advisory Committee Notes to 2018 Amendments ("Courts should take care . . . to avoid unduly burdening class members who wish to object"). Even so, to moot any procedural objection to Faber's objection, he hereby informs the Court that his counsel has never previously represented him, nor has his counsel been sanctioned or disciplined by any court, bar association or governmental agency, with the exception of *ultra vires* orders for punitive appeal bonds putatively issued under Fed. R. App. Proc. 7. *See* Frank Decl. ¶¶ 9-10.

*Pampers*, 724 F.3d at 715. Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations." *Id.* "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.*

To guard against this danger, a district court must act as a "fiduciary for the class . . . with 'a jealous regard'" for the rights and interests of absent class members. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting *In re Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). It "must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.* ("*Inkjet*"), 716 F.3d 1173, 1178 (9th Cir. 2013) (citation and internal quotation omitted). And it must not "assume the passive role" that is appropriate for an unopposed motion in ordinary bilateral litigation. *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). In particular, settlement value "must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012). It is error to exalt fictions over "economic reality." *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015).

There is no presumption in favor of settlement approval; the proponents of a settlement bear the burden of proving its fairness. *Jane Roes 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1049 & n.12 (9th Cir. 2019) ("*Roes*"); *Koby v. ARS Nat'l Servs.*, 846 F.3d 1071, 1079 (9th Cir. 2017). "Where the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry." *Roes*, 944 F.3d at 1048 (cleaned up).[2] Approval of a pre-certification

---

[2] The settling parties may argue that no heightened scrutiny is warranted because this Court certified a six-state class in 2017. Dkt. 215. Any such argument is wrongheaded because the settlement class is nationwide, and just appeared in the plaintiffs' Sixth Amended Complaint. Dkt. 288. In fact, the expansion of the class at the time of settlement, done for the purpose of providing global peace to the defendant at no cost to class counsel, is itself a red flag that demands *even more* scrutiny. *See e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, 2019 U.S. Dist. LEXIS 15034, at *37-*39 (N.D. Cal. Jan. 30, 2019) (criticizing the expansion of the proposed settlement class beyond the scope of the class's asserted in the adversarial complaints); *Allen v. Similasan*, 318 F.R.D. 423, 428 (S.D. Cal. 2016) (denying approval of settlement that proposed expanding the class from California-only to nationwide); Howard Erichson, *Aggregation as Disempowerment,* 92 NOTRE DAME L. REV. 859, 895-97 (2016) (describing expansions of the class at settlement as problematic).

settlement will occasion review of "the entire settlement, paying special attention to the terms of the agreement containing convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of negotiations." *Dennis*, 697 F.3d at 867 (internal quotation omitted).

It is "insufficient" that the settlement happened to be negotiated at "arm's length" through a mediator without "secret cabals" or express collusion of the settling parties. *Roes*, 944 F.3d at 1050 n.13 (internal quotation omitted). Because of the danger of conflicts of interest endemic to class action procedure, the Court must monitor the reasonableness of the settlement as well. *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 948 (9th Cir. 2011) (quoting *Staton*, 327 F.3d at 960). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Pampers*, 724 F.3d at 718 (quoting *Dennis*, 697 F.3d at 864).

**III.    The settlement may be approved as fair, but only if the Court defers $5.7 million of the fee request to ensure that class counsel's award is not disproportionate to the class benefit.**

The settlement here consists of $14 million in cash and coupons with a purported $14-$16 million face value. Because the value of that coupon relief will not be realized until the coupons are redeemed, and because any unredeemed coupon value will revert to the defendant, the settlement as proposed risks the most common settlement defect—a disproportionate allocation of settlement value between class counsel and the class. Fortunately, because class counsel's fee award is to be drawn from a common fund, the Court has the power to remedy any disproportion that may occur by reducing counsel's $9.2 million fee request, thereby augmenting the class's recovery. To that end, consistent with Rule 23 and the Class Action Fairness Act ("CAFA"), the Court should defer $5.7 million of the fee request until after the redemption period, at which time the value of the coupon relief can be accurately discerned.

**A.    Because this is a coupon settlement, it requires heightened scrutiny**

Congress passed CAFA to combat the incongruity that "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed, such as where … class counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." 28 U.S.C. § 1711 notes §§ (a)(3), (a)(3)(A); *see also In re EasySaver Rewards Litig.*, 906 F.3d 747, 754-55 (9th Cir. 2018). Such unfairness

was prevalent because the use of coupons "masks the relative payment of class counsel as compared to the amount of money actually received by the class members." *Inkjet*, 716 F.3d at 1179 (quoting Christopher R. Leslie, *A Market-Based Approach to Coupon Settlements in Antitrust and Consumer Class Action Litigation*, 49 UCLA L. REV. 991, 1049 (2002)). Coupon settlements suffer from additional flaws, including that "'they often do not provide meaningful compensation to class members; they often fail to disgorge ill-gotten gains from the defendant; and they often require class members to do future business with the defendant in order to receive compensation.'" *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (quoting *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1291, 1302 (S.D. Fla. 2007) and citing other cases); *see also Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Coupons also can "serve as a form of advertising for the defendants, and their effect can be offset (in whole or in part) by raising prices during the period before the coupons expire." *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). When a settlement contemplates unused coupon value reverting to the defendant, the dangers are "even more grave." *Roes*, 944 F.3d at 1053. "Unchecked, such reversions would allow defendants to create a larger coupon pool than they know will be claimed or used, just to inflate the value of the settlement and the resulting attorneys' fees." *Id.* at 1054.

It is because of "the[se] well-documented problems associated with such settlements [that] Congress voiced its concern over coupon settlements when it amended [CAFA] to call for judicial scrutiny of attorneys' fee awards in coupon cases." *Reed v. Continental Guest Servs. Corp.*, No. 10 Civ. 5642, 2011 WL 1311886, at *3 (S.D.N.Y. Apr. 4, 2011). Because of the inherent dangers of coupon settlements, CAFA requires a district court to apply "heightened judicial scrutiny" and to value the settlement, at least for fee purposes, based "on the value to class members of the coupons that are redeemed," 28 U.S.C. § 1712(a). *See also Inkjet*, 716 F.3d at 1181-86; *Easysaver*, 906 F.3d at 755. The Senate Committee's Report on CAFA confirms these legislative aims:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fee demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable, and adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which proposed settlements have been wholly or partially rejected because the

compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. REP. 109-14, at 31 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 32.

While plaintiffs claim that that this settlement is not a coupon settlement governed by CAFA, *see* Plaintiffs' Motion for Attorneys' Fees ("Fee Motion"), Dkt. 293 at 9, 22-23, 25-27, the case law does not support their claim. The parties cannot rely on their characterization of the relief as "vouchers" to evade the effects of CAFA; the legal effect of the relief "is a question of function, not just labeling." *Khatib v. County of Orange*, 639 F.3d 898, 905 (9th Cir. 2011). Numerous courts have rejected similar semantic efforts to avoid the legal conclusion that certain relief constitutes a coupon.[3] A voucher is not "inherently different" than a coupon. *Contra* Fee Motion, Dkt. 293 at 20.

 "A coupon may be defined as a certificate or form 'to obtain a discount on merchandise or services,'" and "Webster's also defines coupons as 'a form surrendered in order to obtain an article, service or accommodation.' Coupons are commonly given for merchandise for which no cash payment is expected in exchange." *Dardarian v. Officemax N. Am., Inc.*, No. 11-cv-00947, 2013 WL 12173924, at *2 (N.D. Cal. July 12, 2013) (quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1988)). Despite plaintiffs' characterization, the vouchers here are more analogous to the e-credits in *Easysaver* than the Walmart.com gift cards (elected in lieu of cash) in *Online DVD*. Fee Motion, Dkt. 293 at 26-27. Indeed, plaintiffs cannot even meaningfully distinguish the Fourth Circuit's decision in *Lumber Liquidators* holding that vouchers of substantial face value for use on Lumber Liquidators products constitute CAFA coupons. 952 F.3d at 489-91 (utilizing the Ninth Circuit's three-factor *EasySaver* test). *Lumber Liquidators* only bolsters the Court's suggestion at preliminary approval that the settlement vouchers here are CAFA coupons. Dkt. 287 at 3.

Just compare the *Lumber Liquidators* vouchers to the vouchers here:

---

[3] *E.g., In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) ("*Lumber Liquidators*") ("vouchers"); *Inkjet*, 716 F.3d at 1176 ("e-credits" are a "euphemism" for coupons); *Easysaver*, 906 F.3d 747 ("credits"); *Hadley v. Kellogg Sales Co.,* 2020 WL 836673, 2020 U.S. Dist. LEXIS 30193 (N.D. Cal. Feb. 20, 2020) ("vouchers"); *Seegert v. Lamps Plus, Inc.,* 377 F. Supp. 3d 1127 (S.D. Cal. 2018) ("vouchers")*; Knapp v. Art.com,* 283 F. Supp. 3d 823 (N.D. Cal. 2017) ("vouchers"); *see also In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 952 (9th Cir. 2015) ("*Online DVD*") (courts should "ferret[] out the deceitful coupon settlement that merely co-opts the term 'gift card' [or here, voucher] to avoid CAFA's requirements").

|  | *Lumber Liquidators* | *Gold* |
|---|---|---|
| Face Value | $703 (average) | Hundreds of dollars (average) |
| Expiration Date | Three years, except in select states | Three years, except in select states |
| Transferable | Yes, with temporal and recipient limitations | Yes, with temporal and recipient limitations |
| Crackable (*i.e.*, can value be retained over multiple purchases) | Yes | Yes |
| Redeemable for cash | No | No |
| Elected by class members in lieu of cash | Yes | No, but some class members can weight recovery toward or against coupons |
| Permits purchase of other gift cards | No | No |
| Can be sold | No | No |
| Number of items that can be purchased at least in part | 1350 | 1350 |
| Number of items that can be purchased in whole (excluding service charges and taxes) | At least 850 (accessories costing $500 or less) | At least 850 (accessories costing $500 or less) |

*Lumber Liquidators* comprehensively walked through the three *EasySaver* factors and determined that the settlement vouchers constituted CAFA coupons. 952 F.3d at 489-91. First, "class members will likely have to hand over more of their own money before they can take full advantage of the vouchers." *Id.* at 490. "That is, in order to entirely replace their defective flooring, class members will be required to spend more money with Lumber Liquidators." *Id.*; *Accord* Declaration of Jeffrey B. Cereghino, Dkt. 296 at ¶ 11 (estimating that Level 1 claimants will be compensated 25-40% of their product purchase price and Level 2 claimants 50-70% of their repair cost). Second, "the Lumber Liquidators vouchers can be used only 'to purchase items from a limited universe of products' such as flooring and flooring tools." *Lumber Liquidators,* 952 F.3d at 490. In contrast to an all-purpose "giant retailer" like Walmart.com, Lumber Liquidators specializes in flooring and flooring-related products, much like the *EasySaver* defendant Proflowers.com sold flowers, chocolates and other similar gift products. *Id.* at 490 (citing *EasySaver*, 906 F.3d at 756-57). Third, the

1  vouchers "have somewhat limited flexibility" unlike for example the *Online DVD* Walmart.com gift cards

2  that can be freely transferred and do not expire. *Id.* at 491.

3        Plaintiffs latch on two threadbare distinctions with the *Lumber Liquidator* vouchers. Here the vouchers

4  may be transferred to any third party instead of only to family members or charities. Fee Motion, Dkt. 293 at

5  22. Plaintiffs also find comfort in the fact that the vouchers here can be used to pay for installation services.

6  *Id.* at 22-23. These distinctions do not appreciably move the needle. It is hard to conceive of any class

7  member using the settlement vouchers to pay for installation services when plaintiffs themselves have

8  acknowledged that the value of the typical coupon will be consumed entirely by the purchase of the flooring

9  itself. As for the increased transferability, the *Lumber Liquidators* vouchers were *still* more amenable to the

10  interests of the class by virtue of the fact that they claimants could choose between the voucher or cash.

11  *Lumber Liquidators*, 952 F.3d at 490. Here, to the contrary, settlement vouchers are foisted on every class

12  member who makes a claim, regardless of that class member's desire for Lumber Liquidator's products or

13  services. As in *Online DVD* class members were not forced to do further business with the defendant to

14  realize the benefit because the settlement allowed them to choose cash instead of a gift card. 779 F.3d at 952.

15        *Online DVD* itself further supports a finding that the "vouchers" here are in fact coupons. *Online*

16  *DVD* identified several features that distinguished the gift cards provided under the settlement at issue there

17  from coupons subject to CAFA: they "can be used for any products on walmart.com, are freely transferrable

18  … and do not expire, and do not require consumers to spend their own money." 779 F.3d at 951. The court

19  emphasized that the gift cards allowed class members to purchase, without spending any of their own cash,

20  their "choice of a large number of products from a large retailer." *Id.* at 952 (expressly confining its holding

21  to walmart.com gift cards "without making a broader pronouncement about every type of gift card that

22  might appear"). What "separates a Walmart gift card from a coupon is not merely the ability to purchase an

23  entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many

24  different types of products." *Id.* Unexpirable gift cards, as a "fundamentally distinct concept in American life

25  from coupons," operate essentially as cash. *Id.* As such, the settlement was not similar to those that

26  motivated Congress to enact CAFA by leaving class members with "little or no value." *Id.* at 950.

27        The vouchers provided under the settlement here differ sharply from the gift cards of *Online DVD*;

28  they are cut from the same CAFA cloth as the credits in *Easysaver*. As in *Easysaver*, Lumber Liquidators is

1  "decidedly not [a] giant retailer[]" and "class members can only use the credits to purchase items from a

2  limited universe of products." 906 F.3d at 757. As in *Easysaver*, class members cannot elect cash instead of a

3  coupon. As in *Easysaver*, the vouchers contain an expiration date. And as in *Easysaver*, the vouchers are not

4  gift cards under applicable law, and thus unlike gift cards, cannot be redeemed for cash. *Lumber Liquidators*'s

5  parsing of *Online DVD* and *EasySaver* is correct; plaintiffs offer no reason to depart from it here.

6          Plaintiffs miss the mark when they focus on the fact that Lumber Liquidators offers a variety of

7  flooring and flooring-related products and services, many of which can be obtained for less than the face

8  value of the vouchers. These products and services do not at all resemble the household cash-fungible

9  inventory that Walmart.com provides. The flooring-related products available here are no less niche than

10 those available from the coupons in *Easysaver*, *Knapp*, or *Seegert*. *See Knapp v. Art.com*, 283 F. Supp. 3d 823

11 (N.D. Cal. 2017) (finding $10 vouchers to art.com to be subject to CAFA despite evidence that any of

12 100,000 whole products could be purchased under that price point); *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d

13 1127 (S.D. Cal. 2018) (finding $18 vouchers to Lamps Plus Retail stores to be subject to CAFA despite

14 evidence that 5,800 whole products could be purchased under that price point); *see also Davis v. Cole Haan,

15 Inc.*, No. 11-cv-01826-JSW, 2015 WL 7015328, at *4 (N.D. Cal. Nov. 12, 2015) (disclaiming reading of *Online

16 DVD* that rests on a "narrow distinction" between discounts and whole products and concluding that $20

17 vouchers to Cole Haan stores constituted a CAFA coupon).

18         When given an option, 85% of the *Lumber Liquidators* class elected to receive cash instead. 952 F.3d at

19 480. That preference is revealing; the vouchers here are not essentially a cash-equivalent. *Contrast Online

20 DVD*, 779 F.3d at 941 (63% of claimants chose Walmart.com gift card over the equivalent amount of cash).

21 "[T]o the extent the settling parties are correct that class members have a strong interest in receiving these

22 coupons, the coupon redemption rate should reflect that interest." *EasySaver*, 906 F.3d at 756 n.6 (9th Cir.

23 2018). In short, the Lumber Liquidators vouchers that expire (in all but a handful of states) and can be used

24 only for a narrow range of flooring and design items or services fall squarely within CAFA's definition of

25 "coupon."

26         But even if the Court does not view the vouchers here as CAFA coupons, the Court should

27 nonetheless "recognize[] that some of the same concerns applicable to coupon settlements also apply here

28 and warrant[] closer scrutiny." *Roes* 944 F.3d at 1052. Even when CAFA does not apply, the Court is

1    "required to scrutinize closely the relationship between attorneys' fees and benefit to the class in order to

2    avoid awarding unreasonably high fees simply because they are uncontested and ensure that counsel do not

3    secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to

4    represent." *Id.* at 1054 (cleaned up). Settlement relief must always be analyzed in "economic reality." *Allen*,

5    787 F.3d at 1224.

6        **B.    To avoid a potential disproportion, any immediate fee award should be limited to 25%
7             of the $14 million cash fund.**

8        As part of Rule 23(e)(2)'s fairness review, courts must consider defects of allocation between the

9    class and class counsel—whether "the relief provided for the class is adequate, taking into account . . . the

10   terms of any proposed award of attorney's fees." Rule 23(e)(2)(C)(iii). The benchmark for a reasonable

11   attorneys' fee award in the Ninth Circuit in a case alleging economic injury is 25% of the class benefit. *E.g.*

12   *Bluetooth*, 654 F.3d at 942. Here, if the Court were to grant class counsel's full $9.2 million fee request up

13   front, and the ultimate redemption rate of the settlement coupons is *de minimis*, class counsel, after expenses,

14   would unfairly capture 2/3 of the total class benefit. This would be unacceptable; settlements may not

15   allocate to class counsel well in excess of the Ninth Circuit's 25% benchmark. *See, e.g, Dennis*, 697 F.3d at 868

16   (38.9% fee would be "clearly excessive"); *Roes*, 944 F.3d at 1051 (45% of gross cash fund is

17   "disproportionate cash allocation"); *Allen*, 787 F.3d at 1224 n.4 (fee award that exceeds class recovery by a

18   factor of three is disproportionate); *Pearson*, 772 F.3d at 781 (69% fee is "outlandish"); *Redman*, 768 F.3d at

19   630-32 (55%-67% allocation unfair); *In re EasySaver Rewards Litig.*, No. 09-cv-2094, 2020 U.S. Dist. LEXIS

20   77483, *56 (S.D. Cal. May 1, 2020) (rejecting a proposed fee that would have amounted to 54%

21   "disproportionate share" of the common fund "well above the 25% benchmark standard.") "Such inequities

22   in treatment make a settlement unfair" for neither class counsel nor the named representatives are entitled to

23   disregard their "fiduciary responsibilities" and enrich themselves while leaving the class behind. *Pampers*, 724

24   F.3d at 718 (internal quotation omitted).

25       Indeed, analogous cases show that the redemption rate will almost certainly be in the low single

26   digits. *See, e.g.*, *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 971 (8th Cir. 2016) (0.045% of distributed

27   certificates were redeemed); Declaration of David Tjen, *Knapp*, No. 3:16-cv-00768-WHO, Dkt. 84-7 (N.D.

28   Cal. Aug. 29, 2018) (declaring that $142,940 worth of vouchers were redeemed; that amounts to only 0.71%

of the $20 million face value distributed); *Davis*, 2015 WL 7015328 (2.3% of distributed vouchers were redeemed); James Tharin & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443, 1445, 1448 (2005) (typically "redemption rates are tiny," "mirror[ing] the annual corporate issued promotional coupon redemption rates of 1-3%"); Steven B. Hantler & Robert E. Norton, *Coupon Settlements: The Emperor's Clothes of Class Actions*, 18 GEO. J. LEGAL ETHICS 1343, 1347 (2005) (noting one settlement where only 2 of more than 96,000 coupons were redeemed); *cf. also Golba v. Dick's Sporting Goods, Inc.*, 238 Cal. App. 4th 1251, 1261 (Cal. App. 4th Dist. 2015) ("of the 232,000 potential class members, only two had submitted claims for coupons"). Thus, even if the redemption rate is an unusually robust 10%, class counsel will have allocated nearly 60% of settlement benefit to themselves. Under Circuit precedent, the settlement should be rejected. *E.g., Dennis*, 697 F.3d at 868; *see also Pearson*, 772 F.3d at 781.

Fortunately, the common fund structure of the proposed settlement affords the Court the power to avoid any potential disproportion by deferring a portion of class counsel's fee request. *See EasySaver*, 906 F.3d at 762 ("The parties' settlement agreement expressly does not depend on approval of the fee award, and it provides that any decrease in the award 'shall only serve to increase' the funds to distributed to class members…"); *id.* at 763 n.15 ("any reduction in attorney's fees in this case will benefit the class"). More specifically, class counsel's current fee request is $9.2 million, even though they have only realized $14 million in concrete compensable value at this time. *See Inkjet*, 716 F.3d at 1181-83 & 1187 n.19 (requiring actual accounting of coupons redeemed before an attorneys' fee attributable to them may be awarded; further suggesting bifurcating or staggering the fee award). To ensure that the ultimate settlement allocation is not lopsided, the Court should thus cap class counsel's current fee award at $3.5 million, or 25% of the tangible $14 million presently-known settlement value.[4] The remaining $5.7 million should be left in abeyance and awarded to class counsel only as a percentage of actual redemptions. If, ultimately, after the redemption period has lapsed, the amount of redeemed coupon value cannot justify fully awarding the funds as attorneys' fees, the residual should be used to a make a direct supplemental distribution to class members. Or, if a direct supplemental distribution is not economically feasible,[5] the residual funds should either escheat

---

[4] When one considers the nearly $900,000 in litigation expenses, this would actually amount to a 23(h) award of 31.3% of the concrete cash value.

[5] Given the projected 46,000 total claims number (Dkt. 296 at 3), a supplemental distribution to claimants would likely be feasible.

to the federal government or be donated to appropriate third parties via the doctrine of *cy pres*.

Deferring the majority of the fee award pending actual coupon redemption is consistent with the Ninth Circuit's interpretation of CAFA fee strictures in *Inkjet* and *EasySaver*. *See Inkjet*, 716 F.3d at 1187n.19 (suggesting deferring a portion of the fee award "to take into account the speculative nature of at least a portion of class recovery); *EasySaver*, 906 F.3d at 760 n.13 (same).

Plaintiffs' may respond that they are entitled to a full $9.2 million lodestar award for the cash fund they have obtained. Such an approach is misguided because it "[a]n attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method…Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *Inkjet*, 716 F.3d at 1182. Awarding fees without consideration of the benefit conferred upon the class would violate "the Supreme Court's established attorneys' fees jurisprudence." *Id.* at 1186 n.18. "Even under the lodestar method, the district court must adjust the amount of any fees award to account for the degree of success class counsel attained." *Id.* (internal quotations omitted). So, even when applying "the approach of subsection (b)(1)," "hours can't be given controlling weight in determining what share of the class action settlement pot should go to class counsel." *Redman*, 768 F.3d at 635.

"If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997); *accord EasySaver*, 906 F.3d at 760 n.12. Here, "the plaintiff has achieved 'only limited success'" and thus "counting all hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount'" unreasonable "'in relation to the results obtained.'" *Bluetooth*, 654 F.3d at 942 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

The Southern District's decision on remand in *EasySaver* provides the correct framework. Here, as there, plaintiffs leave the Court "to grapple with the prospect of awarding fees that far exceed the 25% benchmark." *In re EasySaver Rewards Litig.*, No. 09-cv-2094, 2020 U.S. Dist. LEXIS 77483, at *55 (S.D. Cal. May 1, 2020). A full lodestar award would have resulted in class counsel obtaining a disproportionate 54% of the cash fund. To avoid this windfall, the *EasySaver* district court in *EasySaver* applied a 0.6 multiplier to class counsel's lodestar, so that the fee award would amount to only 32.5% of the common cash fund. *Id.* at *59.

Just as in *EasySaver*, it was "not reasonable to incur $5.7 million in fees to obtain a $10.5 million common fund" it was not reasonable for plaintiffs here to incur $9.2 million in fees to obtain a $14 million common fund "even when the Court accounts for the intricacies of this case." *Id.* at *60. While the *EasySaver* settlement also included coupon relief, the district court did not award fees based on the coupons but concluded: "If Plaintiffs are ultimately successful in obtaining more benefits for the class than the anticipated $10.5 million cash fund, they may return to the Court to file a request for a supplemental award of fees." *Id.* at *62.

*EasySaver* is not alone; district courts in this Circuit routinely reduce lodestar awards that would otherwise be incongruous with the benefit conferred. *E.g., Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2013 U.S. Dist. LEXIS 151180, 2013 WL 5718440  (N.D. Cal. Oct. 21, 2013) (reducing fee by 25% from baseline lodestar to avoid class counsel obtaining a disproportionate 44% of the settlement); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 724-26 (S.D. Cal. 2014) (reducing proclaimed lodestar of $635,855 by 50% to account for the fact that payouts to the plaintiffs only totaled $225,000, even though "counsel secured an excellent monetary award with respect to each individual plaintiff"); *Henderson v. J.M. Smucker Co.*, 2014 WL 2723876, at *7 (C.D. Cal. Feb. 28, 2014) (reducing attorneys' fee request of $3.25 million to $72,297.90 where no monetary relief was obtained for the class).  In a similar context, another instructive case is *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969 (8th Cir. 2016). There, plaintiffs negotiated a settlement that provided class members with $10 coupons off a future car rental and an injunction ordering the defendant to comply with the Fair and Accurate Credit Transactions Act. *Id.* at 971. After the coupon redemption period ended, plaintiffs moved for a fee award of nearly $150,000. *Id.* Applying a hybrid CAFA § 1712(a)-(b) approach, the district court first awarded $2,666.67 under § 1712(a), one-third of the $8,000 in redeemed coupons. *Id.* at 973. Second, the district court awarded $14,771.78 under § 1712(b), 10% of the proclaimed lodestar of $147,717.75 attributable to obtaining the "'routine and non-controversial' injunctive relief." *Id.* Noting that "the principal focus of § 1712 was to mandate more careful scrutiny of coupon settlements to ensure that the degree of success was properly evaluated," the Eighth Circuit found that "any award greater than $17,438.45 would be unreasonable in light of class counsel's limited success in obtaining value for the class." *Id.* at 975.

"The class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case

outright." *Sobel v. Hertz Corp.*, 2011 WL 2559565, at *14 (D. Nev. Jun. 27, 2011). Plaintiffs' proposed lodestar award would provide class counsel a windfall in relation to the "foremost" consideration: "the benefit obtained for the class." *Bluetooth*, 654 F.3d at 942. Fees should be lowered to no more than a quarter of the realized $14 million cash fund to ensure the settlement's fairness and that the class members remain the primary beneficiaries of the settlement.

**IV.     Granting counsel's full fee request now would violate the Class Action Fairness Act by awarding fees attributable to coupon relief on a basis other than the coupon's redemption rate.**

While plaintiffs dispute that class counsel's fee award in this coupon settlement is governed by 28 U.S.C § 1712 of CAFA, they nevertheless argue in the alternative that § 1712(b)'s lodestar methodology exclusively controls their request. Fee Motion, Dkt. 293 at 24. But only that portion of the fee award "not attributable to coupons" may be awarded under § 1712(b)'s lodestar method. *EasySaver*, 906 F.3d at 759; *accord Inkjet*, 716 F.3d at 1183-84. "1712(a) *does* exclude the possibility that lodestar fees may be awarded in exchange for coupon relief." *Inkjet*, 716 F.3d at 1185 (emphasis in original; internal quotation omitted). That portion of the fee award that is attributable to the recovery of coupons must be awarded under § 1712(a) as a percentage of the coupons redeemed. *Id.* at 1184.

A CAFA fee award is "never  'attributable to' an attorney's work on the action," rather it is attributable to the value that they have generated for absent class members through settlement relief. *Id.* at 1182 (emphasis in original). So, for example, in an all-coupon settlement, the portion of the fee award attributable to the coupons is 100%, and the entire fee must be awarded as a percentage of those coupons redeemed. *Id.* The question here becomes: what portion of the fees in this case is attributable to the award of coupons to the class? *See Galloway v. Kan. City Landsmen, LLC*, 2015 WL 13297964, at *5 (W.D. Mo. Feb. 20, 2015), *aff'd* 833 F.3d 969 (8th Cir. 2016) (weighing the relative value of the coupon and non-coupon relief to assess how much of the fee is attributable to each). Here, the settlement relief has a purported value of $30 million including $14 million in cash and $16 million in coupon relief. Class counsel should be awarded a

25% benchmark fee award on the $14 million cash ($3.5 million),[6] and any additional fees should thus be deferred and eventually awarded (or not) as a percentage of those coupons actually redeemed.

Bifurcating the fee award in this manner was expressly endorsed by the *EasySaver* panel a proper means of complying with § 1712(a). *EasySaver*, 906 F.3d at 760 n.13 (quoting *Inkjet*, 716 F.3d at 1186 n.19). "Alternatively," *EasySaver* suggests, the parties could "amend the settlement so that the redemption rate [of the coupons] will be ascertainable before the entry of final judgment." *Id.*  Given the length of the expiration period, bifurcation is the only sensible way that the Court can adhere to CAFA's prescriptions.[7] What the plaintiffs seek to, but may not do, is proceed full steam ahead as if § 1712(a) does not exist.  "[T]o the extent plaintiffs are correct that class members have a strong interest in receiving these coupons, the coupon redemption rate should reflect that interest." *Id.* at 756.

Plaintiffs further err by arguing that "taking the Vouchers, for now, at face value, the lodestar represents 30.69 percent of the $30 million recovery, reasonable as a cross check." Fee Motion, Dkt. 293 at 22. Performing a percentage of recovery cross-check using the face value of the coupons violates CAFA. *Easysaver*, 906 F.3d at 759-60 ("[T]he district court similarly went astray when it reverse-engineered the lodestar multiplier using a value of the settlement that included the full face value of all the $20 coupons."); *Roes*, 944 F.3d at 1054 (finding error because the district court "used that full valuation when performing the lodestar cross-check for attorneys' fees, despite the fact that all unclaimed and unredeemed dance fee payment vouchers would revert back to the defendants at the end of the two-year Dance Fee Redemption

---

[6] Plaintiffs' counsel seeks 30.6% of the $30 million, Fee Motion, Dkt. 293 at 22, but have not demonstrated why any fee award should exceed the benchmark. In assessing a multiplier for lodestar, the "[f]oremost among these considerations, however, is the benefit obtained for the class." *Bluetooth*, 654 F.3d at 942. The benefit here—the majority of which is in-kind relief—informs against awarding above the benchmark. *Cf. In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *14 (N.D. Ill. Dec. 9, 2009) (observing that most class members prefer cash to in-kind relief).

[7] The majority of the vouchers expire between three and five years. Settlement, Dkt. 270-1 at 22-23. For the eight states in which the vouchers do not expire, *id.*, redemption could be estimated based on evidence of redemption rates from the other states as well as "breakage" rates. Generally accepted accounting principles require publicly traded companies to track how many vouchers remain unredeemed; many states require whole or partial escheat of unredeemed vouchers; and, when retailers decide the likelihood of redemption is "remote," they may count unredeemed vouchers value as "breakage" and recognize the unused amount as income. *See generally* Financial Accounting Standards Board, Accounting Standards Update (ASU) No. 2014-09, Revenue From Contracts With Customers (Topic 606) (2014); *cf.* Abraham Fried et al.,. *Lost and Found*, J. Of Accountancy (Feb. 1, 2015) (explaining accounting requirements for unredeemed gift cards).

Period").

**CONCLUSION**

In accordance with CAFA, the Court should defer at least $5.71 million of plaintiffs' fee request to account for any fee attributable to the award of coupons and award class counsel $3.5 million for class counsel's lodestar fee attributable to the non-coupon relief.

Dated: May 21, 2020                    Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Objector Benjamin Faber*

1

2

<u>PROOF OF SERVICE</u>

3

4

    I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

5

6

    DATED this 21st day of May, 2020.

7

<em>/s/ Theodore H. Frank</em><br>Theodore H. Frank

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28